UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHILIP P. KALODNER )<br>)<br>          **Plaintiff,** )<br>)<br>          v. )<br>)<br>SAMUEL BODMAN, Secretary of Energy, U.S.; )<br>GEORGE BREZNAY, Director, Office of Hearings )<br>and Appeals, U.S Dept. of Energy; PUBLIC SERVICE )<br>ELECTRIC & GAS CO.; EASTMAN CHEMICAL )<br>CO.; GENERAL MOTORS CORP.; SEAGROUP, )<br>INC.; GENERAL COUNCIL OF FINANCE AND )<br>ADMINISTRATION OF THE UNITED )<br>METHODIST CHURCH; CITY OF NEW YORK; )<br>ZIM ISRAEL NAVIGATION CO., LTD; )<br>FLORIDA POWER CORPORATION, )<br>)<br>          **Defendants.** ) | Civil Action No: 06-0818 (RMC) |

## FEDERAL DEFENDANTS' MOTION TO DISMISS

The Federal Defendants, Secretary Samuel Bodman and Director of Office of Hearings and Appeals George Breznay, U.S. Department of Energy, hereby move pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted. This motion is supported by the authorities and arguments set forth in the accompanying memorandum.

          Respectfully submitted,

          STEPHEN C. SKUBEL, D.C. Bar # 256461

          _____/s/_____
          ADA. L. MITRANI, D.C. Bar # 498560

          U.S. Department of Energy
          Office of the General Counsel, GC-32
          1000 Independence Ave, SW
          Washington DC, 20585
          202-586-5550

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PHILIP P. KALODNER** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No: 06-0818 (RMC) |
| | ) |
| **SAMUEL BODMAN, Secretary of Energy, U.S.;** | ) |
| **GEORGE BREZNAY, Office of Hearings and Appeals,** | ) |
| **U.S Dept. of Energy; PUBLIC SERVICE** | ) |
| **ELECTRIC & GAS CO.; EASTMAN CHEMICAL** | ) |
| **CO.; GENERAL MOTORS CORP.; SEAGROUP,** | ) |
| **INC.; GENERAL COUNCIL OF FINANCE AND** | ) |
| **ADMINISTRATION OF THE UNITED** | ) |
| **METHODIST CHURCH; CITY OF NEW YORK;** | ) |
| **ZIM ISRAEL NAVIGATION CO., LTD** | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE FEDERAL DEFENDANTS' MOTION TO DISMISS

This Motion deals with Count I of the Plaintiff's Amended Complaint for a money judgment against the government. *See* Am. Compl. at 2-3. It is based on:

1.   Fed. R. Civ. P. 12(b)(1), lack of jurisdiction over the subject matter, which is currently before the Federal Circuit Court of Appeals; or in the alternative

2.   Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted on the ground that the doctrines of issue/claim preclusion and sovereign immunity bar the Plaintiff's claim for fees against the government.

### I.   BACKGROUND OF THE CRUDE OIL REFUND PROCESS AND RELATED LITIGATION

Plaintiff, Philip P. Kalodner ("Kalodner"), is an attorney who has for decades represented certain utilities, manufacturers and shippers ("Clients")[1] seeking restitution from a fund administered by the Department of Energy ("DOE") and its Office of Hearings and Appeals

---
[1]   In court opinions, Kalodner's Clients appear as "Consolidated Edison Co.," or just "ConEd."

2

("OHA"). The fund was created pursuant to the Emergency Petroleum Allocation Act of 1973 ("EPAA").[2] The EPAA provided for price control on crude oil sold in the United States between 1973 and 1981. Violators of the EPAA were required to refund the overcharges. *See Consol. Edison Co. v. O'Leary*, 117 F.3d 538, 540 (Fed. Cir. 1997).[3]

In 1986, DOE, the fifty States, and various non-governmental entities entered into a settlement agreement. *In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 110 (D. Kan. 1986) ("*Stripper Well*"). The settlement established a scheme for allocating the refunded overcharges. According to the agreement and DOE's Modified Statement of Restitutionary Policy for Crude Oil Cases, 51 Fed. Reg. 27,899 (Aug. 4, 1986), the non-governmental entities that were parties to the *Stripper Well* agreement received funds that had been placed in escrow and waived all existing and future claims to refunds. The agreement called for DOE to reserve 20% of the funds for all other claimants, such as the Clients and the named Defendants ("Beneficiaries"). The remaining 80% was split in half between DOE and the States. OHA allocates the 20% portion among claimants pursuant to administrative regulations known as "Subpart V." *See* 10 C.F.R. Pt. 205, Subpt. V. OHA is in the final stages of the restitution process. The funds are held by the U.S. Treasury.

