# APPENDIX I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILIP P. KALODNER
208 Righters Mill Road
Gladwyne, PA 19035

    Plaintiff

      V.

PUBLIC SERVICE ELECTRIC & GAS CO.
80 Park Plaza
Newark, NJ 07102-4109

FLORIDA POWER CORPORATION
100 Central Avenue
Saint Petersburg, FL 33701-3324

EASTMAN CHEMICAL COMPANY
100 N. Eastman Road
Kingsport, TN 37660-5265

GENERAL MOTORS CORPORATION
2000 Renaissance Center Box 300
Detroit, MI 48265-3000

SEAGROUP, INC.
2187 Atlantic St.
Stamford, CT 06902-6880

GENERAL COUNCIL ON FINANCE AND
ADMINISTRATION OF THE UNITED
METHODIST CHURCH
1200 Davis Street
Evanston, IL 60201-4193

CITY OF NEW YORK
100 Church St.
New York, NY 10007

CIVIL ACTION NO.
1:04CV00152 (RMC) HHK

CLASS ACTION

1

ZIM ISRAEL NAVIGATION CO. LTD
5801 Lakewright Drive
Norfolk, VA 23502-1862

      Defendants

---

## FIRST AMENDED COMPLAINT

A. NATURE OF ACTION, JURISDICTION AND VENUE

1. This is an action for a common fund fee sought by
plaintiff, an attorney, from funds to be disbursed by the U.S.
Department of Energy ("DOE") to more than 50,000 claimants in the
DOE crude oil refund proceedings. The named defendants are among
such claimants and they are sued as representatives of a class
consisting of all claimants who will receive the funds to be
disbursed by the DOE, other than those claimants with whom
plaintiff has fee agreements. The basis of the request for a
common fund fee is that plaintiff's efforts on behalf of those
claimants with whom he has fee agreements were designed to, and
did, obtain refunds for all the members of the putative claimant
class, specifically including the funds which will now be
distributed to the class members by the DOE.

2. Jurisdiction of this Court is invoked pursuant to 28
U.S.C. Section 1331 and Section 209 through 211 of the Economic
Stabilization Amendments of 1971, Pub. L. 92-210, 85 Stat. 743
(1971).

3. Venue is properly placed in this District pursuant to 28

U.S.C. 1391.

    B. PARTIES

    4. Plaintiff Philip P. Kalodner is an attorney with offices
at 208 Righters Mill Road, Gladwyne PA 19035, and is duly
licensed to practice in the Commonwealth of Pennsylvania and the
District of Columbia, and is admitted to practice before numerous
Federal District and Circuit Courts, including this Court, the
Courts of Appeals for the District of Columbia Circuit and the
Federal Circuit, and the Supreme Court of the United States. For
more than fifteen years he has represented a number of major
United States electric utilities and paper manufacturers and
major international shipping companies in administrative and
judicial litigation involving refunds sought and obtained by the
U.S. Department of Energy from producers and resellers of crude
oil by virtue of alleged violations by such producers and
resellers of price and allocation regulations in effect from
August 1973 through January 1981.

    5. Defendants are claimants for crude oil refunds obtained
by the U.S. Department of Energy ("DOE") from producers of crude
oil for alleged violations of the crude oil price regulations in
effect during the regulatory, period, August 1973 through January
1981. In each case their claims have been approved by the DOE as
to a specific number of gallons of purchase of refined petroleum
products, and they have in each case received distributions of

3

$1600 per million gallons of purchases. Pursuant to a declaratory judgment by this Court issued May 9, 2003 in <u>Consolidated Edison Company of New York et al v. Spencer Abraham, Secretary of Energy, et al</u>, Civil Action 01-00548 (RMC)° (District Court, Dist of Columbia) they, and more than 50,000 similarly situated crude oil refund claimants will each receive a pro rata share of some $270 million to be distributed to crude oil refund claimants by the DOE; DOE has announced that the distribution will be in the amount of $670 per million gallons of refined products purchased by the claimant during the regulatory period.

C. <u>CLASS ACTION ALLEGATIONS</u>

6. Defendants are sued as representatives of all crude oil refund claimants who are entitled to and will receive a pro rata portion of the approximately $270 million to be distributed by the DOE pursuant to this Court's May 9 Decision, other than the claimants with whom plaintiff has fee agreements. Plaintiff properly maintains a class action under Rule 23 of the Federal Rules of Civil Procedure.

