IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| PHILIP P. KALODNER | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | CIVIL ACTION NO. |
| SAMUEL BODMAN ,Secretary of Energy, | : | |
| United States; GEORGE B. BREZNAY | : | No. 1:06-cv-00818(RMC) |
| Director, Office of Hearings and | : | |
| Appeals; | : | |
| | : | |
| AND | : | |
| | : | |
| PUBLIC SERVICE ELECTRIC & GAS CO.; | : | |
| EASTMAN CHEMICAL COMPANY; GENERAL | : | |
| MOTORS CORPORATION; SEAGROUP, INC. | : | CLASS ACTION |
| GENERAL COUNCIL ON FINANCE AND | : | |
| ADMINISTRATION OF THE UNITED | : | |
| METHODIST CHURCH; CITY OF NEW YORK; | : | |
| ZIM ISRAEL NAVIGATION CO. LTD; | : | |
| FLORIDA POWER CORPORATION | : | |
| | : | |
| Defendants | : | |
| | : | |

---

CORRECTED PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES

IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS


INTRODUCTION AND SUMMARY OF ARGUMENT

The Federal Defendants, the Secretary of Energy and the

Director of the Department of Energy's Office of Hearings and

Appeals (cumulatively "Department of Energy" or "DOE") have moved

to dismiss the Complaint as to them on three bases, all of which are in turn based on a single, critical misrepresentation of the instant Complaint as a reiteration of prior Complaints.

On all of the prior occasions in which plaintiff Philip P. Kalodner sought a common fund fee for litigation efforts which benefitted crude oil refund claimants with whom he had no fee arrangements, the funds destined for distribution to the claimants were in the U.S. Treasury.

In contrast, the instant Complaint seeks a common fund fee on the basis of funds which have been allocated to claimants by the DOE, and paid out to claimants to the extent of 89.5%; 10% of the distribution due each claimant has been retained by the DOE solely for the purpose of paying such common fund fee as is awarded to Kalodner, so as to avoid the necessity of recovering funds from the claimants in order to pay the 10% fee sought by Kalodner or such lesser amount as is awarded him. (The other .5% withheld is to insure that the DOE will have adequate funds to make any ordered distribution to a claimant, Mittal Steel USA ISG Inc. which was denied an award and is seeking such in litigation).

Because the common fund is sought on the basis of funds allocated, and paid (but for amounts possibly needed to pay a common fund fee, and to cover any award to Mittal Steel), none of the three grounds for dismissal urged by the DOE has merit.

2

Moreover, as DOE has acknowledged in a Notice of Filing withdrawing the first of its urged bases for dismissal-- its contention that this Court lacks subject matter jurisdiction because of the pendency of an appeal in Kalodner v. Abraham (No. 05-1310 Fed. Cir.)-- is now moot, by virtue of the dismissal of that appeal October 4, 2006.

As to the remaining two bases for dismissal urged by DOE:

1. The denial of a common fund fee to Kalodner in the three prior cases in which he brought suit for a common fund fee provides issue preclusion ("collateral estoppel") only as to the issues of (i) whether, absent its waiver, sovereign immunity is available as a defense to a claim for a common fund fee from U.S. Treasury funds as long as, and to the extent to which, the funds remain in the Treasury and are not there being specifically held for specified individual claimants, and (ii) whether sovereign immunity in such a situation is waived by the Equal Access to Justice Act ("EAJA") 28 U.S.C. 2412 (b).

The first of those issues is not here present because the funds as to which a common fund fee is here sought have been allocated to the claimants as to whom a common fund fee is here sought, have been largely paid (to the extent of 89.5%), to such claimants, with the balance due each claimant of 10.5% being retained solely to satisfy any judgment in pending litigation, thereafter and to the extent unneeded for such litigation to be

distributed to the claimants.

The second of those issues is not here presented because if sovereign immunity is any longer relevant-- and it is even now arguably relevant only as to the 10.5% of funds retained because 89.5% of the funds are no longer in the possession of the United States-- the waiver of sovereign immunity which Kalodner here asserts is not pursuant to the EAJA, but rather is effected by the same statutory provision which permitted Kalodner to sue the United States on behalf of his clients for the funds being held in the Treasury, thereby winning their distribution, i.e. Section 209 of the Economic Stabilization Act ("ESA"), Pub. L. 92-210, 85 Stat. 743 (1971). As both the Court of Appeals for the District of Columbia Circuit and the Court of Appeals for the Federal Circuit have now held, the issue of whether a waiver of sovereign immunity as to a claim for a common fund fee is here effected by ESA Section 209, although raised in both of those Courts, has not been determined either by those Courts or by this Court. Consolidated Edison Co. v, Bodman ("Con Ed V"), 445 F. 3d 438 (D.C. Cir. 2006), No. 05-1309 Fed. Cir., Order of October 4, 2006.

Nor does the denial of a common fund fee on the basis of sovereign immunity in the prior litigation provide claims preclusion ("res judicata"). In none of the prior litigation was there a determination on the merits, and absent such

determination, there is no claims preclusion.

2. Sovereign immunity is not available as a defense to the DOE as to a common fund fee claim as to funds it has allocated, and paid out to the extent of 89.5%:

(i) As to the 89.5% actually paid out, the United States is not in possession of the funds, and if a common fund fee was awarded as to such funds and the United States determined not to use the 10% withheld for a possible common fund fee for that purpose, it would be required to recover the common fund fee from the funds distributed to more than 29,000 claimants and could not avoid such a duty on the basis of sovereign immunity. National Treasury Employees Union v. Nixon, 521 F. 2d 317 (D.C. Cir. 1975);

(ii) As to the 10% withheld from distribution to each claimant to whom distribution was made because Kalodner was claiming that amount as a fee and the .5% withheld to cover any award to Mittal Steel, the government's "possession" is not as a sovereign but as an agent of the individual claimants to whom it has awarded the funds.

Moreover, if, despite the fact that the withheld 10.5% is being held by the United States as agent for the claimants, its "possession" by the United States is deemed by this Court to be sufficient to invoke sovereign immunity, a waiver of such sovereign immunity is effected by ESA Section 209.

5

In any event, it would be nothing short of ludicrous if the DOE, having been required to recover a common fund fee of 10% from the 89.5% distributed pursuant to <u>National Treasury Employees Union v. Nixon</u>, <u>supra</u>, (i) decided not to use the withheld 10% for such purpose, and (ii) was not required to use the 10% it had withheld for such purpose because the 10% was in the government's possession.

Indeed, were the withheld 10% not voluntarily used by DOE for such an awarded common fund fee and if the DOE were not required to pay the common fund fee with the withheld 10%, the United States would first have to recover a common fund fee from more than 29,000 claimants as to the 89.5% distributed, then distribute the 10%, and then recover a common fund fee on that 10%.

It was to avoid such that the DOE determined to withhold the full 10% sought by Kalodner rather than only the 4.128% which had been awarded to Kalodner by this Court (in the form of 30% of the extent to which the amount to be distributed exceeded $670 per million gallons; the amount allocated to claimants, $776.908 per million gallons, exceeded the $670 per million gallons by $106.908 per million gallons, 30% of which, multiplied by the 365,715 million gallons of the claims approved for distribution, would produce a common fund fee of $11,729,000 which is 4.128% of the $284,127,000 available for distribution.)

(The award to Kalodner, albeit misinterpreted by the D.C. Circuit as an award to his clients, has been presumably vacated by the D.C. Circuit, which remanded to this Court the issue of whether a common fund fee should be awarded as to the entire $284 million available for distribution, <u>Consolidated Edison Co. v, Bodman</u> ("Con Ed V"), 445 F. 3d 438 (D.C. Cir. 2006); parallel appeals from the same District Court Order of January 26, 2005 (03-1991 in this Court) have been dismissed by the Federal Circuit. )

For the DOE now to argue that the 10% withheld is protected from being tapped for a common fund fee by virtue of sovereign immunity is not only a recipe for an unpalatable result, i.e. the necessity of paying out the entire fund and then recovering a portion for a common fund fee, perhaps in two or more stages; it is an abdication of the DOE's own voluntary, sensible and practical decision to withhold the full amount claimed for a common fund fee so that a common fund fee could be paid without the necessity of recovering from 31,000 claimants.

<u>STATEMENT OF THE CASE</u>

I <u>THE INSTANT EFFORT BY KALODNER TO OBTAIN A COMMON FUND FEE</u>

In the First Amended Complaint here. plaintiff, Philip P. Kalodner, seeks a common fund fee from funds which have been (i) allocated by the U.S. Department of Energy ("DOE") to each of

more than 29,800 claimants in the DOE crude oil refund
proceedings; 89.5% of the funds allocated to each claimant have
been disbursed to each such claimant, and 10% allocated to each
such claimant has been withheld by the DOE for possible payment
to plaintiff Philip P. Kalodner ("Kalodner") as a common fund
fee.

