IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHILIP P. KALODNER | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | CIVIL ACTION NO. |
| SAMUEL BODMAN ,Secretary of Energy, | : | |
| United States; GEORGE B. BREZNAY | : | No. 1:06-cv-00818(RMC) |
| Director, Office of Hearings and | : | |
| Appeals; | : | |
| | : | |
| AND | : | |
| | : | |
| PUBLIC SERVICE ELECTRIC & GAS CO.; | : | |
| EASTMAN CHEMICAL COMPANY; GENERAL | : | |
| MOTORS CORPORATION; SEAGROUP, INC. | : | CLASS ACTION |
| GENERAL COUNCIL ON FINANCE AND | : | |
| ADMINISTRATION OF THE UNITED | : | |
| METHODIST CHURCH; CITY OF NEW YORK; | : | |
| ZIM ISRAEL NAVIGATION CO. LTD; | : | |
| FLORIDA POWER CORPORATION | : | |
| | : | |
| Defendants | : | |
| | : | |

PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES

IN OPPOSITION TO CLAIMANT DEFENDANTS' MOTION TO DISMISS


INTRODUCTION AND SUMMARY OF ARGUMENT

Seven of the eight defendants sued as representatives of

some 29,500 crude oil refund claimants-- Public Service Electric

& Gas Co., Eastman Chemical Co., General Motors Corp., Seagroup,

Inc., General Council on Finance and Administration of the United

1

Methodist Church, Zim Integrated Shipping Services, Ltd., and Florida Power Co. ( "claimant defendants") -- have filed a Motion to Dismiss the First Amended Complaint, asserting three bases: (i) to the extent to which the Complaint seeks a common fund fee for the success obtained by plaintiff Philip P. Kalodner ("Kalodner") in Consolidated Edison Co. V. Abraham, ("Con Ed IV"), 271 F. Supp. 2d 104 (D.D.C. 2003), it is duplicative of an action pending in this Court before Judge Henry H. Kennedy, Kalodner v. Public Service Electric & Gas Co, ("Public Service 1"), No.4-0152 (D.D.C.), (ii) to the extent to which the Complaint seeks a common fund fee for the success obtained by Kalodner in Consolidated Edison Co. v. Abraham ("Con Ed V"), No. 03-1991, the decision of the Court of Appeals for the District of Columbia Circuit, as of Consolidated Edison Co. V. Bodman, 443 F. 3d 438 (D.C. Cir. 2006) resolves the issue adversely to plaintiff and precludes the instant effort to recover a common fund fee on the basis of Kalodner's success in Con Ed V, and (iii) to the extent to which the Complaint seeks a common fund fee for the success obtained by Kalodner in Consolidated Edison Co. v. Abraham ("Con Ed VI"), No.05-0816, Kalodner is precluded from doing so by virtue of the decision of this Court rejecting an application for a common fund fee in that case (Order of March 2, 2006), and the affirmance of that decision by the D.C. Circuit, in an Order issued August 7, 2006, as of No. 06-5101 D.D.C.,

2

(Petition for Rehearing pending).

Plaintiff here responds to those arguments for dismissal as follows:

1. In the instant Complaint, Kalodner (i) first seeks a common fund fee in the amount of, and by the payment to him of, the 10% withheld by the Department of Energy ("DOE") from distribution to some 29,500 claimants for that very possible purpose, and then (ii) secondarily, and only in the event the Court denies such relief, seeks a 10% common fund fee from the 89.5% of the funds due each of the claimants which has already been distributed to them.

On remand, pursuant to the D.C. Circuit's decision in Con Ed v. Bodman, 445 F. 3d 438 (D.C. Cir. 2006), are separate actions (i) against the United States, to wit an action before Judge Collyer in 03-1991 seeking a common fund fee of 10% from the funds held by United States which were to be distributed to the claimants, and (ii) against the claimants, before Judge Kennedy, as of 04-0152, seeking an award of a 10% common fund fee to Kalodner, and an Order directing the claimant defendants on behalf of each of the 31,000 claimants qualified to receive distribution to direct the DOE to pay such 10% common fund fee from the funds held by the DOE for distribution to claimants.

(Both the motion for a common fund fee in 03-1991 and the Complaint in 04-152 were filed prior to the DOE agreement to

3

distribute to each claimant 89.5% of the share to which each of the claimants is entitled, and to withhold 10% from each such distribution for possible use to pay a 10% common fund fee to Kalodner should such be ordered by the courts. In contrast, the instant action was filed after that determination to withhold 10% and after distribution had begun, and seeks a common fund fee only as to those claimants who have received a distribution of the 89.5% due them.)

In both remands, the issue remanded to the District Court is whether a common fund fee is properly paid for the obtaining of a declaratory judgment in Con Ed IV requiring the DOE to distribute the remaining available funds (subsequently to be determined to be $284 million, as of December 28, 2005) to claimants "insofar as practicable,", 271 F. Supp 2d 104, 112 (D.D.C. 2003), and more specifically whether the declaratory judgment was the "cause" of the DOE determination to make a distribution to claimants of the available funds.

