IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHILIP P. KALODNER | : | |
|     Plaintiff | : | |
| | : | |
|       v. | : | |
| | : | CIVIL ACTION NO. |
| SAMUEL BODMAN ,Secretary of Energy, | : | |
| United States; GEORGE B. BREZNAY | : | No. 1:06-cv-00818(RMC) |
| Director, Office of Hearings and | : | |
| Appeals; AND | : | |
| | : | |
| PUBLIC SERVICE ELECTRIC & GAS CO.; | : | |
| EASTMAN CHEMICAL COMPANY; GENERAL | : | |
| MOTORS CORPORATION; SEAGROUP, INC. | : | CLASS ACTION |
| GENERAL COUNCIL ON FINANCE AND | : | |
| ADMINISTRATION OF THE UNITED | : | |
| METHODIST CHURCH; CITY OF NEW YORK; | : | |
| ZIM ISRAEL NAVIGATION CO. LTD; | : | |
| FLORIDA POWER CORPORATION | : | |
|     Defendants | : | |
| | : | |

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF | : | |
| NEW YORK, INC. Et al | : | |
|     Plaintiffs | : | |
| | : | |
|       v. | : | Civil Action No. |
| | : | 1:03CV01991(RMC) |
| SPENCER ABRAHAM,  SECRETARY OF | : | |
| ENERGY OF THE UNITED STATES | : | |
| et al | : | |
|     Defendants | : | |

| | | |
|---|---|---|
| PHILIP P. KALODNER | : | |
|     Plaintiff | : | |
| | : | |
|       v. | : | |
| | : | CIVIL ACTION NO. |
| PUBLIC SERVICE ELECTRIC & GAS CO. | : | 1:04CV00152 (HHK) |
| et al | : | |
|     Defendants | : | |

<u>MOTION TO CONSOLIDATE</u>

Philip P. Kalodner, Pro Se in C.A. 06-0818 and 04-0152 and

1

as attorney for Plaintiffs, Consolidated Edison Co. et al, in C.A. 03-1991, respectfully moves that actions remanded in 03-1991 and 04-0152 by the Court of Appeals for the District of Columbia Circuit in <u>Consolidated Edison Co. Of New York v. Bodman</u>, 445 F. 3d 438 (D.C. Cir. 2006) be consolidated with the action pending before Judge Rosemary M. Collyer as of 06-0818.

In support of this Motion, plaintiffs in the three actions submit a Statement of Points and Authorities.

                                    Respectfully submitted,


                                    _____
                                    Philip P. Kalodner
                                    208 Righters Mill Road
                                    Gladwyne PA 19035
                                    610-649-8749
                                    DC Bar 973578

October 26, 2006                    Attorney for Plaintiffs
                                    in C.A. 03-1991, and
                                    Pro Se in 04-0152 and 06-0818

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| PHILIP P. KALODNER : | |
|     Plaintiff : | |
|             : | |
|      v. : | |
|             : | CIVIL ACTION NO. |
| SAMUEL BODMAN ,Secretary of Energy,: | |
| United States; GEORGE B. BREZNAY : | No. 1:06-cv-00818(RMC) |
| Director, Office of Hearings and : | |
| Appeals; AND : | |
|             : | |
| PUBLIC SERVICE ELECTRIC & GAS CO.; : | |
| EASTMAN CHEMICAL COMPANY; GENERAL : | |
| MOTORS CORPORATION; SEAGROUP, INC. : | CLASS ACTION |
| GENERAL COUNCIL ON FINANCE AND : | |
| ADMINISTRATION OF THE UNITED : | |
| METHODIST CHURCH; CITY OF NEW YORK;: | |
| ZIM ISRAEL NAVIGATION CO. LTD; : | |
| FLORIDA POWER CORPORATION : | |
|     Defendants : | |
|             : | |

---

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF : | |
| NEW YORK, INC. Et al : | |
|     Plaintiffs : | |
|             : | |
|        v. : | Civil Action No. |
|             : | 1:03CV01991(RMC) |
| SPENCER ABRAHAM,  SECRETARY OF : | |
| ENERGY OF THE UNITED STATES : | |
| et al : | |
|     Defendants : | |

---

| | |
|---|---|
| PHILIP P. KALODNER : | |
|      Plaintiff : | |
|             : | |
|      v. : | |
|             : | CIVIL ACTION NO. |
| PUBLIC SERVICE ELECTRIC & GAS CO. : | 1:04CV00152 (HHK) |
| et al : | |
|      Defendants : | |

---

STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF

MOTION TO CONSOLIDATE

1

Philip P. Kalodner, Pro Se in C.A. 06-0818 and 04-0152 and as attorney for Plaintiffs, Consolidated Edison Co. et al, in C.A. 03-1991, has moved that the actions remanded in 03-1991 and 04-0152 by the Court of Appeals for the District of Columbia Circuit in <u>Consolidated Edison Co. Of New York v. Bodman</u>, 445 F. 3d 438 (D.C. Cir. 2006) be consolidated with the action pending before Judge Rosemary M. Collyer as of 06-0818.

This Statement will first describe the actions which are sought to be consolidated, and will then present the argument for consolidation,

<u>Statement of the Case– The Suits to be Consolidated</u>

1. <u>The 06-818 Action</u>

In the 06-0818 action pending before Judge Collyer, the plaintiff, Philip P. Kalodner ("Kalodner"), an attorney who represents a group of client claimants entitled to some 16.5% of some $284 million in crude oil refunds now being distributed by the U.S. Department of Energy ("DOE"), seeks a common fund fee from the pro rata shares of that distribution which have been allocated by the DOE, and actually paid to the extent of 89.5%, to some 29,500 other claimants who are cumulatively receiving some 83.5% of the crude oil refunds.

Kalodner asserts a common fund fee claim (i) for having

obtained such allocation and distribution by means of three
successive actions brought on behalf of his client claimants,
Consolidated Edison Company of New York et al v. Spencer Abraham
et al, Civil Action 01-00548 (RMC) (D.D.C.)("Con Ed IV"),
Consolidated Edison Company of New York et al v. Samuel Bodman et
al, Civil Action 03-1991 (RMC) (D.D.C.) ("Con Ed V") and
Consolidated Edison Company of New York et al v. Samuel Bodman et
al, Civil Action 05-0816 (RMC) (D.D.C.)("Con Ed VI"), and (ii) by
virtue of 21 years of administrative and judicial litigation on
behalf of his clients which benefitted all of the 29,500
claimants.

In allocating pro rata shares of the $284 million to some
29,500 claimants, the DOE withheld 10% as a potential common fee
to Kalodner should he be awarded such, and withheld .5% being
claimed by Mittal Steel USA ISG Inc. in judicial litigation
following the DOE's denial of such claim, and paid 89.5% of such
pro rata shares to the 29,500 claimants. DOE continues to make
allocations and an 89.5% distribution to claimants, and will
presumably shortly complete distribution to some 31,000 claimants
qualified to receive such allocation and distribution.

