UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PHILIP P. KALODNER** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: 06-0818 (RMC) |
| | ) |
| **SAMUEL BODMAN, et. al.** | ) |
| | ) |
| Defendants. | ) |

### FEDERAL DEFENDANTS' REPLY
### TO PLAINITFF'S OPPOSITION TO MOTION TO DISMISS

The Plaintiff, Philip P. Kalodner ("Kalodner"), filed a 58-page memorandum in opposition to the Government's Motion to Dismiss. The Motion to Dismiss is grounded in the fact that the Plaintiff's claim for money judgment for a common fund attorney fee has been dismissed in three previous decisions.[1] One would think that a brief in opposition would focus on the three prior cases in which Kalodner himself was the plaintiff. Yet, Kalodner took the opportunity to bring in a slew of cases he filed on behalf of his clients that have nothing to do with Defendants' Motion to Dismiss. His brief reads more like a bitter "memoir" of a person who has been misunderstood by all, but most gravely, by the D.C. Circuit Court. Navigating through the complex thought process exhibited in Kalodner's brief is not an easy task, but the Defendants will attempt to draw the Court's attention to the relevant arguments.

The argument in Kalodner's 58-page brief begins on page 38.[2] In his first proposition Kalodner properly observes that the dismissals of the three prior Kalodner cases on sovereign

---

[1] Defendants had an additional ground – lack of subject matter jurisdiction to the extent that the Federal Circuit Court had jurisdiction over the same issue– but withdrew that argument when the Federal Circuit dismissed Kalodners' appeal on October 4, 2006.

[2] Defendants do not believe it is the time and place to engage in a discussion regarding the ConEd IV, V and VI cases, to which the majority of the Plaintiff's brief is devoted, but which are relevant only as background information for Kalodner's claim for fees. They are a distinct and separate line of cases which will undoubtedly

1

immunity grounds were either due to the fact that he did not offer a waiver (in *Kalodner I*) or because the EAJA waiver was not available to the attorney of a party to a lawsuit (*Kalodner II* and *Kalodner III*). Pl.'s brief at 39. He argues that there is no issue preclusion (collateral estoppel) or claim preclusion (*res judicata*) because of the following differences with the prior lawsuits: 1) he now seeks attorney fees from the 89.5% that has already been distributed and thus not in the "possession" of the Government; 2) the 10% that the Office of Hearing and Appeals (OHA) allocated for payment of attorney fees is held by the Department of Energy (DOE) as an agent for the claimants, not as sovereign; 3) the previous decisions determined the issue of waiver under the EAJA, but not under section 209 of the Economic Stabilization Act (ESA); and 4) there has been no judgment on the merits and, therefore, no *res judicata*. His second proposition, beginning on page 50, is on the merits of the sovereign immunity defense and the "possible" waiver under Section 209 of the ESA.

**A.    Issue and Claim Preclusion Apply to Kalodner IV.**

With three prior lawsuits dismissed, two of which were appealed and affirmed, there is no question that Kalodner had an opportunity and did fully litigate his claim for attorney fees against the Government.

   **1.    The Government is in possession of the funds.**

Being aware that he will have no luck in this case if the money he seeks is in the possession of the Government, Kalodner tries to re-characterize his claim as one for money that OHA has already paid out. The problem with this is that OHA has reserved approximately 10.5% of the restitution fund and, depending on the outcome of this and the other lawsuits that Kalodner generates, the money would be paid out to Kalodner or to his clients as attorney fees,

---

get their day in court as part of a remand in ConEd V and in a new lawsuit, *Consolidated Edison v. Bodman*, D.D.C case no. 06-1522 (RMC), filed August 29, 2006. The D.C. Circuit Court has made it clear that lawsuits by Kalodner himself and by his Clients should be treated differently.

or to the claimants in a final distribution, or both. It certainly makes no sense to entertain the wild hypothesis that, if ordered by this Court, OHA will not pay attorney fees from the 10% it has reserved precisely for such a situation, but instead will disregard the order, distribute the money to the claimants, and then go after them to recover the 10%. *See* Pl.'s brief at 5. Indeed, if DOE has no possession of the money, it should not even be a defendant in this lawsuit. This re-characterization of the claim is a poor attempt to avoid the application of the doctrine of claim and issue preclusion and should be rejected.

Equally futile is Kalodner's argument that the Government holds the money as an agent for the claimants. Kalodner's argument, that the Government holds the money in escrow and thus is not protected by sovereign immunity, was already considered and rejected:

> Although arguing that this action "is against the United States only in its capacity as escrowee of funds belonging to end users found entitled to restitution," Appellant's Reply Br. at 16-17, Kalodner's common fund fee claim nevertheless implicates federal sovereign immunity for a simple reason: He seeks funds in the United States Treasury.

