**EXHIBIT A**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

05-7009

PHILIP P. KALODNER,

Plaintiff-Appellant

v.

PUBLIC SERVICE ELECTRIC & GAS COMPANY,
EASTMAN CHEMICAL COMPANY, FLORIDA POWER CORPORATION
and GENERAL MOTORS CORPORATION,

Defendants-Appellees

and

GENERAL COUNCIL ON FINANCE AND ADMINISTRATION
OF THE UNITED METHODIST CHURCH,
SEAGROUP, INC. AND ZIM ISRAEL NAVIGATION COMPANY, LTD.

Defendants-Appellees

and

CITY OF NEW YORK

Defendant-Appellee

Appeal from the United States District Court for the District of
Columbia in case No. 04-CV-0152, Judge Henry H. Kennedy Jr.

APPELLANTS' INITIAL BRIEF

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
610-649-8749
DC Bar 97357

June 20, 2005          APPELLANT PRO SE

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

05-7009

PHILIP P. KALODNER,

Plaintiff-Appellant

v.

PUBLIC SERVICE ELECTRIC & GAS COMPANY,
EASTMAN CHEMICAL COMPANY, FLORIDA POWER CORPORATION
and GENERAL MOTORS CORPORATION,

Defendants-Appellees

and

GENERAL COUNCIL ON FINANCE AND ADMINISTRATION
OF THE UNITED METHODIST CHURCH,
SEAGROUP, INC. AND ZIM ISRAEL NAVIGATION COMPANY, LTD.

Defendants-Appellees

and

CITY OF NEW YORK

Defendant-Appellee

Appeal from the United States District Court for the District of
Columbia in case No. 04-CV-0152, Judge Henry H. Kennedy Jr.

<u>CERTIFICATE OF COUNSEL AS TO PARTIES,</u>

<u>RULINGS AND RELATED CASES</u>

Philip P. Kalodner, appearing pro se, certifies the

following:

(A) <u>Parties and Amici</u>

Plaintiff below and appellant here is Philip P. Kalodner, an

(i)

individual.

The defendants below were, and the appellees here are,
Public Service Electric & Gas Company, Eastman Chemical Company,
Florida Power Corporation, General Motors Corporation, General
Council of Finance and Administration of the United Methodist
Church, Seagroup Inc., Zim Israel Navigation Company, LTD, and
the City of New York.

There were no interveners or amici in the District Court,
and none are anticipated in this Court.

(B) Rulings Under Review

The rulings at issue in this Court are (i) a Memorandum
Opinion and Order entered December 20, 2004 granting the motions
of seven defendants to dismiss and ordering that judgment be
entered for such defendants and against plaintiff, and (ii) an
Order entered January 1, 2005 granting the motion of the
remaining defendant to dismiss and entering judgment for such
defendant and against plaintiff, all entered by Judge Henry H.
Kennedy Jr. of the District Court for the District of Columbia.
There is no official citation available.

(C) Related Cases

The case on review has not previously been before this
Court.

An appeal from the same District Court Opinion and Orders
has been taken to the Court of Appeals for the Federal Circuit

(ii)

and is there pending, as of No. 05-1214. Upon appellant's motion, that Court has deferred consideration of the appeal pending this Court's determination on the instant appeal.

Two other cases are pending in this Court, with parallel appeals from the same District Court decision pending in the Court of Appeals for the Federal Circuit, which may be deemed, albeit not by this appellant, as "involving substantially the same parties and the same or similar issues," i.e. <u>Kalodner v. Bodman, Secretary of Energy, et al</u>, No. 05-5090 in this Court and No. 05-1310 in the Federal Circuit, and <u>Consolidated Edison Co. Et al v. Bodman, Secretary of Energy, et al</u>, No. 05-5089 in this Court and No. 05-1309 in the Federal Circuit.

No other case known to counsel is currently pending in this Court or in any other Court that involves the same issues or will directly affect or be directly affected by the Court's decision in the instant appeal.

Respectfully submitted,

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
610-649-8749
DC Bar 97357

June 20, 2005                    PRO SE


(iii)

TABLE OF CONTENTS

CERTIFICATE OF COUNSEL AS TO
PARTIES, RULINGS AND RELATED CASES                (i)

TABLE OF CONTENTS                                 (iv)

TABLE OF AUTHORITIES                              (vii)

GLOSSARY                                          (x)

JURISDICTIONAL STATEMENT                          1

STATEMENT OF ISSUES PRESENTED FOR REVIEW          4

STATUTES AND REGULATIONS                          5

STATEMENT OF THE CASE                             5

STATEMENT OF FACTS                                8

    The Basis For Plaintiff's Claim for
    a Common Fund Fee                             8

    The History of Plaintiff's Efforts To Obtain
    A Common Fund Fee For Obtaining Distribution
    of The Escrowed Funds to Claimants            12

