methodology.

In a decision issued January 26, 2005 (Addendum B hereto), Judge Collyer (i) denied a common fund fee for the obtaining of a distribution, but (ii) awarded a common fund fee for enlarging the distribution over that which DOE had initially proposed, i.e of a volumetric of $670 per million gallons; in doing so, Judge Collyer accepted the estimate of plaintiff that the result of the change in methodology would increase the volumetric to between $750 and $800 per million gallons. As it has turned out, although the amount of the volumetric has not yet been set by OHA, it can be projected that the volumetric will be between $750 and $760 per million gallons, with the result that the distribution will be of approximately $30 million more than that which would have been distributed had the volumetric remained at $670 per million gallons.

Thus, the effect of Judge Collyer's decision of January 26, 2005 is that a common fund fee will be awarded as to approximately $30 million of the approximately $275 million which will be distributed, and denied as to the balance of the funds, i.e. $245 million.

In her Opinion, Judge Collyer finds that as to the issue on the basis of which she denied a common fund fee in Con Ed IV, sovereign immunity, the applicable precedents are the decisions of this Court in Commonwealth of Puerto Rico v. Heckler, 745 F.

21

2d 709 ( D.C. Cir. 1984) and Swedish Hospital Corp. V. Shalala, 1
F. 3d 1261 (D.C. Cir. 1993) in both of which a common fund fee
was awarded for wresting funds from the United States. In
Heckler, this Court relied specifically upon the waiver of
sovereign immunity by virtue of the Equal Access to Justice Act,
28 U.S.C. Section 2412 (b).

Judge Collyer finds that the decision in Kalodner I, supra,
upon which she relied in finding a sovereign immunity bar in Con
Ed IV is properly distinguished and is inapplicable because in
that case, there had as yet been no determination that the
Treasury funds would be distributed to claimants and therefore
the funds were not under the control of the Court, while in Con
Ed V, the Court had control over the Treasury funds as a common
fund which had been created for claimants by virtue of the
"adversary litigation before it (the Court), through which Mr.
Kalodner obtained the relief sought".

Even though Judge Collyer's analysis would necessarily lead
to a common fund fee as to the entire $275 million, Judge Collyer
felt constrained by her earlier denial of a common fund fee on
the basis of sovereign immunity in Con Ed IV, and its affirmance
by the Federal Circuit, and therefore restricted the grant of a
common fund fee to that portion of the $275 million which was the
result of the change in methodology which had been first
suggested in Con Ed V, i.e. approximately $30 million.

22

Plaintiffs in <u>Con Ed V</u> appealed Judge Collyer's denial of a common fund fee as to $245 million of the $275 million both to this Court, as of 05-5089 and the Federal Circuit, as of 05-1309.

4. Because of DOE's announced plan to begin distribution of the escrow funds February 1, 2005, and in the absence of a decision on the common fund fee application in <u>Con Ed V</u>, plaintiff initiated on January 7, 2005 an action seeking an injunction requiring DOE to withhold a common fund fee from the distribution to be made to each claimant and to pay such common fund fee to plaintiff, <u>Kalodner v. Abraham</u>, Civil Action 05-0024 (RMC) (D.D.C). A 10% common fund fee was sought for all claimants with approved purchases during the regulatory period of greater than 50 million gallons, other than those claimants with whom Kalodner had fee agreements (less than 40 in number).

Judge Collyer, acting as she explained <u>sua sponte</u>, dismissed the Complaint for failure to state a claim upon which relief can be granted, doing so in the same Opinion in which plaintiff was awarded a common fund fee in <u>Con Ed V</u> (Addendum B). Plaintiff has appealed, both to this Court, as of 05-5090, and the Federal Circuit, as of 05-1310.

<u>SUMMARY OF ARGUMENT</u>

This is a classic case for the application of the common fund fee doctrine. Plaintiff, as attorney for 9 claimants who have the right to less than 15% of $275 million recovered by the

23

Department of Energy ("DOE") and on deposit in the U.S. Treasury, obtained, as a result of litigation in the District Court, the agreement by DOE to distribute the $275 million to 30,000 claimants. He is accordingly entitled to a common fund fee in the form of a percentage to be determined by the Court of the distribution to each such claimant.

Where, as here, the application for a common fund fee was made to the Judge before whom such success was obtained, and denied on the basis of the sovereign immunity of the United States, a separate action is properly brought against the claimants benefitted to recover the common fund fee, by seeking (i) a declaration that such a fee is properly assessed and the determination of the proper percentage amount, and (ii) if the foregoing determination is made before the distribution to claimants, an order that the claimants request the DOE in making distribution to each of them or their properly authorized attorneys or other representatives, to withhold the amount of the common fund fee for which each is accordingly responsible, and pay it to attorney entitled to the common fund fee.

Neither of the bases upon which the District Court rejected the application for a common fund fee by dismissing the Complaint justify such rejection:

(i) Even if the United States itself has sovereign immunity from being directed by the Court to utilize a portion of the

Treasury funds which it has committed to distribute to claimants for the payment of a common fund fee, such sovereign immunity does not preclude a suit against the claimants themselves; the suit does not require any action by the United States.

