**EXHIBIT B**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

05-5089, 05-5223

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. ET AL
APPELLANTS

v.

SAMUEL W. BODMAN,, Secretary of Energy< United States and
GEORGE B. BREZNAY, Director, Office of Hearings and Appeals
of U.S. Department of Energy
APPELLEES

————————————

05-7009

PHILIP P. KALODNER,
APPELLANT

v.

PUBLIC SERVICE ELECTRIC & GAS COMPANY ET Al
APPELLEES

————————————

APPELLANTS, CROSS-APPELLEES COMBINED PETITION

FOR PANEL REHEARING AND FOR REHEARING RN BANC

PHILIP P. KALODNER
208 Righters Mill Rd.
Gladwyne PA 19035
(610) 649-8749

ATTORNEY FOR APPELLANTS,
CROSS-APPELLEES, PRO SE

TABLE OF CONTENTS

TABLE OF AUTHORITIES                                    (iii)

GLOSSARY                                                 (v)

STATEMENT OF COUNSEL                                      1

ARGUMENT                                                 2

I   THE ISSUE ON THE BASIS OF WHICH THE DISTRICT
COURTS ACTED-- THE SOVEREIGN IMMUNITY OF THE UNITED
STATES AS LONG AS FUNDS REMAIN IN THE U.S. TREASURY--
IS MOOT NOW THAT THE FUNDS HAVE BEEN DISTRIBUTED;
REMAND, NOT A MERITS DECISION, IS APPROPRIATE            3

II  HAVING FOUND THAT JURISDICTION OVER THE BASIS ON
WHICH KALODNER PRINCIPALLY RELIES AS WAIVING
SOVEREIGN IMMUNITY LIES NOT WITH THIS COURT BUT WITH
THE FEDERAL CIRCUIT, THIS COURT SHOULD TRANSFER THE
MATTER FOR DETERMINATION BY THAT COURT                   6

III   MOST IMPORTANTLY, IN ORDER TO BE ABLE TO REACH
THE MERITS OF THE COMMON FUND FEE CLAIM, THE PANEL
HAS MIS-CHARACTERIZED THE NATURE OF TWO OF THE THREE
ACTIONS WHICH IT IS REVIEWING                           10

     A. The Panel Mis-characterizes the Appeals in
05-5089 and 05-5223 (claims 1 and 2) As Being Claims
for a Common Fund Fee By The Plaintiffs, Consolidated
Edison Co. et al, Rather Than As Claims By Their
Attorney, Kalodner, As They In Fact Were                10

     B. The Panel Mis-characterizes The Common Fund
Fee Request In The Appeal in 05-7009 As Being For
Kalodner's Obtaining An Increase In The Distribution
of $39 Million (04-0152HHK D.D.C. and Claim 6 in the
Panel's Opinion)                                        14

IV   THE PANEL'S CONCLUSION THAT CON ED V WAS NOT
THE CAUSE OF DOE'S COMMITMENT TO COMPLY WITH THE
COURT'S DECLARATORY ORDER, AND MORE PARTICULARLY
TO INCREASE ITS PROPOSED DISTRIBUTION SOME $39
MILLION, IMPROPERLY IGNORES THE FACTS FOUND BY,
AND THE SEQUENCE OF EVENTS IN, THE DISTRICT COURT,
AND RELIES INSTEAD ON FACTS NOT IN THE RECORD,
AND INCONSISTENT WITH IT                                    16


V   THE PANEL'S DISCUSSION ABOUT THE FACTORS WHICH
IT BELIEVES SHOULD BE WEIGHED IN THE DISTRICT
COURT'S CONSIDERATION ON REMAND AS TO WHETHER THE
DECLARATORY ORDER IN CON ED IV WAS THE CAUSE OF
DOE'S DECISION TO DISTRIBUTE SHOULD BE DELETED
AS INAPPROPRIATE GUIDANCE TO THE DISTRICT COURT             22


CONCLUSION                                                  25


ADDENDUM:

OPINION AND ORDER OF THE PANEL
FROM WHICH REHEARING IS SOUGHT

CERTIFICATES OF COUNSEL AS TO
PARTIES AND AMICI, AND CORPORATE DISCLOSURE STATEMENT
      in 05-5089 05-5223
      in 05-5090
      in 05-7009

CERTIFICATE OF SERVICE

TABLE OF AUTHORITIES

CASES

*Boeing Co. v. Van Gemert,
444 U.S. 472 (1980).....................................10

*Commonwealth of Puerto Rico v. Heckler,
745 F. 2d 709 (D.C. Cir. 1984)..........................9

Consolidated Edison Co. et al v.
Abraham, ("Con Ed IV")
No. 01-00548 (RMC) (D.D.C),
271 F. Supp. 2d 104 (D.D.C. May 9, 2003),
Order on Common Fee Fund Application
(Dec. 4, 2003), Reproduced in Appendix in 05-5089
at 55, affirmed 04-1141 (Fed. Cir. June 14,2004),
appeal dismissed 04-5041 (D.C. Cir. Nov. 15, 2004)....13,19

