IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHILIP P. KALODNER | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| SAMUEL BODMAN, Secretary of Energy, | : | |
| et al | : | |
| | : | |
| AND | : | |
| | : | CIVIL ACTION NO. |
| PUBLIC SERVICE ELECTRIC & GAS CO. | : | 1:06CV00818 (RMC) |
| et al | : | |
| | : | |
| Defendants | : | |

PLAINTIFF'S MOTION FOR CERTIFICATION OF DEFENDANT CLAIMANTS
AS CLASS REPRESENTATIVES PURSUANT TO FEDERAL RULE 23

Plaintiff Philip P. Kalodner respectfully moves (i) that the eight named claimant defendants as to Count II of the Complaint-- Public Service Electric & Gas Co., Eastman Chemical Company, General Motors Corporation, Seagroup Inc.,General Council on Finance and Administration of the United Methodist Church, City of New York, Zim Israel Navigation Co. Ltd., and Florida Power Corporation-- be certified pursuant to Federal Rule of Civil Procedure (FRCP") 23 as representatives of a class consisting of more than 29,500 crude oil refund claimants who have been awarded, or will have been awarded, as of the certification order, a pro rata portion of the approximately $284 million being distributed by the Office of Hearings and Appeals of the U.S.

1

Department of Energy ("OHA" and "DOE") and who have received, or will have received as of the certification order, 89.5% of such pro rata amount due them, excluding from the class those claimants as to whom Plaintiff has waived any common fund fee by virtue of fee agreements with them, and (ii) that counsel for the named claimant defendants, Morgan, Lewis & Bockius, Sher & Blackwell, and the Corporation Counsel of the City of New York be appointed as class counsel.

In support of such Motion, plaintiff submits a Statement of Points and Authorities.

Respectfully submitted,

_____

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 973578
610-649-8749

November 3, 2006          Plaintiff, Pro Se

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHILIP P. KALODNER | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| SAMUEL BODMAN, Secretary of Energy, | : | |
| et al | : | |
| | : | |
| AND | : | |
| | : | CIVIL ACTION NO. |
| PUBLIC SERVICE ELECTRIC & GAS CO. | : | 1:06CV00818 (RMC) |
| et al | : | |
| | : | |
| Defendants | : | |
| | : | |

STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CERTIFICATION OF CLAIMANT DEFENDANTS
AS CLASS REPRESENTATIVES PURSUANT TO FEDERAL RULE 22

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 97357
610-649-8749

November 3 , 2006          Pro Se

TABLE OF CONTENTS

INTRODUCTION AND SUMMARY                                    1

I THE FACTUAL BACKGROUND AND THE APPLICABLE LAW            5

    A. The Factual Basis for Kalodner's Claim
    for a Common Fund Fee to Be Paid By The
    Class Members                                       5

    B. The Legal Basis for Kalodner's Claim for
    A Common Fund Fee                                  14

    C. The History of Kalodner' Efforts To Obtain
    a Common Fund Fee From the Claimants Benefitted
    By The Con Ed IV Declaratory Order and the DOE
    Agreements Obtained in Con Ed V and Con Ed VI--
    and the Reason for the Bringing of Count II of
    This Action Against A Defendant Class of
    The Benefitted Refund Claimants                    16

II CERTIFICATION OF THE CLASS OF CRUDE OIL REFUND
CLAIMANTS AS DEFENDANTS AND OF THE NAMED DEFENDANTS
AS THEIR REPRESENTATIVES IS APPROPRIATE PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE ("FRCP") 23            22

    A. The Prerequisites to a Class Action Set
    Forth in FRCP Rule 23(a)Are Satisfied              26

    B. The Proposed Class Is Properly Certified
    Pursuant to FRCP Rule 23 (b)                       34

    C. Notification of Class Members of Class
    Certification                                      43

CONCLUSION                                                 44

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | | |
|---|---|---|
| PHILIP P. KALODNER | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| SAMUEL BODMAN, Secretary of Energy, | : | |
| et al | : | |
| | : | |
| AND | : | |
| | : | CIVIL ACTION NO. |
| PUBLIC SERVICE ELECTRIC & GAS CO. | : | 1:06CV00818 (RMC) |
| et al | : | |
| | : | |
| Defendants | : | |
| | : | |

---

STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CERTIFICATION OF CLAIMANT DEFENDANTS
AS CLASS REPRESENTATIVES PURSUANT TO FEDERAL RULE 22

INTRODUCTION AND SUMMARY

Plaintiff Philip P. Kalodner has moved that the eight named claimant defendants-- Public Service Electric & Gas Co., Eastman Chemical Company, General Motors Corporation, Seagroup Inc.,General Council on Finance and Administration of the United Methodist Church, City of New York, Zim Israel Navigation Co. Ltd., and Florida Power Corporation-- be certified pursuant to Federal Rule of Civil Procedure (FRCP") 23 as representatives of a class consisting of more than 29,500 crude oil refund claimants who have been, or will have been as of the certification order,

1

awarded a pro rata portion of the approximately $284 million being distributed by the Office of Hearings and Appeals of the U.S. Department of Energy ("OHA" and "DOE") and who have received, or will have received as of the issue of the certification order, 89.5% of such pro rata amount due them.

Ten percent (10%) of the pro rata amount allocated to each of the claimants to whom distribution has been made has been retained by DOE for any fee which may be awarded plaintiff herein (i) for obtaining such allocations and such distribution to claimants by virtue of securing this Court's declaratory order issued May 9, 2003 in <u>Consolidated Edison Company of New York et al v. Spencer Abraham et al</u>, Civil Action 01-00548 (RMC) (D.D.C.) ("<u>Con Ed IV</u>"), and by virtue of two subsequent actions brought by plaintiff herein, i.e. <u>Consolidated Edison Company of New York et al v. Samuel Bodman et al</u>, Civil Action 03-1991 (RMC) (D.D.C.) ("<u>Con Ed IV</u>") and <u>Consolidated Edison Company of New York et al v. Samuel Bodman et al</u>, Civil Action 05-0816 (RMC) (D.D.C.) ("<u>Con Ed VI</u>", and (ii) additionally, by virtue of the service rendered to the claimant class by plaintiff during 21 years in creating, increasing and preserving a common fund fee for them. (One half of one percent (0.5%) of the pro rata amount due each of the claimants to whom distribution has been made has been retained by DOE for any award which will be made to Mittal Steel USA ISG Inc., a claimant whose claim for crude oil refunds

2

was denied by OHA, and who is seeking to reverse that denial in pending judicial litigation.)

Excluded from the proposed class are claimants as to whom plaintiff has waived any right to a common fund fee by virtue of fee agreements with such claimants. Such claimants represented by plaintiff, Philip P. Kalodner ("Kalodner") are approximately 39 in number, and by virtue of the volume of their purchases of refined petroleum products during the relevant crude oil regulatory period are entitled to some 16.5% of the amount due all eligible claimants, approximately 31,000 in number.

As of the filing of this Motion, almost 29,500 claimants of the almost 31,000 claimants who will receive allocations and distribution of pro rata shares of the $284 million have received such allocations and such 89.5% distribution.

