UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PHILIP P. KALODNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-818 (RMC) |
| ) | |
| SAMUEL BODMAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Philip P. Kalodner, Esq., persuaded this Court to order the U.S. Department of Energy ("DOE") to distribute certain funds to his clients and others. *See Consol. Edison Co. of N.Y. v. Abraham*, 271 F. Supp. 2d 104 (D.D.C. 2003) (*"ConEd IV"*), aff'd, 87 Fed. Appx. 751 (D.C. Cir. 2004). Mr. Kalodner subsequently brought a suit to force DOE to increase the amount of the distribution, which DOE eventually did of its own volition. *See Consol. Edison Co. of N.Y. v. Abraham*, 2004 U.S. Dist. LEXIS 27190, No. 03-1991 (D.D.C. June 30, 2004) (*"ConEd V"*), aff'd in part and rev'd in part sub nom., *Consol. Edison v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006) (*"ConEd v. Bodman"*). Mr. Kalodner also brought a short-lived suit to force DOE to expedite its distribution of the funds at issue in *ConEd IV* and *ConEd V*, but that case was dismissed as moot. *See Consol. Edison Co. of N.Y. v. Bodman*, Case No. 05-cv-816 (RMC), Mem. Op. at 2 (D.D.C. March 2, 2006) (*"ConEd VI"*), aff'd, 2006 WL 3431687 (D.C. Cir. Aug. 7, 2006).

The instant action is an attempt by Mr. Kalodner to recover attorneys' fees based on his efforts in the aforementioned lawsuits. This is by no means Mr. Kalodner's first attempt to

1

recover attorneys' fees in connection with these cases. His right to attorneys' fees was litigated extensively in *ConEd IV* and *ConEd V*, and there is one other case currently pending in this Court that is singularly devoted to the issue. *See Kalodner v. Pub. Serv. Elec. & Gas Co.*, No. 04-cv-152 (HHK) ("*Pub. Serv. Co.*"). More significantly, the D.C. Circuit recently weighed in regarding Mr. Kalodner's ability to obtain attorneys' fees, and issued a ruling that binds this Court in any further adjudications on that subject. *See ConEd v. Bodman*.

Against this backdrop , Mr. Kalodner moves to consolidate all his outstanding fee suits and to certify a class of defendants. Defendants, on the other hand, oppose consolidation and move to dismiss the instant action in its entirety. The Court will deny the motions to consolidate and to certify a class (the latter without prejudice), and will grant Defendants' motions to dismiss.

## I. FACTUAL BACKGROUND

The instant case has a long lineage. To trace it all would be more confusing than helpful. A scant outline is provided; the curious reader is referred to earlier cases.[1]

The oil embargo in 1973 resulted in price gouging in the United States. In response, Congress passed the Emergency Petroleum Allocation Act of 1973 ("EPPA"), Public Law No. 93-159, 87 Stat. 627 (former 15 U.S.C. §§ 751 *et seq.*). The EPPA imposed price controls on crude oil sold in the United States between 1973 and 1981. Violators of the EPPA were required to refund overcharges to the DOE. *See Consol. Edison Co. v. O'Leary*, 117 F.3d 538, 540 (Fed. Cir. 1997).

The huge amounts of money collected by DOE led, naturally, to litigation by refund claimants who asserted that they had been overcharged. In 1986, DOE, the fifty States, and various

---

[1] *See generally Consol. Ed. of N.Y. v. Abraham*, 271 F. Supp. 2d at 105-108; *ConEd v. Bodman*, 445 F.3d at 440-445.

non-government claimants entered into a settlement agreement, *In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 110 (D. Kan. 1986) ("*Stripper Well*").  According to the agreement and DOE's Modified Statement of Restitutionary Policy for Crude Oil Cases, 51 Fed. Reg. 27,899 (Aug. 4, 1986), the non-governmental entities that were parties to the *Stripper Well* agreement received funds that had been placed in escrow and waived all other existing and future claims.  Out of the remaining funds, 80% was split between DOE and the States.  DOE reserved the other 20% for claimants who were not parties to the settlement, which included Mr. Kalodner's clients in the *ConEd* cases.  The DOE Office of Hearing and Appeals ("OHA") is tasked with allocating the 20% portion among claimants pursuant to administrative regulations known as "Subpart V."  *See* 10 C.F.R. Pt. 205, Subpt. V.  The funds themselves are held by the U.S. Treasury.

It would appear that Mr. Kalodner has spent the majority of his legal career litigating various points affecting the distribution of the 20% portion among his clients.  *See* Am. Compl. ¶ 18.  In this lawsuit, he alleges that his labors have inured to the benefit of not only his clients, but to the entire class of claimants who received some portion of the funds that were set aside under the *Stripper Well* settlement.  He names certain of those claimants as defendants (the "Claimant Defendants"),[2] as well as Samuel Bodman and George Breznay, the Secretary of Energy and the Director of OHA, respectively (the "Federal Defendants"), and seeks to recover attorneys' fees from both.  He relies on his self-proclaimed victories in *ConEd IV*, *ConEd V*, and *ConEd VI* as the basis for his claim for attorneys' fees under the "common fund" doctrine, which allows a party "'who

---

[2] The claimants named as defendants in this suit are Public Service Electric & Gas Co., Eastman Chemical Co., General Motors Corp., Seagroup, Inc., General Council of Finance and Administration of the United Methodist Church, City of New York, Zim Israel Navigation Co., Ltd., and Florida Power Corp.

creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from the fund for litigation expenses incurred.'" *ConEd v. Bodman*, 445 F.3d at 451 (quoting *Swedish Hospital v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993)).