In 1992, Occidental Petroleum settled with DOE a claim for alleged violation of the EPAA. *See Kalodner v. Abraham*, 310 F.3d 767, 769 (D.C. Cir. 2002). In addition, Occidental settled separately with Kalodner's Clients, whereby Kalodner received a fee of $400,000.00 *Id*. Kalodner also received a fee as part of another settlement agreement (the "Citronelle Agreement") approved by the court in *Amoco Oil Co. v. DOE*, Civ. No. H-94-2423 (S.D. Tex.

---

[2] Pub. L. No. 93-159, 87 Stat. 627 (former 15 U.S.C. § 751 et seq. (1973))

[3] For an overview of the EPAA and related legislation, regulations and litigation, see *Kalodner v. Abraham*, 310 F.3d 767 (D.C. Cir. 2003) and *Consol. Edison Co. v. Abraham*, 271 F. Supp.2d 104 (D.D.C. 2003).

1995).  *See* Mem. Op. at 10, *Kalodner v. Abraham*, D.D.C. Civ. No. 97-02013 (RWR), July 30, 2001.  (**Exhibit 1**)

Kalodner was also involved in administrative proceedings and OHA's rulemaking processes.  He filed lawsuits on behalf of the Clients challenging OHA's distribution practice, formulas, and allocation of the refunds.  He alleges that his efforts have resulted in larger refunds for all claimants.  *See* Am. Compl. ¶¶ 18 and 19. Kalodner seeks to recover attorney fees in his own name for his alleged role in the increase of the Beneficiaries' share of refunds.  He relies on the "common fund" fee doctrine.[4]  As grounds for a request for fees, he alleged litigation successes in *Consol. Edison Co. v. Abraham*, 271 F.Supp. 2d 104 (D.D.C. 2003), D.D.C. case no. 01-0548(RMC) ("*ConEd IV*") and *Consol. Edison v. Abraham*, 2005 U.S. Dist. LEXIS 2550, D.D.C. Jan. 26, 2005, D.D.C case no. 03-1991(RMC) ("*ConEd V*").  *See* Am. Compl., ¶¶ 20-31.

Kalodner's portfolio of cases for a common fund fee against the government already includes three cases, in which the issue that is the subject of this fourth case was fully resolved by the trial and appellate courts.  In all three cases, his common fund fee claim was dismissed as a matter of law, and when appealed, the dismissal was affirmed.  *Res judicata* and issue preclusion require that Kalodner's fourth identical case be dismissed for failure to state a claim.  What is more, Kalodner is at this time also pursuing the revival of a stayed appeal with the Federal Circuit Court dealing with the same issue.  The pending proceeding there deprives this court of jurisdiction.

## II.     LEGAL STANDARD

When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court is not limited to the allegations in the complaint.  *Hobri v. U.S.*, 782 F.2d 227, 241 (D.C. Cir. 1986) (vacated on other grounds, 482 U.S. 64 (1987)).  The

---

[4]  The common fund fee doctrine "rests on the theory that beneficiaries of the lawsuit would be unjustly enriched if not compelled to pay a share of the fees that made success possible." *Consol. Edison Co. v. Bodman*, 445 F.3d 438, 442 (D.C. Cir. 2006).

court is required to decide any disputed facts that are relevant to the issue of jurisdiction." *Jentoft v. U.S.*, 64 Fed. Cl. 549, 551-552 (Ct. Cl. 2005). "[T]he trial court conducts an independent review of the evidence relevant to jurisdiction and is not obliged to assume the truthfulness of the factual allegations in the complaint." *Agbaraji v. Aldridge*, 836 A.2d 567, 569 (D.C. 2003) (citing *Matthews v. Automated Bus. Sys. & Servs., Inc.*, 558 A.2d 1175, 1178 (D.C. 1989)). The plaintiff bears the burden of proof of establishing that the court has subject matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002).

"[A]complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### III.   ARGUMENT

The history of Kalodner's cases is "long and tortured." *Consol. Edison Co. v. Bodman*, 445 F.3d 438, 443 (D.C. Cir. 2006). The three Kalodner lawsuits that have reached final judgment are: *Kalodner v. Abraham*, 310 F.3d 767 (D.C. Cir. 2002) ("*Kalodner I*"); *Kalodner v. Abraham*, 309 F. Supp. 2d 100 (D.D.C. 2004) ("*Kalodner II*"); and *Kalodner v. Abraham*, D.D.C. Civ. No. 05-0024 (RMC) ("*Kalodner III*"). The dismissal of *Kalodner III* was affirmed in *Consol. Edison Co. v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006). However, Kalodner appealed the same case to the Federal Circuit Court, *Kalodner v. Bodman*, Fed. Cir. Case No. 05-1310, and that appeal is still pending.