7. The requirements of Rule 23(a) are all met:

(a) The class of those who will benefit from the services rendered by plaintiff in obtaining a declaration requiring the distribution to them of some $270 million, and who have already benefitted from prior services of plaintiff in the crude oil refund proceedings, is so numerous that joinder as

4

defendants of all members is impractical. Although the exact
number of the members of the class cannot now be determined
because verification of the claimants entitled to the
distribution has not as yet been conducted by DOE and its
adjudicatory body, the Office of Hearings and Appeals ("OHA"), it
is estimated that more than 50,000 claimants will receive such
distributions by virtue of plaintiff's efforts.

(b) The members of the defendant class share common
questions of fact and law, including most importantly (i) whether
they have been benefitted by the services of plaintiff,(ii)
whether a common fund fee is therefor appropriately charged them
by plaintiff for such services, and (iii) the appropriate
percentage of their respective distribution which is properly
paid to plaintiff as a fee.

(c) The defenses of the representative parties are typical
of the defenses of the defendant class.

(d) The representative defendants will fairly and adequately
represent the members of the class. They have been chosen as
typical claimants, reflecting the varying nature of the
claimants—ie.  government purchasers of oil products,
manufacturers, utilities, transporters and non-profits. Their
prospective recoveries are among the larger recoveries and they
are accordingly positioned to bear the burden of representing the
class initially, pending certification of the class and the

fixing of a reasonable fee for their services from the common fund.   There is every reason to believe they will retain competent counsel, and it is anticipated that the counsel for two of them will be an attorney who has regularly represented them in these proceedings and who is, in plaintiffs' view, more knowledgeable of this matter and the merits of plaintiff's claim than any other counsel representing crude oil refund claimants, other than plaintiff.

8. Class certification is proper under all three specified categories in Rule 23 (b):

(1) The prosecution of separate actions against individual members of the class would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the defendant class which would establish incompatible standards of conduct for plaintiff, i.e. the percentage of distribution to be recovered as fee, and (B) adjudications with respect to individual members of the class would as a practical matter substantially impair or impede the ability of other members of the class to protect their interest in defending against or minimizing the percentage fee to be paid by them.

(2) The plaintiff has acted on grounds generally applicable to the class, i.e. by rendering service equally valuable to each member of the class, thereby making appropriate final injunctive or declaratory relief with respect to the fee obligation of the

6

defendant class as a whole.

(3) Questions of law and fact common to the members of the class as described above and throughout the Complaint, predominate over any questions affecting only individual members of the defendant class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

D. THE LEGAL BASIS FOR THE PLAINTIFF'S CLAIM

9. As explained in Swedish Hospital Corp. V. Shalala, 1F. 3d 1261, 1265 (D.C. Cir. 1993), "(T)he 'common fund' doctrine...typically applied in class actions...allows a party who creates, preserves or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses, including counsel fees " (emphasis supplied). See Boeing Co. V. Van Gemert, 444 U.S. 472, 478 (1980): "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." The lack of formal class certification is irrelevant, Sprague v. Teconic Bank, 307 U.S. 161, 166 (1939): "(T)hat the party...neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant

7

reimbursement..." Finally, to the extent to which the fee here sought for obtaining the declaratory judgment making available $270 million to the claimant class is further supported by prior services rendered to the claimant class in creating and increasing the fund of which the $270 million is only a part, compensation is appropriate for prior phases of the proceeding in which compensation is sought.  Bebchick v. Metropolitan Area Transit, 895 F. 2d 396 (D.C. Cir. 1986).

D. THE HISTORY OF KALODNER'S SERVICES TO THE CLASS

10. For more than 21 years Kalodner has spent essentially his full time in representing end user claimants to the crude oil refunds, and in pressing their cause. For more than the last 15 of those years, Kalodner has been the sole active lawyer representing the interest of end user claimants; throughout the period in every representation of his 35 clients, whose combined purchases represent some 15% of the purchases by all approved claimants,, Kalodner has represented the interest of all of the more than 50,000 claimants who will be entitled to the distribution of the $270 million.