     In Count I the Complaint, as to which the defendants are
the Secretary of Energy and the Director of the Office of
Hearings and Appeals, plaintiff seeks as a common fund fee the
10% withheld by the DOE for such possible use in the disbursement
to each claimant to whom disbursement (of 89.5%) has been made,
excluding only those claimants as to whom plaintiff has waived
any right to a common fund fee because of fee agreements with
such claimants.

     In Count II of the Complaint, as to which the defendants are
eight claimants who have received a 89.5% distribution and who
are sued as representatives of all claimants who have received
distribution of the 89.5% (excepting only those claimants as to
whom Kalodner has waived any common fund fee), plaintiff seeks,
in the alternative, an order that the claimants direct the DOE to
pay to Kalodner as a common fund fee the 10% retained from
distribution to each of them for such possible purpose. In the
further alternative, should the Court decline to order the
claimant defendants to so direct DOE, Kalodner seeks an Order

that each member of the class to whom a distribution has been
made pay to plaintiff Kalodner 10% of the amount allocated to
each such class member, i.e. a common fund fee of approximately
$77.70 per million gallons.

A. The Principal Basis for a Common Fund Fee--Three
successive lawsuits Which Obtained Allocation and Distribution of
$284 million To Some 29,800 Claimants

The principal basis of the request for a common fund fee is
that plaintiff's litigation efforts on behalf of those claimants
with whom he has fee agreements were designed to, and did, obtain
the allocation, and disbursement, to all the members of the
putative claimant class of some $284 million, specifically (i) by
virtue of this Court's declaratory order issued May 9, 2003 in
Consolidated Edison Company of New York et al v. Spencer Abraham
et al, Civil Action 01-00548 (RMC) (Dist. Ct. Dist. Col.) ("Con
Ed IV"), and (ii) by virtue of two subsequent actions brought by
plaintiff herein, i.e.  Consolidated Edison Company of New York
et al v. Samuel Bodman et al, Civil Action 03-1991 (RMC) (Dist.
Ct. Dist. Col.)("Con Ed V") and Consolidated Edison Company of
New York et al v. Samuel Bodman et al, Civil Action 05-0816 (RMC)
(Dist. Ct. Dist. Col.)("Con Ed VI").

In Con Ed IV, on behalf of his clients (referred to as
"Utilities and Manufacturers", Kalodner obtained a declaratory
judgment requiring distribution to what would be subsequently

9

determined to be some 31,000 crude oil refund claimants of the balance of crude oil refunds remaining in the relevant U.S. Treasury accounts in which 20% of DOE-recovered refunds had been placed for potential distribution to individual claimants.

In Con Ed V, filed when DOE had failed to comply with the declaratory judgment for almost 5 months, (i) by virtue of the filing of the Complaint, Kalodner obtained the agreement of DOE to comply with the declaratory order, albeit only to the extent of $245 million of the $284 million which would be available for such purpose as of December 28, 2005, and (ii) by virtue of the filing of a motion for summary judgment, Kalodner obtained the agreement of DOE to changes in the proposed methodology of calculating the distribution which would result in the distribution of the entire $284 million.

In Con Ed VI, filed because DOE had failed to make distribution on the schedule it had set and was threatening to withhold any distribution until the conclusion of litigation which might affect the amount available for distribution, Kalodner sought by motion for summary judgment, and thereby obtained, (i) the agreement of DOE to distribute immediately the 89.5% of such available funds as would not be adversely affected by any pending litigation, retaining 10.5% for such awards as were being sought in such litigation, and (ii) presumably, DOE's agreement to distribute such withheld 10.5% to the claimants to

the extent, if any, to which it would not be required by such litigation. ( As noted above, 10% of the funds allocated to each claimant was withheld by DOE in connection with Kalodner's claim to a common fund fee of 10%, while approximately .5% was withheld from the allocations to the claimants in order to be able to fund an award to Mittal Steel USA ISG, Inc. for which Mittal Steel was litigating.)

In ruling on Kalodner's request for a common fund fee in <u>Con Ed V</u>, (decision of January 26, 2005 in 03-1991), Judge Collyer found that Kalodner as counsel for his clients ("Utilities and Manufacturers") had, by virtue of the <u>Con Ed IV</u> and <u>Con Ed V</u> litigation, both (i) obtained the creation of a common fund for all 31,000 claimants, and (ii) increased the proposed distribution by obtaining a change in the methodology of calculating the volumetric:

(i) "<u>Con Ed V</u> <u>insured</u> the implementation of the Court's declaratory judgment in <u>Con Ed IV</u> that DOE should disburse approximately $275 million in funds. <u>In responding to Con Ed V</u>, the DOE not only committed to a distribution but also committed to a specific methodology for calculating the per-gallon amount of that distribution," (emphasis supplied), and

(ii) "The Court agrees that Mr. Kalodner <u>was successful in two adverse civil suits</u> against DOE: in <u>Con Ed IV</u>, where he obtained a declaratory order requiring the DOE to distribute some

11

$275 million in crude oil refunds which the DOE held in U.S. Treasury, and in Con Ed V, when the DOE voluntarily agreed to the relief there sought,", citing the decision in Koppel v. Wien, 743 F. 2d 129, 135 (2nd Cir. 1984) for the holding that "Fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained." (emphasis supplied).

In Con Ed VI, as had been the case in Con Ed V, the action was dismissed as moot when, in response to the Complaint and a Motion for Summary Judgment, the DOE agreed to the relief sought; (Order of June 30, 2004 in Con Ed V, 03-1991, Order of March 2, 2006 in Con Ed VI, 05-816).

B. Additional Bases for The Requested Common Fund Fee-- Kalodner's Efforts Over a 21 Year Period to Assure That Purchasers of Refined Petroleum Products Would Receive Crude Oil Refunds and in Maximizing the Amount of Such Funds

The Complaint alleges that for more than 21 years Kalodner has spent essentially his full time in representing end user claimants to the crude oil refunds, and in pressing their cause, and that for more than the last 15 of those years, Kalodner has been the sole active lawyer representing the interest of end user claimants; throughout the period in practically every representation of his clients, whose combined purchases represent some 15% of the purchases by all approved claimants, Kalodner has

represented the interest of all of the 31,000 claimants receiving the current distribution. (See First Amended Complaint, pages 32-38)

    C. The Legal Basis For Kalodner's Claim For a Common Fund Fee

    As explained in Swedish Hospital Corp. v. Shalala, 1F. 3d 1261, 1265 (D.C. Cir. 1993), "(T)he 'common fund' doctrine...typically applied in class actions...allows a party who creates, preserves or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses, including counsel fees " (emphasis supplied). See Boeing Co. V. Van Gemert, 444 U.S. 472, 478 (1980): "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." The lack of formal class certification is irrelevant, Sprague v. Teconic Bank, 307 U.S. 161, 166 (1939): "(T)hat the party...neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursement..." Finally, to the extent to which the fee here sought for obtaining the distribution of $284 million to the claimant class is further supported by prior services rendered to

the claimant class in creating and increasing the fund of which the $284 million is only a part, compensation is appropriate for prior phases of the proceeding in which compensation is sought. Bebchick v. Metropolitan Area Transit, 895 F. 2d 396 (D.C. Cir. 1986).

A common fund fee may be sought either (i) by successful plaintiffs to enable them to recover from similarly situated persons who were benefitted by the litigation an appropriate share of the fee which they paid their lawyer, or (ii) a common fund fee may be sought by the plaintiffs' lawyer, as it is here, from non-clients benefitted by the litigation as a matter of equity and to prevent unjust enrichment of such benefitted persons. Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1985), Knight v. U.S., 982 F. 2d 1573, 1580 (Fed. Cir. 1993) ("The rationale... in a suit by an attorney against the beneficiaries of the common fund) rests on unjust enrichment..."); Vincent v. Hughes Air West, 557 F. 2d 759, 769-770 (9th Cir. 1977); Lindy Bro. Builders Inc. Of Phila. V. American Radiator and Stand. Sanitary Corp., 487 F. 2d 161 (3d Cir. 1973) (specifically pointing out the two kinds of actions for a common fund fee, one by the successful plaintiffs, and the other by their lawyer.)

II KALODNER'S PRIOR EFFORTS TO OBTAIN A COMMON FUND FEE

Three groups of cases in which Kalodner previously sought a

14

common fund fee from crude oil refunds made available, as a result of his efforts, to claimants with whom he had no fee agreements are relevant or arguably relevant to the instant application for a common fund fee:

A. <u>On Two Occasions, DOE Agreed, With Court Approval, to Pay Common Fund Fees From Funds Recovered Pursuant To ESA Section 209 to Kalodner and Other Counsel From Funds Which Their Efforts Made Available To Claimants Other Than Their Clients</u>

On two occasions, in recognition that funds to be disbursed to crude oil refund claimants were properly tapped for common fund fees, DOE agreed to do so.