In the instant action, a fee is sought (i) for that success, and additionally (ii) for Kalodner's success in Con Ed V in obtaining DOE's agreement to comply with the declaratory judgment and to increase the distribution from $245 million which DOE initially proposed to the full $284 million available, and (iii) for Kalodner's success in Con Ed VI in obtaining DOE's agreement not to await the resolution of all litigation which might affect

4

the amount to be distributed to each claimant, but to distribute immediately 89.5%, withholding only the 10% sought by Kalodner as a common fund fee and .5% for which a rejected claimant, Mittal Steel USA ISG was contending in litigation.

Putting aside other problems presented by the remands (and they will be discussed subsequently), they will place before two separate judges simultaneously the issue of whether a common fund fee should be paid by the DOE from the withheld 10% or should be paid by the claimants from the 89.5% they have already received. They thus pose a risk of decisions which would require a common fund fee to be paid twice, once by the DOE and once by the claimants, or of inconsistent decisions, with one Court finding the declaratory judgment caused the distribution, and the other Court finding to the contrary, or the two Judges finding different percentages as an appropriate common fund fee.

The instant action will avoid such problems, placing before one Judge the issue of causation as to Con Ed IV. If the declaratory judgment is found to have caused DOE to agree to the distribution and it is determined that a 10% common fund fee (or some lesser amount) is therefore due Kalodner, the Court will then (i) first determine whether payment of the common fund fee by DOE should be made from the 10% withheld for that possible purpose, and (ii) only in the event of rejection of that request, will necessarily order payment by each of more than 29,500

5

claimants from the 89.5% of the funds already distributed to each of them.

Plaintiff proposes to avoid any duplication presented by pursuing the instant suit and at the same time a common fund fee in the two remanded actions, by moving for the consolidation of the remanded actions with the instant action. Plaintiff suggests such, rather than dismissal of the two remanded actions without prejudice ( leaving only the instant action) which would be an acceptable alternative, only to demonstrate respect for the D.C. Circuit.

2. The statement of the D.C. Circuit, as to the 04-0152 action, that "Kalodner's claim against the beneficiaries (the claimants)...  for Con Ed V ... fails for lack of causation," 445 F. 3d at 459, does not preclude Kalodner from seeking a common fund fee for his success in Con Ed V.

The D.C. Circuit's statement constituted rumination on a matter not before it. It was affirming the dismissal of a Complaint which did not assert a claim for the Con Ed V success, but was limited to claiming a common fund fee for obtaining the declaratory judgment in Con Ed IV. Indeed, no claim for the Con Ed V success could have been made in the Complaint in 04-0152, because at the time of the filing of the Complaint Kalodner had not as yet succeeded in Con Ed V, either in obtaining DOE's agreement to abide by the declaratory judgment issued in Con Ed

6

V, or in obtaining DOE's agreement to a change in the methodology
it had proposed for the distribution (when it did agree to make
such), which increased the distribution to claimants from $245
million to the full $284 million available. (It was this increase
as to which this Court awarded Kalodner a common fund fee of 30%
in its Memorandum Opinion and Order of January 26, 2005, an award
reversed by the D.C. Circuit in its Con Ed V decision.)

      The statement of the D.C. Circuit as to the causative impact
of the Con Ed V litigation does not preclude litigation of that
issue in this action in this Court, both because (i) that issue
was not either appropriately or necessarily determined by the
D.C. Circuit, and (ii) preclusion would work a basic unfairness
to Kalodner. Beverly Health & Rehab. Services v. N.L.R.B., 317 F.
3d 316 (D.C. Cir. 2003).

      3. The claimants are incorrect in their contention that
Kalodner is precluded in this action from claiming a common fund
fee for his success in Con Ed VI, on the ground that "as both
this Court and the Court of Appeals found, Kalodner accomplished
nothing in Con Ed VI." (Claimant's Memorandum in Support of
Motion to Dismiss, at 6).

      Indeed,  neither Court so found: (i) this Court denied a fee
only because it had previously awarded a fee and appeals as to
that fee and a denial of a larger fee sought by Kalodner were
pending, and (ii) the D.C. Circuit affirmed the denial of a

common fund fee only (a) by considering only a fee sought from the 10% withheld, not from the 89.5% then planned to be, and now actually, distributed, and (b) by holding that the 10% withheld was immune from being tapped for a common fund fee by virtue of sovereign immunity, and then not considering the waiver of sovereign immunity by Section 209 of the Economic Stabilization Act ("ESA"),Pub. L. 92-210, 85 Stat. 743 (1971) for which plaintiff had argued, holding that such issue was in the exclusive appellate jurisdiction of the Court of Appeals for the Federal Circuit.

The D.C. Circuit did not consider whether the Con Ed VI litigation had been the cause of DOE agreeing to the 89.5% distribution, noting only that such causation did not occur by virtue of a court order, and therefore the plaintiffs in Con Ed V, Kalodner's clients, had not "prevailed" and thus could not obtain a waiver of sovereign immunity by virtue of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. 2412 (b); the discussion was not relevant because the claim for a common fund fee was not by Kalodner's clients, as it was represented to be by the D.C. Circuit, but by Kalodner, who was not making a claim for the waiver of sovereign immunity by virtue of the EAJA.