In the 06-818 action, Kalodner seeks a 10% common fund fee
as to, and from, the amount of distribution allocated (and to the
extent of 89.5% paid) to each claimant other than his own clients
as to whom he has waived the right to a common fund fee.

In Count I of the Complaint in 06-0818, Kalodner seeks the 10% common fund fee from the DOE by payment to him of the 10% withheld as a potential common fund fee from the distribution to each of the claimants (other than his clients).

In Count II of the Complaint in 06-0818, brought against eight claimants ("defendant claimants") who are sued as representatives of a class of all claimants (other than Kalodner's clients) who have received an allocation of the %284 million, and a distribution of 89.5% of the amount allocated each of them (the "claimant class"), Kalodner seeks, in the alternative to an Order against the DOE for payment of the 10% to him pursuant to Count I, (i) an Order requiring the claimant class representatives to direct the DOE to distribute to Kalodner as a common fund fee the 10% withheld from each of them as a potential common fund fee, or, in the further alternative, (ii) should the Court decline to do so, an Order requiring the members of the claimant class to return 10% of the 89.5% received by them to Kalodner as a common fund fee.

The DOE has moved to dismiss the 06-0818 action as to itself, i.e. Count I of the Complaint, and the claimant defendants have moved to dismiss the Complaint as to themselves, i.e. Count II of the Complaint. Kalodner has responded to both motions.

If the consolidation here requested is not granted,

4

presumably both DOE and the claimant defendants will reiterate their arguments made in 06-0818 to the extent relevant in responding in both the remanded actions, 03-1991 and 04-0152. Consolidation will, of course, make such unnecessary, and will avoid the possibility of inconsistent decisions by the 03-1991 and 04-0152 Courts.

2. <u>The relationship of the three actions sought to be consolidated</u>

The 06-0818 suit is the only action now pending in which Kalodner (i) seeks a fee for his success in all three actions-- <u>Con Ed IV</u>, <u>Con Ed V</u>, and <u>Con Ed VI</u>, (ii) seeks a fee after the allocation and distribution of the funds, and only as to claimants to whom distribution has been made, and (iii) seeks a distribution alternatively from the DOE or the claimants.

In contrast, in the two actions which are sought to be consolidated with the 06-0818 action, 03-1991RMC and 04-0152HHK, Kalodner (i) sought a common fund fee only for his success in <u>Con Ed IV</u> in the 04-0152 action, and only for his success in <u>Con Ed V</u> in the 03-1991 action, (ii) sought a fee at a time when 100% of the funds were still in the U.S. Treasury, and from all 31,000 eligible claimants, and (iii) sought a fee either from the DOE (in 03-1991) or from the claimants (in 04-0152).

3. <u>Kalodner's successes in the three actions-- Con Ed IV, Con Ed V and Con Ed VI-- for which a common fund fee is</u>

5

<u>principally sought</u>

Before describing the 04-0152 and 03-1991 motions for a common fund fee and the litigation history of such motions, it is appropriate to summarize the Kalodner successes in <u>Con Ed IV</u>, <u>Con Ed V</u>, and <u>Con Ed VI</u>, for which a common fund fee is sought in 06-0818 , and for one of which a common fund fee was sought in 04-0152 (i.e. for <u>Con Ed IV</u>), and for one of which a common fund fee was sought in 3-1991 (i.e. for <u>Con Ed V</u>).

All three of the actions were brought by Kalodner on behalf of his clients (referred to as "Utilities and Manufacturers") and sought relief for all eligible claimants, now approximately 31,000 in number.

In <u>Con Ed IV</u>, Kalodner sought and obtained a declaratory judgment requiring distribution to all eligible crude oil refund claimants of the balance of crude oil refunds remaining in the relevant U.S. Treasury accounts in which 20% of DOE-recovered refunds had been placed for potential distribution to individual claimants. 271 F. Supp 2d 104 (D.D.C. 2003)

In <u>Con Ed V</u>, filed when DOE had failed to comply with the declaratory judgment for almost 5 months, (i) by virtue of the filing of the Complaint, Kalodner obtained the agreement of DOE to comply with the declaratory order, albeit only to the extent of $245 million of the $284 million which would be available for such purpose as of December 28, 2005, and (ii) by virtue of the

6

filing of a motion for summary judgment, Kalodner obtained the agreement of DOE to changes in the proposed methodology of calculating the distribution which would result in the distribution of the entire $284 million. When DOE agreed to the relief which Kalodner had sought, the action was dismissed as moot. (Memorandum Opinion of June 30, 2004)

In ruling on Kalodner's request for a common fund fee in <u>Con Ed V</u>, (decision of January 26, 2005 in 03-1991), Judge Collyer found that the <u>Con Ed IV</u> and <u>Con Ed V</u> litigation had been the catalysts which had caused DOE to agree to the distribution to claimants, and that it be in the full amount of available funds:

(i) "<u>Con Ed V</u> <u>insured</u> the implementation of the Court's declaratory judgment in <u>Con Ed IV</u> that DOE should disburse approximately $275 million in funds. <u>In responding to Con Ed V</u>, the DOE not only committed to a distribution but also committed to a specific methodology for calculating the per-gallon amount of that distribution," (emphasis supplied), and

(ii) "The Court agrees that Mr. Kalodner <u>was successful in two adverse civil suits</u> against DOE: in <u>Con Ed IV</u>, where he obtained a declaratory order requiring the DOE to distribute some $275 million in crude oil refunds which the DOE held in U.S. Treasury, and in <u>Con Ed V</u>, when the DOE voluntarily agreed to the relief there sought." (emphasis supplied)

In <u>Con Ed VI</u>, filed because DOE had failed to make

7

distribution on the schedule it had set in responding to Con Ed
V, and was threatening to withhold any distribution until the
conclusion of pending litigation which might affect the amount
available for distribution, Kalodner sought by motion for summary
judgment, and thereby obtained, (i) the agreement of DOE to
distribute immediately the 89.5% of such available funds as would
not be adversely affected by any pending litigation, retaining
10.5% for such awards as were being sought in such litigation,
and (ii) presumably, DOE's agreement to distribute such withheld
10.5% to the claimants to the extent, if any, to which it would
not be required by such litigation. ( As noted above, DOE agreed
with Kalodner's proposal that it withhold 10% of the funds
allocated to each claimant so that it would have the funds
necessary to pay a common fund fee in such amount as sought by
Kalodner and that it withhold approximately .5% so that it would
have the necessary funds for an award being sought by Mittal
Steel USA ISG, Inc.. 71 Fed. Reg. 2185 (Jan. 13, 2006). Upon
DOE's agreement to the 89.5% distribution, the action was
dismissed as moot.