*Kalodner v. Abraham*, 310 F.3d 767, 769 (D.C. Cir. 2002). A substitution of the term "holding in escrow" with "holding as an agent" is not going to get Kalodner a different result, because "the *sine qua non* of federal sovereign immunity is the federal government's *possession* of the money in question." *Id.* at 770.

### 2. Section 209 of the ESA does not prevent the application of the doctrine of claim/issue preclusion.

Kalodner ties to avoid collateral estoppel by claiming that no court has yet ruled on the "possible" waiver under section 209 of the ESA. Assuming, *arguendo*, that Section 209 is a possible waiver to sovereign immunity, the law of collateral estoppel would still bar this case from going forth, for the reasons explained in *Yamaha Corp. of America v. U.S.*, 961 F.2d 245 (D.C. Cir. 1992). Kalodner does not offer any argument or legal support to defeat the proposition therein that "plaintiff may not raise new argument in second proceeding even though

3

it was never made in first proceeding; so long as argument could have been made it is precluded" and, if previously litigated and the "issue was one of law, new arguments may not be presented to obtain a different determination of that issue." *Id.* at 254-55.  The law is clear that if the argument was available and was not raised, it is now barred.

It is not necessary for Defendants to examine all of Kalodner's briefs to find out whether he raised the Section 209 waiver previously or whether the courts ruled on it, because the end result is the same.  If he did raise it, but it was not considered or ruled upon, his remedy is to appeal the decision to a higher court, not file a new lawsuit.  If he did not raise it, then he missed the opportunity to do so, and should not get a second chance (he is now going for chance number four).  The availability of a waiver as part of the restitution proceeding by claimants injured by violations of the EPAA was considered in *Kalodner I* and rejected:

> Kalodner has also failed to identify a statutory waiver of immunity that would allow him to bring his common fund fee claim. Congress has waived sovereign immunity for Subpart V claimants--parties actually injured by violations of the EPAA--by authorizing them to seek refunds from escrow accounts held by the United States Treasury and to challenge awards to other claimants. . . . But as Kalodner concedes, he is not a Subpart V claimant nor was he injured by a violation of the EPAA.

*Kalodner v. Abraham*, 310 F.3d 767, 770 (D.C. Cir. 2002).  In *Kalodner II*, he argued that because the Federal Circuit has found no sovereign immunity from a suit by an injured end user that had been denied recovery under section 209, then there can be no sovereign immunity as to a small charge of attorney fees against such funds.  *See* Ex. 4 to Def.'s Mot. to Dismiss.  The Court apparently was unconvinced and, despite Kalodner expressly disclaiming reliance on the EAJA waive, the Court felt that the EAJA was the only common fund fee waiver, albeit inapplicable to Kalodner's claim:

> A common-fund fee award itself requires an unequivocal waiver of sovereign immunity. The only common-fund waiver is found in a provision of the Equal Access to Justice Act, *28 U.S.C. § 2412(b)*, and it is wholly inapplicable to the plaintiff.

*Kalodner v. Abraham*, 309 F. Supp. 2d 100, 103 (D.D.C. 2004). Kalodner did not appeal.

In the appeal of *Kalodner III*, "in anticipation of the failure" of the argument that sovereign immunity is simply out of the picture, Kalodner and his clients asserted the EAJA waiver. *Consolidated Edison v. Bodman*, 445 F.3d 438, 446 (D.C.Cir. 2006). They also invoked ESA § 209 as yet another waiver theory.

> At the outset, we note that we're puzzled by the theory of § 209's relevance. Kalodner and his clients argue that because the underlying suits waived sovereign immunity under ESA, immunity was also waived as to any request for attorneys' fees. But the ESA jurisdictional basis that they asserted for their suits in Con Ed IV and Con Ed V was § 210, not § 209.

*Id.* at 449. Kalodner cannot now be permitted to raise the Section 209 waiver after either failing to do so, or failing to appeal a decision that arguably did not rule on its applicability. If an argument is available at the time of determination, a party cannot sit on it, wait to see what the result will be, and if adverse, file a new lawsuit to assert the left-over arguments.

        3.        **The previous judgments were on the merits and *res judicata* applies.**

Lastly, Kalodner argues that *res judicata* is not applicable to judgments not on the merits. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90 (1980). Kalodner takes the position that a dismissal on sovereign immunity grounds is a dismissal for lack of jurisdiction, which, in turn, is not on the merits. In support, he cites *Fornaro v. James*, 416 F.3d 63, (D.C. Cir. 2005). He also points to Fed.R.Civ. P. 41(b), which provides that a dismissal for lack of jurisdiction is not an adjudication on the merits. However, the dismissals of *Kalodner I, II* and *III*, while also on sovereign immunity grounds, were not for lack of jurisdiction, but for failure to state a claim upon which relief can be granted.