SUMMARY OF ARGUMENT                               23

ARGUMENT                                          26

    I   A COMMON FUND FEE IS PROPERLY AWARDED FOR
    THE BENEFIT OBTAINED FOR CLAIMANTS WITH WHOM
    COUNSEL FOR PLAINTIFFS HAS NO FEE AGREEMENT,
    HERE SOME 30,000 CLAIMANTS WHO WILL RECEIVE
    MORE THAN 85% OF $275 MILLION                 26

II  A COMMON FUND FEE IS PROPERLY CLAIMED IN
A SEPARATE ACTION AGAINST THOSE RECEIVING THE
COMMON FUND, PARTICULARLY WHERE IT CANNOT BE
OBTAINED IN THE ACTION CREATING THE FUND BECAUSE
OF THE SOVEREIGN IMMUNITY OF THE UNITED STATES    32


III NEITHER OF THE BASES FOR THE COURT'S
DISMISSAL HAVE MERIT: (i) CLAIMANTS RECEIVING
FUNDS FROM THE UNITED STATES TREASURY HAVE NO
SOVEREIGN IMMUNITY, AND (ii) THE DISTRICT
COURT CREATED THE COMMON FUND FEE FOR
CLAIMANTS, AND HAD SUFFICIENT CONTROL OVER IT
TO AWARD A COMMON FUND FEE                        35

    A. Sovereign Immunity Does Not Insulate
    Claimants Who Will Receive Funds From The
    U.S. Treasury From An Obligation To Pay
    A Common Fund Fee From Such Funds             36

        1. Claimants Receiving Funds From
        the U.S. Treasury Have No Sovereign
        Immunity                                  37

        2. Indeed, the United States Has No
        Sovereign Immunity From A Suit For
        A Common Fund Fee For Obtaining
        Federal Funds For Those Entitled
        to Them                                   38

    B. The District Court Created The Common
    Fund Fee For Claimants, And Had Sufficient
    Control Over It To Award A Common Fund Fee    45

        1. The Fact That The Funds Came Into
        The Hands of the DOE By Virtue of Its
        Recovery From Violators of the Price
        Regulations Does Not Eliminate The
        Court's Control Over The Funds as a
        Common Fund; the Common Fund Was
        Created For Claimants By Virtue of
        Plaintiff's Success in Con Ed IV
        and Con Ed V                              46

(v)

2. The Fact That The Common Fund Was
Created For Claimants in Litigation
Before Judge Collyer, And A Separate
Suit In The Same Court Was necessary
To Seek a Common Fund Fee Does Not
Deprive The Court Of Sufficient
Control Over The Fund To Award
A Common Fund Fee                                    49

3. The Fact That The Fund To Be
Charged Is Still In The Treasury Does
Not Eliminate the Court's Control       53

CONCLUSION                                              54

ADDENDUM A: STATUTES AND REGULATIONS

ADDENDUM B: MEMORANDUM OPINION AND ORDER
           OF JANUARY 26, 2005 IN CONSOLIDATED
           EDISON CO. V. ABRAHAM, ("CON ED V")
           03-1991 (RMC) (D.D.C) AND KALODNER
           V. ABRAHAM, 05-0024 (RMC) (D.D.C.)

ADDENDUM C: ORDER OF DECEMBER 4, 2003 IN CONSOLIDATED
           EDISON CO. V. ABRAHAM ("CON ED IV'),
           01-00548 (RMC) (D.D.C.)

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32 (a) (7) (B)

TABLE OF AUTHORITIES

CASES

Atlantic Richfield Co. V. U.S. Department
of Energy, 769 F. 2d 771 (D.C. Cir. 1985)..............45

*Boeing Co. v. Van Gemert,
444 U.S. 472 (1980)...............................26-27,35

Central RR & Banking Co. v. Pettus,
113 U.S. 116 (1885)..................................32

Christensen v. Kiewit-Murdock Inv. Corp.,
813 F. 2d 206 (2nd Cir. 1987).........................48

City of Klawock v. Gustafson,
585 F. 2d 428 (9th Cir. 1977).....................52-53

*Commonwealth of Puerto Rico v. Heckler,
745 F. 2d 709 (D.C. Cir. 1984)
.........................21-22,29,34,36,40-41,42,48

Consolidated Edison Co. et al v.
Abraham, ("Con Ed IV")
No. 01-00548 (RMC) (D.D.C),
271 F. Supp. 2d 104 (D.D.C. May 9, 2003),
Order on Common Fee Fund Application
(Dec. 4, 2003), Reproduced in ADDENDUM C hereto,
affirmed 04-1141 (Fed. Cir. June 14,2004),
appeal dismissed 04-5041 (D.C. Cir. Nov. 15, 2004)
..................2,8-9,11,13,17-19,32,41,42,43-44,47-48