Moreover, indeed the United States has no sovereign immunity. It has been waived both by Section 209 of the Economic Stabilization Act and the Equal Access to Justice Act ("EAJA"). Nor is plaintiff precluded from so arguing on basis of the principle of "law of the case" because his application for a common fund fee was denied on the basis of sovereign immunity when he sought such for obtaining a declaratory order requiring the distribution of Treasury funds to claimants (in Con Ed IV); that case was not the same, because in Con Ed IV the Court refused to order the distribution and therefore did not create the common fund for claimants, whereas by virtue of the subsequent litigation, Con Ed V, plaintiff obtained the agreement of the DOE to make the distribution to claimants, thereby creating a common fund.

(ii) The District Court had the requisite control of the common fund, having acquired it when the litigation before the Court in Con Ed V resulted in the creation of the common fund for the claimants by virtue of DOE's agreement to distribute the $275 million. Indeed, Judge Collyer has so correctly determined. That the case was reassigned from Judge Collyer to Judge Kennedy does

25

not eliminate the requisite control over the common fund. Nor is it a disqualifying factor that the fund was initially created by virtue of DOE's recovery from overcharging producers and resellers of crude oil; the common fund was <u>created</u> for claimants by virtue of the <u>Con Ed V</u> litigation.

ARGUMENT

**Standard of Review**: This Court gives plenary consideration to its own jurisdiction. It reviews <u>de novo</u> the issues of law on the basis of which the District Court acted, i.e. (i) the availability of the common fund fee doctrine in a separate action brought by a lawyer against those sought to be charged a common fund fee, (ii) whether sovereign immunity is an available defense to non-governmental parties who will receive portions of the common fund from the U.S. Treasury, and (iii) whether a Court in which litigation created the common fund has sufficient control overt it to award a common fund fee. <u>Masonry Masters v. Nelson</u>, 105 F. 3d 708, 710-711 (D.C. Cir. 1997), <u>U.S. v. Wishnefsky</u>, 7 F. 3d 254 (D.C. Cir, 1993).

I    <u>A COMMON FUND FEE IS PROPERLY AWARDED FOR THE BENEFIT OBTAINED FOR CLAIMANTS WITH WHOM COUNSEL FOR PLAINTIFFS HAS NO FEE AGREEMENT, HERE SOME 30,000 CLAIMANTS WHO WILL RECEIVE MORE THAN 85% OF $275 MILLION,</u>

As the Supreme Court explained in <u>Boeing Co. V. Van Gemert</u>, 444 U.S. 472, 478-479 (1980):

26

"Since the decisions in <u>Trustees v. Greenough, 105 U.S. 527</u>
(1882) and <u>Central Railroad & Banking Co. v. Pettus</u>, 113 U.S. 116
(1885) this Court has recognized consistently that a litigant or
lawyer who recovers a common fund for the benefit of persons
other than himself or his client is entitled to a reasonable
attorney's fee from the fund as a whole. See <u>Mills v. Electric
Auto-Lite Co.</u>, 396 U.S. 375 (1970); <u>Sprague v. Ticonic National
Bank</u>, 307 U.S. 161 (1939); cf. <u>Hall v. Cole</u>, 412 U.S. 1 (1973).
The common-fund doctrine reflects the traditional practice in
courts of equity, <u>Trustees v. Greenough,</u> <u>supra</u> at 532-537, and it
stands as a well-recognized exception to the general principle
that requires every litigant to bear his own attorney's fees,
<u>Alyeska Pipeline Service Co. V. Wilderness Society</u>, 421 U.S., at
257-258. The doctrine rests on the perception that persons who
obtain the benefit of a lawsuit without contributing to its cost
are unjustly enriched at the successful litigant's expense. See,
<u>e.g.</u> <u>Mills v. Electric Auto-Lite Co.</u>, 396 U.S. at 382.
Jurisdiction over the fund involved in the litigation allows a
court to prevent this inequity by assessing attorney's fees
against the entire fund, thus spreading fees proportionately
among those benefitted.... the criteria (for the award of a
common fund fee) are satisfied when each member of a certified
class has an undisputed and mathematically ascertainable claim to
part of a lump-sum judgment recovered on his behalf."

27

In <u>Sprague v. Ticonic Bank</u>, 307 U.S. 161, 166 (1939), the
Court approved a common fund fee where the benefit obtained for
those similarly situated as the plaintiff was obtained not in the
successful action by the plaintiff, but only by virtue of the
<u>stare decisis</u> effect of the plaintiff's success. As the Court
there explained the applicable principle:

"(T)hat the party...neither purported to sue for a class nor
formally established by litigation a fund available to the class,
does not seem to be a differentiating factor so far as it affects
the source of the recognized power of equity to grant
reimbursement..."

Accordingly, the lack of formal class certification is
irrelevant. Such is particularly the case here where the Court in
the first instance and DOE in the second provided the benefit
sought and obtained by the plaintiff Utilities and Manufacturers
in <u>Con Ed IV</u> and <u>Con Ed V </u>to all of the members of the class.

As this Court articulated the common fund fee doctrine in
<u>Swedish Hospital Corp. v. Shalala</u>, ("<u>Shalala</u>") 1F. 3d 1261, 1265
(D.C. Cir. 1993): "That doctrine allows a party who creates,
preserves or increases the value of a fund in which others have
an ownership interest to be reimbursed from that fund for
litigation expenses, including counsel fees  ...The underlying
justification for attorney reimbursement from a common fund, as
explained by the Supreme Court in three early cases, is that

28

unless the costs of litigation are spread to the beneficiaries of the fund they will be unjustly enriched by the attorney's efforts."

In <u>Swedish Hospital Corp. v. Shalala</u>, the relief obtained for the class in the litigation was obtained not by a decree but by a settlement.