Consolidated Edison Co. V. Bodman et al,
("Con Ed V"), No. 03-1991RMC (D.D.C.), Order
of June 30, 2004 (Reproduced in Appendix
of 05-5089, at 50), Opinion and Order of
January 26, 2005 (Reproduced in Appendix
of 05-5089, at 70)...................................10,22

*National Treasury Employees Union v. Nixon,
521 F. 2d 317 (D.C. Cir. 1975) .....................6,10,14

*Swedish Hospital Corp. v. Shalala,
1 F. 3d 1261 (D.C. Cir, 1993)...........................9

(Authorities upon which appellant principally relies
are marked with an asterisk)

(iii)

ADMINISTRATIVE MATERIALS

Notice of Proposed Procedures for
Distribution of Remaining Crude Oil
Overcharge Refunds and Opportunity
for Comment, ("Proposed Order")
68 Fed. Reg. 64098 (Nov. 12, 2003),
reproduced in Appendix at 23.............................18

Notice of Final Procedures for Distribution
of Remaining Crude Oil Overcharge Refunds
("Final Order"),69 Fed. Reg. 29300 (May 21, 2004),
reproduced in Appendix at 60.............................20

Final Procedures for Distribution of Remaining
Crude Oil Overcharge Refunds" ("Distribution Order),
71 Fed. Reg. 2195 (January 13, 2006)...................3,17

STATUTES

Economic Stabilization Act ("ESA"),
Pub. L. 92-210, 85 Stat. 743 (1971)...................7,8,9

Equal Access to Justice Act ("EAJA"),
28 U.S.C. Sec. 2412 (b)...............................4,8

(iv)

## GLOSSARY

| | |
|---|---|
| CON ED IV | Consolidated Edison Co. et al v. Abraham, No. 01-00548 (RMC) (D.D.C.) |
| CON ED V | Consolidated Edison Co. et al v. Abraham, No. 03-1991 (RMC) (D.D.C.) |
| DOE | Department of Energy |
| EAJA | Equal Access to Justice Act |
| ESA | Economic Stabilization Act |

STATEMENT OF COUNSEL

B. The proceeding involves five questions of exceptional importance, i.e.

1. Where the issue upon the basis of which the court below acted has become moot-- here sovereign immunity because the funds are no longer in the U.S. Treasury-- should this Court remand, rather than render a merits decision?

2. Where this Court recognizes that the basis on which appellant principally relies for seeking reversal, here the waiver of sovereign immunity pursuant to the Economic Stabilization Act, is not within its appellate jurisdiction, but is rather for the Court of Appeals for the Federal Circuit, should this Court transfer the appeal rather than address the merits?

3. Should this Court mis-characterize the nature of two of the three actions below which it is reviewing in order to permit it to reflect on the merits of a claim for a common fund fee?

If, nevertheless, this Court reaches the merits,

4. In considering the District Court's conclusion that Kalodner's efforts in litigation were the cause of (i) DOE's commitment to distribute the remaining available funds to 31,000 claimants and (ii) DOE's agreement to distribute $39 million more than it originally contemplated distributing, should this Court recognize and honor the factual findings by the District Court

1

rather than find the facts itself, particularly when it misstates the facts upon which it relies?

5. Should this Court express views on a factual issue as to which it finds the District Court has not ruled and which it is remanding to the District Court in a manner which may prejudice the District Court's consideration?

<u>ARGUMENT</u>

In its zeal to reach, and denigrate, the merits of Philip P. Kalodner's claim for a common fund fee, the Panel decision violates three fundamental rules of appellate review: (i) the principle that where the jurisdictional basis on which the District Court ruled has become moot, remand for determination on the merits is necessary, (ii) the principle that where this Court finds that appellate jurisdiction as to a preliminary and critical jurisdictional issue resides in the Court of Appeals for the Federal Circuit, it should transfer the matter to that Court, and (iii) most importantly, the principle that the nature of the litigation being reviewed should not be mis-characterized by this Court.

When, after, and only by virtue of violating all three of those fundamental principles, the Panel reached the merits of Kalodner's right to a common fund fee, the Panel violated the two rules governing such review, (i) that it must accurately

2

recognize, describe and credit the District Court's factual
determinations which were the basis of the award it made, and
(ii) this Court should not substitute itself as a fact finder as
to a claim on which no District Court has yet ruled definitively
and should certainly not misstate or misinterpret the facts in
the record.