In his First Amended Complaint, plaintiff seeks (i) a judgment that plaintiff is entitled to a common fund fee of 10% of the distribution which has been allocated to each named defendant claimant and to each member of the class, and which has been distributed to the extent of 89.5% to each such named defendant and to each member of the class,  (ii) in Count I, an order directing the defendant officials of the Department of Energy, i.e. Samuel Bodman, Secretary of Energy, and George Breznay, Director of the Office of Hearings and Appeals of the Department of Energy ("OHA") (cumulatively referred to as

3

"Department of Energy" or "DOE") to distribute to plaintiff Kalodner as a common fund fee the 10% withheld in the distribution to each member of the class to whom an 89.5% distribution has been made, (iii) in Count II, in the alternative, should the Court decline to so order the DOE to make such distribution to Kalodner, Kalodner seeks an order directing the claimant defendants on behalf of the claimant class to direct the DOE to make such distribution to Kalodner, and (iv) in Count II, in the further alternative, should the Court decline so to order the DOE to make distribution to Kalodner and decline to order the claimant defendants to so direct DOE, Kalodner seeks an Order that each member of the class to whom a distribution has been made pay to plaintiff Kalodner 10% of the amount allocated to each such class member, i.e. a common fund fee of approximately $77.69 per million gallons for which such class member has been allocated crude oil refunds.

The eight named claimant defendants are among the almost 31,000 crude oil refund claimants benefitted by plaintiff's services in Con Ed IV, Con Ed V, and Con Ed VI. They are appropriate representatives of the other crude oil refund claimants, inter alia, by virtue of (i) the fact that they are typical claimants, i.e. government purchasers of oil products, manufacturers, utilities, transporters and non-profits, (ii) the fact that their pro rata shares of the withheld 10% are among the

4

larger shares allocated to claimants, and accordingly they are positioned to bear the burden of representing the class initially, pending certification of the class and the fixing of a fee for their services from the common fund, (iii) they have retained competent counsel, among them one of the nation's leading law firms and a law firm which by virtue of its prior participation in the crude oil refund proceedings is, in plaintiff's view, as knowledgeable of this matter and the merits of plaintiff's claim as any counsel representing crude oil refund claimants, other than plaintiff.

In this Statement, plaintiff ("Philip P. Kalodner" or "Kalodner") will first note the legal and factual background of this action, i.e. the basis on which he seeks a common fund fee and the reason why he seeks it by means of this action against the claimant class, and will then discuss the requirements of FRCP 23 (a) and (b), demonstrating that they are here satisfied.


I    THE FACTUAL BACKGROUND AND THE APPLICABLE LAW

A. The Factual Basis for Kalodner's Claim for a Common Fund Fee To Be Paid By The Class Members

1. The principal basis of Kalodner's common fund claim-- his success in three lawsuits in obtaining distribution to crude oil refund claimants

The immediate and principal basis for the Kalodner claim for

a common fund fee are the three successive actions by virtue of which Kalodner (i) has obtained the allocation to the claimant defendants and to the more than 29,500 members of the class of crude oil refund claimants of  pro rata shares of the available $284 million in crude oil refunds, and (ii) has obtained the distribution to each claimant defendant and each member of the class of 89.5% of such pro rata share--(a) in Con Ed IV, obtaining a declaratory judgment requiring distribution of the balance of crude oil refunds remaining in the relevant U.S. Treasury accounts in which 20% of DOE-recovered refunds had been placed for potential distribution to individual claimants, (ii) in Con Ed V, (a) by virtue of the filing of the Complaint, obtaining the agreement of DOE to comply with the declaratory order, albeit only to the extent of $245 million of the $284 million which would be available for such purpose as of December 28, 2005, and (b) by virtue of the filing of a motion for summary judgment, obtaining the agreement of DOE to changes in the proposed distribution formula and methodology which would result in the distribution of the entire $284 million, and (iii) in Con Ed VI, obtaining (a) an agreement by DOE, which had withheld any distribution pending conclusion of litigation which might affect the amount available for distribution, to distribute the 89.5% of such available funds not involved in litigation, retaining 10.5% for such awards as were being sought in such litigation, and (b)

6

presumably an agreement by DOE to distribute such withheld 10.5%
to the claimants to the extent not required by such litigation
upon its conclusion. (10% of the funds allocated to each claimant
was withheld by DOE in connection with Kalodner's claim to a
common fund fee of 10%, while approximately .5% was withheld from
the allocations to the claimants in order to be able to fund any
award to Mittal Steel USA ISG, Inc. for which Mittal Steel was
litigating.)

In ruling on Kalodner's request for a common fund fee in Con
Ed V, (decision of January 26, 2005), Judge Collyer found that
Kalodner as counsel for his clients ("Utilities and
Manufacturers") had, by virtue of the Con Ed IV and Con Ed V
litigation,  both (i) obtained the creation of a common fund for
all 31,000 claimants, and (ii) increased the proposed
distribution by obtaining a change in the methodology of
calculating the volumetric:

(i) "Con Ed V insured the implementation of the Court's
declaratory judgment in Con Ed IV that DOE should disburse
approximately $275 million in funds. In responding to Con Ed V,
the DOE not only committed to a distribution but also committed
to a specific methodology for calculating the per-gallon amount
of that distribution," (emphasis supplied), and

(ii) "The Court agrees that Mr. Kalodner was successful in
two adverse civil suits against DOE: in Con Ed IV, where he

7

obtained a declaratory order requiring the DOE to distribute some $275 million in crude oil refunds which the DOE held in U.S. Treasury, and in <u>Con Ed V</u>, when the DOE voluntarily agreed to the relief there sought,", citing the decision in <u>Koppel v. Wien</u>, 743 F. 2d 129, 135 (2nd Cir. 1984) for the holding that "Fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained." (emphasis supplied).

In <u>Con Ed VI</u>, as had been the case in <u>Con Ed V</u>, the action was dismissed as moot when, in response to the Complaint and a Motion for Summary Judgment, the DOE agreed to the relief sought; in <u>Con Ed VI</u>, DOE, which had delayed distribution almost one year from the date on which it had promised distribution, and was threatening to delay distribution for the several more years which would be required to complete outstanding litigation, agreed to the demand by Kalodner's clients that it distribute immediately the 89.5% which was not subject to any pending litigation. (Order of March 2, 2006 in <u>Con Ed VI</u>).