## II. LEGAL STANDARDS

### A. **Motion to Dismiss**.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). The court need not, however, accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court may typically consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

### B. **Motion to Consolidate**.

Under Federal Rule of Civil Procedure 42(a), a district court may consolidate cases that involve "a common question of law or fact." *See also* 9 Charles A. Wright & Arthur R. Miller,

Fed. Practice & Procedure § 2382 (2d ed.1995). "The decision whether to consolidate cases under Rule 42(a) is within the broad discretion of the trial court." *Stewart v. O'Neill*, 225 F. Supp. 2d 16, 20 (D.D.C. 2002). "When determining whether to exercise such discretion, 'courts weigh considerations of convenience and economy against considerations of confusion and prejudice.'" *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 245 (D.D.C. 2006) (quoting *Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C.2003)).

### III. ANALYSIS

As it stands, Mr. Kalodner and/or his clients have three pending lawsuits seeking fee awards: Case No. 03-1991 (RMC) (clients v. DOE); Case No. 04-152 (HHK) (Mr. Kalodner v. non-client claimants); and Case No. 06-818 (RMC) (Mr. Kalodner v. DOE and the same non-client claimants). Mr. Kalodner urges the Court to consolidate these lawsuits because, in his view, that is the most sensible method "for adjudicating [his] common fund fee claim as against the DOE." Pl.'s Reply to Opp. of Claimant Def. to Pl.'s Mot. to Consol. at 9. Defendants urge the Court to dismiss the instant lawsuit and deny consolidation as unnecessary. The Court agrees with Defendants that Mr. Kalodner's request for consolidation is unnecessary and dismissal of the instant action is appropriate.

In *ConEd v. Bodman*, the D.C. Circuit considered three cases together: *ConEd V* (No. 03-1991), *Pub. Serv. Co.* (No. 04-152), and *Kalodner v. Abraham* (No. 05-24). In short, the D.C. Circuit held that: (1) Mr. Kalodner cannot recover attorneys' fees from DOE because such claims are barred by sovereign immunity, 445 F.3d at 448; (2) neither Mr. Kalodner nor his clients can recover attorneys' fees based on *ConEd V* because that lawsuit did not play a causal role in achieving the benefits for which they seek fee reimbursement, *id.* at 456-59 ; and (3) Mr. Kalodner or his

5

clients may be able to recover attorneys' fees based on *ConEd IV*, but only if they can demonstrate that this Court's decision in *ConEd IV* caused DOE's decision to distribute the funds, *id.* at 453-55.

These three holdings make clear why the instant action must be dismissed. First, the D.C. Circuit unequivocally affirmed this Court's conclusion that Mr. Kalodner cannot recover attorneys' fees from DOE. 445 F.3d at 448. Thus, the claims against DOE in the instant action must be dismissed, which leaves only the claims against the Claimant Defendants.[3] Second, the D.C. Circuit unequivocally held that neither Mr. Kalodner nor his clients can recover attorneys' fees based on *ConEd V* (reversing this Court's conclusion in part).[4] *Id.* at 456-59. That means that only Mr. Kalodner's claims against the Claimant Defendants in connection with *ConEd IV* and *ConEd VI* are viable. Mr. Kalodner's claims against the Claimant Defendants based on *ConEd IV* are already pending in Case No. 04-152 (HHK). The identical claims in this case will therefore be dismissed as duplicative. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975). Thus, the only non-precluded, non-duplicative claims asserted in the instant action are brought by Mr. Kalodner against the Claimant Defendants for attorneys' fees based on *ConEd VI*.

---

[3] The Federal Defendants also moved to dismiss based on lack of jurisdiction because Mr. Kalodner is currently litigating similar claims against the Federal Defendants before the Federal Circuit Court of Appeals. *See* Fed. Def.'s Mem. of P. & A. In Supp. of Mot. to Dismiss at 5-6. Because the record is unclear regarding precisely what issues are on appeal to the Federal Circuit, the Court will assume that it has jurisdiction and dismiss the claims against the Federal Defendants based only on the preclusive effect of the D.C. Circuit's decision in *ConEd v. Bodman*.

[4] Mr. Kalodner argues that the D.C. Circuit erred in addressing this issue because it was not properly before the court. *See* Pl.'s Mem. of P. & A. In Opp. to Claimant Def.'s Mot. to Dismiss at 18. Whether Mr. Kalodner is correct or not is irrelevant because this Court is bound by the holding of the Court of Appeals — which could not be more clear.