**A.    LACK OF SUBJECT MATTER JURISDICTION**

This Court has no jurisdiction over Kalodner's latest suit for fees for the reason that an appellate court is at this very moment exercising jurisdiction over the same issue that Kalodner raises in this lawsuit; namely, whether an attorney of a party to a lawsuit can be awarded a money judgment against the government.

5

Kalodner is attempting to revive his appeal of *Kalodner III* in the Federal Circuit, which had stayed the appeal pending the one to the D.C. Circuit. After the D.C. Circuit issued a mandate in *Consol. Edison Co. v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006), Kalodner, who at that time should have dismissed the appeal, instead requested an Order for Briefing Schedule. On September 13, 2006, the Court ordered him to show cause why the appeal should not be dismissed for lack of subject matter jurisdiction. (*See* **Exhibit 2**) While the parties have responded to the show cause order, with the government asserting that dismissal of the appeal is necessary to avoid duplicative appellate consideration of the case resolved by the D.C. Circuit, the appeal is still pending. In essence, Kalodner has sought to engage three courts with the same claim and at the same time.

This Court has previously found that it lacks jurisdiction over the issue of attorney fees raised in one case (*ConEd v. Bodman*, D.D.C. Case No. 05-0816(RMC)) because the same issue was already before the D.C. Circuit Court as the appeal of another case (*ConEd v. Abraham*, Case No. 03-1991(RMC)). *See* Order at 2, *Consol. Edison Co. v. Bodman*, case no. 05-0816, March 2, 2006. (**Exhibit 3**) The Court should dismiss this case on the same basis.

**B.    KALODNER HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In the event that this lawsuit is not dismissed for lack of subject matter jurisdiction, it should be dismissed for failure to state a claim. The cause of action suffers from irreparable defects not subject to amendment of the complaint.

Two grounds for dismissal under Rule 12(b)(6) exist. First, Kalodner's claim for a common fund fee has previously been fully litigated and resolved in final decisions in favor of the government. Thus, the doctrines of claim and issue preclusion prevent the plaintiff from relitigating the issue. Second, even if issue preclusion is not applied, the claim for money in the possession of the U.S. Government is barred by the doctrine of sovereign immunity.

### 1. **The doctrines of claim and/or issue preclusion bar relitigation of the money claim against the government**

Kalodner sought a common fund fee in *Kalodner I, II,* and *III*. His latest suit (what should be dubbed "*Kalodner IV"*) seeks the same remedy from the same party. In all previous lawsuits, his claim against the government was dismissed upon a determination by the trial court, and by an appellate court, whenever an appeal was taken, that the claim was barred by sovereign immunity.

It should come as no surprise that there are already precedents on "issue preclusion" involving Kalodner's lawsuits. In a recent case brought by Kalodner on behalf of his Clients, the D.C. Circuit Court specifically discussed "issue preclusion" in the context of yet another attempt by Kalodner to relitigate an issue already fully resolved:

> Under the doctrine of issue preclusion, "binding effect [is to be given] to the first resolution of an issue." Fogg, 254 F.3d at 110. "The law of collateral estoppel," of which issue preclusion is a part, see Jack Faucett Assocs. v. Am. Tel. & Tel. Co., 240 U.S. App. D.C. 103, 744 F.2d 118, 124 (D.C. Cir. 1984), "is intended to protect the parties from the burden of relitigating the same issue following a final judgment and to promote judicial economy by preventing needless litigation." Freeman United Coal Mining Co. v. Office of Workers' Comp. Program, 20 F.3d 289, 294 (7th Cir. 1994). Its objective is "judicial finality." Yamaha Corp. of Am. v. United States, 295 U.S. App. D.C. 158, 961 F.2d 245, 254 (D.C. Cir. 1992).

*Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1258 (D.C. Cir. 2006). Furthermore, new arguments, which could have been, but were not made at the time the issue was decided, cannot provide the basis for relitigating it:

> . . . once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case. See Securities Indus. Ass'n v. Board of Governors, 283 App. D.C. 376, 900 F.2d 360, 364 (D.C. Cir. 1990) (plaintiff may not raise new argument in second proceeding even though it was never made in first proceeding; so long as argument could have been made, it is precluded); Restatement (Second) of Judgments § 27 cmt. c at 253 (if previously litigated "issue was one of law, new arguments may not be presented to obtain a different determination of that issue").