(a) Kalodner's efforts in creating the fund

During the 1980's, while the DOE was recovering crude oil refunds, two efforts were made which would have eliminated the right of end user claimants to obtain those funds; in both cases, Kalodner played a significant part in winning rejection of those

8

efforts, thereby <u>creating</u> a fund for claimant end users:

(i) Initially, three separate groups asserted their right to be the sole recipient of recovered crude oil refunds. The Refiners of the United States asserted the right to all of the recovered funds on the basis that, by virtue of the DOE Entitlements Program which spread any crude oil overcharge to one refiner to all domestic refiners, they had absorbed the entire overcharges and had not passed them on to end users in the price of refined products. On the other hand, the United States government, acting by the DOE, and the States of the United States each asserted the right to be the sole recipients of the crude oil refunds on the basis of the principle of <u>parens patriae</u>, arguing with each other as to which was the proper <u>parens patriae</u> for the purpose of award of crude oil refunds. Kalodner, acting initially on behalf of the truckers of the United States, together with the States, agricultural cooperatives, domestic airlines and utilities, in an extended proceeding satisfied OHA that the Refiners had absorbed only 2.7 to 8.1% of the overcharges, passing the balance downstream. And Kalodner and the other above named end user groups were able to obtain a settlement of then pending litigation (a) in which the Refiners' recovery was limited to a fixed amount estimated to represent 6.75% to 7.5% of the total amount to be recovered by DOE and, (b) in which the United States and the States each

agreed to permit end users to recover crude oil refunds, and to limit their <u>parens patriae</u> recovery to funds remaining after end user recoveries. <u>In Re The Department of Energy Stripper Well Exemption Litigation</u>, ("<u>Stripper Well</u>"), 653 F. Supp. 108 (D. Kan. 1986).

(ii) When, in accordance with its promise in the <u>Stripper Well</u> settlement, DOE adopted a policy permitting those who had not recovered in <u>Stripper Well</u> to recover crude oil refunds in DOE proceedings, the States of the United States mounted a challenge to end user claimants, asserting that such claimants, most particularly manufacturers, trans-oceanic shipping companies, non-domestic airlines, and utilities, had passed along the overcharges they had absorbed in refined product prices to their customers, and were accordingly not injured and not entitled to recover. Kalodner, together with attorneys for other shipping companies and non-domestic airlines, responded to that challenge, and satisfied OHA that, pursuant to OHA precedent, end users were entitled to a presumption of injury. Absent that presumption, end users would have been unable to prove injury and would have been denied any recovery, as is evidenced by the fact that reseller and retailer claimants without a presumption of injury have been unable to obtain crude oil refunds in the DOE proceedings.

Thus, had it not been for the efforts of Kalodner and his allies in winning rejection of the Refiners', States' and United

10

States' attempts to obtain 100% of the refunds and the States' efforts to make impossible any end user recovery, there would have been no fund at all for end users. Accordingly, Kalodner was instrumental in <u>creating</u> the common fund for end users.

(b) <u>Kalodner's efforts in increasing the fund</u>

(i) For more than 10 years, in the late 1980's and 1990's, Kalodner on behalf of his clients, and Kalodner alone on behalf of end users, intervened before OHA in numerous DOE enforcement actions seeking crude oil refunds, for the purpose of assisting DOE's enforcement arm in obtaining refunds and maximizing the amount of those refunds. Among the most productive interventions was that in a proceeding which resulted in a settlement with the Occidental Petroleum Corporation which added $55 million to the Treasury escrow fund for end user claimants; it is Kalodner's view that, but for his contributions in the DOE prosecution of Occidental, there would have been no settlement, and no $55 million for end users.

A substantial portion of Kalodner's time during a more than 10 year period was expended in assisting DOE in seeking crude oil refunds, sometimes and indeed generally successfully, and on occasion unsuccessfully, as in a prosecution of Chevron; in that case, when OHA dismissed the enforcement arm's effort to obtain more then a half billion dollars, Kalodner and a group of States appealed that dismissal to the courts in what turned out to be an

11

unsuccessful effort to reverse OHA's dismissal and obtain refunds
for all claimants.

(ii) During the immediately past 6 years, Kalodner, on behalf
of his clients, and acting again for the benefit of all end user
claimants, has challenged a number of awards made by OHA to crude
oil refund claimants, asserting that the claimants were not
entitled to the awards; any reduction in such awards necessarily
benefits the end user claimants who will share in the $270
million, in that it (a) adds to the pool of funds available for
approved claimants and (b) reduces the denominator number of
gallons to be divided into the $270 million in calculating the per
gallon refund to which claimants are entitled. A number of these
challenges remain pending in the courts, while in several OHA has,
upon the filing of a Complaint by Kalodner, asked for remand; in
one such matter, involving an award to the Ameripol Synpol
Corporation, the OHA has, based upon the arguments by Kalodner,
reduced a more than $1 million award by almost $500,000 by
reducing the number of purchased gallons deemed qualified for
refund.