(i) In a Settlement Agreement in <u>In re The Department of Energy Stripper Well Exemption Litigation</u> ("<u>Stripper Well</u>"), 653 F. Supp. 108, the DOE agreed to pay a common fund fee to Kalodner who as counsel for a trucking company had negotiated a settlement fund for all similarly situated transportation companies, the fee to be paid from the funds allocated to such transportation companies. Similar common fund fees were provided to counsel for airlines, farmer cooperatives and utilities from funds allocated such classes of claimants. The Court approved and implemented the Settlement Agreement, authorizing use of crude oil refunds for such purpose, even though there had been no formal class certification and no opportunity provided for an objection to the fee by the class members to be charged. See also <u>In re The</u>

Department of Energy Stripper Well Exemption Litigation, Appeal of Philip P. Kalodner, 855 F. 2d 871 (TECA 1988).

(ii) In a settlement agreement denominated as "Citronelle Settlement Agreement" approved by the District Court in Amoco Oil Company et al v. DOE et al, C.A. H-94-2423 Dist. Ct. Southern District Texas (1995), DOE agreed to a common fund fee to be paid to Kalodner who, as counsel for the same Utilities and Manufacturers he represented in Con Ed IV, Con Ed V, and Con Ed VI, had negotiated the allocation of crude oil refunds to the same claimants benefitted by his services in Con Ed IV, Con Ed V, and Con Ed VI, the common fund to be paid from the funds allocated to such claimants.

B. On Two Occasions Prior To Seeking a Common Fund Fee For Obtaining the Distribution of the $284 Million, Kalodner Sought and Was Denied, on the Basis of Sovereign Immunity, Common Fund Fees For Obtaining Benefits For The Crude Oil Refund Claimants

(i) In Kalodner v. Abraham ("Kalodner I"), 310 F. 3d 767 (D.C. Cir. 2002), Kalodner had sought, in an application to DOE's Office of Hearings and Appeals ("OHA"), a fee for representing the interest of crude oil claimants in administrative proceedings (before OHA) and related judicial proceedings in connection with an enforcement action in which DOE sought to recover crude oil overcharges from the Occidental Petroleum Corporation ("Occidental"), which litigation resulted in a settlement by

16

virtue of which $55 million in principal (and additional interest) was allocated to the same claimants sharing the $284 million which his efforts obtained; indeed, some or all of such funds recovered from Occidental are part of the $284 million.

The D. C. Circuit found that the DOE was protected from awarding a common fund fee by virtue of sovereign immunity, declaring that the "sina qua non of federal sovereign immunity is the federal government's possession of the money in question... the funds at issue here remain in the Treasury. They are thus fully protected by sovereign immunity." Kalodner I, supra, 310 F. 3d at 770.

At the time Kalodner sought a common fund fee for his efforts in Kalodner I, there was no determination or commitment by DOE to distribute the funds recovered from Occidental to claimants, and there was therefore at least arguably no "common fund" from which a common fund fee could be paid; as the Supreme Court has explained, a common fund is created only when "each member of a certified class has an undisputed and mathematically ascertainable claim to a part of a lump-sum judgment received on his behalf." Boeing Co. v. Von Gemert, 444 U.S. 472, 478-479 (1980).

(ii) In Kalodner v. Abraham ("Kalodner II"), 309 F. Supp. 2d 100 (D.D.C. 2004), Kalodner had sought in an application to OHA a common fund fee from the $360,000 he had obtained for the crude

17

oil claimants other than Hercules, Incorporated by obtaining a reduction in the award of crude oil refunds which OHA proposed to make to Hercules.

His claim was denied by OHA and subsequently by the District Court on the basis of sovereign immunity, the District Court citing and relying on the decision of the D.C. Circuit in Kalodner I.

Although Kalodner had disavowed any reliance on the waiver of sovereign immunity by the Equal Access to Justice Act ("EAJA") 28 U.S.C. 2412 (b) (See Exhibit 4 to Federal Defendants Memorandum in Support of Motion to Dismiss), the District Court sua sponte found that the EAJA was not available to waive sovereign immunity because Kalodner had not brought a civil suit against the United States, but was assisting the United States in an administrative proceeding. (Kalodner's reliance in Kalodner II, as it had been in Kalodner I and as it would be subsequently in Con Ed IV, Con Ed V, and Con Ed VI, was instead on the fact that the common fund fee was sought from funds which should be, or had been, committed to distribution to claimants; as he was subsequently to articulate his argument, it was that the waiver of sovereign immunity by virtue of ESA Section 209 which permitted the claimants to sue the United States for funds recovered by the DOE pursuant to that section included a waiver of sovereign immunity permitting the attorney for the successful

claimants to seek a common fund fee from such recovered funds; as noted above, no court has as yet ruled on such argument.)

Again, as was the case in Kalodner I, at the time Kalodner sought a common fund fee for his efforts in Kalodner II, there was no determination or commitment by DOE to distribute the funds recovered from Hercules Incorporated to claimants, and there was therefore at least arguably no "common fund" from which a common fund fee could be paid; as the Supreme Court has explained, a common fund is created only when "each member of a certified class has an undisputed and mathematically ascertainable claim to a part of a lump-sum judgment received on his behalf." Boeing Co. v. Von Gemert, 444 U.S. 472, 478-479 (1980).

C. The Denial of a Common Fund Fee to Kalodner in Con Ed IV, Its Denial In Part and Grant in Part by This Court in Con Ed V, Its Denial in Kalodner III (Kalodner v. Bodman, 05-0024) and Its Denial in Con Ed VI

1. In Con Ed IV, this Court denied Kalodner's claim for a common fund fee (sought for obtaining the declaratory judgment requiring distribution of the remaining funds to claimants) on the basis of sovereign immunity, i.e. "Because the funds at issue currently reside in the United States Treasury and Mr. Kalodner offers no statutory exception to the doctrine of sovereign immunity," citing as authority and relying on the D.C. Circuit decision in Kalodner I. The Court determined not to rule on the

19

DOE contention that "the common fund fee doctrine is inapplicable to this situation", nor indeed did this Court make any finding on the merits of the claim for a common fund fee. (Order of December 4, 2003 in 01-0548).

Again, as was the case in Kalodner I and Kalodner II, at the time Kalodner sought a common fund fee for his efforts in Con Ed IV, there was no determination or commitment by DOE to comply with the declaratory judgment and distribute the remaining funds to claimants, and there was therefore at least arguably no "common fund" from which a common fund fee could be paid; as the Supreme Court has explained, a common fund is created only when "each member of a certified class has an undisputed and mathematically ascertainable claim to a part of a lump-sum judgment received on his behalf." Boeing Co. v. Von Gemert, 444 U.S. 472, 478-479 (1980). Because claims still remain unresolved, it was not possible to calculate the amount of distribution per gallon of refined products for which each claimant had been approved.

On appeal, the Federal Circuit affirmed, without opinion. 04-1141 (June 14, 2004)

2. In Con Ed V, Kalodner sought a common fund fee on the basis that he had obtained by virtue of that suit both (i) the agreement of DOE to implement the declaratory judgment, albeit initially only as to $245 million of the $284 million which would

20

be available at the time of distribution, and (ii) the agreement of DOE to change its methodology of calculating the amount per gallon to be distributed (referred to as the "volumetric"), with the result that the entire $284 million would be distributed.

This Court found that the sovereign immunity defense by the DOE was not available to preclude the grant of a common fund fee award to Kalodner for obtaining the additional $39 million (the difference between a distribution of $670 per million gallons, $245 million, as initially proposed by DOE, and a distribution of approximately $776.91 per million gallons, $284 million, pursuant to the changed methodology urged by Kalodner). The Court awarded a common fund fee of 30% on the $39 million obtained for claimants by the change in methodology suggested by Kalodner, explaining that "Mr. Kalodner recognized the problem (of using a methodology which would distribute only $245 million of the available $284 million), developed a solution to the benefit of the remaining, extant, claimants, and persuaded DOE to adopt his approach... the additional monies per gallon will be a totally unexpected recovery for claimants. To compensate the <u>individual</u> who obtained it with 30% of the recovery fulfills the equitable reasons for the common fund doctrine." (Emphasis supplied)

This Court recognized that, with the adoption of a methodology for calculating the volumetric to be distributed, the requirement of <u>Boeing v. Van Gemert</u> for the creation of a common

fund, i.e. that "each member of a certified class has an undisputed and mathematically ascertainable claim to a part of a lump-sum judgment received on his behalf", had been satisfied, and the award of a common fund fee was appropriate. As this Court put it, "Now that it has been determined how the amount due each claimant will be determined, it is possible to assess an attorney's fee award against the common fund in question."

Although this Court cited the EAJA as the statute providing the necessary sovereign immunity waiver rather than ESA Section 209 which actually did provide the relevant waiver, the Court correctly relied upon the D.C. Circuit decision in Commonwealth of Puerto Rico v. Heckler, 745 F. 2d 709 (D.C. Circ. 1984, in which the Court recognized that the EAJA was required to waive sovereign immunity only in situations where the funds to be disbursed by the United States were grant funds (because the government had a continuing interest in grant funds, and they were subject to recall, in the event of recall, any fee which had been awarded would be from United States funds). In Commonwealth of Puerto Rico v. Heckler, the D.C. Circuit recognized that the situation of grant funds (and the consequent requirement of a waiver by virtue of the EAJA) was an exception to the principle applicable to non-grant funds distributed by the United States—the principle that once a common fund has been created from U.S. Treasury funds by litigation as to which sovereign immunity had

22

been waived, as it was here by ESA Section 209, there is no sovereign immunity barrier to the award of a common fund fee.