In fact, it was in Con Ed VI that Kalodner did finally obtain actual distribution to claimants-- of 89.5% of the available funds-- by suggesting in his Motion for Summary

8

Judgment that inasmuch as only 10.5% of the available funds were being sought in other litigation (10% as a common fund fee and .5% by a claimant Mittal Steel USA ISG, Inc.), that there was no reason to withhold distribution of the remaining 89.5%.

The claimant defendants are incorrect in asserting that such success did not satisfy the requirement for a common fund fee, i.e. that the litigation for which a common fund fee is claimed must have created, preserved, or increased the common fund obtained for claimants. Swedish Hospital Corp. V. Shalala, 1 Fed. 3d 1261, 1265 (D.C. Cir. 1993). By obtaining distribution of the 89.5%, with an acknowledgment by DOE that the crude oil refund claimants were entitled to the remaining 10.5% to the extent not needed to satisfy the Kalodner and Mittal Steel claims, the common fund was both preserved for the crude oil refund claimants, and its amount increased by virtue of a distribution occurring several years before conclusion of the litigation which could effect its amount. (During those several years, the claimants will presumably obtain a much higher internal rate of return than the Treasury interest which would be paid them during that delay period.)

## STATEMENT OF THE CASE

In a Corrected Plaintiff's Statement of Points and Authorities In Opposition to Federal Defendant's Motion to Dismiss ( Docket, 14), plaintiff has set forth in his Statement

of the Case (at pages 7 to 37) a description of the instant litigation, a statement of the factual and legal basis for his claim to a common fund fee in the instant litigation, and the history of the litigation in which he has claimed, and sometimes has received, common fund fees for his efforts on behalf of his clients, currently a group of "Utilities and Manufacturers", which benefitted the other crude oil refund claimants.

To avoid repetition, plaintiff incorporates by reference the Statement of the Case in that Corrected Plaintiff's Statement of Points and Authorities In Opposition to Federal Defendant's Motion to Dismiss.

To the extent to which the nature of the pleadings in the instant case and the remanded cases (03-1991 and 04-0152 in this Court) are relevant to the issue of whether the instant case is duplicative as to the claim for a common fund fee for Kalodner's success in <u>Con Ed IV</u> (Argument I), or are relevant to the issue of whether Kalodner is precluded from claiming for a fee for his success in <u>Con Ed V</u> (Argument II), they will be discussed in the relevant Argument sections below. To the extent to which this Court's decision and the D.C. Circuit's decision are relevant to the issue of whether Kalodner is precluded from claiming for a fee for his success in obtaining an 89.5% distribution in <u>Con Ed VI</u>, they will be discussed in Argument III below.

<u>ARGUMENT</u>

I    <u>DISMISSAL OF THE INSTANT ACTION TO THE EXTENT TO WHICH IT</u>
<u>CLAIMS A COMMON FUND FEE FOR KALODNER'S SUCCESS IN CON ED IV ON</u>
<u>THE GROUND THAT IT DUPLICATES TWO REMANDED ACTIONS WOULD BE</u>
<u>NETHER EFFICIENT NOR EVEN IN THE BEST INTEREST OF THE DEFENDANTS;</u>
<u>CONSOLIDATION WILL ELIMINATE ANY DUPLICATION</u>

The claimant defendants seek a remedy which would (i) require simultaneous consideration of two different actions, presumably by two different Judges, (ii) would possibly result in either two awards of the common fund fee sought, or conflicting decisions as to either a common fund fee should be paid or in what amount, and (iii) might require the claimant defendants to return funds already received rather than having the common fund fee paid from the funds withheld by the DOE for that possible purpose.

Such would be the effects of the dismissal of Count II of the Complaint which the defendant claimants seek.

If Count II is dismissed, as they seek, the remanded 04-152 action in which Kalodner seeks a common fund from the claimants themselves would proceed, presumably before Judge Kennedy.

At the same time, Kalodner would be pursuing before Judge Collyer a common fund fee in the same 10% amount from the DOE, either pursuant to the remand in 03-1991, or pursuant to Count I of the instant Complaint, or both, presumably consolidated.

11

(There can be no dismissal of Count I of the instant Complaint on the ground it duplicates the remand in 03-1991, even if DOE so argued, which it has not. The remanded action is presumably to consider the possible claim of Kalodner's clients for a common fund fee, a fee they never claimed and which this Court never awarded them, while in the instant action, as was the case in 03-1991), it is their attorney Kalodner who seeks a common fund fee. Moreover, the remand in 03-1991 suffers another possible defect in that it is a remand of an action not before the D.C. Circuit, i.e. the refusal of a common fund fee as to Kalodner's success in obtaining a declaratory judgment in Con Ed IV; the matter on appeal was, instead, Kalodner's right to a common fund fee for his success in Con Ed V.

1. At the minimum, the simultaneous conduct of litigation before two separate Judges, rather than proceeding before one Judge in a single action, constitutes a grossly inefficient expenditure of judicial resources.