Following its agreement to the immediate distribution relief
sought in Con Ed VI, DOE has already made allocations and an
89.5% distribution to some 29,500 claimants, more than 95% of
those eligible.

It is further appropriate to note, as background for a

discussion of the 03-1991 and 04-0152 motions for a common fund fee, that in Con Ed IV, after obtaining a declaratory judgment requiring distribution not only to his clients but to all claimants who would be eligible for such distribution, Kalodner sought a common fund fee. It was denied by Judge Collyer on the basis that the DOE, from whom the fee was sought, had sovereign immunity from paying a common fund fee to Kalodner as long as the funds from which the fee was to be paid remained in the U.S. Treasury. (Order of Dec. 4, 2003 in 01-0548RMC D.D.C.), affirmed, without opinion, 04-1141 (Fed. Cir. 2004).

    4. The 04-0152 Action

    In 04-0152 Kalodner sued the same eight claimants who are defendants in 06-0818, as class representatives of all those who would be found eligible by DOE for distribution of the remaining crude oil refunds (subsequently determined to be some 31,000 claimants). In the First Amended Complaint, filed March 9, 2004, Kalodner sought a common fund fee award of 10% of the amounts to be distributed to claimants, and an "Order directing the defendants on behalf of each... (claimant to whom distribution would be made) to direct the DOE to withhold the fee awarded to plaintiff (Kalodner) in each distribution made... (to claimants)."

    The suit was brought following the dismissal of Kalodner's motion for a common fund fee in Con Ed IV, and sought a common

9

fund fee on the basis of the declaratory judgment obtained by
Kalodner in Con Ed IV, as well as on the basis of his prior
services to claimants.

In his Complaint in 04-0152, Kalodner did not seek a common
fund fee on the basis of the success which he later obtained in
Con Ed V by virtue of DOE's agreement to make a final
distribution to claimants and to a methodology of calculating the
per gallon amount of such distribution which assured that the
distribution would be of the full available amount. ("Notice of
final procedures for distribution of remaining crude oil
overcharge refunds" issued May 13, 2004, and published at 69 Fed.
Reg. 29300 (May 21, 2004)).

Indeed, the First Amended Complaint in 04-0152 could not
have sought a fee for that success since it occurred more than 2
months after the First Amended Complaint had been filed.

(Although the DOE had proposed subsequent to the filing of
the Complaint in Con Ed V, after referring to the issuance of the
declaratory judgment in Con Ed IV, that it "will therefore make a
final distribution (to claimants)..." ("Notice of proposed
procedures for distribution of remaining crude oil overcharge
refunds and opportunity for comment" 68 Fed. Reg. 64098, Nov. 12,
2003, emphasis supplied), (i) it did not make a final commitment
to make distribution to claimants until issuance of the Notice of
final procedures May 13, 2004 , and (ii) the final distribution

10

it proposed in the Nov. 12 Notice, of $670 per million gallons, would have distributed only some $245 million of what would be an available fund of more than $284 million; the commitment to the Kalodner-proposed methodology assuring distribution of the entire amount of available funds did not occur until, and by, the issuance of the Notice of final procedures May 13, 2004.)

The 04-0152 action was filed following the Con Ed IV Court's suggestion in its Order denying Kalodner a common fund fee on the basis of DOE's sovereign immunity, that "A more suitable option would be for Mr. Kalodner (i) to initiate a separate lawsuit against applicable claimants-- i.e. those who do not have a fee arrangement with him-- under the common fund fee doctrine once Defendants distribute the monies from the 20% reserve, and (ii) to seek class certification under Rule 23 of the Federal Rules of Civil procedure, if so desired and assuming it is available," albeit noting that "The Court takes no position of whether such a lawsuit brought by Mr. Kalodner would have any merit." (Order of Dec. 4, 2003 in 01-0548). The 04-0152 suit was such an action, albeit filed prior to distribution rather than awaiting that event.

The 04-0152 action, although initially assigned to Judge Collyer as a related action, was reassigned to Judge Henry H. Kennedy.

Motions to Dismiss were filed by the defendants, and after

briefing, but without oral argument, were granted by Judge
Kennedy by Memorandum Opinion and Order issued December 20, 2004.
Judge Kennedy found that because the funds remained in the U.S.
Treasury, the Court lacked the necessary "control" of the funds
from which a common fund fee was sought.

An appeal was taken by Kalodner to the Court of Appeals for
the District of Columbia Circuit, as of 05-7009 in that Court.
After briefing and oral argument, in an Opinion disposing also of
the appeal in 03-1991, the D.C. Circuit, misconstruing the 04-
0152 action as seeking a common fund fee the Con Ed V success, as
well as for the Con Ed IV success, (i) affirmed the dismissal in
04-0152 as to Kalodner's "claim against the beneficiaries for his
work in Con Ed V ", and (ii) reversed and remanded as to the
dismissal of "Kalodner's claim against the beneficiaries... for
Kalodner's efforts in Con Ed IV." Consolidated Edison Co. v.
Bodman, 445 F. 3d 438, 460 (D.C. Cir. 2006). The D.C. Circuit
held that "Sovereign immunity poses no bar to Kalodner's fee
claims against the beneficiaries..."445 F. 3d at 449.

A parallel appeal which Kalodner had filed in the Court of
Appeals for the Federal Circuit and which had been deferred
pending consideration by the D.C. Circuit was dismissed following
the issuance of the D.C. Circuit's Opinion and the denial by the
D.C. Circuit of petitions for rehearing as to its decision in 03-
1991 and in another appeal which had been the subject of the same

12

Opinion.

In its Opinion ordering a remand, the D.C. Circuit reviewed
various "facts" with regard to whether the Con Ed IV declaratory
judgment had been the cause or catalyst which led DOE to the
determination to make distribution of the remaining available
crude oil refunds to the claimants, even though neither the 04-
0152 Court (Judge Kennedy) nor the 01-0548 Court in Con Ed IV
(Judge Collyer) had considered the issue.

The D.C. Circuit interpreted Judge Collyer's finding in Con
Ed V (03-1991) that "Con Ed V insured the implementation of the
Court's declaratory judgment in Con Ed IV that DOE should
disburse approximately $275 million in funds" as expressing no
finding as to "the effect of the declaratory judgment." 445 F. 3d
at 453. And it held that "the court's statement (Judge Collyer's
in her Order of January 26, 2005 in Con Ed V) that 'Kalodner was
successful in two adverse civil suits against DOE: in Con Ed IV,
where he obtained a declaratory order requiring the DOE to
distribute some $275 million in crude oil refunds...'... fails to
make a finding as to any substantive consequence of Kalodner's
'success.'". Id.