There is a distinction between the *Fornaro* case and the *Kalodner* cases. In *Fornaro*, the claim was dismissed for lack of jurisdiction and the court found that although the APA provides a waiver for certain claims, it also excludes "claims for which an adequate remedy is available elsewhere." *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005). The administrative provisions in the *Fornaro* case were said to be exclusive provisions and "may not be supplemented by the recognition of additional rights to judicial review. . . .The legislation establishing the authority of [modern regulatory] agencies usually defines the scope of judicial review over their actions and sovereign immunity will generally continue to bar other kinds of lawsuits against them as a consequence of the proviso to Section 702." *Id.* at 66. In other words, the courts have no jurisdiction, but a remedy is available with an agency.

Unlike, *Fornaro,* Kalodner's lawsuits were dismissed for failure to state a claim. The failure to point to a waiver, which Kalodner claims exists, is not a matter of jurisdiction. Such dismissal is one on the merits, because the court has considered the claim and the defense. Once that is done, the claim fails, but not for want of jurisdiction. Indeed, in *Drake v. Cappelle*, 2005 U.S. Dist. LEXIS 5037 at 30, D.D.C. Civ. Case No.02-1049(SBC), the Court examined the effect of a dismissal for failure to state a claim (one of the claims was dismissed on sovereign immunity grounds) on *res judicata*:

> Both FAA I and FAA II were dismissed for failure to state a claim by the district court. The dismissals were upheld on appeal. *See Drake v. FAA, 2001 U.S. App. LEXIS 7557 (D.D.C. March 16, 2001)*; *Drake v. FAA, 351 U.S. App. D.C. 409, 291 F.3d 59 (D.C. Cir. 2002)*. Thus, courts of competent jurisdiction rendered final judgments on the merits in both FAA I and FAA II, and the fourth *res judicata* element is satisfied. *See Polsby v. Thompson, 201 F. Supp. 2d 45, 49 (D.D.C. 2002)*.(dismissal for failure to state a claim is a final judgment on the merits for purposes of *res judicata.*)

**B.      The claim for money judgment against the Government is barred by sovereign immunity.**

To avoid the sovereign immunity application, Kalodner tries to mold his claim after the facts in *National Treasury Employees Union v. Nixon*, 521 F. 2d 317 (D.C. Cir. 1975) where the government had already paid out money and was using sovereign immunity to avoid having to pay the cost of collection of a portion of the payments to pay attorney fees. However, this is not the case here, and the Government is in possession of an amount that will satisfy the 10% Kalodner seeks. Since "possession" is sufficient to establish the defense, Kalodner's claim is barred, absent a waiver.

Kalodner has given up on the EAJA waiver and is pushing for the application of a Section 209 waiver. The Defendants do not believe that the Court should entertain it for the reasons stated above – it was considered, was rejected and is now precluded as a possible issue. In any event, Section 209 of the ESA on its face does not provide a private cause of action, let alone an action for attorney fees by counsel for a claimant: It reads:

> Injunctions and other relief. Whenever it appears to any person authorized by the President to exercise authority under this title that any individual or organization has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any order or regulation under this title, such person may request the Attorney General to bring an action in the appropriate district court of the United States to enjoin such acts or practices, and upon a proper showing a temporary restraining order or a preliminary or permanent injunction shall be granted without bond. Any such court may also issue mandatory injunctions commanding any person to comply with any such order or regulation. In addition to such injunctive relief, the court may also order restitution of moneys received in violation of any such order or regulation."

85 Stat. 743.

In *Consolidated Edison Co. v. O'Leary*, 117 F.3d 538, 544 (Fed. Cir. 1997), the Court observed that section 209 of the ESA creates a public cause of action to enforce price controls and Section 210 creates a private cause of action to enforce the same. The Defendants, like the D.C Circuit Court, are "puzzled" by Kalodner's reliance on the public

7

cause of action for enforcement of price control in order to claim attorney fees.  Kalodner does not provide any legal support for his "theory" and the Court should disregard it.

For the forgoing reasons, the Federal Defendants pray that the Court dismiss all claims against them with prejudice.

Respectfully submitted,

STEPHEN C. SKUBEL, D.C. Bar # 256461

_____/s/_____
ADA. L. MITRANI, D.C. Bar # 498560

U.S. Department of Energy
Office of the General Counsel, GC-32
1000 Independence Ave, SW
Washington DC, 20585
202-586-5550

## CERTIFICATE OF SERVICE

I, Ada L. Mitrani, certify that on this 27th day of October, 2006, I caused a true and correct copy of this document to be served by first class mail, postage prepaid to:

City of New York
100 Church St.
New York, NY 10007
*Defendant*

_____
/s/ ADA L. MITRANI