*Consolidated Edison Co. et al v.
Abraham, ("Con Ed V")
No. 3-1991 (RMC) (D.D.C)(Jan. 26, 2005)
Reproduced in ADDENDUM B hereto
.....................2,6,10,13,20-23,31,43-44,47-48,50

(Authorities upon which appellant principally relies
are marked with an asterisk)

(vii)

<u>Consolidated Edison Co. et al v.</u>
<u>Abraham</u>, 4 Energy Mgmt. (CCH) par. 26,738
(D.D.C 2001), <u>appeal dismissed</u>,
303 F. 3d 1310 (Fed. Cir. 2002),
aff'd ,4 Energy Mgmt. (CCH)
par. 26,745 (D.C. Cir. 2002)......................14-15

<u>Consolidated Edison Co. et al v.</u>
<u>Abraham</u>, 4 Energy Mgmt. (CCH) par. 26,744
(D.D.C 2002).........................................15

<u>Consolidated Edison Co. V. Ashcroft</u>,
286 F. 3d 600 (D.C. Cir. 2002).......................3

<u>Kalodner v. Abraham</u> ("<u>Kalodner I</u>"),
No. 97-2013 (RWR) (D.D.C 2001),
310 F. 3d 767 (D.C. Cir. 2002),
<u>cert. denied</u>, 538 U.S. 1058 (2003)...5-16,22,37,41,42-43

<u>Kalodner v. Abraham</u> ("<u>Kalodner II</u>"),
309 F. Supp. 2d 100 (D.D.C 2004)................16-17,42

<u>Kalodner v. Abraham</u>, ("<u>Kalodner IV</u>")
No. 05-0024 (RMC) (D.D.C.)...........................23

<u>Knight v. U.S.</u>,
982 F. 2d 1573 (Fed. Cir. 1993)...................32,51

<u>Koppel v. Wien</u>,
743 F. 2d 129 (2nd Cir. 1984)................31,48-49,52

<u>*Lindy Bros. Builders, Inc. Of Phila. v.</u>
<u>American Radiator and Stand. Sanitary Corp.</u>,
487 F. 2d 161 (3d Cir. 1973)........................35

<u>Masonry Masters v. Nelson</u>,
105 F. 3d 708 (D.. Cir. 1997).......................26

<u>National Farmworkers v. Marshall</u>,
628 F. 2d 23 (D.C. Cir. 1979).......................40

<u>*National Treasury Employees Union v. Nixon</u>,
521 F. 2d 317 (D.C. Cir. 1975)
............................29,35,36,39,40,42,51-52

<u>Sprague v. Ticonic Bank</u>,
307 U.S. 161 (1939)................................28

(viii)

*Swedish Hospital Corp. v. Shalala,
1 F. 3d 1261 (D.C. Cir, 1993)
..............................22,28-29,30,36,39-40,42,48

Texas American Oil Corp. v. U.S.
Department of Energy, 44 F. 3d 1557
(Fed. Cir. 1995)....................................3,45

*United States v. American Society of Composers,
466 F. 2d 917 (2nd Cir. 1972).........................49

U.S. v. Wishnefsky,
7 F. 3d 254 (D.C. Cir. 1993).........................26


ADMINISTRATIVE MATERIALS

Notice of Proposed Procedures for
Distribution of Remaining Crude Oil
Overcharge Refunds and Opportunity
for Comment, ("Proposed Order")
68 Fed. Reg. 64098 (Nov. 12, 2003)................10,30

Notice of Final Procedures for Distribution
of Remaining Crude Oil Overcharge Refunds
("Final Order"),69 Fed. Reg. 29300 (May 21, 2004)
.........................................10-11,30-31


STATUTES

Economic Stabilization Act ("ESA"),
Pub. L. 92-210, 85 Stat. 743 (1971)..............1,5,25

Emergency Petroleum Allocation Act ("EPAA"),
Pub. L. 93-159, 87 Stat. 627 (1973)....................1

Equal Access to Justice Act ("EAJA"),
28 U.S.C. Sec. 2412 (b)....................22,25,34,42

<u>GLOSSARY</u>

| | |
|---|---|
| CON ED IV | Consolidated Edison Co. et al v. Abraham, No. 01-00548 (RMC) (D.D.C.) |
| CON ED V | Consolidated Edison Co. et al v. Abraham, No. 03-1991 (RMC) (D.D.C.) |
| DOE | Department of Energy |
| EAJA | Equal Access to Justice Act |
| ESA | Economic Stabilization Act |
| KALODNER I | Kalodner v. Abraham, 310 F. 3d 767 (D.C. Cir. 2002) |
| KALODNER II | Kalodner v. Abraham, 309 F. Supp. 2d 100 (D.D.C. 2004) |
| OHA | Office of Hearings and Appeals |

(x)

JURISDICTIONAL STATEMENT

The instant appeal is from Orders of the District Court dismissing the complaint of plaintiff seeking the award of a common fund fee for obtaining the distribution to some 30,000 claimants found entitled to crude oil refunds by the U.S. Department of Energy ("DOE") of some $275 million held by the DOE in U.S. Treasury escrow. The action was brought against eight of those claimants as representatives of a class consisting of all claimants who will receive distribution from the $275 million, other than the fewer than 40 claimants with whom appellant has fee agreements (and who will receive some 15% of the $275 million to be distributed).