In another D.C. Circuit decision, <u>Commonwealth of Puerto Rico v. Heckler</u>, 745 F. 2d 709 (D.C. Cir. 1984), a common fund fee was found appropriately assessed as to the amounts to be paid from the Treasury to other U.S. Territories on the basis of the government's voluntary determination to provide them with the same benefits won in a judicial action by Puerto Rico. And in a third decision of this Court, <u>National Treasury Employees Union v. Nixon</u>, 521 F. 2d 317 (D.C. Cir. 1975), the Court also found that a common fund fee would be appropriately awarded where the benefit to the class, i.e. adjusted government pay rates, won for the plaintiffs in litigation, was provided voluntarily by the government to others not parties to the litigation.

Thus, (i) the agreement by DOE under the pressure of the <u>Con Ed V</u> mandamus action to agree to implement the declaratory order in <u>Con Ed IV</u>, and (ii) the agreement by DOE to the change in methodology for calculating the volumetric under the pressure of the motion for summary judgment are the basis for the award of a common fund fee. DOE's (i) agreement in its Proposed Order, to

29

distribute to claimants, and (ii) its agreement in its Final
Order to distribute not just the $245 million it originally
proposed to distribute but the entire escrowed fund of $275
million, constitute a settlement in which negotiation has been
rendered unnecessary by the willingness of one party to surrender
to the position of the other; if a settlement in favor of the
plaintiff and the class is the basis for a common fund fee, as in
Swedish Hospital Corp. v. Shalala, supra, then certainly so is a
concession by the party defendant to the plaintiff's position.

Nor can there be any doubt that it was the prosecution of
the Con Ed IV and Con Ed V actions which was the proximate cause
of the agreement of DOE (i) to distribute to claimants, and
(ii) to distribute the entire $275 million to claimants.

DOE acknowledged as much. In its Proposed Order, it
referenced the "declaratory judgment" in Con Ed IV and its
requirement that the remaining amounts reserved for direct
restitution be disbursed to successful claimants 'insofar as
practicable' and concluded that "OHA will therefore make a final
distribution in the long-standing crude oil refund proceeding. 68
Federal Register 64098 (Nov. 12, 2003) (emphasis supplied). And
in its Final Distribution Order, 69 Fed. Reg. 29,300 (May 21,
2004), DOE acknowledged that the change in methodology for
calculation of the volumetric so as to insure that the
distribution would be of the entire $275 million was the result

30

of Kalodner's suggestion of such, albeit referring to the
proposed changes as set forth in his Comments to OHA's Proposed
Distribution Procedures rather than the same changes proposed in
Utilities and Manufacturers' motion for summary judgment in <u>Con
Ed V</u>.

Moreover, the issue has been adjudicated. In her January 26,
2005 order in <u>Con Ed V</u>, Judge Collyer found that

(i) "<u>Con Ed V</u> <u>insured</u> the implementation of the Court's
declaratory judgment in <u>Con Ed IV</u> that DOE should disburse
approximately $275 million in funds. <u>In responding to Con Ed V</u>,
the DOE not only committed to a distribution but also committed
to a specific methodology for calculating the per-gallon amount
of that distribution," and (Addendum B, at 10, emphasis
supplied), and

(ii) "The Court agrees that Mr. Kalodner <u>was successful in
two adverse civil suits</u> against DOE: in <u>Con Ed IV</u>, where he
obtained a declaratory order requiring the DOE to distribute some
$275 million in crude oil refunds which the DOE held in U.S.
Treasury, and in <u>Con Ed V</u>, when the DOE voluntarily agreed to the
relief there sought,", citing the decision in <u>Koppel v. Wien</u>, 743
F. 2d 129, 135 (2nd Cir. 1984) for the holding that "Fees may be
awarded even when there is no judgment on the merits or when the
dispute has become moot because the relief sought is otherwise
obtained." (Addendum B, at 5; emphasis supplied).

II   <u>A COMMON FUND FEE IS PROPERLY CLAIMED IN A SEPARATE ACTION</u>
<u>AGAINST THOSE RECEIVING THE COMMON FUND, PARTICULARLY WHERE IT</u>
<u>CANNOT BE OBTAINED IN THE ACTION CREATING THE FUND BECAUSE OF THE</u>
<u>SOVEREIGN IMMUNITY OF THE UNITED STATES</u>

The fact that the instant action for a common fund fee is
not one within the litigation in which the class benefit was
obtained, but separately brought against the common fund
beneficiaries (because of the imposition of a sovereign immunity
barrier in <u>Con Ed IV</u>) does not preclude the award of a common
fund fee. As the Court of Appeals for the Federal Circuit has
recognized, "A suit by an attorney for fees which thereby reduced
non-parties' shares of the common fund has been recognized. <u>See</u>
<u>Central RR & Banking Co. V. Pettus</u>, 113 U.S. 116 (1885). The
rationale in the latter type of case rests on unjust enrichment-
-that the lawyers "are entitled to reasonable compensation for
their professional services" from those "who accepted the fruits
of (their) labors." <u>Pettus</u>, 113 U.S. at 127." <u>Knight v. U.S.</u>, 982
F. 2d 1573, 1580 (Fed. Cir. 1993).