I    THE ISSUE ON THE BASIS OF WHICH THE DISTRICT COURTS ACTED--
THE SOVEREIGN IMMUNITY OF THE UNITED STATES AS LONG AS FUNDS
REMAIN IN THE U.S. TREASURY-- IS MOOT NOW THAT THE FUNDS HAVE
BEEN DISTRIBUTED; REMAND, NOT A MERITS DECISION, IS APPROPRIATE

The Panel reports that "the government distributed the bulk
of the remaining funds on the day of oral argument," citing a
Federal Register Notice issued that day announcing that the
Department of Energy ("DOE") would distribute 90% of the funds,
retaining the remaining 10% for possible payment of a common fee
sought by plaintiff-appellant Kalodner (of which some 4% had been
awarded Kalodner by the District Court in the form of a 30% fee
on $39 million of the $284 million which his efforts had obtained
for the 31,000 claimants).

Although the Panel somewhat overstated when it reported the
90% distribution was accomplished on the day of argument, as
Kalodner has subsequently reported in filings with this Court,
the distribution process is well underway, with distribution
having been accomplished to 88% of the claimants, i.e. more than

3

27,000 of the 31,000, of more than 81% of the funds which are currently being distributed ( DOE is withholding (i) the 10% for a possible common fund fee (ii) 0.5% for a claim as to which litigation is pending, and (iii)distribution to some claimants whose right to refunds is under litigation challenge).

Because as to five of the six claims described by the Panel as being on appellate review (claims 1,3,4,5,6, Slip Opinion, at 4), dismissal by the District Courts was on the basis of sovereign immunity (stated in the case of claims 5 and 6 as an inability of the Court to reach the funds because they were in the U.S. Treasury), the elimination of sovereign immunity by virtue of the distribution requires remand for the purpose of a merits determination; as the Panel recognized, in none of those five "claims" had there been a merits determination.

Moreover as to the sixth claim, Claim 2 as described by the Panel (Slip Opinion, p. 4), the claim on the basis of which the District Court awarded Kalodner a 30% fee on $39 million (described by the Panel as $35 million), the elimination of sovereign immunity as a defense by virtue of the distribution eliminates the basis of the Panel's reversal of that award. The Panel reversed on the basis (i) that there was sovereign immunity, and the District Court had relied on the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412 (b) as the basis of a waiver of such sovereign immunity, (ii) that the EAJA requires

4

that the fee claimant "prevail" in the litigation in order to be entitled to a common fund fee, and (iii) that the increase in the amount distributed by some $39 million was not ordered by a Court and therefore Kalodner's clients had not "prevailed".

Had the Panel recognized that sovereign immunity was no longer an available defense because distribution had been made and that therefore the EAJA was not necessarily invoked and its "prevail" requirement not therefore imposed, it would necessarily have applied the case law with regard to common fund fees which it recognized as permitting an award on the basis of administrative relief even where there is no judgment, provided only that the litigation "caused" the administrative agency action (Slip Opinion, p. 36-37). (The Panel's application of that standard here can possibly be anticipated by virtue of its factual discussion as to claim 6, a matter to be addressed below; however, the Panel might well have been more respectful of the findings of fact by the District Court which awarded a fee (claim 2) , than when it is discussing a cause of action (claim 6) on which no fee determination was made.

The basis on which the Panel evidently finds sovereign immunity still relevant-- the withholding of 10% for a possible common fund fee-- proposes a sovereign immunity concept which both (i) puts form over substance in a way which is inconsistent with the very basis of sovereign immunity, and (ii) would impose

an unnecessary and unjustified  burden on both administrative
agencies and the courts.

It would do the former by ignoring the fact that DOE has
recognized that the 10% withheld belongs to the claimants and is
withheld only to discharge the claimants' obligation to pay a
common fund fee; to make the sole test of sovereign immunity
"possession" by the government, as does the Panel, in a situation
where the government has withheld funds for the purpose of
discharging the obligations of others would unacceptably place
form over substance.

It would do the latter by creating a situation in which the
DOE would distribute the 10% to some 31,000 claimants, and then
if a common fund fee was awarded, the DOE would be required to
recover from 31,000 claimants, <u>National Treasury Employees Union
v. Nixon</u>, 521 F. 2d 317 (D.C. Cir. 1975), with the necessary
additional administrative effort and potentially hundreds if not
thousands of suits were the awardees to fail to return the funds
for payment of a common fund fee.