      2. <u>Kalodner's efforts over a 21 year period</u> to
      <u>assure that purchasers of refined petroleum</u>
      <u>products would receive crude oil refunds and</u>
      <u>in maximizing the amount of such funds</u>

For more than 21 years Kalodner spent essentially his full time in representing end user claimants to the crude oil refunds,

8

and in pressing their cause. For more than the last 15 of those years, Kalodner was the sole active lawyer representing the interest of end user claimants; throughout the period in practically every representation of his clients, whose combined purchases represent some 16.5% of the purchases by all approved claimants, Kalodner represented the interest of all of the 31,000 claimants receiving the current distribution.

    a. <u>Kalodner's efforts in assuring that purchasers of refined petroleum products would receive crude oil refunds, and in maximizing the amount of such funds</u>

      (i) <u>Kalodner's successful efforts in the creation of the right of end users of refined products to crude oil refunds recovered by DOE</u>

During the 1980's, while the DOE was recovering crude oil refunds pursuant to Section 209 of the Economic Stabilization Act ("ESA"), Pub. L. 92-210, 85 Stat. 743 (1971), two efforts were made which would have eliminated the right of end user claimants to obtain those funds; in both cases, Kalodner played a significant part in winning rejection of those efforts, thereby assuring that there would be a fund for claimant end users:

    (a) Initially, three separate groups asserted their right to be the sole recipient of recovered crude oil refunds. The Refiners of the United States asserted the right to all of the recovered funds on the basis that, by virtue of the DOE

9

Entitlements Program which spread any crude oil overcharge to one refiner to all domestic refiners, they had absorbed the entire overcharges and had not passed them on to end users in the price of refined products. On the other hand, the United States government, acting by the DOE, and the States of the United States each asserted the right to be the sole recipients of the crude oil refunds on the basis of the principle of <u>parens patriae</u>, arguing with each other as to which was the proper <u>parens patriae</u> for the purpose of award of crude oil refunds. Kalodner, acting initially on behalf of the truckers of the United States, together with the States, agricultural cooperatives, domestic airlines and utilities, in an extended proceeding satisfied OHA that the Refiners had absorbed only 2.7 to 8.1% of the overcharges, passing the balance downstream. And Kalodner and the other above named end user groups were able to obtain a settlement of then pending litigation (i) in which the Refiners' recovery was limited to a fixed amount estimated to represent 6.75% to 7.5% of the total amount to be recovered by DOE and, (ii) in which the United States and the States each agreed to permit end users to recover crude oil refunds, at least to the extent of 20% of such funds if needed, and to limit their <u>parens patriae</u> recovery to funds remaining after end user recoveries. <u>In Re The Department of Energy Stripper Well Exemption Litigation</u>, ("<u>Stripper Well</u>"), 653 F. Supp. 108 (D.

10

Kan. 1986).

(ii) When, in accordance with its promise in the <u>Stripper Well</u> settlement, DOE adopted a policy permitting those who had not recovered in <u>Stripper Well</u> to recover crude oil refunds in DOE proceedings, the States of the United States mounted a challenge to end user claimants, asserting that such claimants, most particularly manufacturers, trans-oceanic shipping companies, non-domestic airlines, and utilities, had passed along the overcharges they had absorbed in refined product prices to their customers, and were accordingly not injured and not entitled to recover. Kalodner, together with attorneys for other shipping companies and non-domestic airlines, responded to that challenge, and satisfied OHA that, pursuant to OHA precedent, end users were entitled to a presumption of injury. Absent that presumption, end users would have been unable to prove injury and would have been denied any recovery, as is evidenced by the fact that reseller and retailer claimants without a presumption of injury have been unable to obtain crude oil refunds in the DOE proceedings.

Thus, had it not been for the efforts of Kalodner and his allies in winning rejection of the Refiners', States' and United States' attempts to obtain 100% of the refunds, and of the States' efforts to make impossible any end user recovery, there would have been no fund at all for end users. Accordingly,

11

Kalodner was instrumental in <u>creating</u> the common fund <u>for end users</u>.

    (ii) <u>Kalodner's efforts in increasing the funds</u>
<u>available to end user claimants</u>

  (a) For more than 10 years, in the late 1980's and in the 1990's, Kalodner on behalf of his clients, and Kalodner alone on behalf of end users, intervened before OHA in numerous DOE enforcement actions seeking crude oil refunds, for the purpose of assisting DOE's enforcement arm in obtaining refunds and maximizing the amount of those refunds. Among the most productive interventions was that in a proceeding which resulted in a settlement with the Occidental Petroleum Corporation which added $55 million and interest thereon to the Treasury escrow fund for end user claimants; it is Kalodner's view that, but for his contributions in the DOE prosecution of Occidental, there would have been no settlement, and no $55 million for end users.

  A substantial portion of Kalodner's time during a more than 10 year period was expended in assisting DOE in seeking crude oil refunds, sometimes and indeed generally successfully, and on occasion unsuccessfully, as in a prosecution of Chevron; in that case, when OHA dismissed the enforcement arm's effort to obtain more then a half billion dollars, Kalodner and a group of States appealed that dismissal to the courts in what turned out to be an unsuccessful effort to reverse OHA's dismissal.

(b) During the immediately past 6 years, Kalodner, on behalf of his clients, and acting again for the benefit of all end user claimants, has challenged a number of awards made by OHA to crude oil refund claimants, asserting that the claimants were not entitled to the awards; any reduction in such awards necessarily benefits the end user claimants who are sharing in the $284 million, in that it (i) adds to the pool of funds available for approved claimants and (ii) reduces the denominator number of gallons to be divided into the $284 million in calculating the per gallon refund to which claimants are entitled. In the case of several of those challenges, upon the filing of a Complaint by Kalodner, DOE asked for remand; in one such matter, involving an award to the Ameripol Synpol Corporation, the OHA has, based upon the arguments by Kalodner, reduced a more than $1 million award by almost $500,000 by reducing the number of purchased gallons deemed qualified for refund.

In another situation, involving a claim by Hercules, Incorporated, prior to rendering a final decision as to the claim, OHA specifically invited Kalodner, and Kalodner alone, to submit comments on its proposed decision. After considering Kalodner's comments, OHA reduced its proposed award of more than $1,000,000 by the amount of $360,000, thereby both (i) adding to the fund pool available to approved end user claimants and ii) reducing the total volume of gallons on the basis of which the

13

per gallon distribution is being made.

OHA's invitation to Kalodner, and to Kalodner alone, to comment on its proposed decision in Hercules, Incorporated, is one of a number of situations in which OHA and DOE have recognized that Kalodner was acting on behalf of all end user claimants, so that it need not invite other end users to participate to assure adequate end user representation. Indeed, in the Occidental Petroleum Corporation matter discussed above, DOE invited Kalodner, and Kalodner alone as a representative of the end users to participate in the mediation effort which resulted in the settlement of the matter.

B. The Legal Basis for Kalodner's Claim for a Common Fund Fee

As explained in Swedish Hospital Corp. v. Shalala, 1F. 3d 1261, 1265 (D.C. Cir. 1993), "(T)he 'common fund' doctrine... typically applied in class actions... allows a party who creates, preserves or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses, including counsel fees " (emphasis supplied). See Boeing Co. V. Van Gemert, 444 U.S. 472, 478 (1980): "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." The lack of formal class certification is irrelevant,

<u>Sprague v. Teconic Bank</u>, 307 U.S. 161, 166 (1939): "(T)hat the party...neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursement..." Finally, to the extent to which the fee here sought for obtaining the declaratory judgment making available $284 million to the claimant class is further supported by prior services rendered to the claimant class in creating and increasing the fund of which the $284 million is only a part, compensation is appropriate for prior phases of the proceeding in which compensation is sought. <u>Bebchick v. Metropolitan Area Transit</u>, 895 F. 2d 396 (D.C. Cir. 1986).