The Court will dismiss those claims as well because, as a matter of law, *ConEd VI* did not "create, preserve, or increase the value of" the fund at issue. *Swedish Hospital*, 1 F.3d at 1265. That suit was prompted, essentially, by Mr. Kalodner's impatience with DOE's delay in disbursing the funds that were the subject of the *ConEd IV* and *ConEd V* lawsuits. In response to the *ConEd VI* lawsuit, DOE stated that it had every intention of making the final distribution and was working diligently to do so. *See* Case No. 05-816, Dkt. # 7 — Decl. of Richard Tedrow In Supp. of Def.'s Mot. for Summ. J. ¶¶ 8-9. DOE had already adopted the final refund distribution procedures, notified eligible refund recipients, and compiled a database of eligible recipients — all before Mr. Kalodner filed the lawsuit. *Id.* ¶¶ 10-15. The delay in actually making the distribution was due to uncertainty regarding the total amount to be distributed and the calculation of the volumetric amount, both of which remained the subject of ongoing litigation (including *ConEd V*, which was on appeal to the D.C. Circuit). *Id.* ¶¶ 16-24.

Notwithstanding these uncertainties, DOE eventually decided to make the final distribution because it feared that further delay would complicate the logistics of the distribution and might result in prejudice to the beneficiaries. *Id.* ¶¶ 25-26. Indeed, less than a year after *ConEd VI* was filed and before the Court had issued any substantive ruling, DOE distributed the funds that were the subject of the suit — as it had been planning to do all along. *See* 05-816, Mem. Op. at 1 (D.D.C. March 2, 2006). The Court therefore dismissed *ConEd VI* as moot. *Id.*[5]

---

[5] The Court also denied Mr. Kalodner's motion for attorneys' fees on the ground that it had already awarded him attorneys' fees in *ConEd V* and, because that decision was on appeal to the D.C. Circuit, the Court had no jurisdiction to consider further fee claims. *See* Mar. 2, 2006 Mem. Op at 2. Although that decision may preclude Mr. Kalodner's similar claim in this case, the Court need not determine the collateral estoppel effect of its prior order because it now concludes that Mr. Kalodner is not entitled to a common fund fee for *ConEd VI* as a matter of law.

Based on this record, the Court concludes that Mr. Kalodner cannot satisfy the requirements for obtaining a common fund fee. The *ConEd VI* lawsuit (as its name implies) was only one of many litigation matters regarding the remaining *Stripper Well* settlement proceeds. In fact, by the time *ConEd VI* was filed, DOE had agreed to disburse the remaining proceeds, and had nearly finished the substantial bureaucratic process necessary to make possible the distribution of approximately $300 million to nearly 30,000 different entities. Not long after *ConEd VI* was filed, DOE actually disbursed the funds. There is simply no indication that *ConEd VI* obtained any additional value for the fund claimants, let alone that it "created, preserved, or increased the value of the fund . . . ." *Swedish Hospital*, 1 F.3d at 1265. Thus, there is no basis upon which to award Mr. Kalodner a common fund fee based on *ConEd VI*, and that claim must be dismissed.[6] *See id.* Because there are no viable claims remaining, the instant action (No. 06-818) will be dismissed in its entirety, and the motion for class certification will be denied as moot.

This brings us finally to the question of consolidation. The only cases left to consolidate are Nos. 03-1991 and 04-152. Mr. Kalodner's arguments in favor of consolidation hinge primarily on joining those two cases with No. 06-818, which is now defunct. The Court sees no particular reason to join two lawsuits with different plaintiffs and different defendants over the objections of one group of defendants. The cases are not "related" within the meaning of Local Civil Rule 40.5 and can appropriately be decided by separate judges. Although there are some common

---

[6] Mr. Kalodner argues that it "was only in, and by virtue of, the *ConEd VI* litigation . . . that Kalodner did finally obtain actual distribution to claimants . . . ." Pl.'s Mem. of P. & A. in Opp. to Claimant Def.'s Mot. to Dismiss at 28. Mr. Kalodner's argument essentially boils down to a *post hoc, ergo propter hoc* fallacy — *i.e.*, because the distribution occurred after he filed *ConEd VI*, it must have been caused by *ConEd VI*. As discussed previously, this argument finds no support in the record.

questions of fact and law, the common questions are not sufficiently substantial to compel consolidation. The cases have been pending before different judges for several years, and the only remaining issues have been remanded by the D.C. Circuit with explicit instructions regarding their adjudication. Consolidating these cases now would likely create more confusion than economy. Accordingly, in the exercise of its discretion, the Court declines Mr. Kalodner's request to consolidate.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss (Dkt. Nos. 9 and 10) will be granted, and the instant action will be dismissed. The motion to consolidate (Dkt. No. 16) will be denied, and the motions for class certification (Dkt. No. 20) and for a stay (Dkt. No. 25) will be denied as moot. A memorializing order accompanies this Memorandum Opinion.

/s/
ROSEMARY M. COLLYER
United States District Judge

DATE: December 18, 2006