*Yamaha Corp. of America v. U.S.*, 961 F.2d 245, 254-55 (D.C. Cir. 1992).  Defendants only have to show that the parties "had the opportunity to litigate the issue in question in the first action, not necessarily prove that it had been litigated." *Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Indus. & Marine Cleaning,* 850 F. Supp. 905, 908 (D. Or. 1994).

Kalodner is ignoring this well settled legal doctrine and continues to file lawsuits raising the same issue over and over again.  Kalodner's claim is also barred by "claim preclusion," (or *res judicata*), because the court's prior decisions resolving the controlling sovereign immunity issue were dispositive of his entire claim against DOE.  *See Aptus Co. v. U.S.*, 2006 U.S. App. LEXIS 14842 (Fed. Cir. 2006) (plaintiff may not maintain another action on the same claim and defenses that were raised or could have been raised in the action in which a final judgment was rendered).

More particularly, in *Kalodner I,* in which he sought 3% of the entire 20% reserve as an attorney fee, on appeal, the D.C. Circuit Court zeroed in on what it found to be the dispositive issue – sovereign immunity.  *Kalodner v. Abraham*, 310 F.3d 767, 769 (D.C. Cir. 2002).  "[T]he United States cannot be sued at all without the consent of Congress." *Id*.  Any waiver must be unequivocally expressed in a statutory text.  *Id*.  "[T]he sine qua non of federal sovereign immunity is the federal government's possession of the money." *Id*. at 770.  The funds, being in the possession of the U.S. Treasury, are protected by sovereign immunity.  *Id*. The Court specifically stated that Kalodner had failed to identify any statutory waiver. *Id*. The U.S. Supreme Court denied certiorari 155 L.Ed. 1108 (2003).

In *Kalodner II*, Judge Lamberth entertained, but disagreed with, Kalodner's argument that *Kalodner I*'s holding is not applicable to his request for a common fund fee because the money is held in escrow.  *Kalodner v. Abraham*, 309 F. Supp. 2d 100, 103 (D.D.C. 2004), D.D.C Case No. 03-947.  The Court relied on *Kalodner I* and its pronouncement that "the government

need not have an actual interest in the funds in order to invoke [sovereign immunity]". *Id.* It further stated that "[t]he only common-fund waiver is found in a provision of the Equal Access to Justice Act ("EAJA"), *28 U.S.C. § 2412(b)*, and it is wholly inapplicable to the plaintiff." *Id.* Kalodner had specifically disclaimed reliance on a statutory waiver,[5] but the court nevertheless considered it. *Id.* Only parties, adverse to, and prevailing against, the government in a civil action can avail themselves of the waiver. *Id.* Since Kalodner's clients, and he, for that matter, had not been prevailing parties in a lawsuit against the government, the waiver was inapplicable. The case was dismissed for failure to state a claim under Rule 12(b)(6). *Id.* The judgment became final when Kalodner failed to appeal it.

In *Kalodner III*, the district court considered the EAJA waiver in the context of a request for preliminary injunction (to order DOE to withhold 10% from distribution), but dismissed the lawsuit *sua sponte* under Rule 12(b)(6) because Kalodner was clearly not a "prevailing party" under the EAJA waiver. Consol. Mem. Op. at 10, January 26, 2005.[6] On appeal,[7] the D.C. Circuit unequivocally affirmed the lower court's ruling and precisely for the same reason – Kalodner was not a "prevailing party" and could not take advantage of the EAJA waiver to sovereign immunity. *Consol. Edison Co. v. Bodman*, 445 F.3d 438, 448 (D.C. Cir. 2006). Following a discussion on sovereign immunity defense and the sufficiency of mere "possession" of the funds by the government, *Id.* at 446, the Court quickly found that no statutory waiver applies to Kalodner's claim:

> We affirm the district court's dismissal of Kalodner's suit on his own behalf against the government (claims 3 & 4). Sovereign immunity applies unless waived, for the

---

[5] Page 17, Pl.'s Mem. in Opposition to Def.'s Mot. to Dismiss, filed August 29, 2003 (**Exhibit 4**)

[6] *Kalodner v. Abraham*, 2005 U.S. Dist. LEXIS 2550, D.D.C. Civ. No. 05-0024(RMC).