In another situation, involving a claim by Hercules,
Incorporated, prior to rendering a final decision as to the claim,
OHA specifically invited Kalodner, and Kalodner alone, to submit
comments on its proposed decision. After considering Kalodner's
comments, OHA reduced its proposed award of more than $1,000,000 by

12

the amount of $360,000, thereby both (a) adding to the fund pool available to approved end user claimants and (b) reducing the total volume of gallons on the basis of which the per gallon distribution of the remaining $270 million will be made.

OHA's invitation to Kalodner, and to Kalodner alone, to comment on its proposed decision in Hercules, Incorporated, is one of a number of situations in which OHA and DOE have recognized that Kalodner is acting on behalf of all end user claimants, so that it need not invite other end users to participate to assure adequate end user representation. Indeed, in the Occidental Petroleum Corporation matter discussed above, DOE invited Kalodner, and Kalodner alone as a representative of the end users to participate in the mediation effort which resulted in the settlement of the matter.

<ol type="a" start="3"><li>By obtaining a declaratory judgment requiring distribution of the $270 million to claimants Kalodner preserved the $270 million for them</li></ol>

Although, after initial distribution to end users of more than $600 million, some $270 million remains in U.S. Treasury accounts to which crude oil recovered funds had been transferred by DOE for end user claimants, DOE had refused to commit to distribution of those funds to end user claimants. When Kalodner on behalf of his clients and for the benefit of all approved end user claimants sought a declaratory judgment requiring distribution to end user claimants of the $270 million remaining, DOE opposed it, asserting

13

that it had not as yet decided "whether" any further direct payment to plaintiffs is warranted," Consolidated Edison Co. V. Abraham, 271 F. Supp 104, 110 (D.D.C. 2003).

Moreover, a further indication of DOE's opposition to the disbursement of the $270 million to end users is found in the fact that in December 2001, OHA submitted by memorandum to the DOE General Counsel a proposal as to the use of the remaining $270 million; had it recommended disbursement to the end users rather than disbursement to the United States and/or the States, DOE would not have opposed the declaratory judgment sought by Kalodner. (If plaintiff is wrong in concluding that OHA recommended against disbursement to the end user claimants, DOE can so demonstrate by releasing the OHA memorandum, an action it has refused to date.)

Thus, by successfully requesting this Court's declaration in its Opinion and Order of May 9 that the $270 million is impressed with an obligation that it be distributed to approved end user claimants, Kalodner has "preserved" the $270 million for such purpose.

E.  KALODNER'S EFFORTS TO OBTAIN A COMMON FUND FEE

11. In bringing the action decided by this Court's May 9 Opinion and Order, Kalodner's clients asserted the right to be certified as representatives of the class of all approved end user claimants. A formal application for such class certification was deferred pending the Court's determination on the plaintiffs'

motion for partial summary judgment, i.e. a declaration that the remaining funds must be distributed to the claimants, with an anticipated trial with regard to the timing and manner of such distribution and its per gallon amount. When the Court entered a final judgment instead of merely granting partial summary judgment, a formal application for certification was rendered impossible, as was the anticipated subsequent application for a class action fee. However, the Court's declaratory order requiring the distribution which plaintiffs had sought effectively constituted recognition of the fact that plaintiffs were appropriate class representatives by extending the distribution to all claimants.

12. Following entry of the final judgment May 9, Kalodner timely moved for a fee pursuant to Federal Rule of Civil Procedure 54 (d) (2). When the Kalodner motion was opposed by DOE on the basis that sovereign immunity precluded the award of a fee while the funds remained in the U.S. Treasury, Kalodner sought by motion to add claimants other than his clients as respondents to his motion for a fee as representatives of the claimant class. The Court dismissed the Kalodner motions on the basis of sovereign immunity, suggesting that Kalodner would have to bring suit against the claimants directly.

13. This action is therefore brought to seek from the class members directly the common fund fee which should have been available even though the funds remained in the Treasury, pursuant

15

to <u>Swedish Hospital Corp. V. Shalala</u>, <u>supra</u>.

E. <u>CAUSE OF ACTION</u>

14. The allegations of paragraphs 1 through 13 are incorporated herein by reference.

15. Plaintiff Philip P. Kalodner rendered critically important services to the members of the defendant class i.e. end user claimants to crude oil refunds other then the clients with whom he has fee agreements, by creating, increasing and preserving the funds to be disbursed to them pursuant to this Court's May 9, 2003 Order.