In Con Ed V, this Court declined to award Kalodner a common fund fee for obtaining DOE's agreement to make a distribution (of $245 million) even though the principles informing the award to Kalodner on $39 million of the distribution would presumably be equally applicable as to the $245 million, because, as this Court explained: "this Court has already denied Mr. Kalodner a fee award for his work in Con Ed IV, Civ. No. 01-548 and that decision was sustained by the Federal Circuit. The denial of fees for that success is now finally resolved and cannot be relitigated." (Memorandum Opinion of January 26, 2005 in 03-1991)

Both the DOE and Kalodner appealed; Kalodner appealed the denial of a fee on the $245 million, to the D.C. Circuit, as of 05-5089 and to the Federal Circuit, as of 05-1309, and DOE appealed the grant of a common fund fee award on the $39 million, to the D.C. Circuit, as of 05-5223 and to the Federal Circuit as of 05-1450. In both Courts the appeals were consolidated. The Federal Circuit, on Kalodner's motion, deferred consideration pending the D.C. Circuit's decision. After briefing and oral argument, the D.C. Circuit issued a decision reversing what it incorrectly represented was an award to Kalodner's clients rather than as it was, to Kalodner, and remanded to this Court what it misrepresented was "(Kalodner's) clients claims against the

23

government relating to Con Ed IV."; the claim for a common fund fee was by Kalodner, not his clients, and the award of a common fund fee in part was to Kalodner, not his clients.

The misrepresentation by the D.C. Circuit (i) that the application for a fee had been by Kalodner's clients and that the award had been to Kalodner's clients, and (ii) a misrepresentation by the D.C. Circuit in the same Opinion that in a lawsuit which Kalodner had brought against the claimants themselves, Kalodner v. Public Service Electric & Gas Co., No. 04-0152 HHK, Kalodner had claimed a common fund fee for his services in Con Ed V, were critical in leading the D.C. Circuit to express its views as to whether the Con Ed V litigation had been the causative factor in obtaining DOE's agreement to comply with the declaratory judgment in Con Ed IV and had been the causative factor in obtaining DOE's agreement to change the methodology to be employed in the distribution to one which would increase the distribution from $245 million to $285 million.

Had the D.C. Circuit recognized that the common fee sought from the government funds (in 03-1991 in this Court) was sought by Kalodner, not his clients, and then implemented its views (i) that sovereign immunity was a barrier to a claim for a common fund fee as long as the funds were in the government's "possession" and (ii) that the EAJA waiver was available only to Kalodner's clients, not to Kalodner, it would have reversed the

24

grant of the fee award in part and denied Kalodner's appeal from the denial of an award in part solely on the basis of sovereign immunity, never reaching the merits of the claim for a common fund fee for the Con Ed V litigation. (Indeed, the D.C. Circuit should not have properly reached the merits of the claim for a common fund fee in Con Ed V even on its own theory; because it was considering a waiver of sovereign immunity only under the EAJA, and because Kalodner's clients had not "prevailed", i.e. obtained court ordered relief, as the Court held, the EAJA waiver was not available even to Kalodner's clients, and the merits of their claim were not properly reached.)

The D.C. Circuit declined to consider whether a waiver of sovereign immunity had been effected by virtue of ESA Section 209, holding that such issue was within the exclusive jurisdiction of the Federal Circuit, albeit acknowledging that had there been no need for reliance on the EAJA, it would not have been necessary for the desired DOE action to have been accomplished by a Court order.

Similarly, had the D.C. Circuit properly represented that the claim of Kalodner against the claimants in Kalodner v. Public Service Electric & Gas Co. had been solely as to the services rendered in Con Ed IV, and that Kalodner had made no claim for his services in Con Ed V for the simple reason that he had not as yet been successful in Con Ed V, it would have had no opportunity

25

to discuss whether the <u>Con Ed V</u> litigation had been the cause of DOE's agreement to comply with the declaratory judgment and to change the methodology of distribution.

Nor, of course, did the third appeal consolidated in the D.C. Circuit Opinion with the appeals in 03-1991 and in 04-0152 provide an opportunity for the D.C. Circuit to discuss the merits of Kalodner's claim based on the <u>Con Ed V</u> litigation. In that case, <u>Kalodner v. Abraham</u> ("<u>Kalodner III</u>"), 05-0024 RMC in the District Court, the D.C. Circuit affirmed the dismissal of the Complaint on the basis of sovereign immunity and the unavailability of the EAJA waiver to an attorney seeking a common fund fee; the D.C. Circuit did not address the possibility of a waiver of sovereign immunity by virtue of ESA Section 209 which had been urged upon it by Kalodner because it held that adjudication of that issue was within the exclusive appellate jurisdiction of the Federal Circuit.

Accordingly, all of the comments by the D.C. Circuit as to the causative effect of the <u>Con Ed V</u> litigation and its conclusion that the <u>Con Ed V</u> litigation was not the cause of DOE's compliance with the declaratory judgment and not the cause of the change by DOE of the distribution methodology were pure dicta, an expression of opinion not properly reached by the Court, and therefore not binding in this litigation, or indeed on the remands in 03-1991 and 04-0152.

Although the comments of the D.C. Circuit about the causative effect of Con Ed V are not therefore binding, they are deeply disturbing for the profound disrespect they show both for this Court and for the facts of record.

In the former category is the D.C. Circuit's refusal to recognize this Court's findings (i) that "Con Ed V insured the implementation of the Court's declaratory judgment in Con Ed IV," (ii) that it was "in responding to Con Ed V (that) the DOE not only committed to a distribution but also committed to a specific methodology for calculating the per-gallon amount of that distribution," (iii) that "Mr. Kalodner was successful in two adverse suits against DOE... in Con Ed IV where he obtained a declaratory order...and in Con Ed V, when the DOE voluntarily agreed to the relief there sought," , and (iv) that "the common fund at issue in Con Ed V is the increase from an average of $670 per million gallons to $750 to $800 per million gallons, which Mr. Kalodner's calculation methodology obtained for his own clients and for the entire class". The D.C. Circuit ignored all of those findings by this Court which had presided in the Con Ed V litigation and held (i) that the Complaint in Con Ed V did not "in any way 'cause(d)' the distribution itself", and (ii) that the argument for a change in methodology advanced in the Motion for Summary Judgment in Con Ed V was in no way the cause of DOE agreeing to such a change.

Moreover, the D.C. Circuit further disrespected this Court by misrepresenting facts of record as the reasons for ignoring this Court's finding of the causative effect of the Con Ed V litigation.

Among those misstatements of fact:

(i) The D.C. Circuit asserted itself to be "baffled" by Kalodner's assertion that the change in methodology he proposed "increased the amount (to be distributed) from $670 per million gallons to $750-800 per million gallons" (445 Fed 3d at 457). Such was the fact; the DOE had proposed to distribute $670 per million gallons, 68 Fed. Reg. 64096 (Nov. 12, 2003), and as above noted, the amount allocated for distribution was $776.90, an amount mid-way between the $750 and $800 which Kalodner had predicted. To the extent to which the latter amount included interest, a delay of more than a year in distribution was always contemplated by OHA because of the need to verify claimants, and the balance of the delay of almost a year was caused by DOE's deliberate delay in distribution to await the completion of litigation, a delay it finally abandoned by virtue of Con Ed VI;

(ii) The D.C. Circuit's attempt to undermine the District Court's conclusion that it was Kalodner alone who was responsible for the change in methodology, by noting that another commenter in the OHA administrative proceedings, Douglas Mitchell, also proposed the same methodology changes (445 F. 3d at 458) ignores

this Court's finding that Mitchell was merely reiterating the
Kalodner comments "arising from discussions between the two."

(iii) The D. C. Circuit's finding that DOE would have
distributed the $9.5 million in the Citronelle account even if
Kalodner (and Mitchell reiterating Kalodner's proposal) had not
proposed it ignores the fact that the proposal was by Kalodner in
response to a proposed "final distribution" of $670 per million
gallons, derived in a calculation which did not include the
Citronelle funds. (68 Fed. Reg. 64098, Nov. 12, 2003, ). The DOE
$670 "final distribution" proposal clearly does not contemplate
another separate distribution of the Citronelle funds. It may be
that the omission was inadvertent, but if it had not been pointed
out by Kalodner, there is no indication that DOE would have
corrected the error.