The D.C. Circuit has warned against the simultaneous conduct of litigation involving the same controversy in two separate forums: "Sound judicial administration counsels against separate proceedings and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided." Columbia Plaza Corp. V. Security Nat. Bank, 525 F. 2d 620, 626 (1975). As the Court explained in that case, which

12

involved litigation in two different District Courts, "We take note of crowded court dockets across the country, and the consequent desirability of deciding common issues in one tribunal rather than two." id

Here, of course, the elimination of such inefficiency can be resolved far more easily than by having one Court enjoin the other, as was required and endorsed in enjoining one action by the other Court in Columbia Plaza Corp. V. Security Nat. Bank, By proceeding in the instant litigation, the need for consideration of two separate remands by two separate Judges can be avoided. And consolidation of the remanded actions with the instant action will avoid any possible duplication.

2. Were this controversy to be pursued in the two remanded actions before two Judges, it would also pose the threat either of duplicative results, i.e. with Kalodner being awarded a 10% common fund fee in both cases and therefore entitled to recover a 10% fee frm both the DOE and the claimants, or inconsistent results, i.e. with Kalodner found entitled to a common fund fee in one case and not entitled to a common fund fee in the other, or with a different percentage common fund fee awarded in the two actions.

As the D.C. Circuit explained in Columbia Plaza Corp. V. Security Nat. Bank, supra, 525 F. 2d at 626, another reason for avoiding consideration of the same controversy in actions before

two Judges "in addition to economic factors, (is) the value of eliminating the risk of inconsistent adjudications and races to obtain judgments."

3. Indeed, the procedure which the claimant defendants are recommending, is not in their own best interest or in the best interest of the other more than 29,500 claimants who have also received an 89.5% distribution.

If Kalodner is awarded a common fund fee in the action remanded in 04-152, each of the more than 29,500 claimants will be required to remit to Kalodner, or to the DOE for transmission to Kalodner, a portion of the 89.5% which each of them has received, while at the same time, the DOE continues to hold the 10% which it withheld for use as a possible common fund fee. Presumably, the DOE would then distribute the 10% to the claimants-- although such distribution is by no means assured-- and the claimants would be required to remit the percentage of common fee awarded of, and from, that 10%.

Such is hardly a procedure which would be in the best interest of the defendant claimants and their fellow claimants.

The instant action provides a sequential consideration which is clearly in the best interest of the claimants. It seeks first a common fund fee from the 10% withheld by the DOE, and only if such is not ordered by the Court, presumably on sovereign immunity grounds, seeks a common fund fee to be remitted by the

claimants.

Nor must the remanded 04-0152 action be pursued and Count II of the instant action be dismissed as duplicative on the ground that the 04-152 action was brought first.

The D.C. Circuit in Columbia Plaza Corp. V. Security Nat. Bank, supra, 525 F. 2d at 627, rejected the "mechanical application of...(the) principle" "that the court first acquiring jurisdiction of a controversy " should be given priority," explaining: "In our view, however, choice of the forum cannot be suitably made by mechanical application of that principle. The opinions recognizing the rule have frequently contained a caveat that it should be ignored under some circumstances, and in a good many cases proceedings in an earlier-filed action have been stayed to enable the court later acquiring jurisdiction to proceed to judgment first. We do not regard an injunction favoring the first-filed action as a mandatory step in all instances because countervailing equitable considerations, where present, cannot be ignored."

See also the affirmance by the Supreme Court of a decision by the Third Circuit holding that priority need not be given to an action brought first in determining which of two actions in different District Courts should proceed to determine the issues presented in both actions, Kerotest Mfg. Co. V. C-O-Two Co., 342 U.S. 180, 183 (1952): "Wise judicial administration, giving

15

regard to consideration of judicial resources and comprehensive disposition of litigation, does not counsel mechanical solution of such problems."

Here, the instant action in which the respective liability of the DOE and the claimants may be determined in one action before one Judge is clearly more efficient and comprehensive than would be determination in the two remanded actions by two different Judges.

Moreover, as noted above, duplication may here be avoided, while maintaining the desired sequential priority of seeking the common fund fee first from the DOE, by consolidating the remanded action in 04-0152 (and the remanded action in 03-1991) with the instant action before Judge Collyer.

Such consolidation would assure that any appropriate guidance given by the D.C. Circuit in its decision making the remands would be considered by the Court in the instant case.

As also noted previously, duplication could also be avoided by dismissing without prejudice the remanded 04-0152 (and the remanded 03-1991) so that the sole case raising the common fund fee issue, and the right to recover from either the DOE or the claimants, would be the instant 06-0818 action.

Plaintiff here recommends consolidation, and will shortly move for such, rather than dismissal, solely as a matter of respect for the D.C. Circuit, and even though plaintiff believes,

and will argue to this Court at the appropriate time that this Court is not bound by principles of preclusion to honor the comments of the D.C. Circuit as to the causative effect of the Con Ed IV declaratory judgment, and that such comments should not influence this Court's decision, because (i) they are not binding as a matter of law, and because (ii) they reflect both a disrespect for this Court's prior holding and misrepresent the relevant facts. (See the discussion in Corrected Plaintiff's Statement of Points and Authorities In Opposition to Federal Defendant's Motion to Dismiss)

Finally, yet another reason for maintaining the instant action rather than dismissing it in favor of proceeding on the Complaint in 04-152, is that extensive amendment of the Complaint in 04-152 would be required if it were to be the vehicle for resolving the Kalodner claim for a common fund fee to be paid by claimants. The putative class would have to be changed from all almost 31,00 claimants who will ultimately receive a portion of the $284 million to the more than 29,500 claimants who will have received 89.5% of the amount due them, since it is only from the latter that Kalodner currently seeks a common fund fee. And, if Kalodner's contentions that he is entitled to a common fund fee also for his success in Con Ed V and Con Ed VI, as he has claimed in the instant action, are sustained by the Court, amendment of the 04-152 Complaint to so assert would be required. Such

17

amendments would not be necessary if the instant action continued
and the remanded cases were consolidated with it.