After its review of the "facts" with regard to the causative
or catalytic effect of the Con Ed IV declaratory judgment, the
D.C. Circuit concluded that remand was necessary for a factual
determination: "Given the ambiguities in OHA's (the DOE's Office

13

of Hearings and Appeals which is in charge of the matter for DOE) formal public position, we are unable to reach a conclusion about causation and we agree with the (Kalodner) clients and Kalodner that limited discovery may be useful to bring OHA's position to light and thus afford them an adequate opportunity to establish that DOE would not have paid out the refunds had Con Ed IV never been brought." 445 F. 3d at 455-456.

Among the issues of law on remand are: (i) in considering whether the declaratory judgment of Con Ed IV was the catalyst for the distribution to claimants, is the District Court bound by the factual misstatements by the D.C. Circuit, (ii) is the Court on remand barred from considering an amendment to the Complaint which asserts Kalodner's right to a common fund fee for his Con Ed V success and his Con Ed VI success.

5. The 03-1991 Action

In 03-1991 (Con Ed V), following DOE's publication of a Notice of final procedures May 21, 2005 in which it agreed to the relief sought by Kalodner in Con Ed V, i.e. (i) to commit to a distribution to claimants , and (ii) to the methodology of distribution proposed by Kalodner which would assure the distribution of all available funds, Kalodner moved for a common fund fee. DOE opposed such, solely on the basis that it had sovereign immunity because the funds to be distributed remained in the U.S. Treasury.

14

Judge Collyer found that the sovereign immunity defense by the DOE was not available to preclude the grant of a common fund fee award to Kalodner for obtaining the additional $39 million distribution by virtue of the change in methodology he had proposed (the difference between a distribution of $670 per million gallons, $245 million, as initially proposed by DOE, and a distribution of approximately $776.91 per million gallons, $284 million, pursuant to the changed methodology urged by Kalodner). The Court awarded a common fund fee of 30% on the $39 million obtained for claimants by the change in methodology suggested by Kalodner, explaining that "Mr. Kalodner recognized the problem (of using a methodology which would distribute only $245 million of the available $284 million), developed a solution to the benefit of the remaining, extant, claimants, and persuaded DOE to adopt his approach... the additional monies per gallon will be a totally unexpected recovery for claimants. To compensate the individual who obtained it with 30% of the recovery fulfills the equitable reasons for the common fund doctrine." ( Memorandum Opinion of January 26, 2005, emphasis supplied).

The Court recognized that, with the adoption of a methodology for calculating the amount per gallon (the "volumetric") to be distributed, the requirement of Boeing v. Van Gemert, 444 U.S. 472, 478-479 (1980) for the creation of a common fund, i.e. that "each member of a certified class has an

15

undisputed and mathematically ascertainable claim to a part of a lump-sum judgment received on his behalf", had been satisfied, and the award of a common fund fee was appropriate. As Judge Collyer explained, "Now that it has been determined how the amount due each claimant will be determined, it is possible to assess an attorney's fee award against the common fund in question."

Although Judge Collyer cited the Equal Access to Justice Act ("EAJA") 28 U.S.C. 2412 (b) as the statute providing the necessary sovereign immunity waiver rather than Section 209 of the Economic Stabilization Act ("ESA"), Pub. L. 92-210, 85 Stat. 743 (1971) which actually did provide the relevant waiver as part of the waiver which had permitted Kalodner's clients to bring the Con Ed V suit, in the precedential case relied upon by the Court, Commonwealth of Puerto Rico v. Heckler, 745 F. 2d 709 (D.C. Circ. 1984), the D.C. Circuit Court recognized (i) that the EAJA was required to waive sovereign immunity only in situations where the funds to be disbursed by the United States were grant funds, and (ii) that where, as here, the funds are distributed to claimants without the right of recall, the applicable principle is that once a common fund has been created from U.S. Treasury funds by litigation as to which sovereign immunity had been waived, as it was here by ESA Section 209, there is no sovereign immunity barrier to the award of a common fund fee.

16

In <u>Con Ed V</u>, the Court declined to award Kalodner a common fund fee for obtaining DOE's agreement to make a distribution (of $245 million) even though the principles informing the award to Kalodner on $39 million of the distribution would presumably be equally applicable as to the $245 million, because, as the Court explained: "this Court has already denied Mr. Kalodner a fee award for his work in <u>Con Ed IV</u>, Civ. No. 01-548 and that decision was sustained by the Federal Circuit. The denial of fees for that success is now finally resolved and cannot be relitigated." (Memorandum Opinion of January 26, 2005 in 03-1991)

Both the DOE and Kalodner appealed; Kalodner appealed the denial of a fee on the $245 million, to the D.C. Circuit, as of 05-5089 and to the Federal Circuit, as of 05-1309, and DOE appealed the grant of a common fund fee award on the $39 million, to the D.C. Circuit, as of 05-5223 and to the Federal Circuit as of 05-1450. In both Courts the appeals were consolidated. The Federal Circuit, on Kalodner's motion, deferred consideration pending the D.C. Circuit's decision.

After briefing and oral argument, the D.C. Circuit issued a decision reversing what it incorrectly represented was an award to Kalodner's clients rather than as it was, to Kalodner, and remanded to this Court what it misrepresented was "(Kalodner's) clients claims against the government relating to <u>Con Ed IV</u>." 445 F. 3d at 442; the claim for a common fund fee was by Kalodner,

17

not his clients, and the award of a common fund fee in part was
to Kalodner, not his clients.

    Among the issues of law on remand are: (i) inasmuch as the
reversal was of an award to Kalodner's clients and not of the
award actually made which was to Kalodner, what is the status of
the award to Kalodner; (ii) inasmuch as Kalodner's clients have
not sought, and do not intend to seek, a common fund fee,, does
the remand include consideration of the award which was sought,
i.e. by Kalodner; (iii) what is the effect of a remand of a case
which was not before the D.C. Circuit, i.e. <u>Con Ed IV</u> ; (iv) in
considering whether the declaratory judgment of <u>Con Ed IV</u> was the
catalyst for the distribution to claimants, is the District Court
bound by the factual misstatements by the D.C. Circuit, (v) may
Kalodner amend his motion for a common fund fee to add his
success in <u>Con Ed VI</u> as an additional basis for the 10% common
fund fee sought, and (vi) is the Court on remand barred from
considering Kalodner's right to a common fund fee for his <u>Con Ed
V</u> success.

    The last of these questions is particularly troublesome, for
it was the misrepresentation by the D.C. Circuit (i) that the
application for a fee had been by Kalodner's clients and that the
award had been to Kalodner's clients, and (ii) the
misrepresentation by the D.C. Circuit in the same Opinion that in
04-0152 HHK, Kalodner had claimed a common fund fee for his

services in Con Ed V which were critical in leading the D.C.
Circuit to express its views as to whether the Con Ed V
litigation had been the causative factor in obtaining DOE's
agreement to comply with the declaratory judgment in Con Ed IV
and had been the causative factor in obtaining DOE's agreement to
change the methodology to be employed in the distribution to one
which would increase the distribution from $245 million to $285
million.