A. The Basis For the District Court's Jurisdiction

Jurisdiction in the District Court was pursuant to Sections 209 through 211 of the Economic Stabilization Act Amendments of 1971 ("ESA"), Pub. L. 92-210, 85 Stat. 743 (1971) as incorporated in the Emergency Petroleum Allocation Act ("EPAA"), Pub. L. No. 93-159, 87 Stat. 627 (1973), 15 U.S.C. Sec. 751 et seq. and 28 U.S.C. Sec. 1331. In the District Court, plaintiff sought a common fund fee for obtaining for claimants to crude oil refunds $275 million recovered from violators of the crude oil price regulations by the Department of Energy ("DOE") pursuant to ESA Section 209; such a common fund for claimants was obtained by

1

virtue of litigation brought in the District Court, i.e.

Consolidated Edison Co. V. Abraham, ("Con Ed IV") 207 F. Supp. 2d

104 (D.D.C. 2003) and Consolidated Edison Co. V. Abraham, ("Con

Ed V") Civil Action 03-1991 (RMC) (DDC). ESA Section 209 requires

that such recovered funds be used for "restitution," and although

DOE-recovered funds had been deposited by the DOE in U.S.

Treasury accounts ostensibly for the benefit of claimants, DOE

had resisted distribution to such claimants.

B. The Basis For This Court's Appellate Jurisdiction

Appeals were taken both to this Court and to the Court of

Appeals for the Federal Circuit, as of 05-1214.

There is a difference of opinion between appellant and

appellees as to the bases for the District Court decision, and

therefore the issues on this appeal.

But regardless of whether the bases of the District Court

decision and the issues on this appeal are as interpreted by

appellant or as interpreted by appellees, they are issues as to

which this Court has at least in the first instance, exclusive

appellate jurisdiction, i.e. (i) the first, whether as expressed

by appellant or appellees, raising the question of whether

sovereign immunity is properly pleaded when action is sought only

from private parties, and (ii) the second, as expressed by

appellant, raising the issue as to whether a common fund created

by a fellow District Court Judge is sufficiently within the

Court's control to permit the award of a common fund fee, and as expressed by appellees, raising the issue of whether a common fund fee is properly awarded for obtaining for claimants funds which came into existence by virtue of the efforts of another. i.e the DOE.

Neither issue involves interpretation of the ESA or the EPAA or of the regulations thereunder, the sole basis for appellate jurisdiction in the Federal Circuit, and therefore both issues are for the regional Circuit Court, here the D.C. Circuit. Texas American Oil Corp. v. U.S. Department of Energy, 44 F. 3d 1557 (Fed. Cir. 1995), Consolidated Edison Co. v. Ashcroft, 286 F. 3d 600, 603 (D.C. Cir. 2002).

It is true that, depending on this Court's determination as to the principal issues on this appeal, there may possibly need to be referral to the Federal Circuit for an interpretation of ESA Section 209, and it was for this reason that an appeal was taken to the Federal Circuit as of No. 1214 in that Court. Upon appellant's motion, the Federal Circuit entered an Order deferring its consideration of the appeal pending this Court's decision.

C. Timeliness of Appeal

The District Court Orders from which this appeal was taken were entered December 20, 2004 as to seven of the appellees and January 1, 2005 as to the eighth appellee, and a Notice of Appeal

3

to this Court was filed January 5, 2005, within 60 days of the entry of the orders appealed from, as required by Rule 4 of the Federal Rules of Appellate Procedure.

    D. <u>Finality of Orders Appealed</u>

    The appeal is from final orders disposing of all parties' claims.

<u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

    1. Where a lawyer for a group of nine claimants who assert the right to 15% of a fund of $275 million recovered by the U.S. Department of Energy ("DOE") and held in U.S. Treasury escrow succeeds in litigation brought in the District Court against the DOE in obtaining an Order requiring the distribution of the $275 million to some 30,000 claimants, including the nine plaintiffs, is the lawyer entitled to a common fund fee from those claimants which whom he has no fee agreement?

    2. Where such a common fund fee is sought from, and denied by, the Judge before whom such success has been obtained, on the basis of the sovereign immunity of the United States because the funds are still in the U.S. Treasury and not yet distributed to the claimants, may a separate action to recover a common fund fee be brought by the lawyer in the same Court against the claimants with whom the lawyer has no fee agreement?