Two aspects of the instant action make it particularly
appropriate, and indeed made it necessary, for a common fund fee
to be sought in a separate action rather than in the litigation
in which the benefit was obtained for which a common fund fee is
sought:

1. The <u>Con Ed IV</u> and <u>Con Ed V</u> Court in which (i) the

declaratory order was obtained requiring distribution to claimants (Con Ed IV), and (ii) in which (and by virtue of which) the agreement of DOE was obtained to comply with the declaratory order and make distribution to claimants (Con Ed V) rejected applications for a common fund fee for obtaining the principle of distribution of the escrowed funds to claimants on the basis of the sovereign immunity of the United States when funds are sought from the Treasury. Accordingly, it was necessary to bring a separate action which would avoid such an obstacle by seeking only actions by claimants, not by the United States. Indeed, as noted above, the very Court which rejected the application for a common fund fee in Con Ed IV there suggested the bringing of a separate action seeking the common fund fee from claimants;

2. The instant action was brought as a related case to litigation pending before Judge Collyer who had issued the declaratory order in Con Ed IV and before whom the mandamus action to require implementation of the declaratory order was then pending, and was accordingly assigned to Judge Collyer. It was then reassigned to another Judge of the same Court, presumably at Judge Collyer's request. Thus, Judge Kennedy effectively stands in Judge Collyer's shoes. Certainly Judge Collyer could have awarded a common fund fee in a private action when it was in her Court that the benefits were obtained justifying such a fee. And surely on reassignment Judge Kennedy

33

could do that which Judge Collyer could do.

Nor is it of any relevance whether an attorney may himself seek a fee from funds which otherwise would remain in the U.S. Treasury pursuant to the EAJA, (i) for successfully litigation against the United States in Court, 28 U.S.C. Section 2412 (b), or (ii) for successful litigation before an administrative agency, 5 U.S.C. Sec. 504 (c) (2). A fee is sought here (i) not from U.S. funds but from funds which would otherwise go to claimants, and (ii) a fee under the common fund doctrine is not sought pursuant to the EAJA, but rather pursuant to judicially created law. The EAJA is of significance here not as the basis for a fee, but only because this Court has held that even if sovereign immunity is not otherwise waived (as plaintiff believes it has been by virtue of ESA Section 209), it is waived by the EAJA. Commonwealth of Puerto Rico v. Heckler, supra; nothing in this Court's decision in Heckler suggests that sovereign immunity is waived as to an application for a common fund fee when the funds are still in the U.S. Treasury when the application for such a fee is made by a successful plaintiff, but not when the application is made by the attorney for the successful plaintiff, and there is certainly no logic to such a conclusion. (Judge Kennedy's discussion of whether plaintiff qualifies for a fee pursuant to the EAJA (Appendix, p. 42, ftnte 14) is irrelevant, and unfortunately confusing; plaintiff does not seek such a fee.)

34

Moreover, the Supreme Court itself has made it clear that a common fund fee is appropriately sought either by "a <u>litigant or lawyer</u> who recovers a common fund for the benefit of persons other than himself or his client." <u>Boeing Co. V. Van Gemert</u>, <u>supra</u>, 444 U.S. at 478 (emphasis supplied). And this Court has, with approval, cited the explanation of the Third Circuit in <u>Lindy Bros. Builders, Inc. Of Phila. v. American Radiator and Stand. Sanitary Corp.</u>,487 F. 2d 161 (3rd Cir. 1973) that there are two appropriately recognized causes of action for a common fund fee-one by the plaintiff in the successful litigation to recover fees already paid to its successful counsel, and the other by the plaintiff's attorney himself. <u>National Treasury Employees Union v. Nixon</u>, 521 F. 2d 317, 322 (D.C. Cir. 1975).

III  <u>NEITHER OF THE BASES FOR THE COURT'S DISMISSAL HAVE MERIT: (i) CLAIMANTS RECEIVING FUNDS FROM THE UNITED STATES TREASURY HAVE NO SOVEREIGN IMMUNITY, AND (ii) THE DISTRICT COURT CREATED THE COMMON FUND FEE FOR CLAIMANTS, AND HAD SUFFICIENT CONTROL OVER IT TO AWARD A COMMON FUND FEE</u>

As appellant reads the District Court's decision, it appears to base its dismissal on two grounds, i.e. (i) as long as the funds ultimately to be charged with a common fund fee remain in the U.S. Treasury, the sovereign immunity of the United States may be invoked by those to whom the funds will be disbursed even though relief is sought only from the claimants and not from the

United States, and (ii) the District Court lacked the requisite control over the common fund to award a common fund fee from such a common fund; appellant understands the Court's concern to be that the common fund <u>for claimants</u> was created by another Judge of the same Court, while at least some of the appellees have expressed their understanding that the Court's concern was by virtue of the fact that the common fund had been "created" by the DOE by virtue of recoveries from violators of the crude oil price regulations.

The two bases for dismissal will be considered in turn.

Before doing so, however, it is appropriate to note that the apparent gravamen of the Court's decision is that where a plaintiff for a subset of claimants obtains for non-party claimants funds from the U.S. Treasury, no common fund fee can be awarded: i.e. (i) as long as the fund remains in the Treasury, no fee can be awarded, and (ii) when it leaves the Treasury, it is not sufficiently in the Court's control to award a fee. Such a result is not only lacking in logic, but, more importantly, it is contrary to this Court's approval of common fund fees , inter alia, in <u>Commonwealth of Puerto Rico v. Heckler</u>, <u>supra</u>, <u>Swedish Hospital Corp. V. Shalala</u>, <u>supra</u>, and in the earlier case of <u>National Treasury Employees Union v. Nixon</u>, <u>supra</u>.