II <u>HAVING FOUND THAT JURISDICTION OVER THE BASIS ON WHICH
KALODNER PRINCIPALLY RELIES AS WAIVING SOVEREIGN IMMUNITY LIES
NOT WITH THIS COURT BUT WITH THE FEDERAL CIRCUIT, THIS COURT
SHOULD TRANSFER THE MATTER FOR DETERMINATION BY THAT COURT</u>

The Panel correctly recognizes that Kalodner's principal
argument for waiver of sovereign immunity here was that the right

6

of his client claimants to seek funds in the U.S. Treasury
included the right of their attorney to seek a common fund fee
from funds so obtained for claimants with whom he had no fee
agreements. (Slip Opinion, p. 14). The Panel found that such an
argument rested on interpretation of Section 209 of the Economic
Stabilization Act Amendments of 1971, ("ESA") Pub. L. 92-210, 85
Stat. 734 (1971), and that as such it fell within the exclusive
jurisdiction of the Court of Appeals for the Federal Circuit.
(Slip Opinion, p. 20-21)

But having so recognized, the Panel then declined to refer
the matter to the Federal Circuit on the basis of its findings
(i) that as to the fee award for increasing the amount to be
distributed by $39 million, the litigation brought by Kalodner
for his client claimants was not the cause of the decision of DOE
to increase the amount of its distribution (a matter to be
discussed below), and (ii) that the declaratory judgment obtained
by Kalodner is not likely to be found by the District Court to be
the cause of DOE's determination to distribute the entire amount
of funds remaining in the relevant U.S. Treasury accounts, some
$284 million. (again, the merits will be discussed below).

The Panel reasons that if Kalodner's claims are found to be
without merit because the litigation he brought was not the cause
of the distribution to claimants, it would be unnecessary for the
Federal Circuit to determine whether sovereign immunity had been

7

waived for a common fund fee.

But to defer determination of the waiver of sovereign immunity until it is determined whether there is merit to the common fund fee claim is not only to put the cart before the horse, but, more importantly, it is the cause of the Panel's repair to the EAJA as a necessary source for waiver of sovereign immunity, and the resulting substitution of the "prevail" standard for the standard which the Panel recognizes would exist were waiver of sovereign immunity to have been effectuated by virtue of ESA Section 209. As the Panel recognizes, were reliance on the EAJA not required, "some version of the catalyst theory applies" (Slip Opinion, p. 36), rather than the stricter EAJA standard precluding fee shifting where success is obtained by the action of an administrative agency, even if triggered by litigation.

Most particularly, if sovereign immunity was waived as to the Kalodner claim for a common fund fee for increasing the amount distributed by $39 million (claim 2 in the Panel's analysis) by ESA Section 209 rather than by the EAJA, the basis of the Panel's reversal of the award to Kalodner, i.e. that he had not "prevailed" would not justify reversal because the "prevail" standard would not be applicable.

Several other aspects of the Panel's discussion with regard to the basis for waiver of sovereign immunity are appropriately

8

noted:

1. It was, and is, appellant's view that this Court does have jurisdiction to consider the merits of the reliance on ESA Section 209 as the basis of sovereign immunity; the issue is whether a waiver which this Court has recognized (based on decisions of the Federal Circuit) as permitting claimants to sue the DOE to recover Treasury funds includes the right of the attorney who has obtained such funds to claim a common fund fee from them; that issue does not require interpretation of the ESA.

2. The Panel incorrectly dismisses the significance of this Court's decisions in <u>Commonwealth of Puerto Rico v. Heckler</u>, 745 F. 2d 709 (D.C. Cir. 1984) and <u>Swedish Hospital Corp. V. Shalala</u>, 1 F. 3d 1261 (D.C. Cir. 1993). The former, although relying on the waiver effected by the EAJA because the funds involved were grant funds as to which the United States had a continuing interest, contains a recognition that where the funds obtained from the U.S. Treasury were not restricted in their use, as was the case here, here, once a common fund is established to exist, a common fund fee can be sought even though the funds remain in the U.S. Treasury awaiting distribution. Although it is correct that in the latter case in which a common fund fee was awarded while the common fund remained in the U.S. Treasury, there was an assumption that sovereign immunity had been waived, the failure of either the United States or the Court to suggest sovereign

9

immunity constitutes a recognition by both that there is no
sovereign immunity once a common fund is recognized even though
the funds remain in the Treasury.

    3. The Panel's insistence that "possession" of funds by the
United States creates a sovereign immunity barrier even after
establishment of a common fund, i.e. "(W)hen each member of the
class has an undisputed and mathematically ascertainable claim to
part of a lump-sum judgment recovered on his behalf" (Boeing Co.
v. Van Gemert, 44 US 472, 479 (1980), Slip Opinion, p.5) creates
an untenable situation for the United States and the courts;
distribution must be made to claimants of funds properly sought
as a common fund fee, and then either or both the United States
or the common fund fee claimant must recover the fee from
thousands, indeed perhaps millions of distributees, National
Treasury Employees Union v. Nixon, supra.