A common fund fee may be sought either (i) by successful plaintiffs to enable them to recover from similarly situated persons who were benefitted by the litigation an appropriate share of the fee which they paid their lawyer, or (ii) a common fund fee may be sought by the plaintiffs' lawyer, as it is here, from non-clients benefitted by the litigation as a matter of equity and to prevent unjust enrichment of such benefitted persons. <u>Central Railroad & Banking Co. v. Pettus</u>, 113 U.S. 116 (1985), <u>Knight v. U.S.</u>, 982 F. 2d 1573, 1580 (Fed. Cir. 1993) ("The rationale... in a suit by an attorney against the beneficiaries of the common fund) rests on unjust

15

enrichment...”); <u>Vincent v. Hughes Air West</u>, 557 F. 2d 759, 769-770 (9th Cir. 1977); <u>Lindy Bro. Builders Inc. Of Phila. V. American Radiator and Stand. Sanitary Corp.</u>, 487 F. 2d 161 (3d Cir. 1973) (specifically pointing out the two kinds of actions for a common fund fee, one by the successful plaintiffs, and the other by their lawyer).

C. <u>The History of Kalodner' Efforts To Obtain a Common Fund Fee From the Claimants Benefitted By The Con Ed IV Declaratory Order and the DOE Agreements Obtained in Con Ed V and Con Ed VI-- and the Reason for the Bringing of Count II of This Action Against A Defendant Class of The Benefitted Refund Claimants</u>

In <u>Con Ed IV</u>, after obtaining the declaratory judgment requiring distribution not only to his clients but to all claimants who would be eligible for such distribution, Kalodner sought a common fund fee. It was denied by Judge Collyer on the basis that the DOE, from whom the fee was sought, had sovereign immunity from paying a common fund fee to Kalodner as long as the funds from which the fee was to be paid remained in the U.S. Treasury. (Order of Dec. 4, 2003 in 01-0548RMC D.D.C.), <u>affirmed</u>, without opinion, 04-1141 (Fed. Cir. 2004)

In <u>Kalodner v. Public Service Electric & Gas Co.</u> (“<u>Public Service 1</u>") 04-0152 D.D.C. Kalodner sued the same eight claimants who are defendants here, as class representatives of all those who would be found eligible by DOE for distribution of the

16

remaining crude oil refunds (subsequently determined to be some 31,000 claimants). In the First Amended Complaint, filed March 9, 2004, Kalodner sought a common fund fee award of 10% of the amounts to be distributed to claimants, and an "Order directing the defendants on behalf of each... (claimant to whom distribution would be made) to direct the DOE to withhold the fee awarded to plaintiff (Kalodner) in each distribution made... "

The suit was brought following the dismissal of Kalodner's motion for a common fund fee in <u>Con Ed IV</u>, and sought a common fund fee on the basis of the declaratory judgment obtained by Kalodner in <u>Con Ed IV</u>, as well as on the basis of his prior services to claimants.

In his Complaint in 04-0152, Kalodner did not seek a common fund fee on the basis of the success which he later obtained in <u>Con Ed V</u> by virtue of DOE's agreement to make a final distribution to claimants and to a methodology of calculating the per gallon amount of such distribution which assured that the distribution would be of the full available amount. ("Notice of final procedures for distribution of remaining crude oil overcharge refunds" issued May 13, 2004, and published at 69 Fed. Reg. 29300 (May 21, 2004)).

Indeed, the First Amended Complaint in 04-0152 could not have sought a fee for that success since it occurred more than 2 months after the First Amended Complaint had been filed.

17

(Although the DOE had proposed subsequent to the filing of the Complaint in Con Ed V, after referring to the issuance of the declaratory judgment in Con Ed IV, that it "will therefore make a final distribution (to claimants)..." ("Notice of proposed procedures for distribution of remaining crude oil overcharge refunds and opportunity for comment" 68 Fed. Reg. 64098, Nov. 12, 2003, emphasis supplied), (i) it did not make a final commitment to make distribution to claimants until issuance of the Notice of final procedures May 13, 2004 , and (ii) the final distribution it proposed in the Nov. 12 Notice, of $670 per million gallons, would have distributed only some $245 million of what would be an available fund of more than $284 million; the commitment to the Kalodner-proposed methodology assuring distribution of the entire amount of available funds did not occur until, and by, the issuance of the Notice of final procedures May 13, 2004.)

Nor, of course, did, or could, the Complaint in 04-0152 claim a common fund fee for Kalodner's success in Con Ed VI in obtaining DOE's agreement to distribute 89.5% of each claimant's pro rata share to each claimant without awaiting the conclusion of litigation as to the withheld 10.5% and other litigation in which Kalodner was seeking to recover funds from certain claimants which would have increased the pro rata shares of all other claimants; Kalodner's success in obtaining DOE's agreement to make immediate distribution of 89.5% was not achieved until

18

the issuance of a Notice of proposed procedures September 29, 2005, 70 Fed. Reg. 57274 (Sept. 30, 2005) and a Notice of final procedures issued January 12, 2006, 71 Fed. Reg. 2195 (Jan. 13, 2006), the first of which occurred more than a year and a half after the filing of the First Amended Complaint in 04-0152.

The 04-0152 action was filed following the <u>Con Ed IV</u> Court's suggestion in its Order denying Kalodner a common fund fee on the basis of DOE's sovereign immunity, that "A more suitable option would be for Mr. Kalodner (i) to initiate a separate lawsuit against applicable claimants-- i.e. those who do not have a fee arrangement with him--  under the common fund fee doctrine once Defendants distribute the monies from the 20% reserve, and (ii) to seek class certification under Rule 23 of the Federal Rules of Civil procedure, if so desired and assuming it is available," albeit noting that "The Court takes no position of whether such a lawsuit brought by Mr. Kalodner would have any merit." (Order of Dec. 4, 2003 in 01-0548). The 04-0152 suit was such an action, albeit filed prior to distribution.

The 04-0152 action, although initially assigned to Judge Collyer as a related action, was reassigned to Judge Henry H. Kennedy.

Motions to Dismiss the Amended Complaint were filed by the defendants, and after briefing, but without oral argument, were granted by Judge Kennedy by Memorandum Opinion and Order issued

19

December 20, 2004. Judge Kennedy found that because the funds remained in the U.S. Treasury, the Court lacked the necessary "control" of the funds from which a common fund fee was sought.

An appeal was taken by Kalodner to the Court of Appeals for the District of Columbia Circuit, as of 05-7009 in that Court. After briefing and oral argument, the Court issued an Opinion reversing the District Court's dismissal of the Complaint; in the same Opinion, the D.C. Circuit ruled on an appeal by Kalodner from a denial of a common fund fee in part, and an appeal by the DOE from the grant of a common fund fee in part as against the DOE in Con Ed V, 03-1991RMC (D.D.C.).

In its Opinion, the D.C. Circuit, misconstruing the 04-0152 Amended Complaint as seeking a common fund fee the Con Ed V success, as well as for the Con Ed IV success, (i) affirmed the dismissal in 04-0152 as to Kalodner's "claim against the beneficiaries for his work in Con Ed V ", and (ii) reversed and remanded as to the dismissal of "Kalodner's claim against the beneficiaries... for Kalodner's efforts in Con Ed IV." Consolidated Edison Co. v. Bodman, 445 F. 3d 438, 460 (D.C. Cir. 2006). The D.C. Circuit held that "Sovereign immunity poses no bar to Kalodner's fee claims against the beneficiaries..."445 F. 3d at 449.