[7] The appeal was consolidated with two other cases filed by Kalodner on behalf of his Clients. The Court organized all the claims in a table, where Kalodner's personal claims against the government for his alleged beneficial role in *ConEd IV* and *ConEd V* are claims 3 and 4. *Consol. Edison Co. v. Bodman*, 445 F.3d 438, 441 (D.C. Cir. 2006).

9

    reasons addressed above. As to any EAJA waiver, Kalodner was counsel in Con Ed IV and Con Ed V, not a party, and EAJA provides attorneys' fees only for parties.

*Id.* at 448.  The decision stands irrespective of whether or not Kalodner' Clients had "prevailed" as parties in a prior lawsuit because it is Kalodner who seeks a money judgment, not the Clients. Kalodner filed petitions for rehearing and for rehearing en banc.  They were denied on July 25, 2006.  The mandate issued on August 14, 2006.

    Already in three lawsuits the trial and appellate courts have reviewed the same issue – each time reaching the same result.  Whether Kalodner would now advance a different legal theory in order to avoid the sovereign immunity bar is immaterial.  An issue is barred from relitigation when the party had the opportunity to fully litigate it before a final judgment was rendered.  *Yamaha,* 961 F.2d 245, 254-55.  As this Court stated in a related proceeding, ["h]aving made his arguments, obtained a decision, appealed the decision, and sought reconsideration, the issue of attorney's fees for ConEd IV is ended."  Consol. Mem. Op. at 5.[8] The Court should dismiss this lawsuit with prejudice.

    **2.**    <u>**The government has sovereign immunity**</u>

    Sovereign immunity has been consistently the reason why all of Kalodner's prior lawsuits were dismissed.  There is certainly no reason why in this case the Court should find otherwise.  Since the money that is in dispute is still in the possession of the government, under the D.C. Circuit Court's precedents in *Kalodner I* and in *Consol. Edison Co. v. Bodman*, sovereign immunity applies.  As the Court in *Bodman* stated, its omission of discussion of the EAJA waiver in *Kalodner I* was "plainly because of the ample reasons why the EAJA would not have availed Kalodner, the most obvious being that Kalodner was not a 'party' at all."  *Bodman,* 445 F.3d at 448.  Kalodner is still not a "party at all" and cannot rely on the EAJA waiver.

---

[8] *Consol. Edison Co. v. Abraham*, 2005 U.S. Dist. LEXIS 2550, January 26, 2005, filed in cases 03-1991 and 05-0024)(referring to the issue decided in *ConEd IV* and raised again in *ConEd V*).

Absent the waiver, his claim is simply barred by sovereign immunity and should be dismissed even if it had not been fully litigated already in three lawsuits.

## IV.   CONCLUSION

Kalodner has gone to the courts on a multiple occasions, each time requesting the same remedy – a common fund fee from funds held by the U.S. Treasury. Each time his claim was dismissed after a careful review by the trial court and the decision affirmed on appeal. And each time the courts found that Kalodner's claim against the government is barred by sovereign immunity. Claim and issue preclusion result in confining the party to the arguments it made or could have made when the issue was first considered. The filing of yet another lawsuit by Kalodner is one more unnecessary, burdensome, and costly litigation, contrary to the principle on which collateral estoppel was founded –promotion of judicial economy.

Furthermore, neither the law nor the underlying facts have changed in order for sovereign immunity not to apply as a bar once more. Since Kalodner is seeking money still in the possession of the government, the fact that he is not a "prevailing party" prevents him from taking advantage of the EAJA waiver.

For the forgoing reasons, the Federal Defendants pray that the Court dismiss all claims against them with prejudice.

                                                Respectfully submitted,

                                                STEPHEN C. SKUBEL, D.C. Bar # 256461

                                                _____/s/_____
                                                ADA. L. MITRANI, D.C. Bar # 498560

                                                U.S. Department of Energy
                                                Office of the General Counsel, GC-32
                                                1000 Independence Ave, SW
                                                Washington DC, 20585
                                                202-586-5550

## CERTIFICATE OF SERVICE

      I, Ada L. Mitrani, certify that on this 2nd day of October, 2006, I caused a true and correct copy of this document to be served by first class mail, postage prepaid to:

Michael Healy
MORGAN LEWIS& BOCKIUS LLP
1111 Pennsylvania Avenue
Washington, D.C. 20004
*Attorney for*
*Public Service Electric & Gas Co.,*
*Eastman Chemical Company, and*
*General Motors Corporation*


City of New York
100 Church St.
New York, NY 10007
*Defendant*

_____
/s/ ADA L. MITRANI