16. Plaintiff Kalodner is entitled to a common fund fee by means of an award to him as against each member of the defendant class of a percentage of the amount to be distributed to such member from the $270 million by virtue of the Court's Order of May 9, 2003.

17. An appropriate percentage of the award from the $270 million to each claimant member of the defendant class is a minimum of 10%. As the Court of Appeals for the District of Columbia Circuit noted in <u>Swedish Hospital Corp. V. Shalala</u>, <u>supra</u>, 1 F. 3d at 1272, "a review of similar cases reveals a majority of common fund fee awards fall between twenty and thirty percent." Moreover, a 10% fee is consistent with common fund fees agreed to by DOE itself in two prior matters in which it agreed to such fees to be paid from funds recovered by it and to be awarded to end user

claimants, even though in those cases there had been no formal

class certification. In Re The Department of Energy Stripper Well

Exemption Litigation, 653 F. Supp. 108 (D. Kan. 1986), and Amoco

Oil Company et al, C.A. H-94-2423 D.C. Southern Dist. Texas (1955).

18. Moreover if 10% of the amount now to be distributed,

estimated by DOE to be $670 per million gallons of refined product

purchased by each claimant, is calculated as a percentage of the

total amount which will have been distributed, i.e. $2270 per

million gallons (the sum of the $1600 per million gallons

previously distributed and the $670 per million gallons now to be

distributed) in recognition of the services earlier rendered by

plaintiff to the class members, the 10% fee sought reflects a fee

of less than 3% of the distribution to claimants.

19. Upon the setting by the Court of an appropriate percentage

as a common fund fee, the interests of judicial efficiency require

that the class representative defendants on behalf of the members

of the class direct the DOE to withhold such percentage in each

disbursement to the claimants and disburse such amounts withheld at

appropriate intervals to plaintiff; otherwise, plaintiff would be

required to bring thousands of individual suits against claimants

to recover the percentage fee to be fixed by this Court. Moreover,

such a system of withholding the fee in each distribution would

provide a methodology which would approximate the method of

compensating plaintiff which would have been provided by the class

certification and fee award which would have occurred had the decision of May 9 not precluded the filing of, and action on, a motion for class certification by the plaintiff claimants in that action and a subsequent fee application by Kalodner.

WHEREFORE, plaintiff prays for Orders of this Court as follows:

(a) An Order certifying the defendant class and the defendants as representatives of the class;

(b) An Order awarding to plaintiff 10% of the distribution to each member of the claimant class which is made by the DOE pursuant to the implementation by DOE of this Court's Order of May 9, 2003 as a fee for services rendered to such class member;

c) An Order directing the defendants on behalf of each of the class members to direct the DOE to withhold the fee awarded to plaintiff in each distribution made by DOE to members of the class;

(d) Awarding the plaintiff his costs; and

(e) Granting such other and further relief as may be just and proper.

Respectfully submitted,

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 973578

March 8, 2004                    Pro Se

18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILIP P. KALODNER

    Plaintiff

       V.

PUBLIC SERVICE ELECTRIC & GAS CO.
et al

    Defendants

CIVIL ACTION NO.
1:04CV00152 (RMC)

CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing

First Amended Complaint this 9th day of March, 2004 by first

class mail upon the following:

William E. Frese Esq.
Office of General Litigation Counsel
Public Service Electric & Gas Co.
80 Park Plaza T5D
Newark NJ 07102-4194

R. Alexander Glenn Esq.
Deputy General Counsel-Florida
Florida Power Corporation
Progress Energy
P.O. Box 14042
St. Petersburg, FL 33733

Maynard L. Timm Esq.
GM Legal Staff
General Motors Corporation
400 Renaissance Center P.O. Box 400
Mail Code 482-026-601
Detroit, MI 48265-4000

1

R. Brooks Pitchie Esq.
Senior Counsel
Eastman Chemical Company
P.O. Box 511
Kingsport TN 37662-5075

Christopher G. Bastis
President/CEO
Seagroup Inc.
2187 Atlantic St.
Stamford, CT 06902-6880

John R. Low-Beer Esq.
Asst. Corporation Counsel
City of New York
New York City Law Department
100 Church St.
New York, NY 10007

Dan Gary Esq.
General Council on Finance and Administration
of the United Methodist Church
1200 Davis St.
Evanston, IL 60201-4193

Shaul Cohen-Mintz, President
Zim Israel Navigation Co. Ltd.
5801 Lakewright Drive
Norfolk, VA 23502-1862

_____
Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 97357

2