(iv)  As to the other, and indeed more economically
significant major methodology change proposed by Kalodner,
deferring the calculation until the completion of the
verification process and thereby avoiding allocation of funds to
those who would not qualify to receive them, the D.C. Circuit
denigrates the Kalodner contribution by two observations, and
neither is effective to do so.

a. The Panel finds significance in the fact that this
change was not proposed in the Complaint in Con Ed V, but was
first asserted in that litigation in a motion for summary

judgment. But such is neither surprising nor significant. The change could not have been proposed in the Complaint because it was filed September 25, 2003, a month and a half before the DOE's issuance of its Proposed Procedures in the November 12 Federal Register Notice, and it was in that Notice that DOE first proposed its calculation methodology. (In contrast, Kalodner had anticipated that DOE might read the declaratory judgment in Con Ed IV as not including the Citronelle funds, and therefore did include that change in the Complaint).

b. The D.C. Circuit's contention that Kalodner's claim for a fee in Con Ed V for proposing the deferral of calculation of the volumetric until the completion of the verification process is without merit on the ground that in the Complaint he had taken an inconsistent position confuses two very different points ( 445 F. 3d at 457-458). In the Complaint, because there might be claims upon the validity of which DOE had not yet ruled, Kalodner suggested that the calculation assume that all pending claims not yet ruled upon be treated as valid for calculation purposes. The change in methodology which he later proposed, and to which DOE agreed, dealt not with claims not yet reviewed, but only as to claims already approved as to which the claimant would not qualify by virtue of failing to provide the verification required; the volume of claims not yet reviewed was, as Judge Collyer had observed in Con Ed IV "paltry", while the volume of

claims for which verification would not be provided was significant.

(v) In concluding that it was not the Con Ed V litigation, but the comments by Kalodner filed with OHA which caused DOE to agree to the change in distribution methodology, the D.C. Circuit (a) fails to recognize the sequence of events during the Con Ed V litigation and (b) fails to recognize the District Court's conclusion from that sequence that it was as a direct result of Con Ed V that DOE agreed to the change producing the additional $39 million for claimants: as this Court found, "In responding to Con Ed V, the DOE not only committed to a distribution but also committed to a specific methodology for calculating the per-gallon amount of that distribution." (Emphasis supplied).

Although the Comments were filed with OHA by the January 12, 2004 deadline, OHA had issued no Final Order as of April 1, 2004 when Kalodner's motion for a summary judgment including the proposed changes in methodology was orally argued. At that argument, Judge Collyer directed DOE to advise as to when it would issue a final order, and the Court, although deferring to OHA's consideration of the matter, expressed the view that Kalodner's methodology changes appeared reasonable. It was seven weeks thereafter that DOE issued its Order including the methodology changes, thereby for the first time committing itself to complying, and complying fully, with the Court's declaratory

31

order.

It was obviously with the view from that sequence of events that the litigation had played the key causative role in insuring that there would be a distribution to claimants and that it would be of the entire $284 million, that the District Court found, in the language above quoted, that the change in methodology, as well as the final commitment to comply with its previously issued declaratory judgment, was "In responding to Con Ed V."

(vi) As to the District Court's failure to make specific findings of fact (445 F. 3d at 445, it was a direct result of the DOE's reliance solely on sovereign immunity in responding to Kalodner's motion for a common fund fee in Con Ed V, and DOE's failure to contest the allegations of the motion as to the causative effects of the litigation in obtaining both the distribution and the change in methodology. Significantly, when, after the award, DOE moved for reconsideration and alleged some of the very "facts" upon which the D.C. Circuit relied in finding that the change in methodology was not the result of the Con Ed V litigation, this Court denied the motion, explaining that the DOE's arguments were not a "proper basis for the Court to change its previous ruling." (Order of April 25, 2005).

(vii) Finally, to the extent to which the D.C. Circuit relies on this Court's reference in its earlier Order dismissing Con Ed V as moot to the "contemporaneous administrative process

32

(which) adopted many of their distribution criteria" (445 F. 3d at 457) as rejecting this Court's later finding that it was the Con Ed V litigation which was the cause of the change in methodology, the simple and compelling response is that upon reflection, this Court concluded that Kalodner was entitled to a common fund fee because the change in methodology was "in responding" to the Con Ed V litigation. To the extent to which this Court's earlier Order can be properly construed as suggesting otherwise, this Court's later considered determination supersedes.

Because the D.C. Circuit had declined to consider the contention of appellants in Con Ed V that a waiver of sovereign immunity was effected by ESA Section 209, holding that such was within the exclusive appellate jurisdiction of the Court of Appeals for the Federal Circuit, appellants asked the Federal Circuit to proceed with the parallel appeals which had been filed with it. The Federal Circuit declined to do so, dismissing the appeals on the basis that the other requisite for it to have exclusive appellate jurisdiction (in addition to the requirement that an ESA issue is presented to the appellate court), i.e. that "the district court had adjudicated an ESA issue" had not been satisfied. (05-1310, and 05-1309 Federal Circuit, Orders of Oct. 4, 2006)

The result of the D.C. Circuit's holding that it could not

consider the contention that sovereign immunity had been waived
by ESA Section 209 because of the Federal Circuit's exclusive
jurisdiction, and the Federal Circuit's ruling that it would not
consider the issue because it had not been passed upon by this
Court, is that there has been no ruling on the issue of whether
waiver was effected by ESA Section 209.

3. In the same decision of January 26, 2005 in which this
Court granted an award to Kalodner in part and denied it in part
in Con Ed V (03-1991), this Court "sua sponte" dismissed a
Complaint which Kalodner had filed seeking, by virtue of
injunctive relief, the same 10% common fund fee which he had
sought in Con Ed V, albeit only as to claimants other than his
clients and who would receive refunds on the basis of approved
gallon claims of 50 million gallons or more. Kalodner v. Abraham
("Kalodner III") (No. 05-0024). (The Complaint had been filed
January 7, 2005 because this Court had not ruled on the
application for a common fund fee in Con Ed V (03-1991), and the
DOE had promised to begin distribution February 1, 2005; the
Complaint and a request for a preliminary injunction were filed
in order to obtain a hearing prior to the Feb. 1 date.)

This Court dismissed the Complaint in Kalodner III for
"failure to state a claim," reasoning that Kalodner could not
rely on the EAJA waiver of sovereign immunity because "'any fee
award EAJA authorizes is 'made to the "prevailing party," not the

34

attorney," (quoting Judge Kennedy's decision in <u>Kalodner v.</u>
<u>Public Service Electric & Gas Co. et al</u>, No. 04-0152 (D.D.C. Dec.
20, 2004), and Kalodner was neither a party in <u>Con Ed V</u>, nor had
he "prevailed" i.e. obtained court ordered relief. This Court did
not specifically address the issue of whether a waiver of
sovereign immunity had been effected by ESA Section 209 as part
of the waiver which permitted Kalodner's clients to sue the
United States in <u>Con Ed IV</u> and <u>Con Ed V</u>. Had it done so, it would
necessarily have recognized that the requirement of the EAJA that
the plaintiff "prevail", i.e. obtain a judicial order granting
relief, is not applicable where the waiver of sovereignty is
effected as part of the waiver permitting claimants to sue the
United States, as it was here by ESA Section 209; as both this
Court and the D.C. Circuit held in their opinions in <u>Con Ed V</u>,
when the common fund fee doctrine is relied on and there has been
no reliance on the EAJA, the fact that litigation was a
"catalyst" for administrative action creating the common fund is
a sufficient basis for a common fund fee (445 F. 3d at 457).

On Kalodner's appeal to the D.C. Circuit, that Court
affirmed on the basis that "Kalodner was counsel in <u>Con Ed IV</u> and
<u>Con Ed V</u> , not a party, and EAJA provides attorney's fees only
for parties." 445 F. 3d at 448.

The D.C. Circuit declined to consider Kalodner's contention
that a waiver of sovereign immunity was effected by ESA Section

209, holding that such was within the exclusive appellate jurisdiction of the Court of Appeals for the Federal Circuit.

After the D.C. Circuit acted, appellants asked the Federal Circuit to proceed with the parallel appeal which had been filed with it. The Federal Circuit declined to do so, dismissing the appeal on the basis that the other requisite for it to have exclusive appellate jurisdiction (in addition to the requirement that an ESA issue is presented to the appellate court), i.e. that "the district court had adjudicated an ESA issue" had not been satisfied.

The result of the D.C. Circuit's holding that it could not consider the contention that sovereign immunity had been waived by ESA Section 209 because of the Federal Circuit's exclusive jurisdiction, and the Federal Circuit's ruling that it would not consider the issue because it had not been passed upon by this Court, is that there has been no ruling on the issue of whether waiver was effected by ESA Section 209.

4. The third action which Kalodner brought on behalf of his clients to obtain actual distribution to claimants, and which succeeded in doing so, Con Ed VI, was filed when DOE missed its self-set deadline for beginning distribution and in the face of DOE's contemplated delay of distribution for the several years it might take to complete litigation which might affect the volumetric to be distributed. When, in a motion for summary

judgment Kalodner suggested that because 89.5% of the funds then available for distribution were not sought in any pending litigation, such 89.5% should properly be distributed without awaiting conclusion of the litigation, the DOE agreed.