II  <u>KALODNER IS NOT PRECLUDED FROM CLAIMING A COMMON FUND FEE ON
THE BASIS OF HIS CON ED V SUCCESS: THE D.C. CIRCUIT NEITHER
APPROPRIATELY NOR NECESSARILY DECIDED THAT CLAIM, AND PRECLUSION
WOULD WORK A FUNDAMENTAL UNFAIRNESS TO PLAINTIFF</u>

In none of the three cases decided by the D.C. Circuit in
its <u>Con Ed V</u> decision at 445 F. 3d 438, did the D.C. Circuit
necessarily or appropriately reach the merits of the claim by
Kalodner for a common fund fee on the basis of his success in <u>Con
Ed V</u>, in obtaining first the agreement by DOE to implement the
declaratory judgment Kalodner had obtained in <u>Con Ed IV</u>, and then
the agreement of DOE to a change in the methodology of
calculating the amount of distribution per gallon which increased
the amount which would be distributed from the $245 million which
would have been distributed at the DOE-proposed $670 per million
gallon rate to the full $278 million available December 28, 2005:

1. In <u>Consolidated Edison v. Bodman</u>, the 03-1991 action in
which Kalodner had moved in this Court for a common fund fee, and
had been granted a fee on the $39 million which his efforts
obtained as an additional distribution, but denied a fee on $245
million of the distribution, the D.C. Circuit found it
unnecessary to reach the merits of the claim.

The D.C. Circuit misrepresented the claim for a common fund

fee, and its award in part and denial in part, to have been a claim for a fee by the plaintiffs, Kalodner's clients, Consolidated Edison Co. et al, rather than a claim by, and an award in part to, Kalodner, as it was; this Court so clearly stated when it explained that "To compensate the individual who obtained (the additional monies-per-gallon) with 30% of this recovery fulfills the equitable reasons for the common fund doctrine." (Order of January 26, 2005 in 03-1991). Based on its representation that the claim and award had been by and to Kalodner's clients, the D.C. Circuit found that (i) as successful party plaintiffs, they would be able to assert the right to a common fund fee pursuant to the EAJA despite the fact that the funds from which a common fund fee was sought were in the "possession" of the United States Treasury and therefore protected by sovereign immunity, but (ii) they could not claim the waiver of sovereign immunity by virtue of the EAJA because they had not "prevailed" in the Con Ed V litigation, i.e. they had not obtained court-ordered relief. Once having so decided, it was neither necessary nor appropriate for the Court to consider the issue of causation, i.e. whether the Con Ed V litigation had been the "catalyst" causing the DOE agreement to the distribution and to the change in methodology; the D.C. Circuit acknowledged that if a waiver of sovereign immunity was obtained by virtue of ESA Section 209, as Kalodner asserted it to have been, the fact

19

that the litigation had been the "catalyst" would have been a sufficient basis for a common fund fee. 445 F. 3d at 457, but refused to consider an ESA Section 209 waiver, finding such to be in the exclusive appellate jurisdiction of the Court of Appeals for the Federal Circuit. 445 F. 3d at 449.

But, having reviewed the application as having been by, and the award as having been to, Kalodner's clients, and having held that the issue was whether they had prevailed, and having held that they had not, there was neither need, nor was it appropriate, to consider whether, had the claim been by Kalodner and had the waiver been by virtue of the ESA, Kalodner had proven that the <u>Con Ed V</u> litigation had been the catalyst causing the DOE to agree to the relief sought in that litigation.

Indeed, had the D.C. Circuit recognized that the application for a common fund fee had been by, and the award in part had been to, Kalodner, given the Court's holding that the EAJA was not available as the basis of a sovereign immunity waiver by Kalodner and its refusal to consider the waiver of sovereign immunity by virtue of the ESA, the D.C. Circuit would necessarily have reversed the grant award on the basis DOE's sovereign immunity defense. The D.C. Circuit would therefore, even had it recognized that the award was to Kalodner, have had no reason to review the merits of Kalodner's claim, i.e. whether the litigation had been the "catalyst."

2. In <u>Kalodner v. Bodman</u>, 05-0024 RMC, in which Kalodner had claimed a common fund fee for his successes in both <u>Con Ed IV</u> and <u>Con Ed V</u>, an action filed when, and because, this Court had not acted on the Kalodner application for a common fund fee in 03-1991 and the DOE was presumably about to distribute the funds, both this Court and the D.C. Circuit considered only the possible waiver of sovereign immunity by virtue of the EAJA, and found Kalodner as an attorney not entitled to the benefits of the EAJA; neither Court considered the possibility of waiver of sovereign immunity by the ESA, the D.C. Circuit because it found it was without jurisdiction to do so. Based on its consideration only of an EAJA waiver, and finding it not available to Kalodner, this Court dismissed the Kalodner fee claim, and the D.C. Circuit affirmed that dismissal on the same basis.