Had the D.C. Circuit recognized that the common fee sought
from the government funds in 03-1991 was sought by Kalodner, not
his clients, and then implemented its views (i) that sovereign
immunity was a barrier to a claim for a common fund fee as long
as the funds were in the government's "possession" and (ii) that
the EAJA waiver was potentially available only to Kalodner's
clients as successful plaintiffs, not to Kalodner as their
lawyer, it would have reversed the grant of the fee award in part
and denied Kalodner's appeal from the denial of an award in part
solely on the basis of sovereign immunity, never reaching the
merits of the claim for a common fund fee for the Con Ed V
litigation. (Indeed, the D.C. Circuit should not have properly
reached the merits of the claim for a common fund fee in Con Ed V
even on its own theory; because it was considering a waiver of
sovereign immunity only under the EAJA, and because Kalodner's
clients had not "prevailed", i.e. obtained court ordered relief,

19

as the Court held, the EAJA waiver was not available even to
Kalodner's clients, and the merits of their claim were not
properly reached.)

The D.C. Circuit declined to consider whether a waiver of
sovereign immunity had been effected by virtue of ESA Section
209, holding that such issue was within the exclusive
jurisdiction of the Federal Circuit, albeit acknowledging that
had there been no need for reliance on the EAJA, it would not
have been necessary for the desired DOE action to have been
accomplished by a Court order.

Similarly, had the D.C. Circuit properly represented that
the claim of Kalodner against the claimants in 04-0152  had been
solely as to the services rendered in Con Ed IV, and that
Kalodner had made no claim for his services in Con Ed V for the
simple reason that he had not as yet been successful in Con Ed V,
it would have had no opportunity in reviewing the dismissal in
04-0152 to discuss whether the Con Ed V litigation had been the
cause of DOE's agreement to comply with the declaratory judgment
and to change the methodology of distribution.

Nor, did the third appeal consolidated in the D.C. Circuit
Opinion with the appeals in 03-1991 and in 04-0152 provide an
opportunity for the D.C. Circuit to discuss the merits of
Kalodner's claim based on the Con Ed V litigation. In that case,
Kalodner v. Abraham ("Kalodner III"), 05-0024 RMC in the District

20

Court, the D.C. Circuit affirmed the dismissal of the Complaint on the basis of sovereign immunity and the unavailability of the EAJA waiver to an attorney seeking a common fund fee; the D.C. Circuit did not address the possibility of a waiver of sovereign immunity by virtue of ESA Section 209 which had been urged upon it by Kalodner because it held that adjudication of that issue was within the exclusive appellate jurisdiction of the Federal Circuit.

Accordingly, all of the comments by the D.C. Circuit as to the causative effect of the Con Ed V litigation and its conclusion that the Con Ed V litigation was not the cause of DOE's compliance with the declaratory judgment and not the cause of the change by DOE of the distribution methodology were as to an issue not either appropriately or necessarily determined by the D.C. Circuit.

Under such circumstances , Kalodner is not precluded from asserting his right to a common fund fee on the basis of his Con Ed V success, either in the remands in 03-1991 and in in 04-0152 or in the 06-0818 action.

As the D.C. Circuit has repeatedly recognized,

"(T)he standards for establishing the preclusive effect of an earlier holding are:

First, the same issues now being raised must have been contested by the parties and submitted for judicial determination

in the prior case. Second the issue must have been actually and
<u>necessarily determined</u> by a court of competent jurisdiction in
that prior case... Third, preclusion in the second case must not
work a basic unfairness to the party bound by the first
determination." <u>Beverly Health & Rehab. Services Inc. v.</u>
<u>N.L.R.B,</u> 317 F. 3d 316, 322 (D.C. Cir. 2003) emphasis supplied,
the Court there quoting from its own prior decisions.

Here, the D.C. Circuit's holding that Kalodner's claim for a
common fund fee on the basis of his success in <u>Con Ed V</u> "fails
for lack of causation" fails to satisfy two of the requirements
for it to have a preclusive effect, i.e. for it to prevent
Kalodner from claiming for his <u>Con Ed V</u> success in the remands in
03-1991 and in 04-0152 and in the 06-0818 action, to wit (i) the
requirement that the issue was "necessarily determined", and (ii)
the requirement that preclusion "must not work a basic unfairness
to the party bound by the first determination":

(i)  Although the issue was "actually...determined" by the
D.C. Circuit, it clearly was not "necessarily determined," i.e.
it was not necessary for it to be reached (a) in 03-1991 and 05-
0024 because in both cases the D.C. Circuit found the plaintiffs
disqualified even to make the claim on jurisdictional grounds,
i.e. sovereign immunity, and (b) in 04-0152 because the issue was
not even present, and therefore could not have been decided at
all by the D.C. Circuit, let alone necessarily decided.

22

Even if the District Court had ruled in 03-1991 that the <u>Con Ed V</u> litigation had not been the cause of the DOE agreement to make a distribution and to make it in the full amount of the available funds-- and the District Court indeed had held exactly the contrary-- because the D.C. Circuit decided the appeal in 03-1991 on a jurisdictional, i.e. sovereign immunity, basis, there would be no preclusion preventing Kalodner from seeking a common fund fee in the remands in 03-1991 and in 04-0152 and in the 06-818 action for his <u>Con Ed V</u> success now that the jurisdictional barrier has been removed, i.e. by the elimination of sovereign immunity by virtue of the distribution of 89.5% of the funds to the claimants, with 10% being withheld solely for possible payment of a common fund fee. See <u>Yamaha Corp. Of America v. U.S.</u>, 961 F. 2d 245, 257 (D.C. Cir. 1992).

(ii) Precluding Kalodner from proving that his success in the <u>Con Ed V</u> litigation played a catalytic or causative effect in obtaining the DOE's agreement to make a distribution of the available funds, and to make it in the full amount of such funds would "work a basic unfairness" to him. Not only has he had no opportunity to offer proof in 04-0152 and 05-0024 by virtue of the dismissal of the complaints, upon a motion to dismiss in the former case and by the Court sua sponte in the latter case, but in 03-1991, although Kalodner was not afforded an opportunity to offer proof, the Court, based on its own knowledge of the impact

23

of the Con Ed V litigation by having presided over it and the Con
Ed IV litigation, found that Con Ed V did play such a catalytic
and causative effect: " Con Ed V insured the implementation of
the Court's declaratory judgment in Con Ed IV.... In responding
to Con Ed V, the DOE not only committed to a distribution bu also
committed to a specific methodology for calculating the per-
gallon amount of that distribution." (Memorandum Opinion of
January 26, 2005).