    3. Specifically,

    (A) Where the action for a common fund fee brought against

4

the claimants seeks both (i) a <u>declaration</u> that the funds to be distributed to such claimants are impressed with an obligation to pay a common fund fee, and as to the amount of such fee, and (ii) an <u>order</u> requiring such claimants to request the DOE to withhold the common fund fee in making the distribution to each of them and pay it to the lawyer, is such an action properly dismissed on the ground that the United States has sovereign immunity?

(B) Where the action for a common fund fee is initially assigned to the same Judge before whom the distribution of the $275 million had been obtained, and then is reassigned to another Judge of the same District Court, may the action be dismissed on the ground that the Judge to whom it was reassigned did not have control over the common fund, i.e. the $275 million to be distributed to claimants?

### STATUTES AND REGULATIONS

The pertinent statutes and regulations are set forth in Addendum A to this Brief.

### STATEMENT OF THE CASE

Plaintiff, a lawyer who for 18 years has represented a group of electric utilities ("Utilities") and manufacturers ("Manufacturers") in litigation with regard to their interest in crude oil refunds recovered by the U.S. Department of Energy ("DOE") pursuant to Section 209 of the Economic Stabilization Act ("ESA") Pub. L. 92-210, 85 Stat. 743 (1971) brought this action

5

to recover a common fund fee for obtaining the distribution to some 30,000 claimants found entitled to crude oil refunds by the DOE of some $275 million held by the DOE in U.S. Treasury escrow.

The action was brought against eight of those claimants as representatives of a class consisting of all claimants who will receive distribution from the $275 million, other than the fewer than 40 claimants with whom appellant has fee agreements (and who will receive some 15% of the $275 million to be distributed).

The Complaint, alleging that it was by virtue of plaintiff's efforts that the 30,000 claimants would receive a then-estimated $270 million (now more than $275 million), sought (i) an order awarding the plaintiff a common fund fee of 10% of the distribution to each claimant who would receive such, and (ii) an order directing the named defendants on behalf of each of the class members to request the DOE to withhold (and pay to plaintiff) the awarded common fund fee in the distribution by DOE to each member of the class.

The Complaint was filed as a related case to <u>Consolidated Edison Co. v. Abraham</u> ("Con Ed V") Civil Action 03-1991 (D.D.C.) (RMC) then pending before Judge Rosemary Collyer, and was accordingly assigned to Judge Collyer. It was then reassigned to Judge Henry H. Kennedy Jr.

Seven of the eight named defendants, Public Service Electric & Gas Co., Florida Power Corporation, Eastman Chemical Company,

General Motors Corporation (collectively, the "Public Service Group"), General Council on Finance and Administration of the United Methodist Church, Seagroup Inc., and Zim Israel Navigation Co. Ltd. (collectively, the "Methodist Church Group) filed Motions to Dismiss, and the eighth defendant, the City of New York filed an Answer.

Plaintiff filed (i) a motion for the certification of a defendant class consisting of all crude oil refund claimants who would receive funds from the $275 million and for the named defendants as class representatives, pursuant to Federal Rule of Civil Procedure 23, and (ii) a motion for summary judgment.

Defendants moved to stay consideration of the Motion for Class Certification and any discovery in connection therewith pending disposition of the Motions to Dismiss, and all defendants other than the City of New York moved to stay consideration of Plaintiff's Motion for Summary Judgment and any discovery in connection therewith pending disposition of the Motions to Dismiss. Over plaintiff's opposition, the Court granted both motions to stay.

Plaintiff requested the opportunity to offer oral argument as to the Motions to Dismiss, and after initially scheduling such, the Court cancelled the scheduled hearing, declaring that the motions would be disposed of without oral argument.

Judge Kennedy issued a Memorandum Opinion December 20

7

granting the Motions to Dismiss filed by the Public Service Group
and the Methodist Church Group, and an Order entering judgment
for those seven defendants. An Unopposed Motion to Dismiss was
filed by the remaining defendant, the City of New York, adopting
the arguments made by the other defendants in their motions to
dismiss, and indicating that plaintiff had no objection to the
granting of the motion "without prejudice to his right to appeal
from the Order of Dismissal." Judge Kennedy entered an Order
dismissing the Complaint as to the City of New York and entering
judgment for such defendant.

This appeal was timely taken from the dismissal of the
Complaint.

STATEMENT OF FACTS

The Basis For Plaintiff's Claim for a Common Fund Fee

Although in his Complaint, plaintiff outlines 21 years of
efforts which benefitted the crude oil refund claimants who will
receive a final distribution of $275 million in funds which the
DOE recovered from alleged violators of the crude oil price
regulations in effect from 1973 to 1981, the principal basis on
which he here seeks a common fund fee from those claimants with
whom he has no fee agreements is his success in two actions in
the District Court of the District of Columbia.