A. <u>Sovereign Immunity Does Not Insulate Claimants Who Will Receive Funds From The U.S. Treasury From An Obligation To Pay A</u>

<u>Common Fund Fee From Such Funds</u>

   1. <u>Claimants Receiving Funds From the U.S. Treasury Have No</u>
<u>Sovereign Immunity</u>

   Even if sovereign immunity bars a lawyer creating a common
fund for claimants from funds in the Treasury from recovering a
common fund fee in an action against the United States, there is
no sovereign immunity barrier precluding a suit against the
recipients of Treasury funds seeking (i) an award of a common
fund fee to be effective upon the receipt of such funds by the
claimants, and (ii) a requirement that the common fund
beneficiaries request the United States in disbursing funds to
each of them to withhold the portion awarded as a common fund
fee, and pay it to the lawyer obtaining such funds for them.

   Sovereign immunity is a defense available only to the
sovereign, here the United States. There is no suggestion in any
decisional law of which plaintiff-appellant is aware that those
recovering funds from the United States have sovereign immunity.
As this Court explained the principle of sovereign immunity in
<u>Kalodner v. Abraham</u>, 310 F. 3d 767, 769 (D.C. Cir. 2002), quoting
the Supreme Court, "'the basic rule of federal sovereign immunity
<u>is that the United States cannot be sued </u>at all without the
consent of Congress,' <u>Block v. North Dakota</u>, 461 U.S. 273,287
(1983), (emphasis supplied)."

   Here, relief is sought only from the claimants. The first

relief sought, a determination that the defendants and the
claimant class are obligated to pay a common fund fee, and its
amount, requires nothing of the United States, and is clearly not
subject to a sovereign immunity defense. And the second relief
requests only that the claimants, acting through class
representatives, request the United States in making disbursement
to each of them, to withhold the common fund fee and pay it to
plaintiff-appellant. If the DOE were indeed to refuse to do so,
plaintiff seeks no recourse against the United States, but would
then seek to recover from the claimants upon their receipt of
funds.

2. Indeed, the United States Has No Sovereign Immunity From
A Suit For A Common Fund Fee For Obtaining Federal Funds For
Those Entitled to Them

If the alleged sovereign immunity of claimants for Treasury
funds somehow derives from the sovereign immunity of the United
States, then it could not be available here for an additional
reason-- the United States has no sovereign immunity.

The beginning point in analyzing the issue of whether the
United States has sovereign immunity is the basis of the common
fund fee sought. If, as here, it is sought for obtaining funds
from the federal Treasury for claimants, and the United States
has no sovereign immunity from such an action by claimants, and
such action is successful, then the same waiver which permitted

the suit by claimants necessarily permits the allocation of a common fund fee from such recovered funds.

So this Court has repeatedly recognized. In <u>National Treasury Employees Union v. Nixon</u>, 521 F. 2d 317 (D.C. Cir. 1975), the Court found that a common fund fee would be appropriately awarded where the benefit to the class, i.e. adjusted government pay rates which plaintiff union members won for U.S. Treasury employees in litigation, was provided voluntarily by the government to more than 3 million other federal government employees, making it appropriate that such other employees be charged a common fund fee. The funds had already been disbursed from the Treasury and the application would require the sovereign, i.e. the federal government, either to recover the fee from more than 3 million employees, or as the Court suggested it might, to charge the fee against future salary payments to be made from the Treasury to the employees. The Court found "no support for the application of sovereign immunity to the facts of this case". As the Court explained, "(t)he core of the doctrine seeks to protect the public fisc against unconsented claims for monetary relief, and it found no involvement of the "public fisc" because the funds to be charged were not the funds of the United States but of its employees. <u>id</u> at 319

In the subsequent case of <u>Swedish Hospital Corp. v. Shalala</u>, <u>supra</u>, neither the federal government nor the Court even

suggested that sovereign immunity might preclude the award of a common fund fee where plaintiffs had obtained by settlement reimbursement of photocopying costs for hospitals in Medicare cases. The right to sue the federal government to recover such costs was assumed to include the right to recover a common fund fee from such recovered costs.

Thus even prior to the enactment of the language of the EAJA, interpreted by this Court as waiving sovereign immunity as to any claim for a common fund fee from Treasury funds committed to distribution, Commonwealth of Puerto Rico v. Heckler, supra, it appears that the only exception from the principle that the right to recover funds from the United States necessarily includes the right to recover a common fund fee from such recovered funds existed with regard to grant funds as to which "the Secretary (of Health and Human Services) has continuing control over the funds, even when they are in the grantee's hands, and can audit the grantee's records or recall the funds," National Farmworkers v. Marshall, 628 F. 2d 23. 26 (D.C. Cir. 1979). In that decision, this Court took care to distinguish the situation from that in National Treasurer Employees Union v. Nixon, supra, where, as is the situation here, "the government has no interest or right of continuing control" once the funds are allocated for distribution to claimants.

Indeed, in Commonwealth of Puerto Rico v. Heckler, supra,

this Court acknowledged that the grant fund situation was an exception to the general principle that where a common fund for claimants was created from Treasury funds, the award of a common fund fee did not implicate sovereign immunity.