III   MOST IMPORTANTLY, IN ORDER TO BE ABLE TO REACH THE MERITS
OF THE COMMON FUND FEE CLAIM, THE PANEL HAS MIS-CHARACTERIZED THE
NATURE OF TWO OF THE THREE ACTIONS WHICH IT IS REVIEWING

    A. The Panel Mis-characterizes the Appeals in 05-5089 and
05-5223 (claims 1 and 2) As Being Claims for a Common Fund Fee By
The Plaintiffs, Consolidated Edison Co. et al, Rather Than As
Claims By Their Attorney, Kalodner, As They In Fact Were

    The common fund fee sought in Consolidated Edison Co. et al
v. Bodman et al, No. 03-1991RMC (D.D.C.) ("Con Ed V"), (i) denied

10

in part and the subject of the appeal in 05-5089 and (ii) granted in part and the subject of the appeal in 05-5223, was sought not by the plaintiffs Consolidated Edison Co. et al but by their attorney Philip P. Kalodner (Appendix in 05-5089, p. 53). And the fee awarded on the $39 million increase in the amount to be distributed was awarded to Kalodner, not to Consolidated Edison.

The Panel repeatedly describes the situation as one in which the claim is being made by the plaintiffs, Consolidated Edison Co. et al, rather than as a claim by Kalodner, as it was, going so far as to say the motion for a fee was filed by Kalodner's clients, while it in fact was filed by Kalodner (e.g. Slip Opinion p.5,6,9,11). Nor is there any doubt that the award made by the Court on the $39 million increase in the amount of distribution was to Kalodner not to his clients; "the Court will award an attorney's fee of thirty percent (30%)" (Appendix in 05-5089, p. 79).

This mis-characterization of the Kalodner claim as being a Consolidated Edison claim was critical in enabling the Panel to reverse the award on the $39 million on a basis which would arguably preclude its reiteration by the District Court on remand.

Had the Panel acknowledged that the award on the $39 million was sought by Kalodner and made to Kalodner, given its dismissal of the Kalodner claims against the DOE in 05-0024RMC (D.D.C.)

11

(05-5090 in this Court, and claims 3 and 4 in the Panel's
Opinion), it would have been compelled to reverse the award on
the grounds of sovereign immunity. It would have found, as it did
as to the suits in which Kalodner was the named plaintiff that
"Sovereign immunity applies unless waived... As to any EAJA
waiver, Kalodner was counsel in Con Ed IV and Con Ed V, not a
party, and EAJA provides attorneys' fees only for parties." (Slip
Opinion, p. 19).

By mis-characterizing the award on the $39 million as being
sought by Consolidated Edison Co. et al and awarded to the
plaintiffs, the Panel was able to find the EAJA applicable and
then to pass on its requirement that the party seeking a common
fund fee must have "prevailed" in the litigation, finding that
Consolidated Edison Co. et al had not "prevailed" and therefore
were not entitled to a common fund fee.

Nor would the Panel had been able to reach the merits of the
Kalodner claim that Con Ed V was critical in obtaining the
distribution of the balance of the distribution, the $245 million
which the DOE proposed as representing full implementation of the
declaratory judgment, had it recognized that the claim was by
Kalodner in 03-1991. Had it so recognized, the Panel would
necessarily have affirmed the District Court in 05-5089 on the
basis that sovereign immunity was not waived, never therefore
reaching the merits of the claim.

12

Moreover, there is yet an additional reason precluding the Panel from using the appeal in 05-5089 as it did as the basis for a discussion of the merits of a claim for a common fund fee for obtaining the declaratory judgment in Con Ed IV. The issue of recovery against the United States for obtaining the declaratory judgment while sovereign immunity continues to be a barrier was the subject matter of Con Ed IV and that case cannot be re-litigated here. As long as sovereign immunity remains a barrier, as the Panel found it to be here, the Court cannot reach the merits of the claim for the Con Ed IV service rendered.

Nor is the Panel justified in reaching the merits of Kalodner's claim insofar as it is based on obtaining the declaratory judgment in Con Ed IV by virtue of the assertion of that claim in the suit against the claimants, 05-00152 in the District Court, here on appeal in 05-7009. In that case, the Complaint was dismissed for failure to assert a claim on grounds which this Panel finds do not justify such dismissal. The Complaint clearly asserts the causative effect of the declaratory judgment, and there is no basis for this Court to pass on the merits in a situation where the plaintiff has not been afforded an opportunity to make a factual showing.

Under such circumstances, now that distribution has been made and the sovereign immunity barrier is no longer relevant, Kalodner should be able to seek a common fund fee for obtaining

13

the declaratory judgment in <u>Con Ed IV</u>, for obtaining its

implementation in <u>Con Ed V</u>, and for obtaining the full

implementation by increasing the distribution some $39 million in

<u>Con Ed V</u>, both from the United States, pursuant to the principle

of <u>National Treasury Employees' Union v. Nixon</u>, <u>supra</u>, and from

the claimants, without the prejudicial effect of the Panel's

comments on the merits of the Kalodner claim. (Any such Panel

comments would so clearly have been unjustified dicta as to have

no weight.)