A parallel appeal which Kalodner had filed in the Court of Appeals for the Federal Circuit and which had been deferred

pending consideration by the D.C. Circuit was dismissed following the issuance of the D.C. Circuit's Opinion and the denial by the D.C. Circuit of petitions for rehearing as to its decision as to 03-1991 (05-5089 and 05-5223 in the D.C. Circuit) and in another appeal which had been the subject of the same Opinion.

The instant action differs from the 04-0152 action in that (i) it seeks a common fund fee in the first instance from the DOE, and only seeks action by, or recovery from, the claimant class if recovery from the DOE is not ordered by the Court, (ii) it seeks to recover the common fund fee with and from the 10% withheld for that purpose, a withholding which occurred long after the fling of the 04-0152 action, (iii) it seeks recovery of a common fund fee only as to those claimants to whom allocation and an 89.5% distribution has been made rather than seeking recovery of a common fund fee as to all 31,000 eligible claimants, and (iv) it seeks recovery on the basis of the Con Ed V and Con Ed VI successes as well as on the basis of the success in Con Ed IV and the prior services by Kalodner benefitting claimants.

Kalodner and his client plaintiffs in Con Ed V have moved to consolidate the 04-0152 action and the 01-1991 action, in which a remand was also ordered by the D.C. Circuit, with the instant action in order to avoid duplication and to insure that the Court will first consider the claim of a common fund fee against the

21

DOE to be paid from the 10% withheld by DOE, and only if the Court declines to so order will it need to turn to the claim against the claimant defendants and the claimant class.

Although there is already pending in the 04-0152 action a motion for class certification, filed prior to Judge Kennedy's dismissal of that action, action on which motion for certification was stayed prior to the filing of a response by the defendant claimants, by virtue of the requested consolidation here, it will be necessary to act on class certification only in connection with the instant action.


II   CERTIFICATION OF THE CLASS OF CRUDE OIL REFUND CLAIMANTS AS DEFENDANTS AND OF THE NAMED DEFENDANTS AS THEIR REPRESENTATIVES IS APPROPRIATE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE ("FRCP") 23

In Con Ed IV, this Court recognized as a plaintiff class all of the claimants for crude oil refunds who had been approved for such refunds by OHA. This Court did so by issuing a declaratory judgment requiring distribution to all approved claimants on the Complaint of ten of Kalodner's clients entitled to 15% of the benefit of that declaratory judgment. The class nature of the claimants, i.e. that the same rule as to distribution should apply to all approved claimants, was so obvious to this Court that it treated the Complaint as a class action and provided the

relief to the entire class, finding no need for formal class certification.

And DOE (i) in agreeing to the relief sought by Kalodner's clients in Con Ed V (to honor the declaratory judgment and to change its methodology of calculating the per gallon amount to be paid all qualified claimants) and (ii) in agreeing to the relief sought by Kalodner's clients in Con Ed VI (to distribute to all qualified claimants 89.5% of each claimant's pro rata share, and to withhold 10% of each such share for a possible common fund fee to be paid Kalodner), treated all of the claimants as members of a class, providing to all claimants the same treatment it was providing Kalodner's clients.

Most importantly, by withholding the 10% sought by Kalodner as a common fund fee from all claimants, DOE recognized that the percentage obligation of all claimants was the same, thus treating the claimants as a class as to any fee to be paid.

And the D.C. Circuit, in remanding in 04-0152, although raising numerous questions as to Kalodner's entitlement to a common fund fee, makes no suggestion that the claimants should be treated other than as members of a class, i.e. that the same percentage fee obligation, if any, should exist as to all claimants from whom Kalodner there sought a common fund fee.

By the instant motion, plaintiff seeks the certification of essentially the same claimants as this Court recognized as a

plaintiff class, here as a defendant class for the purpose of determining a common fund fee properly paid with the same percentage of each class member's pro rata allocation.

The only differences in the class membership of the plaintiff class recognized by this Court in Con Ed IV and the defendant class here are (i) the exclusion here of the claimants with whom Kalodner has fee agreements and as to whom he has accordingly waived any common fund fee, and (ii) here limiting the class to those of the 31,000 eligible claimants who have actually had a distribution allocated to them and who have received 89.5% of that allocation, currently some 29,500.

The class certification and the representation of the class -- (i) by party claimants with substantial individual interests in the withheld 10% and (ii) by qualified counsel-- in the same action in which plaintiff seeks in the first instance a fee as against the DOE will provide the claimants with a better opportunity to have their interests represented than would the separate actions which have been remanded, 03-1991 as to a common fund fee claim against the DOE, and 04-0152 as to a common fund fee claim against the claimants; the claimants will, in this action, have the opportunity to participate in the plaintiff's Count I action against the DOE as well as in the claim against the claimants directly.

And class certification and representation here will provide

24

crude oil refund claimants with far greater protection than they received in two settlement agreements entered into by DOE which charged claimants' funds with common fund fees in the same range of magnitude as here proposed without any advance notification of the crude claimants to be charged (in one case without <u>ever</u> notifying claimants); in both cases, the settlement agreements so providing for common fund fees were approved by courts. <u>Amoco Oil Company et al v. DOE et al</u>, C.A. H 94-2423 (Dist. Ct. S. Dist. Texas 1995) (<u>Citronelle Settlement Agreement</u>), <u>In re the Department of Energy Stripper Well Exemption Litigation</u>, 653 F. Supp. 108 (D. Kan. 1953) (<u>Stripper Well Settlement Agreement</u>)(and in the latter case later implemented by the courts. <u>In re the Department of Energy Stripper Well Exemption Litigation, Appeal of Philip P. Kalodner</u>, 855 F. 2d 871 (TECA 1988).

It is in that context--a class certification and representation that will provide a far better protection to the members of the class than would have pertained had the common fund fee application proceeded in <u>Con Ed IV</u>, <u>Con Ed V</u> or <u>Con Ed VI</u> initially or were the common fund fee application be considered separately in the two remanded actions -- in which the certification request pursuant to FRCP 23 is properly considered.

A. <u>The Prerequisites to a Class Action Set Forth in FRCP Rule 23 (a) Are Satisfied</u>

(1) "<u>The class is so numerous that joinder of all members is impracticable</u>"

With a class of some 29,500 crude oil refund claimants who have received allocations and an 89.5% distribution, located throughout the United States, and some abroad, the numerosity requirement is clearly satisfied.

(2) "<u>There are questions of law or fact common to the class</u>"

The question of law here presented is whether plaintiff is entitled to a common fund fee to be assessed against the members of the defendant class.

The question of fact is the appropriate amount of such award, i.e. the percentage of each crude oil claimant's refund which is properly charged as a common fund fee.

Indeed, the questions of law and fact are identical for all members of the class.