Kalodner's motion for a common fund fee for accomplishing the distribution, which he suggested might also recognize his prior services in Con Ed IV and Con Ed V, was denied by this Court on the basis that the Court had ruled on the common fund fee claim in Con Ed V and that, by virtue of the appeals then pending from its grant of an award in part and denial of an award in part in that case, jurisdiction over the fee claim "has passed to the Court of Appeals." (Order of March 2, 2006).

On appeal, the D.C. Circuit granted DOE's motion for summary affirmance, (i) evidently misunderstanding that the common fund fee was requested by the plaintiffs, rather than by their attorney Kalodner, as it was, and (ii) considering the application for a common fund fee to have been solely for the services rendered in Con Ed VI. The D.C. Circuit held that because the fee was sought from the 10% which had been withheld from distribution, sovereign immunity was an available defense to the United States, and was not waived by the EAJA because there had been no court-ordered relief. (Order of August 7, 2006 in 06-5101 D.C. Cir, motion for rehearing pending).

ARGUMENT

DOE, having withdrawn its first urged basis for dismissal--
that this Court is without subject mater jurisdiction because of
the pendency of an appeal, now dismissed-- urges two bases for
dismissal:(i) that Kalodner fails to state a claim because of
issue and claims preclusion, by virtue of the decisions in
Kalodner I, Kalodner II and Kalodner III holding that as long as
the funds remained in the Treasury sovereign immunity was an
available defense, and that sovereign immunity was not waived by
the EAJA, and (ii) Kalodner fails to state a claim because
sovereign immunity is an available defense and is not waived by
the EAJA.

Each will be considered in turn:

`

I THERE IS NEITHER CLAIMS PRECLUSION NOR ISSUE PRECLUSION
WHICH PREVENTS THIS COURT FROM CONSIDERING KALODNER'S COMMON FUND
FEE CLAIM; THE ISSUES HERE WERE NOT DETERMINED IN KALODNER I,
KALODNER II, OR KALODNER III, NOR WAS THERE A DETERMINATION IN
THOSE CASES OF THE MERITS OF KALODNER'S CLAIM

In Kalodner I, Kalodner II and Kalodner III, the decisions
upon which DOE relies for its issue and claims preclusion
arguments, it was held that sovereign immunity is available,
absent its waiver, as a defense where a common fund fee is sought
from funds which, although destined for distribution, remain in

38

the Treasury unallocated to specific claimants. In <u>Kalodner I</u>,
the D.C. Circuit found that Kalodner "has... failed to identify
any statutory waiver of immunity," 310 F. 2d at 770. In <u>Kalodner
II</u> and <u>Kalodner III</u>, the District Court and the D.C. Circuit
respectively considered the applicability of the EAJA to waive
sovereign immunity. In none of the three cases, did the Courts
rule on a possible statutory waiver of sovereign immunity by
virtue of ESA Section 209. In all three of the cases, the Courts
denied a common fund fee on the basis sf sovereign immunity, in
none of those cases reaching or disposing of the merits of
Kalodner's claim.

    1. <u>There Is No Issue Preclusion Baring The Instant Complaint</u>

    In the instant Complaint, Kalodner seeks a common fund fee
only as to the awards from the $284 million which have been made,
and of which awards the claimants have received 89.5% of the
amounts due each of them, with the remaining 10.5% withheld for
possible use in connection with Kalodner's claim for a common
fund fee (10%), and the claim of Mittal Steel USA ISG Inc. (0.5%)

    Because 89.5% of the common fund has been distributed and
10.5% retained, the issue preclusion argument will be discussed
seriatim as to the two portions of the common fund sought to be
charged with a common fund fee.

    A. <u>There is no issue preclusion as to the 89.5%
distributed; it is no longer in the "possession" of the U.S.</u>

The only issue addressed in Kalodner I, Kalodner II and Kalodner III (and indeed in Con Ed IV, Con Ed V and Con Ed VI where Kalodner also sought a common fund fee) was whether sovereign immunity was an available defense while funds remained in the "possession" of the United States, the Courts holding in each case that there was such an available sovereign immunity defense (absent waiver) even though the funds would ultimately be distributed to claimants.

Now, as to the 89.5% distributed to claimants, the essential condition for the determination that sovereign immunity was an available defense, i.e. that the funds were in the "possession" of the government, no longer exists. Accordingly, the issue decided in the prior cases, i.e. whether as long as the funds are in the "possession" of the United States they are immune from being charged with a common fund fee, is not present here as to the 89.5% distributed.

B. There is no issue preclusion as to the 10 % withheld for potential use as a fee payment; (i) the 10% is held by the DOE as agent for claimants, not as sovereign, and (ii) the waiver issue determined previously was as to waiver by the EAJA, while the issue here is waiver by ESA Section 209

Preliminarily, it should be noted that if it is determined that a common fund fee is properly awarded from the funds already distributed, it is inconceivable that the DOE, having responsibly

40

set aside the 10% sought as a common fund fee for such purpose, would seek to invoke issue preclusion as to the 10%, and instead litigate its obligation to collect the awarded fee from the claimants who received the 89.5%, and if it lost, then undertake the onerous burden of recovering from claimants.

Moreover, should DOE embark on such a reckless course, it would presumably nevertheless recognize, as it already has, that the 10% withheld should be distributed to the claimants who have received 89,5%. 71 Federal Register 2196 ((Jan. 13, 2006). Such a second distribution would necessarily give rise to an obligation on DOE to recover the percentage common fund fee awarded as to the 10%. National Treasury Employees Union v. Nixon, supra. As the D.C. Circuit there noted, the courts are not sympathetic to a plea by the government that it should not be required to incur administrative costs to collect a common fund fee from distributees when it is the government's opposition to the payment of a common fund fee (and here would be the government's decision not to use the 10% withheld for a potential common fund fee for that purpose) which has caused the administrative inconvenience.

But, assuming the DOE nevertheless asserts issue preclusion as to the 10% because it, unlike the 89.5%, is still in the "possession" of the United States,

(i) The issue determined in the prior cases was as to

41

funds unallocated to claimants, while the 10% here withheld has
been allocated to individual claimants, and will either be
distributed to them, or paid as a common fund fee to Kalodner

        In Kalodner I and Kalodner II (and in Con Ed IV) the funds
sought to be charged with a common fund fee were not only in the
possession of the United States, but did not constitute a common
fund because the requirement of Boeing v. Van Gemert, supra, that
a common fund is created only when "each member of a certified
class has an undisputed and mathematically ascertainable claim to
a part of a lump-sum judgment received on his behalf", had not
been satisfied. Arguably, therefore, no common fund fee could be
ordered because there was no common fund. ("arguably" is used
because, as noted, on two previous occasions, a common fund fee
was recognized as appropriately paid by DOE even though the
condition of Boeing v. Van Gemert had not been satisfied)

        In Kalodner III (and in Con Ed V and Con Ed VI) where a
common fund had been created by virtue of the determination of a
distribution methodology, as well as in Kalodner I and Kalodner
II (and in Con Ed IV), there had not as yet been any actual
awards and payment of 89.5% with a commitment to distribute the
10% withheld as a potential common fund fee to claimants if not
so used.

        Here, DOE has effectively committed to the distribution to
the claimants of the 10% withheld, if, or to the extent to which,

it is not required for the payment of a common fund fee. 71 Fed. Reg. 2196 (Jan. 13, 2006)

With that commitment, and in any event by virtue of this Court's declaratory judgment which would require distribution of the 10% to claimants to the extent not used for a common fund fee, it is clear that the "public fisc" will not be affected by the determination as to whether to award a common fund fee. The 10% will be used either for a common fund fee or will be distributed to claimants.

As the D.C. Circuit explained in <u>National Treasury Employees Union v. Nixon</u>, <u>supra</u>, 521 F. 2d at 319, "The core of the (sovereign immunity) doctrine seeks to protect the public fisc against unconsented claims for monetary relief." When there is no threat of an impact on the public fisc, there is no basis for the invocation of sovereign immunity.

Accordingly, the issue here presented-- whether sovereign immunity is an available defense to the United States when it has determined, and in any event is required by this Court's declaratory order in <u>Con Ed IV</u>, to distribute the funds in its possession to one of two specific persons, i.e. the common fund fee claimant or the crude oil refund claimant to which it has already distributed 89.5%-- is not an issue which has been determined in the prior litigation.

The issues being different, there is no issue preclusion.

(ii) <u>If, nevertheless, issue preclusion properly
applies to preclude an argument that there is no sovereign
immunity, there is no issue preclusion with regard to the
argument that sovereign immunity has been waived by ESA Section
209</u>

In <u>Kalodner I</u> (and <u>Con Ed IV</u>), no decision was rendered as
to any ground for waiver of sovereign immunity, while in <u>Kalodner
II</u> and <u>Kalodner III</u> (and in <u>Con Ed V</u> and <u>Con Ed VI</u>) the only
ground for waiver addressed by the Courts was waiver by virtue of
the EAJA, the Courts determining that no EAJA waiver is available
to Kalodner as attorney for the plaintiffs in those cases.