In neither this Court nor in the D.C. Circuit was it found necessary, nor was it appropriate, to consider whether the <u>Con Ed V</u> litigation played a causative or "catalyst" role in obtaining the DOE's agreement to make distribution and to the change in methodology increasing its amount some $39 million. The determination by the Courts that Kalodner's claim was barred by sovereign immunity made such causation analysis both unnecessary and inappropriate.

3. In <u>Kalodner v. Public Service Electric & Gas Co.</u>, the 04-152HHK action in the District Court, the District Court had

21

granted Motions to Dismiss the Complaint which claimed a common
fund fee solely for the Con Ed IV success, apparently on the
basis that the claimant defendants were entitled to immunity as
long as the funds remained in the U.S. Treasury and therefore in
the District Court's view not subject to the court's power to
award a common fund fee.  The Court of Appeals, interpreting the
holding of the District Court as having afforded the claimants
the benefit of sovereign immunity, reversed, holding that
"Sovereign immunity poses no bar to Kalodner's fee claim against
the beneficiaries." 445 F. 3d at 449.

    Because the District Court had not considered the merits of
the Kalodner claim for a common fund fee for his success in
obtaining the declaratory judgment in Con Ed IV, it was not
appropriate for the D.C. Circuit to consider the merits; it
should have merely remanded for a determination on the merits by
the District Court.

    Instead, the D.C. Circuit not only discussed the merits of a
common fund fee for the Con Ed IV success, expressing its opinion
as to, and misrepresenting, what it saw as some of the relevant
facts despite the absence of any record in the District Court in
04-0152, but it demonstrated a disrespect for this Court by
rejecting the clear significance of this Court's finding in 03-
1991 that "Mr. Kalodner was successful in two adverse suits
against the DOE: in Con Ed IV, where he obtained a declaratory

order requiring the DOE to distribute some $275 million in crude oil refunds which the DOE held in U.S. Treasury, and in Con Ed V... "; this Court thus found in 03-1991 that it was the declaratory order in Con Ed IV which caused DOE to agree in, and by virtue of, the Con Ed V litigation to make the distribution, and to make it of the full available amount.

More critically for the purpose of the instant Motion to Dismiss, the D.C. Circuit misrepresented the 04-152 action as including a claim for the Con Ed V success, and proceeded to hold that "Kalodner's claim against the beneficiaries... for Con Ed V... fails for lack of causation", again misrepresenting critical facts, and demonstrating disrespect for this Court's finding in 03-1991 that "Con Ed V insured the implementation of the Court's declaratory judgment in Con Ed IV that DOE should disburse approximately $275 million in funds. In responding to Con Ed V, the DOE not only committed to distribution but also committed to a specific methodology for calculating the per-gallon amount of that distribution." (Memorandum Opinion of January 26, 2005 in 03-1991, emphasis supplied).

There was no basis for a discussion of the merits of a claim on the basis of the Con Ed V litigation in considering the 04-0152 case. Not only was there no evidentiary record, but much more importantly, the 04-0152 Complaint did not include a claim for a common fund fee for the Con Ed V success, and therefore in

reviewing the dismissal of a Complaint alleging a fee claim only for the Con Ed IV success, the D.C. Circuit had no basis for discussing and ruling upon the merits of a possible claim for the Con Ed V success.

Indeed, the Complaint in 04-0152, filed February 3, 2004, not only did not, but could not have, included a claim for the Con Ed V success, because that success was not achieved until after the filing of the Complaint, with the issuance of a DOE Notice May 13, 2004, 69 Fed. Reg. 29300 (May 21, 2004); the Complaint was never amended to include a Con Ed V claim.

Thus, the discussion of any catalytic effect of the Con Ed V litigation was not only unnecessary once the D.C. Circuit determined to reverse on the basis of a lack of a sovereign immunity barrier, but was also completely unwarranted in light of the failure of the 04-0152 Complaint to claim a common fund fee on the basis of the Con Ed V litigation.

It represented rumination by the Court on an issue not before it in 04-0152, and therefore an issue neither appropriately nor necessarily decided by the D.C. Circuit.

Thus, as to all three cases before the D.C. Circuit-- 03-1991, 05-0024 and 04-152-- the issue of the  merits of a claim for a common fund fee for Kalodner's Con Ed V success was not "necessarily determined."

As this Court has repeatedly recognized,

"(T)he standards for establishing the preclusive effect of an earlier holding are:

First, the same issues now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case... Third, preclusion in the second case must not work a basic unfairness to the party found by the first determination." Beverly Health & Rehab. Services Inc. v. N.L.R.B., 317 F. 3d 316, 322 (D.C. Cir. 2003) emphasis supplied, the Court there quoting from its own prior decisions.