It is difficult to conceive of any unfairness which would be
greater than denying Kalodner the right to make a claim where (i)
the claimant, Kalodner, had never been offered an opportunity to
offer proof, and (ii) the District Court with first hand
knowledge of the relevant facts found that Kalodner's claim as to
the catalytic and causative effect of Con Ed V was meritorious.

6. The Application for a Common Fund Fee in the Con Ed VI
Action (05-0816 RMC D.D.C.)

As already noted, one of the issues in the 03-1991 and the
04-0152 remands is whether, absent consolidation, Kalodner would
be permitted to amend in order to rely on his success in Con Ed
VI as an additional basis for the common fund fee sought.

If the requested consolidation is granted, no such
amendments would be necessary, inasmuch as the issue has been
raised in the 06-0818 action by the claimant defendants and will
be determined in that action.

24

In the Con Ed VI litigation, following DOE's agreement to
the prayer of the Motion for Summary Judgment that it distribute
immediately 89.5% of the funds to which each claimant was
entitled, withholding only the 10.5% required in connection with
the common fund fee and Mittal Steel litigation, Kalodner moved
for a common fund fee for his success in that action. He
suggested to the Court that it might also take the opportunity to
award a fee for the Con d IV and Con Ed V successes, thereby
eliminating the necessity for the D.C. Circuit to consider the
appeals then pending, i.e. in 03-1991, 04-0152 and 05-0024.

The application was denied by Judge Collyer on the ground
that "This Court has already made an award of attorney's fees to
these plaintiffs for the totality of their EPAA litigation, and
they have appealed this decision to the D.C. Circuit...
Jurisdiction over their fee claims has passed to the Court of
Appeals and those claims will be rejected here." (Order of March
2, 2006 in 05-0816 RMC).

On appeal, the D. C. Circuit granted DOE's requested summary
affirmance, holding as to the common fund fee issue, that because
the fee was being sought from the 10% of funds being withheld,
there was available to DOE a sovereign immunity defense, and
sovereign immunity was not waived by the EAJA. (Order of August
7, 2006 in 06-5101 D.C. Cir.).

The claimant defendants have argued in their Motion to

25

Dismiss in 06-0818 that Kalodner is precluded from reasserting a claim for a common fund fee on the basis of his Con Ed VI success now that distribution has occurred "Because, as both this Court (Judge Collyer in Con Ed VI)) and the Court of Appeals found, Kalodner accomplished nothing in Con Ed VI..." (Claimants' Motion to Dismiss Memorandum, in 06-0818 at 6). Presumably, the claimant defendants will make the same argument in the remanded 04-0152 action should it not be consolidated with 06-0818, but proceed independently.

In fact, neither Court so found. Judge Collyer declined to award a fee apparently on the basis that because an appeal from this Court's denial of a full 10% fee as sought was on appeal in Con Ed V,, and in Con Ed VI Kalodner was seeking the same 10% which he was seeking on appeal, if he were successful in that appeal, he would be seeking nothing further in Con Ed VI.

Kalodner was, of course, not successful in that appeal (05-5089 in the D.C. Circuit). Kalodner now seeks no more than the 10% sought in Con Ed V, but does seek to add his success in Con Ed VI as a further justification for such a fee.

Even if Judge Collyer's opinion is read as an expression that the Court believed its previously awarded fee of 30% of some $39 million, or some $11.7 million, was adequate to include any additional service rendered in Con Ed VI, such a basis for denying a fee for the Con Ed VI success no longer exists, now

that the D.C. Circuit has vacated the awarded fee.

Judge Collyer certainly did not find that "Kalodner accomplished nothing in Con Ed VI" as defendant claimants maintained in their motion to dismiss in 06-0818; as the Court was aware, DOE's agreement to make immediate distribution of 89.5% came in a response to Kalodner's Motion for Summary Judgment in Con Ed VI.

As to the D.C. Circuit, the defendant claimants' assertion in 06-0818 that the D.C. Circuit had held "Kalodner accomplished nothing in Con Ed VI" is a deliberate misrepresentation of the D.C. Circuit's holding that "appellants did not obtain court-ordered relief in Con Ed VI." (Emphasis supplied). The D.C. Circuit was there dealing with the question of whether the Con Ed VI success in obtaining an 89.5% distribution occurred pursuant to a court order, a determination which the Court deemed critical to determine whether Kalodner's clients could seek a common fund fee pursuant to the EAJA; it held that the EAJA could only be used to obtain a waiver of sovereign immunity if the relief for which a common fund fee was sought was as the result of a Court order, rather than relief obtained administratively as to which the litigation had been the catalyst. (The D.C. Circuit's holding was in any event irrelevant; the common fund fee in Con Ed VI was sought not by Kalodner's clients but by Kalodner who could not claim the benefit of an EAJA waiver, and the Court failed to

consider a waiver of sovereign immunity by ESA Section 209 for which Kalodner argued, a waiver which would have made him eligible for a common fund fee upon a finding that the Con Ed VI litigation was the cause or catalyst which obtained the 89.5% distribution.)

Because, subsequent to the filing of the motion for a common fund fee in Con Ed VI, at which time distribution had not yet begun, there has been distribution of 89.5% of the funds and an apparent commitment to distribute the balance to claimants to the extent not required for distribution to Kalodner or Mittal Steel (71 Fed. Reg. 2195, January 13, 2006), the sovereign immunity barrier which was the basis of the D.C. Circuit's affirmance no longer exists. In any event it clearly does not exist as to the 89.5% which is no longer in the government's possession.

In the absence of a sovereign immunity barrier, and in the absence of a finding on the merits as to the Kalodner Con Ed VI common fund fee claim by either Judge Collyer or the D.C. Circuit, there is no barrier precluding Kalodner from now relying on the acceleration of distribution which he obtained in Con Ed VI, thereby both preserving and increasing the common fund for claimants, as supporting his claim for a 10% common fund fee.

Finally, it should be noted that even if Judge Collyer's Order denying a common fund fee in Con Ed VI is read somehow as a denial on the merits, it does not preclude Kalodner from a second

try in light of the fact that the D.C. Circuit affirmed solely on

jurisdictional grounds. <u>Yamaha Corp. Of America v. U.S.</u>, 961 F.

2d 245, 257 (D.C. Cir. 1992).

Accordingly, if the remanded actions in 04-0152 and 03-1991

are not consolidated with 06-0818 and are instead handled

separately, in both cases motions will be made to amend in order

to add the <u>Con Ed VI</u> success as an additional basis for the

requested 10% common fund fee.


<u>ARGUMENT</u>

If the requested consolidation is not granted, the remanded

action in 04-0152 will be litigated before Judge Kennedy, while

the remanded action in 03-1991 will be litigated before Judge

Collyer, as will the new action, 06-0818.