In the first of those actions, Consolidated Edison Co. v.
Abraham, ("Con Ed IV") Civil Action 01-548 (RMC), brought in the

name of nine of plaintiff's clients but seeking relief on behalf of all DOE-approved crude oil refund claimants, plaintiff obtained a declaratory order over the opposition of the Department of Energy ("DOE") requiring that certain funds being held by the DOE in U.S. Treasury escrow be distributed to those who had been approved by DOE as crude oil refund claimants, some 30,000 in number (as now determined by DOE), "insofar as practicable." Consolidated Edison Co. V. Abraham, 271 F. Supp. 2d 104, 112 (D.D.C. 2003). Although there declaring the right of the claimants to the escrowed funds, in her May 9, 2003 Opinion and Order, Judge Rosemary Collyer declined "either to issue a writ of mandamus ordering the DOE to complete distribution of those funds or to declare that further delay in making the final distribution is unjustified." 271 F. Supp. 2d at 111. The Court observed that there were "paltry remaining claims" yet to be passed upon by DOE. Accordingly, the amount of the distribution for each qualifying gallon purchased by all approved claimants could not be determined. Such per gallon amount (sometimes referred to by DOE as the "volumetric") would be presumably calculated by dividing the amount available for distribution by the number of gallons of approved claimants, and accordingly could not be determined until all claims had been passed upon. In the absence of such a determination, no distribution order could be issued.

When, almost 20 weeks later, DOE had not either acted to implement the declaratory order, or even publicly committed itself to doing so, plaintiff brought a mandamus action, Con Ed V, seeking implementation of the declaratory order, and the specific inclusion of more than $9 million which the DOE was holding in a separate escrow account from those which had presumably been the subject of the declaratory order in Con Ed IV. Forty eight days later, just 12 days before its response to the Complaint was due, DOE, acting by its adjudicatory body, the Office of Hearings and Appeals ("OHA") published in the Federal Register a Notice of Proposed Procedures for Distribution of Remaining Crude Oil Overcharge Refunds and Opportunity for Comment ("Proposed Order"). 68 Fed. Reg. 64098 (November 12, 2004). In that Notice, DOE calculated a proposed per gallon distribution amount of $670 per million gallons, failing to include in the funds to be distributed the more than $9 million in the separate escrow account, and assuming in the calculation that all potentially eligible claimants would indeed provide the required verification of their status. Although the period for comments on the Proposed Procedures expired January 12, 2004, DOE did not publish its response until May 21, 2004. Notice of Final Procedures for Distribution of Remaining Crude Oil Overcharge Refunds ("Final Order"), 69 Fed. Reg. 29300.

In the interim, plaintiff on January 16, 2004 moved for

10

summary judgment in <u>Con Ed V</u>, seeking issuance of a writ of mandamus which would include a different methodology for calculating the per gallon or volumetric amount of the distribution; the principal elements of the proposed methodology would (i) include in the funds to be distributed the $9.5 million in the separate escrow account, and (ii) defer calculation of the volumetric until the completion of the verification process, with the result that the numerator would include interest earned in the interim, and the denominator would be limited to the purchase gallons as to which verification was in fact provided. (Plaintiff made the same proposed methodology changes in his Comments submitted to OHA.)

OHA's Final Order, published, as noted, May 21, 2004, (i) committed DOE to a final distribution beginning in February 2005 after a verification period which would end December 31, 2004, and (ii) adopted the principal elements of the methodology proposed by plaintiff, including the distribution to claimants of the $9.5 million in the separate escrow account, and deferring until after the completion of the verification period the calculation of the volumetric.

In the Final Order, OHA calculated that even if all eligible claimants completed verification, the volumetric would be increased as a result of the change in methodology from $670 per million gallons to $720 per million gallons. (In the Motion for

11

Summary Judgment, plaintiff had estimated that, using the methodology he proposed, and which OHA adopted, the volumetric would be between $750 and $800 pet million gallons.)

The District Court was advised by plaintiff that DOE had agreed both (i) to make a full distribution of the $275 million in escrow, and (ii) to accept and implement plaintiff's proposed methodology for doing so. Plaintiff sought a final order from the Court confirming DOE's concessions, and the DOE moved to dismiss. The Court granted the DOE motion on the basis that "Because the plaintiffs no longer have a real argument with the DOE's handling of the distribution, this case appears to be moot."

As it has turned out,(i) the amount per gallon to be distributed will be in excess of $750 per million gallon in place of the $670 per million which DOE had initially proposed to distribute, and (ii) claimants will receive $30 million more than they would have received had the distribution been of $670 per million gallons.

<u>The History of Plaintiff's Efforts To Obtain A Common Fund Fee
For Obtaining Distribution of The Escrowed Funds to Claimants</u>

The instant case is the second of four efforts by the plaintiff to obtain a common fund fee for obtaining the distribution of the $275 million in escrowed funds from the distribution to each of the 30,000 claimants who will receive such distribution.

12

In the three other efforts, plaintiff sought an order
requiring the Department of Energy to withhold a percentage of
the funds being distributed to each claimant as a common fund fee
and pay it to plaintiff.