Here, of course, there can be no doubt that the claimants (Utilities and Manufacturers and the class) had the right to sue the United States to recover funds recovered pursuant to ESA Section 209 for "restitution," and that the United States had no sovereign immunity from such an action. Not only did the DOE concede as much by failing to raise a defense of sovereign immunity in that suit, not only did the District Court find no sovereign immunity impediment precluding it from entering a declaratory order requiring distribution to claimants, Con Ed IV, supra, 271 F. Supp. 2d at 112, but this Court itself explained in Kalodner I, supra, that "Congress has waived sovereign immunity for Subpart V claimants (Utilities and Manufacturers and the class)—parties injured by violations of the EPAA— by authorizing them to seek refunds from escrow accounts held by the United States Treasury..." 310 F. 3d at 770.

Thus sovereign immunity is doubly waived as to the right to claim a common fund fee the funds recovered from the Treasury by virtue of the Con Ed IV and Con Ed V litigation. First, and sufficiently, it is waived by the same waiver which enabled the Utilities and Manufacturers to obtain by litigation the right to

41

the common fund sought to be charged for a fee. Secondly, if not already so waived, sovereign immunity was waived by the EAJA, 28 U.S.C. Section 2412 (b), as held by this Court in Commonwealth of Puerto Rico v. Heckler, supra, and as pointed out by Judge Lamberth sua sponte in dicta in Kalodner II ,supra.

How, then does one explain the rejection of an application for a common fund fee on the basis of sovereign immunity in Kalodner I, Kalodner II, and in Con Ed IV?

One essential fact distinguishes those cases from the situation in National Treasurer Employees Union v. Nixon, supra, Commonwealth of Puerto Rico v. Heckler, supra, Swedish Hospital Corp. v. Shalala, supra, and the instant one. In Kalodner I, Kalodner II, and in Con Ed IV, the common fund for claimants was not yet created, i.e there was neither an order to distribute specific amounts to claimants nor an agreement by DOE to do so, nor was there a formula to be used to calculate the per gallon amount to be distributed. On the other hand, in National Treasurer Employees Union v. Nixon, supra, Commonwealth of Puerto Rico v. Heckler, supra, Swedish Hospital Corp. v. Shalala, supra, and in the instant situation, the application for a common fund fee occurs after, and in the context of, a determination to distribute specific amounts (or pursuant to a specific formula), and there is therefore an identifiable and specific common fund created for the benefitted class.  The differentiating factor is

42

not, as this Court appeared to suggest in <u>Kalodner I</u> whether the federal government is in "possession" of the money in question, but rather whether there has been a determination that a specific amount must be distributed by the United States from the funds in its "possession."

Alternatively, the difference in the two sets of cases may also be explained by virtue of the difference in "control" of the common fund, the issue to be discussed in the following Argument section. A court is in sufficient "control" of a common fund in order to award a common fund fee only if the common fund has been "created" for the beneficiaries, i.e. only if a specific amount of Treasury funds has been determined to be due to claimants.

Significantly, Judge Collyer herself has now recognized the waiver effected by the EAJA as interpreted by this Court, and has awarded a common fund fee as to a relatively small part of the created common fund (see Addendum B); as Judge Collyer explained, she felt constrained by the Federal Circuit one word affirmance of her denial of a common fund fee in <u>Con Ed IV</u> , and accordingly unable to award a common fund fee as to the entire $275 million.

In fact, in rejecting Kalodner's application for a common fund fee in <u>Con Ed IV</u>, Judge Collyer considered neither of the two statutory provisions waiving sovereign immunity as to an application for a common fund fee from funds which she had declared must be paid to Utilities and Manufacturers and the

claimant class-- (i) ESA Section 209 which waived sovereign immunity as to the Utilities and Manufacturers' suit for disbursement of the escrowed funds and therefore necessarily waived sovereign immunity as to a claim for a common fund fee from escrowed funds ordered to be disbursed to claimants, and (ii) the EAJA which effected such a waiver of sovereign immunity as to a common fund fee even if it had not already been waived by ESA Section 209. Such failure to consider the effect of either statute is clear from Judge Collyer's concluding sentence in her December 4, 2004 Order denying a common fund fee in Con Ed IV: "Because the funds at issue currently reside in the United State Treasury and Mr. Kalodner offers no statutory exception to the doctrine of sovereign immunity, the motion for the award of a common fund fee is DENIED." (Addendum C, at 2, emphasis supplied). ( Kalodner had indeed not cited the EAJA, believing it unnecessary because waiver had been effected by ESA Section 209 as a necessary part of the waiver as to the suit by Utilities and Manufacturers on which Judge Collyer had granted relief; apparently, Judge Collyer did not recognize that Kalodner's reliance on the fact that she had provided relief to claimants pursuant to ESA Section 209 constituted an argument that ESA Section 209 waived sovereign immunity as to an application for a common fund fee.)

Because Judge Collyer had considered neither of the

44

statutory provisions waiving sovereign immunity as to a common fund fee for wresting ESA Section 209 funds from the DOE, the one-word affirmance of her decision by the Federal Circuit did not constitute an appellate determination as to the effect of either ESA Section 209 or the EAJA in waiving sovereign immunity.

Moreover, there is yet another obstacle to construing the Federal Circuit one-word affirmance as rejecting the contention (never made in the District Court) that the EAJA has waived sovereign immunity as to a common fund fee claim on funds residing in the U.S. Treasury. The Federal Circuit could not have construed the EAJA because it has no appellate jurisdiction to interpret the EAJA. If the Federal Circuit believed the interpretation or effect of the EAJA was in issue, it was required to refer it for determination to this Court.  See Texas American Oil Corp. V. U.S. Department of Energy, supra, 44 F. 3d at 1563, and Atlantic Richfield Co. V. U.S. Department of Energy, supra, 769 F. 2d 771, 778-779 (D.C. Cir. 1985).