   B. <u>The Panel Mis-characterizes The Common Fund Fee Request</u>

<u>In The Appeal in 05-7009 As Being For Kalodner's Obtaining An</u>

<u>Increase In The Distribution of $39 Million (04-0152HHK D.D.C.</u>

<u>and Claim 6 in the Panel's Opinion)</u>

   The action against the claimants, 04-0152 in the District

Court and on appeal here in 05-7009 was brought prior to DOE's

agreement  "in responding to <u>Con Ed V</u> " (Appendix in 05-5089, at

79) to the Kalodner-proposed methodology which increased the

distribution from DOE's proposed distribution of $245 million to

$284 million.

   It could not seek, and did not seek, a fee for increasing

the distribution to encompass the entire $284 million; such had

not occurred and therefore could not have been the basis for the

common fund fee sought in the Complaint.

   Since the dismissal in 04-0152 was of the Complaint, it did

14

not reflect a ruling on the merits of Kalodner's claim for increasing the distribution some $39 million.

Accordingly, there was no basis for the Panel to discuss the potential merits of a claim with regard to the $39 million increase in distribution which had not been made, and certainly no basis for the Court to find that an action which might be brought thereafter to claim a common fund fee from the claimants for increasing the distribution amount would be without merit.

Nor did the suit against the private claimants seek an award for the bringing of the Con Ed V action which Judge Collyer found "insured the implementation of the Court's declaratory judgment in Con Ed IV." (Appendix in 05-5089, at 79). The commitment of DOE to make the distribution it had earlier proposed, albeit in a smaller amount, did not occur until after the filing of the Complaint against the claimants in 04-0152, and therefore could not been the subject of a fee claim in that Complaint.

In sum, then, but for the mis-characterization of claims 1 and 2 as being a claim by Kalodner's clients instead of recognizing that it was a claim by Kalodner, and but for the misrepresentation of the matter on appeal in 05-7009 as including claim 6 which it did not, the Panel would have no basis for discussing either Kalodner's claim for insuring distribution by virtue of the Con Ed V action or Kalodner's claim, and the District Court's award, on the basis of Kalodner's success in

15

increasing the proposed distribution some $39 million by virtue of the litigation in <u>Con Ed V</u>.

IV   <u>THE PANEL'S CONCLUSION THAT CON ED V WAS NOT THE CAUSE OF DOE'S COMMITMENT TO COMPLY WITH THE COURT'S DECLARATORY ORDER, AND MORE PARTICULARLY TO INCREASE ITS PROPOSED DISTRIBUTION SOME $39 MILLION, IMPROPERLY IGNORES THE FACTS FOUND BY, AND THE SEQUENCE OF EVENTS IN, THE DISTRICT COURT, AND RELIES INSTEAD ON FACTS NOT IN THE RECORD, AND INCONSISTENT WITH IT</u>

The Panel's reversal of the award of a common fund fee to Kalodner against the DOE on the $39 million increased distribution resulting from Kalodner's <u>Con Ed V</u> proposed changes in the methodology used by DOE to calculate the distribution formula (claim 2), and the Panel/s attempt to eliminate the possibility of such an award in Kalodner's action against the benefitting claimants (claim 6) turn on a series of errors as to the facts:

1. The Panel fails to recognize the District Court's finding that it was indeed Kalodner who was responsible for the change in methodology-- i.e. the inclusion of the $9.5 million in the Citronelle account and the elimination of allocating refunds to claimants who would not supply the requisite verifications: "The common fund at issue in <u>Con Ed V</u> is the <u>increase</u> from an average of $670 per million gallons to $750 or $800 per million gallons, which Mr. Kalodner's calculation methodology obtained for his own

16

clients and for the entire class." (Appendix in 05-5089, at 79)

2. Although the Panel describes itself as "baffled by Kalodner's assertion on brief that <u>Con Ed V</u> increased the amount (of distribution) from $670 to $750-$800 per million gallons," (Slip Opinion, at 38), as the Panel itself recognizes, the DOE proposal was a final distribution of $670 per million gallons, and the distribution determined by DOE employing the Kalodner methodology was $772 per million gallons (of which the DOE withheld 10% as a possible common fund fee and distributed some $695 per million gallons. (Federal Register Notice of January 13, 2006, 71 Fed. Reg. 2,195, Slip Opinion, p. 14).

3. The Panel's attempt to undermine the District Court's conclusion that it was Kalodner alone who was responsible for the change in methodology, by noting that another commenter, Douglas Mitchell, also proposed the same methodology changes (Slip Opinion, p. 39) ignores the District Court's finding that Mitchell was merely reiterating the Kalodner comments "arising from discussions between the two." (Appendix in 05-5089, at 80).

4. The Panel's finding that DOE would have distributed the $9.5 million in the Citronelle account even if Kalodner (and Mitchell reiterating Kalodner's proposal) had not proposed it ignores the fact that the proposal was by Kalodner in response to a proposed "final distribution" of $670 per million gallons, derived in a calculation which did not include the Citronelle

17

funds. (68 Fed. Reg. 64098, Nov. 12, 2003, reproduced in Appendix
in 05-5089, at 24). The DOE $670 "final distribution" proposal
clearly does not contemplate another separate distribution of the
Citronelle funds. It may be that the omission was inadvertent,
but if it had not been pointed out by Kalodner, there is no
indication that DOE would have corrected the error.