(3) "<u>the claims or defenses of the representative parties are typical of the claims or defenses of the class</u>"

The eight defendants were selected by plaintiff as representatives of the major groups of claimants. Two are large electric utilities (Public Service Electric & Gas Co. and Florida Power Corporation), two are manufacturers using petroleum products to provide energy or as an ingredient in produced

26

products (General Motors Corporation and Eastman Chemical
Company), two are transportation companies using petroleum
products as fuel (Seagroup Inc. and Zim Israel Navigation Co.
Ltd.),) one is a non-profit using fuel to heat buildings etc.
(General Council of Finance and Administration of the United
Methodist Church) and one a governmental entity (City of New
York).

    As is evident from the motion to dismiss filed by seven of
the eight defendants, (i) at least those seven raise the same
initial issues in seeking dismissal, and (ii) there is
accordingly every reason to believe they will cooperate and join
in any merit defenses which they will presumably make should
their motion to dismiss be denied.

    There is, therefore, every reason to believe that the
defenses of widely different claimants are the same. Accordingly,
the defendants meet the "typicality" requirement.

    (4) "the representative parties will fairly and adequately
protect the interests of the class"

    The other criterion employed by plaintiff in selecting the
class representatives by naming them as defendants (in addition
to their representing the various kinds of claimants, noted
above) was their ability to provide fair and adequate
representation of the interests of the class.

    Five of the named defendants-- the two utilities (Public

27

Service Electric & Gas Co. and Florida Power Corporation), the
two manufacturers (General Motors Corporation and Eastman
Chemical Company), and the governmental defendants (the City of
New York) were selected because, in addition to representing
major kinds of claimants (utilities, manufacturers and
government), they are among the claimants with the largest
interests in the withheld 10% which is sought as a common fund
fee, and accordingly have sufficient individual interests to
assure adequacy of representation of the class members who will,
in general, receive lesser portions of the distribution. Although
plaintiff did not know prior to naming them as defendants that
four of them would determine to employ the same attorney as their
counsel, they have in fact done so.

The 10% withheld from the distribution to each of the five
large claimant defendants referred to in the preceding paragraph
is as follows: Public Service Electric & Gas Co. $472,976;
Florida Power Corporation $431,420; Eastman Chemical Company
$225,184; General Motors Corporation $115,998; and City of New
York $74,667 (calculated in each case by multiplying the approved
gallon volume of each of the claimants by the $77.69 per million
gallons withheld for a possible common fund fee to Kalodner, i.e.
10% of the $284 million available for distribution as of December
28, 2005.

The first four, all represented by Morgan, Lewis and

28

Bockius, LLP, and presumably all sharing in the cost of that representation have a combined interest of $1,245,578 in the withheld 10%. Morgan, Lewis & Bockius LLP is among the largest and most prestigious of American law firms and certainly experienced in such matters as this one.

Although no entry of appearance has as yet been filed on behalf of the City of New York, in the remanded 04-0152 action, the City of New York is represented by its Corporation Counsel and Washington D.C. Counsel, and will presumably be so represented in this action.

The other three defendants-- Zim Israel Navigation Co. Ltd. and Seagroup Inc. (both shipping companies using petroleum products as fuel), and the General Council of Finance and Administration of the United Methodist Church (a large non-profit with a substantial fuel claim for its church buildings)-- were selected by plaintiff as claimant defendants because, in addition to being representative of two major groups of claimants, transporters and non-profits, and in the case of Zim and the Methodist Church being among the claimants who have large individual interests in the withheld 10%, they have been represented as crude oil claimants by counsel, Sher & Blackwell LLP, who have represented claimants in the crude oil refund program for almost 20 years and are knowledgeable as to some of Kalodner's efforts and of the difficulties overcome by him in

29

winning the declaratory order in <u>Con Ed IV</u>  pursuant to which the
$284  million distribution is being made, and knowledgeable as to
Kalodner's successes in <u>Con Ed V</u> and <u>Con Ed VI</u> which were
necessary for distribution of 89.5% of each claimant's pro rata
share to occur.

The 10% being withheld from the three claimant defendants
represented by Sher & Blackwell LLP of Washington D.C, is,
respectively: General Council on Finance and Administration of
the Methodist Church, $57,692; Zim Israel Navigation Co. Ltd.,
$48,233; and Seagroup, Inc. $11,451. The total interest of the
Sher & Blackwell-represented defendant claimants in the withheld
10% is $115,374.

Moreover although only three of the claimants represented in
the crude oil refund proceedings by Sher & Blackwell are named as
claimant defendants, the plaintiff's choice of them was also
informed by the fact that their counsel, Sher & Blackwell
represented a much larger group of claimants. The interest of all
34 Sher & Blackwell clients in the 10% withheld is $322,514.

In sum, the eight named defendant claimants have an interest
in the 10% withheld of more than $1,435,000 or more than 5% of
the interest of all 31,000 claimants in the withheld 10%, i.e.
$28,400,000, and in sum, the eight named claimant defendants and
the thirty one other claimants represented by Sher & Blackwell
have an interest in the 10% withheld of more than $1,642,000 or

almost 5.8% of the interest of all 31,000 claimants in the withheld 10%, i.e. $28,400,000.

Finally, it should be noted that the dollar interest of the defendant claimants individually and of the group of defendant claimants is actually probably 10% higher than the amounts set forth above, by virtue of interest which has been earned in the relevant U.S. Treasury accounts subsequent to the determination of the per gallon amount to be allocated to each of the 31,000 claimants, and paid to each of them to the extent of $89.5%.

Thus, in total, the interest of the eight named claimant defendants in the withheld 10%, together with interest available for distribution to each of them, is more than $1,575,000, and in total, the interest of the eight named claimant defendants and the other 31 Sher and Blackwell-represented claimants in the withheld 10%, together with interest available for distribution to each of them, is more than $1,800,000.

As the D.C. Circuit has explained, "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representatives must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representatives must appear able to vigorously prosecute the interest of the class through qualified counsel." Nat. Ass'n of Regional Medical Programs v. Mathews, 551 F. 2d 340, 345 (D.C. Cir. 1976).

31

Here, there is no suggestion that the named claimant defendants have "antagonistic or conflicting interests with the unnamed members of the class." Indeed the interests of the defendant claimants are precisely the same as the interest of the other 29,500 claimants.

Nor can there be any doubt that the named claimant defendants are "able to vigorously prosecute the interests of the class through qualified counsel."

The individual economic stakes of two of the four defendant claimants represented by Morgan, Lewis and Bockius-- Public Service Electric & Gas Co. And Florida Power Corporation-- more than $430,000 each, provide the necessary incentive for their vigorous representation of the class. Moreover, because the funds recovered by these two utilities are required by DOE rule to be passed through to their customers, the two utilities have a fiduciary duty to assure that no more of a common fee than appropriate should be paid, thereby maximizing the funds which will be made available to the utility customers.

As to the other two defendant claimants represented by Morgan, Lewis & Bockius-- Eastman Chemical Company and General Motors Corporation-- their respective economic interests, $225,000 and $115,000 assure their interest in defending against the common fund fee request of plaintiff, particularly since their common representation by the same counsel representing the

32

two utilities will presumably reduce significantly their legal
costs incurred prior to certification, which certification will
then spread the burden to all of the 29,500 claimants.