The entirely different issue of whether any sovereign
immunity as to the withheld 10% is waived by ESA Section 209 as
part and parcel of the waiver effected by that provision which
permitted the bringing of <u>Con Ed IV</u>, <u>Con Ed V</u>, and <u>Con Ed VI</u> has
not been decided in any of the prior decisions which DOE relies
upon or might possibly rely upon for issue preclusion.

Indeed, it is clear from the D.C. Circuit decision in <u>Con Ed
V</u> 445 F. 3d at 449. and the Federal Circuit decisions declining
to review this Court's decision in that case, 05-1310 and 05-1309
Fed. Cir., Orders of October 4, 2006, that the issue of waiver by
virtue of ESA Section 209 has not been passed upon either by this
Court or by the appellate courts. The Federal Circuit in its
October 4 Orders held that this Court "did not adjudicate any ESA

44

or EPAA issues" and that accordingly it would not determine the issue of whether sovereign immunity had been waived by ESA Section 209, while the D.C. Circuit had held that the determination of whether sovereign immunity as to a claim for a common fund fee was waived here by ESA Section 209 was a matter within the exclusive appellate jurisdiction of the Federal Circuit.

Moreover, neither this Court nor the D.C. Circuit nor the Federal Circuit found that they were excused from deciding the issue on the basis that it had been previously decided, nor did either the D.C. Circuit or the Federal Circuit find that Kalodner could not raise the issue of waiver by ESA Section 209 because he had failed to raise it previously; had they believed such to have been the case, they certainly would have so stated, and the appellate Courts would not have considered the issue of their respective appellate jurisdiction to decide an issue either already decided or not able to be raised.

Indeed, the Federal Circuit noted that "Law of the case is not established with respect to issues not actually decided by a court" (Order of October 4), thereby clearly finding that the issue of waiver by virtue of ESA Section 209 had not been determined, and could be raised in subsequent litigation.

Accordingly, there is no issue preclusion preventing Kalodner from here arguing that if sovereign immunity is an

available defense as to the 10% withheld, it has been waived by
ESA Section 209.

2. The Doctrine of Claims Preclusion (Res Judicata) Does Not
Preclude The Instant Action; In None of the Prior Cases Was There
A Determination on the Merits of Kalodner's Claim For a Common
Fund Fee

In all the relevant prior cases, save one, in which a common
fund fee was sought from the government, the Courts declined to
adjudicate the merits of Kalodner's common fund fee claim,
holding in Kalodner I, Kalodner II, Kalodner III, Con Ed IV, Con
Ed V (as to Kalodner's claim for a common fund fee claim as to
the $245 million which the DOE initially proposed to distribute),
and in Con Ed VI (on appeal) that the government properly invoked
a sovereign immunity defense, or in the case of Con Ed V in this
Court, an issue preclusion barrier by virtue of a determination
of sovereign immunity in Con Ed IV. Indeed, in Con Ed IV  this
Court specifically declined to pass on the merits of the Kalodner
common fund fee claim because it had found that there was a
sovereign immunity barrier.

The sole arguable exception, i.e. the sole situation in
which there was an ostensible ruling on the merits of the
Kalodner claim ,was in the case of the award to Kalodner by this
Court in Con Ed V of a common fund fee as to $39 million of the
distribution. The award was reversed by the D.C. Circuit, albeit

46

misrepresenting the award as having been to Kalodner's clients
rather than to Kalodner, as it was, the Court reversing on the
basis that Kalodner's clients did not "prevail", i.e. obtain
court-ordered relief in Con Ed V, and therefore a sovereign
immunity barrier precluded a merit determination. Under such
circumstances, where the appellate court affirms on a procedural
basis, thereby removing the award made below on the merits, there
is no preclusion of a second suit on the merits brought in a
situation when the procedural barrier is eliminated. Yamaha Corp.
Of America v. U.S., 961 F. 2d 245, 257 (D.C. Cir. 1992).

In any event, in no case has there been a conclusive merit
determination, and indeed in each case in which there was
dismissal, it was by virtue of a determination that sovereign
immunity precluded the award of a common fund fee, such sovereign
immunity not having been waived by the EAJA.

Dismissal on the basis of sovereign immunity which has not
been waived is a dismissal for "lack of jurisdiction", Fornaro v.
James, 416 F. 3d 63, 64 (D.C. Cir. 2005). And as the Supreme
Court explained in Hughes v. U.S., 71 U.S. (4 Wall.) 232, 237, 18
L. Ed. 303 (1866), " If the first suit was dismissed for want of
jurisdiction... the judgment rendered will prove no bar to
another suit."  Or, as Rule 41 b of the Federal Rules of Civil
Procedure provides, a dismissal for lack of jurisdiction does not
"operate(s) as an adjudication upon the merits," and it is only a

"final judgment on the merits of a claim" which provides claim preclusion. <u>Jet, Inc. V. Sewage Aeration Sys.</u>, 223 F. 3d 1360, 1362 (Fed. Cir. 2000).

It is true that the D.C. Circuit in its <u>Con Ed V</u> decision did express the view that no common fund fee was properly awarded in <u>Con Ed V</u> because the result there achieved was the necessary result of the issuance of a declaratory judgment in <u>Con Ed IV</u>, and/or was the result of voluntary administrative action by DOE, rather than being caused by the <u>Con Ed V</u> litigation. However, as noted at length above, the expressed views of the D.C. Circuit as to the merits of the claim for a common fund fee on the basis of <u>Con Ed V</u> were dicta, indeed ruminations on matters not before the Court; (i) the Court's determination as to an award in, and for <u>Con Ed V</u> itself (03-1991) was on the basis that Kalodner's clients had not obtained court-ordered relief and that therefore sovereign immunity barred consideration of the merits of a common fund fee claim; (ii) the Court's determination in <u>Kalodner III</u> was on the basis of sovereign immunity and the unavailability of an EAJA waiver, thereby never reaching the merits of the claim; (iii) and the Court's determination in the appeal in <u>Kalodner v. Public Service Electric & Gas Co.</u> (04-00152 in the District Court and 05-7009 in the D.C. Circuit) that a claim could not properly be made on the basis of the <u>Con Ed V</u> litigation was a discussion of a claim never made in that case in which Kalodner had sought a

48

common fund fee solely for the Con Ed IV success, the Complaint
having been filed before the Con Ed V success was obtained, and
never having been amended to include it as the basis of a common
fund fee claim.

Moreover, the issue of whether the implementation of the Con
Ed IV declaratory judgment which was obtained in Con Ed V itself
justifies a common fund fee is an issue more academic than real.
If, as the D.C. Circuit suggested, the decision by DOE to
implement the declaratory judgment of Con Ed IV  necessarily
included the additional $39 million obtained by the change in the
distribution methodology which Kalodner proposed, then a common
fund fee is properly awarded as to the entire $284 million once
Kalodner establishes that the Con Ed IV declaratory judgment was
indeed the catalyst which caused the DOE to proceed with the
distribution; it is in order to permit proof of that causative
fact that the D.C. Circuit remanded in its Con Ed V decision,
both in the 03-1991 suit in which a common fund fee was sought by
Kalodner from the government and in the 04-00152 action brought
by Kalodner seeking a common fund fee from the crude oil
claimants.

Indeed those two remands are conclusive proof, if any proof
were required, that claims preclusion does not bar a claim for a
common fund fee by Kalodner. If the D.C. Circuit believed that
claims preclusion precluded any effort to obtain a common fund

fee, as DOE here argues, then it would not have remanded.

(Unfortunately, the remand in 03-1991 is not sufficient to permit this Court to grant the relief requested by Kalodner in Count I of the instant action; the remand apparently is to consider only a common fund fee for Kalodner's clients for the Con Ed IV success (even though that case was not before the D.C. Circuit in Con Ed V), not to Kalodner, it eliminates improperly consideration of the Con Ed V success, and it does not contemplate the award of a common fund fee for obtaining the actual distribution in Con Ed VI. Kalodner anticipates moving to consolidate the remanded 03-1991 action with the instant action, thereby eliminating any unnecessary duplication.)

II THE GOVERNMENT HAS NO SOVEREIGN IMMUNITY AS TO A CLAIM FOR A COMMON FUND FEE- (i) AS TO THE 89.5% BECAUSE IT IS NO LONGER IN THE GOVERNMENT'S "POSSESSION", AND (ii) AS TO THE WITHHELD 10% BECAUSE (a) THE FUNDS ARE BEING HELD BY THE GOVERNMENT AS AGENT FOR THE CLAIMANTS, NOT AS SOVEREIGN, AND (b) IF THERE IS SOVEREIGN IMMUNITY, IT HAS BEEN WAIVED BY ESA SECTION 209

1. There Is No Sovereign Immunity As to the 89.5% Distributed to Claimants

The 89.5% which has been distributed to claimants is no longer in the "possession" of the United States. Since the "sina qua non of federal sovereign immunity is the federal government's

possession of the money in question" Kalodner I, supra, 310 F. 3d
at 770, (relied upon by this Court in denying a common fund fee
in Con Ed IV, Order of December 4, 2003), there is no sovereign
immunity as to the 89.5%.