Here, the D.C. Circuit's holding that Kalodner's claim for a common fund fee on the basis of his success in Con Ed V "fails for lack of causation" fails to satisfy two of the requirements for it to have a preclusive effect, i.e. for it to prevent Kalodner from claiming for his Con Ed V success in the instant litigation, to wit (i) the requirement that the issue was "necessarily determined", and (ii) the requirement that preclusion "must not work a basic unfairness to the party bound by the first determination":

(i)  Although the issue was "actually...determined" by the D.C. Circuit, it clearly was not "necessarily determined," i.e. it was not necessary for it to be reached (a) in 03-1991 and 05-0024 because in both cases the D.C. Circuit found the plaintiffs

disqualified even to make the claim on jurisdictional grounds,
i.e. sovereign immunity, and (b) in 04-152 because the issue was
not even present, and therefore could not have been decided at
all by the D.C. Circuit, let alone necessarily decided.

Even if this Court had ruled in 03-1991 that the Con Ed V
litigation had not been the cause of the DOE agreement to make a
distribution and to make it in the full amount of the available
funds-- and this Court indeed had held exactly the contrary--
because the D.C. Circuit decided the appeal in 03-1991 on a
jurisdictional, i.e. sovereign immunity, basis, there would be no
preclusion preventing Kalodner from seeking a common fund fee
here for his Con Ed V success now that the jurisdictional barrier
has been removed, i.e.  by the elimination of sovereign immunity
by virtue of the distribution of 89.5% of the funds to the
claimants, with 10% being withheld solely for possible payment of
a common fund fee. See Yamaha Corp. Of America v. U.S., 961 F. 2d
245, 257 (D.C. Cir. 1992).

(ii) Precluding Kalodner from proving that his success in
the Con Ed V litigation played a catalytic or causative effect in
obtaining the DOE's agreement to make a distribution of the
available funds, and to make it in the full amount of such funds
would "work a basic unfairness" to him. Not only has he had no
opportunity to offer proof in 04-0152 and 05-0024 by virtue of
the dismissal of the complaints, upon a motion to dismiss in the

former case and by the Court sua sponte in the latter case, but in 03-1991, although Kalodner was not afforded an opportunity to offer proof, this Court, based on its own knowledge of the impact of the Con Ed V litigation by having presided over it and the Con Ed IV litigation, found that Con Ed V did play such a catalytic and causative effect: " Con Ed V insured the implementation of the Court's declaratory judgment in Con Ed IV.... In responding to Con Ed V, the DOE not only committed to a distribution bu also committed to a specific methodology for calculating th per-gallon amount of that distribution." (Memorandum Opinion of January 26, 2005).

It is difficult to conceive of any unfairness which would be greater than denying Kalodner the right to make a claim where (i) the claimant, Kalodner, had never been offered an opportunity to offer proof, and (ii) the District Court with first hand knowledge of the relevant facts found that Kalodner's claim as to the catalytic and causative effect of Con Ed V was meritorious.

III  KALODNER IS NOT PRECLUDED FROM CLAIMING A COMMON FUND FEE ON THE BASIS OF HIS CON ED VI SUCCESS: NEITHER THIS COURT NOR THE D.C. CIRCUIT DENIED KALODNER A FEE ON THE MERITS, AND IN ANY EVENT, THE D.C. CIRCUIT'S DENIAL ON A JURISDICTIONAL BASIS PERMITS KALODNER TO PROCEED ON THE MERITS NOW THAT, AND TO THE EXTENT TO WHICH, THE JURISDICTIONAL BARRIER NO LONGER EXISTS

Even after Kalodner had obtained a declaratory judgment in

27

Con Ed IV and obtained the DOE's agreement to implement it and to make distribution in Con Ed V, DOE was withholding distribution months after the date it had promised to begin distribution, and was threatening to further delay distribution until the conclusion of all litigation which would affect the amount per gallon to be distributed (including the common fund fee litigation, the Mittal Steel litigation and other litigation in which Kalodner was challenging awards to claimants), thereby threatening a further delay of several years.

It was only in, and by virtue of, the Con Ed VI litigation, brought in the name of Kalodner's clients and on behalf of all the crude oil claimants to force immediate distribution, that Kalodner did finally obtain actual distribution to claimants-- of 89.5% of the  available funds-- by suggesting in his Motion for Summary Judgment that inasmuch as only 10.5% of the available funds were being sought in litigation (10% as a common fund fee by Kalodner, and .5% by a claimant Mittal Steel USA ISG, Inc.), that there was no reason to withhold distribution of the remaining 89.5%.

Upon obtaining that success, Kalodner moved for a common fund fee. It was denied by this Court on the ground that "This Court has already made an award of attorney's fees to these plaintiffs for the totality of their EPAA litigation, and they have appealed this decision to the D.C. Circuit... Jurisdiction

over their fee claims has passed to the Court of Appeals and
those claims will be rejected here." (Order of March 2, 2006 in
05-816 RMC).

The D. C. Circuit granted DOE's requested summary affirmance
of this Court's decision, holding as to the common fund fee
issue, that because the fee was being sought from the 10% of
funds being withheld, there was available to DOE a sovereign
immunity defense, and sovereign immunity was not waived by the
EAJA. (Order of August 7, 2006 in 06-5101 D.C. Cir., reproduced
as Appendix II to the claimant's Motion to Dismiss Memorandum).

The claimants argue that Kalodner is precluded from
reasserting this claim now that distribution has occurred
"Because, as both this Court and the Court of Appeals found,
Kalodner accomplished nothing in Con Ed VI..." (Claimants' Motion
to Dismiss Memorandum, at 6).