Such simultaneous litigation before different Judges of the

same or related issues  (i) is a wasteful use of judicial

resources, (ii) poses the threat of inconsistent results, (iii)

threatens the possibility that some 29,500 claimants will be

required to remit pro rata shares of a common fund fee to the DOE

for payment to Kalodner while the DOE continues to withhold 10%

of each claimant's pro rata share of refunds precisely for the

purpose of paying any common fee awarded, (iv) threatens the

possibility that the DOE may be required to accomplish such

recovery from claimants, and (v) poses the threat of a result

which is inconsistent with the determination of another pending
matter before Judge Collyer, <u>Consolidated Edison Co. v. Bodman</u>,
06-1522RMC D.D.C.

Each of these reasons for consolidation will be considered
in turn.


I    <u>CONSOLIDATION IS NECESSARY TO AVOID WASTING JUDICIAL</u>
<u>RESOURCES</u>

At the minimum, the simultaneous conduct of litigation
before two separate Judges, rather than proceeding before one
Judge in a single action, constitutes a grossly inefficient
expenditure of judicial resources. Both Courts will be required
to consider various issues common to all three actions, e.g.
whether the remanded actions are properly amended to include the
<u>Con Ed V</u> and <u>Con Ed VI</u> successes as the basis for the requested
common fund fee, (ii) what is the proper test to employ in
determining whether the declaratory judgment in <u>Con Ed IV</u> was the
catalyst which caused the DOE to make a distribution to
claimants, and to make it in the full amount of available funds,
and (iii) what is the extent of discovery as to DOE's motivations
for agreeing to distribution to claimants which is properly
permitted.

The D.C. Circuit has warned against the simultaneous conduct
of litigation involving the same controversy in two separate

30

forums: "Sound judicial administration counsels against separate proceedings and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided." Columbia Plaza Corp. V. Security Nat. Bank, 525 F. 2d 620, 626 (1975). As the Court explained in that case, which involved litigation in two different District Courts, "We take note of crowded court dockets across the country, and the consequent desirability of deciding common issues in one tribunal rather than two." id

Here, of course, the elimination of such inefficiency can be resolved far more easily than by having one Court enjoin the other, as was required and endorsed in enjoining one action by the other Court in Columbia Plaza Corp. V. Security Nat. Bank, By consolidation of the two remanded actions, 03-1991 and 04-0152 with the 06-0818 action pending before Judge Collyer, consideration of the same and related issues by two separate Judges can be avoided.

Avoidance of judicial inefficiency could also be accomplished by dismissal without prejudice of the 03-1991 and 04-0152 remands inasmuch as the remaining case, 06-0818 seeks all the relief sought in the two remanded actions. Consolidation is recommended instead out of respect for the D.C. Circuit; consolidation will honor the concept of remanding, while avoiding the inefficiency which would be the result of separate

consideration of the remands by two Judges.


II    CONSOLIDATION IS NECESSARY TO AVOID THE POSSIBILITY OF
INCONSISTENT OR DUPLICATIVE RESULTS

Were this controversy to be pursued in the two remanded
actions before two Judges, and even if not pursued in the
separate 06-0818 action, it would also pose the threat either of
duplicative results, i.e. with Kalodner being awarded a 10%
common fund fee in both cases and therefore entitled to recover a
10% fee from both the DOE and the claimants, or inconsistent
results, i.e. with Kalodner found entitled to a common fund fee
in one case and not entitled to a common fund fee in the other,
or with a different percentage common fund fee awarded in the two
actions.

Moreover, there is also a threat of inconsistent rulings
with regard to the issues which will require determination in the
course of the remanded litigation and the 06-0818 litigation,
e.g. whether the remanded actions are properly amended to include
the Con Ed V and Con Ed VI successes as the basis for the
requested common fund fee, (ii) what is the proper test to employ
in determining whether the declaratory judgment in Con Ed IV was
the catalyst which caused the DOE to make a distribution to
claimants, and to make it in the full amount of available funds,
and (iii) what is the extent of discovery as to DOE's motivations

for agreeing to distribution to claimants which is properly
permitted

As the D.C. Circuit explained in <u>Columbia Plaza Corp. V.
Security Nat. Bank</u>, <u>supra</u>, 525 F. 2d at 626, another reason for
avoiding consideration of the same controversy in actions before
two Judges "in addition to economic factors, (is) the value of
eliminating the risk of inconsistent adjudications and races to
obtain judgments."


III <u>CONSOLIDATION IS NECESSARY TO AVOID THE POSSIBILITY THAT
29,500 CLAIMANTS WILL BE REQUIRED TO REMIT A COMMON FUND FEE
WHILE THE DOE HOLDS 10% FOR THAT VERY PURPOSE</u>

The 06-818 action seeks sequentially, (i) that DOE be
ordered to pay any awarded common fund fee from the 10% withheld
for such purpose, (ii) if that relief is denied, that the
defendant claimants on behalf of all who have received
distribution be ordered to direct the DOE to use the withheld 10%
to pay any awarded common fund fee, and (iii) only if the Court
declines to order both of the foregoing, that the claimants who
have received an 89.5% distribution be ordered to remit the
percentage common fee awarded from the 89.5% which they have
received.

Consolidation of the two remanded actions with the 06-818
will preserve that sequence, as indeed could consolidation of the

remanded actions alone even if there was no 06-818 action, provided only that the Court determined to decide the cases sequentially, i.e. 03-1991 first and then 04-0152.

On the other hand, if the two remanded actions proceed simultaneously, and the 04-0152 action is first determined and a common fund fee there awarded, and if the Court so awarding a common fund fee against the claimants declines to order the claimant representatives to direct the DOE to use the 10% withheld for the awarded common fund fee, or being so directed DOE refuses, then the claimants may be faced with the need to remit their shares of the common fund fee to DOE or Kalodner even though the DOE is still holding the 10% for such purpose.

Such a result would obviously not be in the best interests of anyone, certainly not in the best interests of the claimants.

Indeed, if the 04-0152 Court were to order a percentage common fund fee to be paid as to the 89.5% distributed, but not as to the 10.5% still in the DOE's hands, and the DOE then distributed the 10.5%, giving rise to a requirement that a common fund fee be paid by claimants as to the 10.5%, the situation would be even worse: the claimants would be required to make two separate remittances of the awarded common fund fee.

Consolidation of the two remanded actions with the 06-0818 actions which contains the proper sequential determination is the best method of avoiding the inefficiencies which would attend

34

upon the need for the claimants to remit common fund fees while
the DOE continued to hold the 10% which it withheld for that very
purpose.