In this case, and only in this case, plaintiff seeks relief
only from the claimants themselves (other than the less than 40
with whom plaintiff has fee agreements), i.e (i) a determination
that he is entitled to a common fund fee and of the percentage of
the distribution to each claimant properly taxed as a common fund
fee, and (ii) if such can be accomplished prior to the
distribution to claimants, an order requiring the defendants on
behalf of all claimants to request the DOE in making the
distribution to each claimant to withhold the common fund fee and
pay it to plaintiff.

The first and third efforts of plaintiff to obtain a common
fund fee, i.e the effort prior to the instant action and the one
following the instant action, are particularly relevant-- the
first, i.e. in Con Ed IV , because the basis of the denial of a
common fund fee, the sovereign immunity of the United States, is
relied on in the District Court decision here, and the third,
i.e. in Con Ed V, because Judge Collyer there did in fact award a
common fund fee as to approximately $30 million of the $275
million to be distributed (by decision of January 26, 2005, a
copy of which is attached hereto as Addendum B).

13

Accordingly, it is appropriate to review the chronology of plaintiff's attempts to obtain a common fund fee.

Before doing so, however, it is also appropriate to review briefly the fate of plaintiff's prior litigation efforts to obtain common fund fees for benefitting all claimants other than his clients in a very different situation, i.e. where the plaintiff's service (i) was rendered principally in administrative proceedings, not as here by judicial litigation, (ii) was rendered in support of the efforts of the DOE, not as here in triumphing over the DOE, and (iii) most importantly, where the common fund was not yet determined to be required to be distributed to claimants nor a formula for calculating distribution to individual claimants established, not as here where the litigation has obtained a determination to distribute to claimants and the formula to be employed in doing so.

There were four such litigation efforts. In each of them, plaintiff here sought common fund fees from the OHA, and when denied such, appealed to the courts.

In two of the cases, no sovereign immunity defense was asserted and decisions were issued on the merits; accordingly, they provide little guidance on the issue of sovereign immunity.

(i) In the first case, plaintiff's application for a fee was rejected by the District Court on the basis that he had already received a common fund fee in the matter as to the benefit

14

conferred on other beneficiaries, and had agreed to a release which precluded him from obtaining a common fund fee as to funds awarded other beneficiaries of his efforts. <u>Consolidated Edison Co. V. Abraham</u>, 4 Energy Mgmt (CCH) Par. 26, 738 (D.D.C. 2001), <u>aff'd</u> in an unpublished decision, 4 Energy Mgmt.(CCH) Par. 26,745 (D.C. Cir. 2002).

(ii) In the second case, involving an application for a common fund fee for benefitting other claimants in the same matter, the District Court held that the determination in the first case was the "law of the case", and accordingly affirmed the rejection of his application for a common fund fee. <u>Consolidated Edison Co. V. Abraham</u>, 4 Energy Mgmt.(CCH) Par. 26,744 (D.D.C. 2002).

(iii) in the case which gave rise to the decision upon which the District Court here principally relied, <u>Kalodner v. Abraham</u>, ("<u>Kalodner I</u>"), 310 F. 3d 767 (D.C. Cir. 2002), <u>cert. denied</u>, 538 U.S. 1058 (2003), Kalodner had sought before OHA a common fund fee for providing critical assistance to the enforcement arm of DOE in a prosecution of a crude oil overcharger before OHA and in the obtaining by DOE of a settlement which produced $55 million in refunds allocable to the crude oil refund claimants (essentially 20% of the $275 million to be currently distributed). OHA rejected the application, and the District Court, to which an appeal was taken, dismissed the appeal,

neither doing so on the basis of sovereign immunity.

On appeal, this Court specifically declined to address the merits of the Kalodner fee claim, finding that it did not "require our attention, for Kalodner's suit is barred by sovereign immunity...for a simple reason: he seeks funds in the United States Treasury." 310 F. 2d at 769; at the time, no decision had been made that the funds in the Treasury were to be distributed to the crude oil refund claimants. This Court did find that "Congress has waived sovereign immunity for...(crude oil refund claimants) by authorizing them to seek refunds from escrow accounts held by the United States Treasury and to challenge awards to other claimants (citing decisions of the Court of Appeals for the Federal Circuit so holding)."

(iv) In Kalodner v. Abraham ("Kalodner II"), 309 F. Supp. 2d 100 (D.D.C. 2004), the District Court addressed a situation similar to that presented in Kalodner I, i.e. Kalodner had sought from the OHA a common fund fee for obtaining in a proceeding before OHA as an adjudicator a benefit for crude oil refund claimants, i.e. the reduction of a prospective award to a particular crude oil claimant with the effect that the amounts payable to other crude claimants would be increased. OHA had denied the fee application (on the basis of the federal government's sovereign immunity) and Kalodner had appealed to the District Court.