B. The District Court Created The Common Fund Fee For Claimants, And Had Sufficient Control Over It To Award A Common Fund Fee

The second expressed basis for the District Court's dismissal is the "absence of a fund under court control." (Appendix, p. 45). It is admittedly difficult to interpret the Court's concern. There would appear to be three possibilities:

(i) that because the common fund is in the U.S. Treasury, it is not in the Court's control sufficiently to award a common fund fee, (ii) that if a common fund for claimants was created by Court action, it was created by Judge Collyer, and Judge Kennedy has no control over it sufficient to award a common fund fee, and (iii) the common fund was created by the DOE in its recovery from producers and resellers of crude oil who overcharged, and accordingly there was no common fund created by any court sufficient to enable the Court to award a common fund fee.

As to the three possible interpretations, plaintiff-appellant believes (i) that the first possible construction is merely an alternative way of expressing the sovereign immunity defense, (ii) that the most likely interpretation is a concern over the fact that it was before Judge Collyer that the common fund fee was created and that another Judge does not have sufficient control over the fund to award a common fund fee, and (iii) that there is no indication in the Opinion that the Court believes it lacks control over the common fund because it originated with a DOE recovery; however, because all three are possible constructions, and because at least four of the appellees have indicated that they believe the last interpretation is the correct one, all three interpretations will be addressed, albeit in reverse order.

   1. <u>The Fact That The Funds Came Into The Hands of the DOE By</u>

<u>Virtue of Its Recovery From Violators of the Price Regulations</u>

<u>Does Not Eliminate The Court's Control Over The Funds as a Common</u>

<u>Fund; the Common Fund Was Created For Claimants By Virtue of</u>

<u>Plaintiff's Success in Con Ed IV and Con Ed V</u>

The common fund of $275 million was created <u>for claimants</u> by virtue of plaintiff's success in obtaining a declaratory judgment in <u>Con Ed IV</u> and in obtaining the agreement of DOE to implement that declaratory order in <u>Con Ed V</u>.

Neither the fact that the $275 million common fund came into being by virtue of DOE's recovery of the funds from crude oil producers and resellers nor the placing of such recovered funds in Treasury escrow for claimants created a common fund for claimants, as is evident from the fact that DOE opposed the effort to require it to distribute the funds in <u>Con Ed IV</u>, and when it agreed to distribution under the pressure of a mandamus action in <u>Con Ed IV</u> it proposed initially a distribution of only some $245 million rather than the $275 million in escrow.

As Judge Collyer found in awarding a common fund fee as to some $30 million of the $275 million in escrow, the fund was indeed "created" <u>for claimants</u>, i.e. committed to distribution to claimants, only by virtue of the <u>Con Ed IV</u> and <u>Con Ed V</u> litigation: "The Court agrees that Mr. Kalodner was successful in two adverse civil suits against DOE; in <u>Con Ed IV</u>, where he obtained a declaratory order requiring the DOE to distribute some

47

$275 million in crude oil refunds which the DOE held in U.S. Treasury escrow, and in Con Ed V, when the DOE voluntarily agreed to the relief there sought...Con Ed V insured the implementation of the Court's declaratory judgment in Con Ed IV that DOE should disburse approximately $275 million in funds. In responding to Con Ed V, the DOE not only committed to a distribution but also committed to a specific methodology for calculating the per-gallon amount of that distribution " (Addendum B, at p. 5, 10). (As the Court noted, the fact that Con Ed V was dismissed in light of DOE's agreement to the relief there sought does not preclude the award of a common fund fee, citing Koppel v . Wien, 743 F. 2d 129, 135 (2nd Cir. 1984): "Fees may be awarded even where there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained.")

The fact that the funds came into DOE's hands as a result of its enforcement actions is no more a deterrent to the granting of a common fund fee for the successful effort to obtain disbursement of the funds to claimants than was the fact that the funds required to be disbursed in Commonwealth of Puerto Rico v. Heckler, supra, and Swedish Hospital Corp. V. Shalala, supra, were appropriated by Congressional action.

Moreover, as the Court noted in Christensen v. Kiewit-Murdock Inv. Corp., 813 F. 2d 206, 211 (2nd Cir. 1987): "the (common fund) doctrine has been applied... to award fees against

48

a fund not created by the plaintiff but redistributed as a result of the attorney's efforts, e.g. United States v. American Society of Composers, Authors and Publishers ("ASCAP"), 466 F. 2d 917, 918-19 (2nd Cir. 1972)." In, ASCAP where the issue was to whom funds recovered by ASCAP as license fees from a television network were properly disbursed, the Court held that a common fund fee was properly paid to counsel for a group of composers who successfully obtained a judicial decision that they were entitled to a greater share of the license fees than that originally proposed by ASCAP: " We think the District Court erred in not considering the benefit that accrued to a sub-class of ASCAP members as a result of appellants' efforts. The fact that appellants did not contribute to the creation of the fund originally is not dispositive...(citations omitted)...In the present case the district court judge erred in rejecting the argument that applicants had benefitted a sub-class of ASCAP members and giving as a ground for limiting appellants' fees the 'fact that no part of the license fees involved in this proceeding represents a 'fund' created by the efforts of the (appellants)'."