    5. As to the other, and indeed more economically significant
major methodology change proposed by Kalodner, deferring the
calculation until the completion of the verification process and
thereby avoiding allocation of funds to those who would not
qualify to receive them, the Panel attempts to denigrate the
Kalodner contribution by two observations, and neither is
effective to do so.

    A. The Panel finds significance in the fact that this change
was not proposed in the Complaint in Con Ed V, but was first
asserted in that litigation in a motion for summary judgment. But
such is neither surprising nor significant. The change could not
have been proposed in the Complaint because it was filed
September 25, 2003, a month and a half before the DOE's issuance
of its Proposed Procedures in the November 12 Federal Register
Notice, and it was in that Notice that DOE first proposed its
calculation methodology. ( In contrast, Kalodner had anticipated
that DOE might read the declaratory judgment in Con Ed IV as not
including the Citronelle funds, and therefore did include that

18

change in the Complaint).

B. The Panel's observation that Kalodner's claims for a fee
in Con Ed V for proposing deferring the calculation until the
completion of the verification process is without merit because
in the Complaint he had taken an inconsistent position confuses
two very different points ( Slip Opinion, p. 38). In the
Complaint, because there might be claims upon the validity of
which DOE had not yet ruled, Kalodner suggested that the
calculation assume that all pending claims not yet ruled upon be
treated as valid for calculation purposes. The change in
methodology which he later proposed, and to which DOE agreed,
dealt not with claims not yet reviewed, but only as to claims
already approved as to which the claimant would not qualify, for
failure to complete the verification required; the volume of
claims not yet reviewed was, as Judge Collyer had observed in Con
Ed IV "paltry", while the volume of claims for which
verification would not be provided was significant.

6. In concluding that it was not the Con Ed V litigation,
but the comments filed with DOE's Office of Hearings and Appeals
("OHA") which caused the change in methodology for which Kalodner
was awarded a fee on the $39 million thereby obtained for the
claimants, the Panel (i) fails to recognize the sequence of
events during the Con Ed V litigation and (ii) fails to recognize
the District Court's conclusion from that sequence that it was as

19

a direct result of Con Ed V that DOE agreed to the change
producing the additional $39 million for claimants: "In
responding to Con Ed V, the DOE not only committed to a
distribution but also committed to a specific methodology for
calculating the per-gallon amount of that distribution."
(Appendix in 05-5089, at 79).

    Although the Comments were filed with OHA by the January
12, 2004 deadline, OHA had issued no Final Order as of April 1,
2004 when Kalodner's motion for a summary judgment including the
proposed changes in methodology was orally argued. At that
argument, Judge Collyer directed DOE to advise as to when it
would issue a final order, and the Court, although deferring to
OHA's consideration of the matter, expressed the view that
Kalodner's methodology changes appeared reasonable. It was seven
weeks thereafter that DOE issued its Order including the
methodology changes, thereby for the first time committing itself
to complying, and complying fully, with the Court's declaratory
order.

    It was obviously with the view from that sequence of events
that the litigation had played the key causative role in insuring
that there would be a distribution to claimants and that it would
be of the entire $284 million, that the District Court found, in
the language above quoted, that the change in methodology, as
well as the final commitment to comply with its previously issued

20

declaratory judgment, was "In responding to <u>Con Ed V</u>."

7. The Panel's reversal of the award to Kalodner of a fee on the $39 million obtained by virtue of the change in methodology (mis-characterized by the Panel as an award to Kalodner's clients) is based on its finding that Kalodner's client plaintiffs in <u>Con Ed V</u> were "not prevailing parties", that therefore the waiver of sovereign immunity pursuant to the EAJA was not available, and that therefore sovereign immunity precludes the award. But such a finding by the Panel is directly inconsistent with the District Court's conclusion that "Mr. Kalodner's success in <u>Con Ed V</u> would meet that standard (that the "parties prevailed against the United States in a civil action)." (Appendix in 05-5089, p. 75). Surely, the District Court which directly observed the sequence of events was in a better position to find such an ultimate fact than is this Court.

As to the District Court's failure to make specific findings of fact (Slip Opinion, p. 12), it was a direct result of the DOE's reliance solely on sovereign immunity in responding to Kalodner's motion for a common fund fee in <u>Con Ed V</u>, and DOE's failure to contest the allegations of the motion as to the causative effects of the litigation in obtaining both the distribution and the change in methodology. Significantly, when, after the award, DOE moved for reconsideration and alleged some of the very facts which the Panel has now relied upon for finding

21

that the change in methodology was not the result of the <u>Con Ed V</u>
litigation (Appendix in 05-5089 at 84-118), the District Court
denied the motion, explaining that the DOE's arguments were not a
"proper basis for the Court to change its previous ruling."
(Appendix in 05-5089, at 124-125).