As to their counsel, Morgan, Lewis & Bockius, there can be
no doubt to their ability to represent the class.

As for the three claimants represented by Sher & Blackwell--
the Methodist Church and the two shipping companies-- each of
them has an individual economic interest sufficient to warrant
their providing adequate representation to all 29,500 claimants.
Moreover, the fact that they have a significantly smaller
economic interest than the four claimants represented by Morgan,
Lewis and Bockius makes them both more typical of the class
members generally and better able to represent the interest of
similarly situated claimants in concluding this matter at the
earliest possible time.

Their counsel, Sher & Blackwell are both adequately
motivated by virtue of their representation of 34 claimants and
qualified by virtue of their knowledge of the history of this
matter to provide an important element of adequate representation
for the claimant class.

And, finally, the City of New York, by virtue of both its
adequate economic interest, of almost $75,000, and its fiduciary
duty to the citizens of New York who are the ultimate
beneficiaries of the distribution to the City, has the necessary

33

interest to assure that it will provide adequate representation of the claimant class.

In sum, plaintiff submits that the designation as class representatives of the eight claimant defendants, with cumulative interests of more than 5% of the $28.4 million interest of all 29,500 members of the class, represented by counsel with experience both in similar matters and with this matter, properly balances the need for adequate representation with the need to avoid such a multiplicity of class representatives and of class counsel which would prevent efficient representation of the class.

B. <u>The Proposed Class Is Properly Certified Pursuant to FRCP Rule 23 (b)</u>

A class which satisfies the requirements of FRCP Rule 23 (a) may be certified pursuant to any of three subdivisions of Rule 23 (b).

Plaintiff believes in the instant situation that the class is properly certified pursuant to all three sub-divisions, but proposes that certification be made pursuant to either (b) 1 or (b) 2 rather than (b) (3) because (b) (3) provides that members of the class may opt out, while (b) (1) and (b) (2) do not. As in any defendant class situation, providing an opt-out alternative threatens the very multiplicity of actions which defendant class certification is designed to avoid.

Count II of the instant action, seeking a common fund fee (i) first, by virtue of action by the claimants (directing the DOE to pay the common fund fee with the withheld 10%) and (ii) only if the DOE refuses to honor such direction, from the claimants (by their paying a portion of the 89.5% as a common fund fee) is intended to obtain the same result (i) as would have been obtained within Con Ed IV , Con Ed V and/or Con Ed VI had it not been precluded because the funds were in the U.S. Treasury and had not yet been allocated to individual crude oil refund claimants, or (ii) as would have been obtained by virtue of Count I of this action were it not determined to be precluded because the 10% withheld is in the U.S. Treasury; plaintiff maintains that recovery against the DOE pursuant to Count I is not properly so precluded, and if he is successful in so maintaining, it will be unnecessary to consider the Count II claim.

Had a common fund fee been ordered in Con Ed IV, Con Ed V, or Con Ed VI , or were it ordered pursuant to Count I of the instant Complaint, the members of the claimant class would not have had the right to avoid their distribution or potential distribution being charged for a percentage common fund fee by opting out. So, too, the result should be the same where, as here, the common fund fee is obtained in a proceeding brought against the claimants themselves rather than against the DOE as the custodian of the funds to be distributed to the claimants.

35

As to the first relief sought against the defendant claimant class in Count II-- that, acting by their class representatives, they "direct the DOE to distribute to plaintiff Kalodner as a common fund fee the 10% withheld... together with interest thereon", even if such direction is considered only a "purely precatory" request not requiring DOE to comply, thereby avoiding any possible sovereign immunity problem (see the D.C. Circuit suggestion to that effect, 445 F. 3d at 448), it appears most likely that it would obtain the result sought by plaintiff, i.e. the payment of the percentage common fee to be declared by the Court as appropriate.

Such is suggested by the Federal Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss recently filed in this matter. In that Reply, DOE (i) acknowledges that the 10% is being held as a potential common fund fee to be paid plaintiff, and (ii) asserts that it is a "wild hypothesis that, if ordered by this Court, OHA will not pay attorney fees from the 10% it has reserved precisely for such a situation." Reply, at 3. Although DOE is referring to a reaction by DOE to an order against it pursuant to Count I of the Complaint, it would indeed be a "wild hypothesis" to believe that, if the Court determines on a common fund fee and orders the claimant defendants, acting on behalf of the class, to "request" the payment by DOE of the claimants' common fund fee obligation from the 10% withheld for that

36

purpose, DOE would decline to do so.

In short, it is extremely unlikely that, if this Court declares that the claimant class has a common fund fee obligation in a specific percentage, it will be necessary for plaintiff to avail himself of the final alternative prayer for relief, i.e. recovering a common fund fee from the 89.5% paid to the claimants, while the DOE continues to hold the 10% belonging to those same claimants, and withheld "precisely" for the purpose of paying such a common fund fee obligation.

Before analyzing the instant action pursuant to the three categories of 23 (b), it is appropriate to note that although FRCP Rule 23 specifically provides for defendant classes, i.e. "One or more members of a class may sue or be sued as representative parties on behalf of all only if...", because most classes sought and certified are plaintiff classes, the language of the categories of 23 (b) is clearly framed to describe plaintiff classes, and is more awkwardly used when defendant classes are to be certified.

Where, as here, class certification is being employed to obtain the same result as would have been obtained within the actions in which relief for the class was obtained, Con Ed IV, Con Ed V and Con Ed VI, but for the temporary obstacle presented by the fund still being in the U.S. Treasury, it is appropriate to find a certification category which will produce the same

result, i.e. 23 (b) (1) or (2).

(1) "the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class"

"(B) adjudication with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests"

Both alternative bases for certification pursuant to 23 (b) (1) are here present.

The risk of individual actions to recover an appropriate percentage common fund fee is that there would be varying adjudications as to whether there was an obligation to pay a fee to Kalodner and, if a fee was found appropriate, as to the appropriate percentage of distribution to be paid as a fee.

Such "inconsistent or varying adjudications" would "establish incompatible standards of conduct" for Kalodner, i.e. whether to bring action to recover a fee from others not yet sued, and what percentage to request in such subsequent suits.

Thus, the requested certification is appropriate pursuant to

23 (b) (1) (B). See <u>Research Corp. v. Pfister Associated Growers Inc.,</u> 301 F. Supp. 497 (N.D. Ill. 1969), <u>Technographic Printed Circuits, Limited v. Methode Electronics, Inc.</u>, 285 F. Supp. 714 (N.D. Ill. 1968 ( holding that there would be an incompatible standard of conduct if a plaintiff patent owner could enforce his patent against some infringers, but not others).

The requested certification is also appropriate pursuant to (1) (B):

"Adjudications with respect to individual members of the class" here "would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."