Nor does the fact that the 89.5% has been distributed
immunize the United States from an obligation to recover a common
fund fee as to such distributed funds, particularly where the
United States has access to funds due to the claimants to whom
distribution has been made (here, indeed, funds withheld for that
specific purpose).

So the Court of Appeals for the District of Columbia Circuit
held in National Treasury Employees Union v. Nixon, 521 F. 2d 317
(D.C. Cir. 1975). In that case, a union of U.S. Treasury
employees had recovered a pay increase in litigation, and the
President, by Executive Orders, implemented that pay raise not
only for the Treasury employees but for all federal employees
covered by the statute pursuant to which the Treasury Employees
had recovered, a total of 3 and ½ million employees. The D.C.
Circuit found a common fund fee properly available to the
successful plaintiffs and their attorneys pursuant to the common
fund fee doctrine, and rejected the argument of the government
that it had sovereign immunity because the obligation to recover
a common fund fee from 3 and ½ million employees would be an
"imposition of an expense upon the government." The Court noted

that it was "assuming... that the attorney's fees and/or litigation expenses involved will be available from future salaries either through direct payments by the Federal Government into the court (and corresponding deduction from salary checks) or some meaningful equivalent." 521 F. 2d at 321-322.

Here, the 10% sought by Kalodner as a common fund fee is available from the funds withheld from distribution for that very purpose. The government therefore has available funds which can be tapped with even less difficulty than the salary payments which the Court contemplated being charged in National Treasury Employees v. Nixon.

Indeed, in the instant case, the only government expense is in writing a check or checks to Kalodner; unlike the situation in National Treasury Employees v. Nixon in which an otherwise unnecessary adjustment would be required in 3 and ½ million salary paychecks, here the government has already committed itself to a second distribution to claimants in the event Kalodner is awarded a fee of less than 10%, and therefore it will bear no unanticipated cost.

2. There Is No Sovereign Immunity As to the 10% Withheld For Potential Use As A Fee payment: (i) The 10% Is Being Held As Agent For Claimants, Not as Sovereign, and (ii) If, Nevertheless, There Is Possible Sovereign Immunity, It Has Been Waived By ESA Section 209

A. <u>Where, as is here the case, the United States is holding the funds as agent for the claimants, not as sovereign, the United States has no sovereign immunity</u>

Although it is the recognized obligation of the government to pay a common fund fee from common funds recovered from it (<u>National Treasury Employees Union v. Nixon</u>, <u>supra</u>, <u>Swedish Hospital Corp. v. Shalala</u>, <u>supra</u>, <u>Commonwealth of Puerto Rico v. Heckler</u>, <u>supra</u>), the parties in interest are the claimants whose funds are being used for such purpose.

Here, acting responsibly, to avoid the need to recover a common fund fee from claimants after distributing the entire available amount to them, the DOE agreed to hold the 10% being requested as a common fund fee when making distribution to each of the claimants, distributing to them only the funds not subject to possible recovery in litigation.

In doing so, the DOE is acting as agent for the claimants. Indeed it has acknowledged such by acknowledging that if the 10% is not required to be used as a common fund fee it will be distributed to claimants. 71 Fed. Reg. 2196 (Jan. 13, 2006).

As noted above, with that commitment, it is clear that the "public fisc" will not be affected by a determination as to whether to award a common fund fee. The 10% will be used either for a common fund fee or will be distributed to claimants.

As the D.C. Circuit explained in <u>National Treasury Employees</u>

Union v. Nixon, supra, 521 F. 2d at 319, "The core of the (sovereign immunity) doctrine seeks to protect the public fisc against unconsented claims for monetary relief." When there is no threat of an impact on the public fisc, there is no basis for the invocation of sovereign immunity.

As also already noted, were this Court to hold that sovereign immunity nevertheless applied to the withheld 10%, and were the DOE not willing voluntarily to use the 10% to pay any awarded common fund fee, the DOE would be required not only by its own commitment, but also by this Court's declaratory judgment issued in Con Ed IV, to distribute the 10% to claimants-- and then would be required pursuant to National Treasury Employees Union v. Nixon, supra, to recover a common fund fee as to the 10% from more than 29,000 claimants. And even if this Court were to find a basis to immunize DOE from such a collection obligation, the necessity of collection from 29,000 claimants would still exist, with the resulting inconvenience to the claimants and to the courts in which the obligation of the claimants to return the funds needed for a common fund fee would be enforced.

Accordingly, the DOE should be considered to be holding the 10% as agent for the claimants, not as sovereign, and sovereign immunity should be held not to be available as a defense to the DOE to avoid using the 10% withheld for the purpose for which it was withheld.

B. <u>Even if the government were deemed to have available a</u> <u>possible sovereign immunity defense as to the 10% withheld, such</u> <u>sovereign immunity has been waived pursuant to ESA Section 209</u>

With regard to the issue of waiver of sovereign immunity, the focus by this Court and the D.C. Circuit in <u>Con Ed V</u> and <u>Kalodner III</u> (and the focus of the District Court in <u>Kalodner II</u>) has been solely on EAJA Section 2412 (b).

However, a careful reading of the D.C. Circuit's decisions in <u>Commonwealth of Puerto Rico v. Heckler, supra</u>, and in <u>National</u> <u>Farmworker Organizations v. Marshall</u>, 628 F. 2d 23 (D.C. Cir. 1979) (and the prior cases there discussed) makes it clear that:

(i) Prior to the 1980 enactment of EAJA 2412 (b) permitting the award of fees against the government, where a claimant had recovered funds from the government, an award of a common fund fee from such funds was not precluded by sovereign immunity, except in one situation, i.e. where the funds recovered from the government were grant funds.

The exception existed because the government "has continuing control over the (grant) funds, even while they are in the grantee's hands, and can audit the grantee's accounts or recall the funds." <u>National Farmworker Organizations v. Marshall</u>, <u>supra</u>, 628 F. 2d at 26. Were a common fund fee to be paid from such grant funds, and were the funds, net of that common fund fee, ro be recalled by the government, the government would have paid the

common fund fee out of its own funds. Such is demonstrated by the fact that if the entire grant had been provided the grantee and recall occurred, the government would be able to recover the amount which it would have paid as a common fund fee.

That the National Farmwork Court understood the grant situation was an exception is made clear by that Court's explanation of its basis for holding its decision in National Treasury Employees Union v. Nixon "distinguishable." It distinguished that decision not on the basis that the funds there had already been distributed to the claimants, but rather on the basis that the National Treasury Employees case " resulted in the release of funds that were payable as salary to government employees in which moneys the government has no interest or right of continuing control." 628 F. 2d at 26.

In holding, subsequent to the 1980 enactment of EAJA Section 2412 (b) in Commonwealth of Puerto Rico v. Heckler that because the EAJA contemplated the award of fees from government funds, the EAJA was available as a waiver of sovereign immunity in grant cases, the D.C. Circuit recognized that the grant case was an exception to the general principle that common fund fees can be properly paid from funds obtained from the government by claimants: "the (previous) preclusion (of an award of a common fund fee from funds held by the government) sometimes arose even when, as in this case, the action created a 'common fund' or

conferred a common benefit," citing  <u>National Farmworker</u>
<u>Organizations v. Marshall</u>. (emphasis supplied). If the prior
preclusion occurred only "sometimes", i.e. in grant cases, then
in cases where, as here, the government had no continuing
interest in the funds, common fund fees were properly paid from
government funds destined for distribution to claimants with no
strings attached.

(ii) Although the D.C. Circuit did not explain in the cases
above cited the basis for the waiver of sovereign immunity as to
a common fund fee claim from common funds obtained from the
government even while in the hands of the government in all but
grant cases, simple logic provides the reason. Where, as here
funds are obtained by claimants from the government pursuant to a
waiver of sovereign immunity, here by ESA Section 209, <u>Kalodner</u>
<u>I, supra</u>, 310 F. 3d at 770, the same waiver necessarily applies
as to a claim for a common fund fee from the funds so obtained.
In short, the Section 209 waiver of sovereign immunity which
permitted the recovery from the government of $284 million draws
no distinction between the portion of those recovered funds which
go to the claimants and the portion which are used to discharge
the claimants' obligation to pay a fee to the attorney who
obtained the funds.

To hold otherwise, i.e. to insist that the entire $284
million recovered be paid to 31,000 claimants, and then a common

fee recovered from them, simply makes no sense.

CONCLUSION

Plaintiff Kalodner has not failed to state a claim on the basis of which relief can be granted. Neither issue or claims preclusion nor sovereign immunity precludes the instant cause of action.

Accordingly, the motion of the Federal Defendants for dismissal as to them (Count I of the Complaint) should be denied.

Plaintiff respectfully requests the opportunity to offer oral argument in opposition to the Motion to Dismiss.


Respectfully submitted,


_____

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
610-649-8749
DC Bar 973578

October 14, 2006          Pro Se