In fact, neither Court so found. This Court declined to
award a fee apparently on the basis that because an appeal from
this Court's denial of a full 10% fee as sought was on appeal in
Con Ed V,, and in Con Ed VI Kalodner was seeking the same 10%
which he was seeking on appeal, if he were successful in that
appeal, he would be seeking nothing further in Con Ed VI.

Kalodner was, of course, not successful in that appeal (05-
5089 in the D.C. Circuit). Kalodner now seeks no more than the
10% sought in Con Ed V, but does seek to add his success in Con

29

Ed VI as a further justification for such a fee.

Even if this Court's opinion is read as an expression that the Court believed its previously awarded fee of 30% of some $39 million, or some $11.7 million, was adequate to include any additional service rendered in Con Ed VI, such a basis for denying a fee for the Con Ed VI success no longer exists, now that the D.C. Circuit has vacated the awarded fee.

This Court certainly did not find that "Kalodner accomplished nothing in Con Ed VI" as claimants maintained; it could hardly have done so in view of the fact that DOE's agreement to make immediate distribution of 89.5% came in a response to Kalodner's Motion for Summary Judgment in Con Ed VI.

As to the D.C. Circuit, the defendant claimants' assertion that the D.C. Circuit had held "Kalodner accomplished nothing in Con Ed VI" is a deliberate misrepresentation of the D.C. Circuit's holding that "appellants did not obtain court-ordered relief in Con Ed VI." (Emphasis supplied). The D.C. Circuit was there dealing with the question of whether the Con Ed VI success in obtaining an 89.5% distribution occurred pursuant to a court order, a determination which the Court deemed critical to determine whether Kalodner's clients could seek a common fund fee pursuant to the EAJA; it held that the EAJA could only be used to obtain a waiver of sovereign immunity if the relief for which a common fund fee was sought was as the result of a Court order,

rather than relief obtained administratively as to which the litigation had been the catalyst. (The D.C. Circuit's holding was in any event irrelevant; the common fund fee in <u>Con Ed VI</u> was sought not by Kalodner's clients but by Kalodner who could not claim the benefit an EAJA waiver, and the Court failed to consider a waiver of sovereign immunity by ESA Section 209 for which Kalodner argued, a waiver which would have made him eligible for a common fund fee upon a finding that the <u>Con Ed VI</u> litigation was the cause or catalyst which obtained the 89.5% distribution.)

Because, subsequent to the filing of the motion for a common fund fee in <u>Con Ed VI</u>, at which time distribution had not yet begun, there has been distribution of 89.5% of the funds and an apparent commitment to distribute the balance to claimants to the extent not required for distribution to Kalodner or Mittal Steel (71 Fed. Reg. 2195, January 13, 2006), the sovereign immunity barrier which was the basis of the D.C. Circuit's affirmance no longer exists; in any event it clearly does not exist as to the 89.5% which is no longer in the government's possession.

In the absence of a sovereign immunity barrier, and in the absence of a finding on the merits as to the Kalodner <u>Con Ed VI</u> common fund fee claim by either this Court or the D.C. Circuit, there is no barrier precluding Kalodner from now relying on the acceleration of distribution which he obtained in Con Ed VI,

thereby both preserving and increasing the common fund for claimants, as supporting his claim for a 10% common fund fee.

Finally, it should be noted that even if this Court's Order denying a common fund fee in <u>Con Ed VI</u> is read somehow as a denial on the merits, it does not preclude Kalodner from a second try in light of the fact that the D.C. Circuit affirmed solely on jurisdictional grounds. <u>Yamaha Corp. Of America v. U.S.</u>, 961 F. 2d 245, 257 (D.C. Cir. 1992)

CONCLUSION

Plaintiff Kalodner's common fund fee claim on the basis of his Con Ed IV success should not be dismissed as duplicative, and his claim on the basis of his <u>Con Ed V</u> and <u>Con Ed VI</u> successes should not be dismissed as precluded.

Accordingly, the motion of the claimant defendants for dismissal as to them (Count II of the Complaint) should be denied.

Plaintiff respectfully requests the opportunity to offer oral argument in opposition to the Motion to Dismiss.

Respectfully submitted,

_____
Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
610-649-8749
DC Bar 973578

October 19, 2006               Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
PHILIP P. KALODNER,            :
                               :
     Plaintiff                 :
                               :
v.                             :        CIVIL ACTION NO.
                               :        1:06cv00818(RMC)
SAMUEL BODMAN                  :
ET                             :
                               :
     Defendants                :
_____:


CERTIFICATE OF SERVICE

     I hereby certify that I have served copies of Plaintiff's

Statement of Points and Authorities in Opposition to Defendant

Claimants' Motion to Dismiss this 19th day of October, 2006 by

federal express, overnight delivery, upon the following:


Michael F. Healy
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. N.W.
Washington D.C. 20004

Counsel for defendants-appellees
Public Service Electric & Gas Co., Eastman
Chemical Co. and General
Motors Corp.

And by first class mail upon the following:

John R. Low-Beer
Assistant Corporation Counsel
100 Church St. Room 3-162
New York, N.Y. 10007

Attorney for defendant
City Of New York

                              _____

                              Philip P. Kalodner