IV  BY PRESERVING THE SEQUENCE OF REMEDIES SOUGHT IN 06-818,
CONSOLIDATION WOULD AVOID THE POSSIBLE NEED FOR DOE TO RECOVER
FROM CLAIMANTS

    Although, if an award against the claimants in the 04-0152
action were to occur first, it is hard to believe that DOE would
refuse to use the withheld 10% to pay the award, should it do so,
perhaps because of an insistence on sovereign immunity, DOE would
be required to recover the awarded fee from the claimants at its
own cost. National Treasury Employees Union v. Nixon, 521 F. 2d
317 (D.C. Cir. 1975).

    In that case, a union of U.S. Treasury employees had
recovered a pay increase in litigation, and the President, by
Executive Orders, implemented that pay raise not only for the
Treasury employees but for all federal employees covered by the
statute pursuant to which the Treasury Employees had recovered, a
total of 3 and ½ million employees. The D.C. Circuit found a
common fund fee properly available to the successful plaintiffs
and their attorneys pursuant to the common fund fee doctrine, and
rejected the argument of the government that it had sovereign

immunity because the obligation to recover a common fund fee from 3 and ½ million employees to whom the pay raise had been paid would be an "imposition of an expense upon the government."

Consolidation will avoid such a possible burden on the DOE by first determining whether either (i) the DOE can be directed to use the 10% withheld to pay the awarded common fund fee, and if not (ii) whether DOE would consider it appropriate to honor a direction of the claimants that it use the 10% withheld from them to discharge their obligation to pay a common fund fee. It would be only if both those methods of paying the common fund fee from the 10% were rejected that the DOE would be faced with the obligation to recover from the claimants.

The situation would, of course, be worse if the DOE were required to recover a fee from the claimants as to the 89.5% distributed to them, then required to distribute the withheld 10%, and then required to recover a common fund fee as to that 10% from the claimants.

V CONSOLIDATION OF THE THREE ACTIONS BEFORE JUDGE COLLYER WILL AVOID A POTENTIAL CONFLICT WITH A PENDING ACTION BEFORE JUDGE COLLYER, CONSOLIDATED EDISON CO. V. BODMAN, 06-1522

Pending before Judge Collyer is an action by, and on behalf of, Kalodner's clients with whom he has fee agreements and as to whom he has consequently waived any right to a common fund fee

36

seeking immediate distribution to them of the 10% which has been
withheld from them for potential use as a common fund fee.
Consolidated Edison Co. V. Bodman, 06-1522,

Were the 04-152 remanded action to result in the
certification of a class which included all claimants, including
Kalodner's clients, and a common fund fee awarded, and were
Kalodner's clients successful in the 06-1522 litigation in
obtaining a recognition that no common fund fee should be
assessed against them, a conflict would exist between the two
decisions.

Although there is no request for consolidation of the 06-
1522 action with the actions here sought to be consolidated, 03-
1991, 04-0152 and 06-0818, the consolidation here sought, by
assigning the consolidated action to Judge Collyer, would
effectively avoid such a conflict.

Moreover, should Judge Collyer determine it appropriate to
consolidate the 06-1522 action with the actions consolidated
pursuant to the instant motion, such could be accomplished easily
by the Court.


VI CONSOLIDATION BEFORE JUDGE COLLYER WILL PLACE THE COMMON FUND
FEE AWARD LITIGATION IN THE COURT WITH THE MOST DIRECT KNOWLEDGE
AS TO ITS MERITS

The Con Ed IV, Con Ed V, and Con Ed VI litigation on the

37

basis of which a common fund fee award is principally sought were all conducted before Judge Collyer.

Accordingly, Judge Collyer is most aware of the catalytic or causative effect of that litigation in obtaining distribution of the $284 million to claimants, and is in a better position than any other Judge to make a determination as to causation.

Consolidation of all of the litigation with regard to the Kalodner application for a common fund fee before Judge Collyer will not only have the advantage of Judge Collyer's first hand knowledge, but will actually result in the situation which is normally the case where a common fee is sought, i.e. the Judge before whom the litigation has been conducted upon the basis of which a common fund fee is sought is the Judge who determines the common fund fee award.

<u>CONCLUSION</u>

For the reasons above set forth, most particularly in the interest of the efficient use of judicial resources and the avoidance of possible conflicts, the motion to consolidate the remanded actions in 03-1991 and 04-0152 with 06-0818 before Judge Collyer should be granted.

Respectfully submitted,

_____
Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
610-649-8749
DC Bar 973578

October 26, 2006                    Attorney for Plaintiffs
                                    in 03-1991 and
                                    Pro Se in 04-0152 and 06-0818

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

PHILIP P. KALODNER            :
     Plaintiff             :
                         :
        v.                :
                         :    CIVIL ACTION NO.
SAMUEL BODMAN ,Secretary of Energy,:
United States; GEORGE B. BREZNAY   :    No. 1:06-cv-00818(RMC)
Director, Office of Hearings and    :
Appeals; AND                 :
                         :
PUBLIC SERVICE ELECTRIC & GAS CO.; :
EASTMAN CHEMICAL COMPANY; GENERAL   :
MOTORS CORPORATION; SEAGROUP, INC. :    CLASS ACTION
GENERAL COUNCIL ON FINANCE AND     :
ADMINISTRATION OF THE UNITED       :
METHODIST CHURCH; CITY OF NEW YORK;:
ZIM ISRAEL NAVIGATION CO. LTD;     :
FLORIDA POWER CORPORATION         :
     Defendants            :
                         :

---

CONSOLIDATED EDISON COMPANY OF     :
NEW YORK, INC. Et al           :
     Plaintiffs           :
                         :
         v.            :    Civil Action No.
                         :    1:03CV01991(RMC)
SPENCER ABRAHAM,  SECRETARY OF     :
ENERGY OF THE UNITED STATES        :
et al                        :
     Defendants           :

---

PHILIP P. KALODNER            :
        Plaintiff         :
                         :
        v.                :
                         :    CIVIL ACTION NO.
PUBLIC SERVICE ELECTRIC & GAS CO.   :    1:04CV00152 (HHK)
et al                        :
        Defendants         :

---

CERTIFICATE OF SERVICE

1

I hereby certify that I have served copies of Motion to Consolidate, the Statement of Points and Authorities In Support of Motion to Consolidate, and a Proposed Order to Consolidate this 26th day of October, 2006 by federal express, overnight delivery, upon the following:

Michael F. Healy
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. N.W.
Washington D.C. 20004

Counsel for defendants-appellees
Public Service Electric & Gas Co., Eastman
Chemical Co. and General
Motors Corp. In 06-1818

And by first class mail upon the following:

John R. Low-Beer
Assistant Corporation Counsel
100 Church St. Room 3-162
New York, N.Y. 10007

Attorney for defendant
City Of New York in 06-0818

                                    _____

                                    Philip P. Kalodner

2