16

In his decision dismissing Kalodner's appeal, Judge Lamberth relied on the appellate court decision in <u>Kalodner I</u>.

Most importantly however, in <u>Kalodner II</u>, the District Court recognizes that, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412 (b), there would have been a waiver of sovereign immunity "relatable to the plaintiff's common-fund fee request" had Kalodner's clients been "parties" "adverse" to the United States, who "filed a civil action against the United States" and in that action were able to "prevail against the United States".

Such is, of course, a description of the situation here presented; in <u>Con Ed IV</u> and <u>Con Ed V</u>, Kalodner's clients were "parties" "adverse" to the United states who "filed a civil action against the United States" and were able to "prevail against the United States."

Now, turning to plaintiff's efforts to obtain a common fund fee for services rendered in <u>Con Ed IV</u> and <u>Con Ed V</u> , the service for which a fee is here sought:

1. In <u>Con Ed IV</u> itself, following the issuance by the Court of the declaratory order requiring distribution of the escrowed funds to claimants (albeit refusing to issue an order requiring such distribution immediately), plaintiff here, as counsel for the successful Utilities and Manufacturers in that action, timely moved for the award of a common fund fee pursuant to Federal Rule

17

of Civil Procedure 54 (d) (2).

DOE opposed the award on the basis that the common fund fee doctrine was inapplicable and on the basis of sovereign immunity. The Court declined to discuss or rule upon the applicability of the common fund fee doctrine because it found that sovereign immunity was a barrier to recovery, relying on the D.C. Circuit decision in <u>Kalodner I</u>, and its holding that "the <u>sine qua non</u> of federal sovereign immunity is the federal government's <u>possession</u> of the money in question", and concluding, "Because the funds at issue currently reside in the United States Treasury and Mr. Kalodner offers no statutory exception to the doctrine of sovereign immunity, the motion for a common fund fee is DENIED." <u>Order of December 4, 2003</u> (Addendum C hereto).

An appeal was taken both to this Court (as of No. 04-5041) and the Federal Circuit (as of No. 04-1141). The Federal Circuit ruled first, with a single word decision, not citable as precedent, i.e. Affirmed: See Fed. Cir., R. 36." Thereafter, appellees Department of Energy moved to dismiss, and this Court granted the motion: "Because the United States Court of Appeals for the Federal Circuit accepted jurisdiction and decided the issues presented in this matter...this appeal is precluded by the 'law of the case.'" Rehearing and rehearing en banc was requested and denied in both Courts.

In the District Court decision, Judge Collyer had suggested

18

that "a more suitable option would be for Mr. Kalodner (i) to initiate a separate lawsuit against applicable claimants- i.e. those who do not have a fee arrangement with him- under the common fund fee doctrine once Defendants distribute the monies from the 20% reserve, and to seek class certification under Rule 23 of the Federal Rules of Civil Procedure, if so desired and assuming it is available," adding by footnote that "The Court takes no position as to whether such a lawsuit brought by Mr. Kalodner would have any merit." (Addendum C, at 3).

2. Without awaiting distribution by DOE to claimants, and in order to avoid the possibility that to do so would mean bringing hundreds or thousands of suits throughout the United States, the instant action was initiated seeking (i) determination that a common fund fee was properly imposed and of its proper percentage, and (ii) assuming the matter could be concluded before distribution to claimants, a requirement that the claimant class representatives request the DOE to withhold the common fee percentage from each claimant's distribution when making such distribution, and pay it to this plaintiff.

Upon its filing, the case was identified by plaintiff as a case related to Con Ed V, inter alia because it sought a common fund fee for obtaining the declaratory order in Con Ed IV, the implementation of which was the subject matter of Con Ed V, then pending. After being assigned accordingly to Judge Rosemary M.

Collyer, it was reassigned to Judge Henry H. Kennedy Jr.

In the Complaint, and the First Amended Complaint, filed following the issuance by the DOE of its Proposed Distribution but prior to DOE's adoption of the methodology for calculating the distribution which plaintiff proposed, plaintiff sought a common fund fee of 10% of the amount which would be distributed to each claimant other than those with whom he had a fee agreement.

After filing a motion to certify a defendant class consisting of all crude oil refund claimants other than his clients, plaintiff filed a motion for summary judgment, It was filed following DOE's issuance of its Final Order adopting the methodology for calculating the volumetric distribution amount which plaintiff had suggested. Plaintiff argued for summary judgment on the basis of his success in Con Ed IV and Con Ed V.

3. In July 2004, in Con Ed V, following the dismissal of the Complaint as moot because DOE had, in response to the Complaint and Motion for Summary Judgment, both agreed to make the final distribution and to adopt the methodology for calculating the distribution proposed by plaintiffs, plaintiff moved for the award of a common fund fee. Plaintiff sought such both for obtaining a distribution, and for enlarging it to include the entire $275 million rather than only the $245 million which would have been distributed had DOE persisted in its Proposed Order

20