    2. The Fact That The Common Fund Was Created For Claimants in Litigation Before Judge Collyer, And A Separate Suit In The Same Court Was necessary To Seek a Common Fund Fee Does Not Deprive The Court Of Sufficient Control Over The Fund To Award A

<u>Common Fund Fee</u>

As Judge Collyer explained succinctly in awarding a common fund fee to Kalodner as to a small portion of the $275 million in <u>Con Ed V</u>, addressing the issue of whether she had sufficient control over the fund so as to be able to award a common fund fee from it, "The Court's authority over the money is derived from the fact of the adversary litigation before it, through which Mr. Kalodner obtained the relief he sought." (Addendum B, at 9).

Certainly, Judge Collyer had as much control over the entire $275 million as she did over the $30 million portion of it as to which she awarded a common fund fee. She felt precluded from awarding a fee as to the entire $275 million not by a lack of control, but by virtue of the affirmance by the Federal Circuit of her refusal to award a common fund fee in <u>Con Ed IV</u> on the basis of sovereign immunity.

In so refusing an award in <u>Con Ed IV</u>, Judge Collyer sua sponte suggested an action against the claimants themselves, the action here brought. That action was brought as a related action and accordingly assigned to Judge Collyer, and then reassigned, presumably at her request, to Judge Kennedy. The Court is itself the same, i.e. the District Court for the District of Columbia. If Judge Collyer had sufficient control over the common fund to award a common fund fee in a separate cause of action brought by the attorney claiming a common fund fee, then so, too, did Judge

Kennedy.

In the very decision relied upon by the District Court for its holding that common fund recovery requires "a common fund under control of the court against which the court could under common law principles impose a charge for attorney fees on non-parties..." Knight v. United States, 982 F. 2d 1573, 1582 (Fed. Cir. 1993)(emphasis added by Judge Kennedy), the Federal Circuit confirmed that "the United States may under certain circumstances be obligated to honor a 'common fund'," explaining that "such obligation can only arise from litigation before a court, adequate representation of all parties in interest, identification of a common fund as to which the government is merely a stakeholder, jurisdiction over the fund directly or through a party representing those being assessed, and exercise of the judicial equity power to impose liability on the fund..." 982 F. 2d at 1582. All of those required elements are here present; unlike the situation in Knight, however, here litigation was actually brought and, as Judge Collyer has found as a fact, was the proximate cause of the creation of the common fund for claimants.

Nor was the District Court here without control because the funds had not been paid into the Court. In National Treasury Employees Union v. Nixon, supra, where the benefits in the form of additional compensation had already been provided voluntarily

by the United States, from funds never in the control of the
Court, to more than 3 million employees who were in the same
situation as those who had obtained relief in litigation, the
D.C. Circuit rejected an argument that a common fund fee was not
properly assessed because "the District Court has no control over
the 'common fund.'", explaining:

   "The Supreme Court has clearly indicated that such control
is not necessary for reimbursement. 'Although the earliest cases
recognizing a right to reimbursement involved litigation that had
produced or preserved a 'common fund' for the benefit of a group,
nothing in those cases indicates that a suit must actually bring
money into the court as a prerequisite to the court's power to
order reimbursement of expenses' Mills v. Electric Auto-Lite Co.,
396 U.S. 375, 392 (1970)....Control over funds or assets is not a
necessary condition for the application of the doctrine." 521 F.
2d at 321.

   Indeed, as the Court noted in Koppel v. Wien, 743 F. 2d 129,
134 (2nd Cir. 1984, ), even when the common fund to be charged is
not "contemporaneously created by plaintiffs' action" but would
be produced later, e.g. in the sale of property, "the absence of
a fund will delay but not defeat plaintiffs' right to fees. The
fee award could be imposed as a charge or lien on the property,
with payment made from the proceeds of its sale." See, e.g. City
of Klawock v. Gustafson, 585 F. 2d 428, 430-431 (9th Cir.

1977(fees a first charge on land recovered through action)..."

In <u>City of Klawock v. Gustafson</u>, <u>supra</u>, 585 F. 2d at 431,
where the benefit obtained was the conveyance of lots to cities
in Alaska by virtue of a suit by one municipality as to lots
within that city, the "common fund", i.e. the lots to be conveyed
to the other Alaska cities, was actually created not by victory
in the litigation, but rather by a "policy change made (by the
U.S. Department of Interior) in response to the district court's
oral decision in the Klawock case."

3. <u>The Fact That The Fund To Be Charged Is Still In The
Treasury Does Not Eliminate the Court's Control</u>

Any concern by the District Court that it lacked sufficient
control over the common fund because it remains temporarily in
the U.S. Treasury is merely an alternative articulation of the
sovereign immunity concern.

If, as noted above, the Court has control over a common fund
obtained by litigation even though the fund is not in Court,
indeed may not have come into existence or may have already been
disbursed to the beneficiaries, then the only argument which can
be made by virtue of the fund being in the Treasury is the
argument it is immune from being charged with a common fund fee
by virtue of sovereign immunity.

The absence of sovereign immunity here has already been
discussed above at length, and need not be here reiterated.

53

CONCLUSION

For the reasons above set forth, the District Court's dismissal of the Complaint should be reversed and that Court ordered to proceed to consider plaintiff's motion for certification of a defendant class and plaintiff's motion for summary judgment.

Respectfully submitted,

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
610-649-8749
DC Bar 97357

June 20, 2005                    Appellant Pro Se

54