8, Finally, to the extent to which the Panel relies on Judge
Collyer's reference in her Order dismissing <u>Con Ed V</u> as moot to
the "contemporaneous administrative process (which) adopted many
of their distribution criteria" (Slip Opinion, p.29) as rejecting
the argument that it was the <u>Con Ed V</u> litigation which was the
cause of the change in methodology, the simple and compelling
response is that upon reflection, Judge Collyer concluded that
Kalodner was entitled to a common fund fee because the change in
methodology was "in responding" to the <u>Con Ed V</u> litigation. To
the extent to which her earlier Order can be properly construed
as suggesting otherwise, her later considered determination
supersedes.

V    <u>THE PANEL'S DISCUSSION ABOUT THE FACTORS WHICH IT BELIEVES
SHOULD BE WEIGHED IN THE DISTRICT COURT'S CONSIDERATION ON REMAND
AS TO WHETHER THE DECLARATORY ORDER IN CON ED IV WAS THE CAUSE OF
DOE'S DECISION TO DISTRIBUTE SHOULD BE DELETED AS INAPPROPRIATE
GUIDANCE TO THE DISTRICT COURT</u>

Although the Panel has remanded two matters (claims 1 and
5), as already noted claim 1, by Consolidated Edison et al, was

22

never asserted below and the claim which was asserted by
Kalodner's motion for a common fund fee in 03-1991RMC D.D.C. i.e.
for a fee to be awarded him, not his clients, would necessarily
be precluded by the Panel's decision on sovereign immunity
grounds, as long as only a waiver pursuant to the EAJA is
considered and as long as the funds remained undistributed to
claimants (as they now have been).

Accordingly, the only real remand is as to the Kalodner
claim in the action against Public Service Electric & Gas et al,
04-0152HHK in the District Court, and 05-7009 in this Court.

No District Court has definitively passed on the issue
presented-- whether Kalodner is entitled to a common fund fee for
obtaining the declaratory judgment in Con Ed IV. Judge Collyer
declined to do so in Con Ed IV on the ground that sovereign
immunity precluded consideration on the merits, and effectively
reiterated the same by refusing to consider the merits on the
basis of issue preclusion in Con Ed V. And Judge Kennedy
dismissed the Complaint for failure to state a claim in Kalodner
v. Public Service Electric & Gas Co. It is accordingly
inappropriate for this Court to express the view that "there is
considerable doubt whether their (Kalodner's clients') efforts
played the casual role needed to qualify for a common fund fee
recovery," (Slip Opinion, p. 13), particularly when the Panel
itself ultimately concludes that it is "unable to reach a

23

conclusion about causation," and that limited discovery is appropriate as to the issue (Slip Opinion, p. 34).

The Panel unfairly belittles DOE's acknowledgment in proposing distribution that it is doing so to implement the declaratory judgment (Slip Opinion, p. 33), and fails to recognize that Judge Collyer's "agrees that Mr. Kalodner was successful in two civil suits against DOE; in Con Ed IV where he obtained a declaratory order requiring the DOE to distribute some $275 million in crude oil refunds which the DOE held in U.S. Treasury escrow, and in Con Ed V where DOE voluntarily agreed to the relief there sought." (Appendix in 05-5089, at 74).

And the Panel also seeks to draw inferences from facts which such facts do not support. Thus, for example, the Panel interprets DOE's agreement to establish an initial reserve of 20% of recoveries for possible award to claimants if the formula it adopts warrants such, as representing a "planned distribution of the 20% reserve", thus presuming an intention of DOE from the outset to distribute the entire 20% to claimants. (Slip Opinion, p. 27); in fact, the only reason the entire 20% is required to be distributed to claimants is that the formula which DOE adopted would require a greater amount to be distributed, and the 20% limits such distribution.

And the Panel cites the fact that OHA submitted to DOE's General Counsel a memorandum in December 2001 with regard to

24

what distribution should be made of the remaining funds as reflecting "strong signs of (DOE) moving <u>independently</u> towards making the final distribution," implying that such "final distribution" would be to claimants rather than to the States of the United States and the U.S. Treasury, the other alternative being considered by DOE (Slip Opinion, p. 33). There is no justification of record for so implying.

In sum, the Panel Opinion improperly prejudices the District Court's determination as to the causation issue, and should be revised to eliminate all statements which have such effect.

<u>CONCLUSION</u>

For the reasons set forth above, the Panel should grant rehearing. If it does not do so, rehearing en banc should be granted.

Respectfully submitted,

Philip P. Kalodner
208 Righters Mill Rd.
Gladwyne PA 19035
(610) 649-8749
Attorney for Appellants
Pro Se

May 30, 2006

25