A determination that an individually sued class member was responsible for a fee of 10% of the distribution paid him, calculated by the court on the assumption that a fee of 10% of the distribution to all claimants would provide an appropriate fee, would at the minimum impair or impede a subsequently individually sued claimant in asserting that no fee was due from the distribution to him or that a lesser percentage fee was appropriate. Indeed, even though the finding of a 10% fee would not theoretically be binding upon the subsequently sued claimant, its precedential value might well be in the subsequent court's view dispositive of the issue of liability for a fee and the

appropriate amount. (See, as an example of certification pursuant

to 23 (b) (1) (B) <u>In re Alexander Grant & Co. Litigation</u>, 110

F.R.D. 528 (S.D. Fla. 1986), certifying a defendant class of past

and present partners of a national accounting firm.)

(2) "<u>the party opposing the class has acted or refused to</u>

<u>act on grounds generally applicable to the class, thereby making</u>

<u>appropriate final injunctive relief or corresponding declaratory</u>

<u>relief with respect to the class as a whole</u>"

      Both requirements for certification in this category are

satisfied:

(i) "the party opposing the class", i.e. the plaintiff

Kalodner "has acted...on grounds generally applicable to the

class", i.e. by obtaining for all members of the class an

allocation of a pro rata share of $284 million and a distribution

to each claimant of 89.5% of such individual allocation. Indeed

the requirement of actions "generally applicable to the class"

finds its most complete satisfaction in a declaratory judgment

benefitting all members of the class such as that obtained by

Kalodner in <u>Con Ed IV</u>, and in agreements obtained from DOE in <u>Con</u>

<u>Ed V</u> and <u>Con Ed VI</u> to distribute the full amount available to all

the class members, and to distribute immediately 89.5% of the

allocation to each and every class member

Similarly, all of the other efforts of Kalodner in creating,

increasing, and preserving the crude oil refunds for the crude

40

oil claimants which are noted above are equally actions by
Kalodner which are generally applicable to the class by
benefitting each and every member of the class.

(ii) plaintiff here seeks "final injunctive relief or
corresponding declaratory relief with respect to the class as a
whole". Indeed, plaintiff seeks both declaratory relief and
injunctive relief with respect to the class as a whole.

The declaratory relief sought is a determination that he is
entitled to a common fund fee from each member of the class and
the determination of the appropriate amount of that fee,
expressed in a percentage (10% proposed) to be borne by each
member of the class.

The injunction sought is an order directing the claimant
defendants as class representatives on behalf of all members of
the class to direct the DOE to pay to Kalodner from the 10% it
has withheld for that purpose the percentage common fund fee
fixed in the declaratory order as the appropriate common fund
fee.

As explained above, even if such a "direction" to DOE by the
claimants is considered to be only a "precatory" request, not
requiring the DOE to pay the claimants' common fund fee
obligation and thereby implicating sovereign immunity, it would
be a "wild hypothesis" to assume that DOE would ignore such a
"request."

Accordingly, the remote possibility that an order would be necessary requiring payment of the common fund fee by the claimants from the 89.5% received while the DOE continued to hold 10% belonging to them, should not preclude certification pursuant to 23 (b) (2).

(For examples of certification of defendant classes pursuant to 23 (b) (2)  see <u>Research Corp. V. Pfister Associated Growers Inc.</u>, 301 F. Supp. 497 (N.D. Ill. 1969), <u>Arenson v. Chicago Mercantile Board of Exchange</u>, C.A. No. 71 Civ. (N.D. Ill. 1972)).

(3) "<u>the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and...a class action is superior to other available methods for the fair and efficient adjudication of the controversy</u>"

Although certification under this third Rule 23 (b) category is clearly here appropriate, the questions of law and fact being the same as to all class members, and judicial efficiency served by the elimination of hundreds or thousands of suits which would otherwise  be required, certification in this category is the least desirable in that it would (i) require individual notification of all class members, and (ii) provide for an opportunity to each member of the class to "request exclusion", i.e. opt out, FRCP Rule 23 c) (2) (B). Mandatory individual notification of class members at the outset would delay the

42

proceeding and therefore would delay the distribution to the claimants of any portion of the 10% withheld which is not determined to be payable to Kalodner as a common fund. And if there are any significant numbers of class members opting out, as there may well be, the desired goal of avoiding multiplicity of actions will not be achieved.

    C. <u>Notification of Class Members of Class Certification</u>

        Notification of class members is not required in certification pursuant to categories FRCP Rule 23 (b) (1) and (2) and is a matter for Court option (FRCP Rule 23 ©) (2) (A)). Should the Court determine that the class members should be notified of the certification, plaintiff suggests that the Court direct DOE to notify the class members of such certification by Federal Register Notice, thereby providing the same kind of notification as was provided the claimants in the two Notices of proposed procedures used to notify claimants first of the initially proposed distribution and then of the proposed distribution of 89.5% of the available funds. 68 Fed. Reg. 64098 (Nov. 12, 2003) and 70 Fed. Reg. 57274 (Sept. 30, 2005). No opportunity to opt out need be provided in such notification.

    Should the Court decline to certify the class pursuant to 23 (b) 1 and (2), and instead determine to certify the class pursuant to 23 (b) (3), making individual notification and an opportunity to opt out mandatory pursuant to 23 ©) (2) (B), this

Court is requested to direct such notification to be by DOE, which alone has the necessary claimant contact identification and location information to accomplish such, with the cost of notification to be charged against the 10% withheld by DOE.

CONCLUSION

    For the reasons above set forth, the Court should, pursuant to Federal Rule of Civil Procedure 23, (i) certify the eight named claimant defendants as to Count II of the Complaint-- Public Service Electric & Gas Co., Eastman Chemical Company, General Motors Corporation, Seagroup Inc., General Council on Finance and Administration of the United Methodist Church, City of New York, Zim Israel Navigation Co. Ltd., and Florida Power Corporation--  as representatives of a class consisting of more than 29,500 crude oil refund claimants who have been awarded, or will have been awarded, as of the certification order, a pro rata portion of the approximately $284 million being distributed by the Office of Hearings and Appeals of the U.S. Department of Energy  and who have received, or will have received as of the certification order, 89.5% of such pro rata amount due them, excluding from the class those claimants as to whom Plaintiff has waived any common fund fee by virtue of fee agreements with them, and (ii) appoint counsel for the named defendants, Morgan, Lewis & Bockius, Sher & Blackwell, and the Corporation Counsel of the

44

City of New York as class counsel.

The class should be certified pursuant to FRCP Rule 23 (b) (1) and (2), and only if certification under both those categories is denied, pursuant to FRCP Rule 23 (b) (3)

Plaintiff requests the opportunity to offer oral argument in support of this motion.

Respectfully submitted,

_____

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 97357
610-649-8749

November  3, 2004          Pro Se

45

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

PHILIP P. KALODNER,                    :
                                       :
        Plaintiff                      :
                                       :
v.                                     :        CIVIL ACTION NO.
                                       :        1:06cv00818(RMC)
SAMUEL BODMAN                          :
ET                                     :
                                       :
        Defendants                     :
_____:

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of Plaintiff's

Motion for Certification of Defendant Claimants as Class

Representatives Pursuant to Federal Rule 23 this 3d day of

November, 2006 by federal express, overnight delivery, upon the

following:


John R. Low-Beer
Assistant Corporation Counsel
100 Church St. Room 3-162
New York, N.Y. 10007

Attorney for defendant
City Of New York

                                       _____

                                       Philip P. Kalodner