IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHILIP P. KALODNER : | |
| : | |
| Plaintiff : | |
| : | |
| V. : | |
| : | CIVIL ACTION NO. |
| SAMUEL BODMAN ,Secretary of Energy,: | |
| United States; GEORGE B. BREZNAY : | No. 1:06-cv-00818(RMC) |
| Director, Office of Hearings and : | |
| Appeals; : | |
| : | |
| AND : | |
| : | |
| PUBLIC SERVICE ELECTRIC & GAS CO.; : | |
| EASTMAN CHEMICAL COMPANY; GENERAL : | |
| MOTORS CORPORATION; SEAGROUP, INC. : | CLASS ACTION |
| GENERAL COUNCIL ON FINANCE AND : | |
| ADMINISTRATION OF THE UNITED : | |
| METHODIST CHURCH; CITY OF NEW YORK;: | |
| ZIM ISRAEL NAVIGATION CO. LTD; : | |
| FLORIDA POWER CORPORATION : | |
| : | |
| Defendants : | |
| : | |

MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FRCP 59 (e)

        Plaintiff, in 06-0818, Philip P. Kalodner respectfully moves
this Court to alter or amend its Order and Judgment entered
December 18, 2006 to (i) deny Federal Defendants Motion to
Dismiss and Claimant Defendants' Motion to Dismiss.

        In his capacity as the Moving Party (for a common fund fee)
in 03-1991 and as Plaintiff in 04-0152 and in 06-0818, Philip P.

1

Kalodner respectfully moves this Court to alter or amend its Order and Judgment entered December 18, 2006 to grant the Motion to Consolidate 03-1991, 04-0152 and 06-0818.

The opportunity to offer oral argument in support of this Motion is respectfully requested.

In support of this Motion, Philip P. Kalodner submits a Statement of Points and Authorities.

Respectfully submitted,

_____

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
610-649-8749
DC Bar 973578

December 28, 2006          Pro Se in 04-0152 and 06-0818
                           and
                           As Moving Party (for common fund
                           fee) in 03-1991

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

PHILIP P. KALODNER                     :
                                       :
          Plaintiff                    :
                                       :
          V.                           :
                                       :   CIVIL ACTION NO.
SAMUEL BODMAN ,Secretary of Energy,:
United States; GEORGE B. BREZNAY   :       No. 1:06-cv-00818(RMC)
Director, Office of Hearings and   :
Appeals;                           :
                                       :
AND                                    :
                                       :
PUBLIC SERVICE ELECTRIC & GAS CO.; :
EASTMAN CHEMICAL COMPANY; GENERAL  :
MOTORS CORPORATION; SEAGROUP, INC. :       CLASS ACTION
GENERAL COUNCIL ON FINANCE AND         :
ADMINISTRATION OF THE UNITED           :
METHODIST CHURCH; CITY OF NEW YORK;:
ZIM ISRAEL NAVIGATION CO. LTD;     :
FLORIDA POWER CORPORATION           :
                                       :
          Defendants                   :
                                       :

---

STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF

MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59 (e)


       Plaintiff Philip P. Kalodner ("Kalodner") has moved this

Court pursuant to Federal Rule of Civil Procedure 59(e) to

reconsider its Memorandum Opinion and Order of December 18, 2006

and, upon such reconsideration, to alter and amend its Order and

1

enter an Order (i) denying the Federal Defendants' Motion to Dismiss and the Claimant Defendant's Motion to Dismiss and (ii) granting Plaintiff's Motion to Consolidate this action with the actions pending as of 03-1991RMC and 04-0152HHK in this Court.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The central issue before this Court in the instant matter, 06-0818RMC, and in the related matter, as of Consolidated Edison v. Bodman, 03-1991RMC (and before Judge Kennedy in Kalodner v. Public Service Electric & Gas Co., 05-0152HHK), is how to respond to a decision of the Court of Appeals for the District of Columbia Circuit, Consolidated Edison v. Bodman, 445 F.3d 438 (D.C. Cir. 2006) which (i) rejects, misinterprets and ignores this Court's findings of facts with regard to the appropriateness of a common fund fee award to Kalodner in 03-1991, (ii) misrepresents the nature of the proceeding being reviewed in 03-1991 and in, 04-0152 in order to be able to reach the merits of, and reverse, this Court's conclusion in 03-1991 that Kalodner is entitled to a common fund fee of $11.7 million, (iii) creates a dilemma for this Court by purportedly remanding in 03-1991 a non-existent application for a common fund fee by Kalodner's clients for services rendered in a case not before the D.C. Circuit in the remanded matter, i.e. 01-0548RMC, and (iv) creates a threat of inconsistent decisions in the remanded 03-1991 and 04-0152

2

actions.

The issue for this Court is whether, operating within the leeway provided by the Court of Appeals by virtue of its remand of the two actions, this Court can (i) ameliorate the results of the misinterpretations and misrepresentations by the Court of Appeals, (ii) solve the dilemma posed by the Court of Appeal's misconstruing the nature of the common fund fee sought and awarded and (iii) avoid the potential inconsistencies threatened by the nature of the remands.

Kalodner believes that the combination of the instant 06-0818 action (although filed prior to the D.C. Circuit decision) and of his motion to consolidate the 06-0818, 03-1991 and 04-0152 actions provide such a vehicle.

In contrast, this Court's dismissal of the 06-0818 action and denial of the motion to consolidate will, unless altered and amended, (i) require this Court to resolve the dilemma posed by the Court of Appeals' misconstruing the common fund fee award by this Court to have been to Kalodner's clients instead of as being to Kalodner, as it was, and (ii) pose a substantial threat of inconsistencies, both in rulings on discovery and in ultimately ruling on the propriety and amount of a common fund fee to Kalodner, by virtue of two Judges considering what is essentially one issue, i.e. whether Kalodner is entitled to a common fund fee from funds which have been distributed, or will be distributed,

to some 31,000 claimants.

Moreover, as to this Court's dismissal of the 06-0818 action,

(a) as to the federal defendants (Count I of 06-0818), this Court has failed to consider, and rule upon, Kalodner's two central arguments as to the federal government's obligation to provide him with a common fund fee, neither of which has been ruled upon by the Court of Appeals, to wit (i) whether, even as to crude oil funds still held in the U.S. Treasury pending distribution to claimants, the federal government's sovereign immunity as to a claim for a common fund fee is waived as part and parcel of the waiver which this Court and the Court of Appeals have recognized is a waiver permitting claimants to seek such refunds from the United States Treasury, a waiver effected by Section 209 of the Economic Stabilization Act ("ESA"), Pub. L. 92-210, 85 Stat. 743 (1971), and (ii) whether, in any event, as the Court of Appeals itself held in National Treasury Employees Union v. Nixon, 521 F. 2d 317 (D.C. Cir. 1975), once the funds are distributed to claimants, as they have now been, the United States has no sovereign immunity permitting it to avoid an obligation to recover a common fund fee from such claimants, particularly where, as here, the United States is holding funds due to such claimants;

(b) as to the claimant defendants (Count II of 06-0818),

4

this Court fails to recognize that (i) as to the claim for a
common fund fee on the basis of Kalodner's success in 05-0548
("Con Ed IV"), the 06-0818 action is not duplicative of the
Complaint in 04-0152, inter alia, because of a difference in the
composition of the defendant class and because the prayer for
relief is different in that only in 06-0818 does Kalodner seek a
common fund fee from funds already distributed to the claimants,
(ii) as to the claim for a common fund fee on the basis of
Kalodner's success in 03-1991 ("Con Ed V"), because the "holding"
of the Court of Appeals depends entirely on misconstruing the
nature of the matters before it in 03-1991 and 04-0152, it is not
a "holding" at all, but merely unbinding dicta, and dicta which
is based on factual misunderstandings or misrepresentations, and
(iii) as to the claims for a common fund fee on the basis of
Kalodner's success in Consolidated Edison Co. v. Bodman, 05-
0816RMC ("Con Ed VI"), this Court has failed to recognize that it
was only by that action that Kalodner obtained an immediate 89.5%
distribution to claimants, thereby avoiding a threatened delay in
any distribution for the several years it would take for
resolution of pending litigation affecting the total amount
ultimately to be due claimants.

Finally, in denying consolidation of the remanded 03-1991
and 04-0152 actions (and the 06-0818 action if this Court
withdraws its dismissal), this Court has failed to recognize that

5

(i) the parties are the same, not different, i.e. in both it is Kalodner who seeks a common fund fee, and in both cases the fee will be paid from the same funds, i.e. funds either due to, or already paid out to, the claimants, and (ii) that not only is there the threat of inconsistency in the ultimate judgment as to Kalodner's right to a common fund fee and its amount, but there is a serious threat of inconsistency in rulings on the extent of discovery to be permitted by Kalodner as to DOE's intentions with regard to distribution of the remaining crude oil refunds, discovery authorized by the Court of Appeals without defining its breadth.

<u>ARGUMENT</u>

I   <u>THE COURT OF APPEALS' HOLDING THAT A COMMON FUND FEE CANNOT BE CLAIMED WHILE FUNDS ARE HELD IN THE U.S. TREASURY BY VIRTUE OF SOVEREIGN IMMUNITY (i) LEFT UNRESOLVED THE ISSUE OF WHETHER SOVEREIGN IMMUNITY WAS HERE WAIVED BY ESA SECTION 209, AND (ii) DID NOT PRECLUDE A COMMON FUND BEING SOUGHT FROM THE UNITED STATES NOW THAT IT HAS DISTRIBUTED THE FUNDS TO CLAIMANTS</u>

The Court of Appeals did not hold that "Mr. Kalodner cannot recover attorney's fees from DOE because such claims are barred by sovereign immunity," as this Court's Memorandum Opinion asserts (at p. 5).

It held only that (i) sovereign immunity is applicable to bar such recovery from funds in the U.S. Treasury <u>unless waived</u>, and (ii) that such a waiver is not effectuated as to a claim by an attorney for common fund fees by virtue of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412 (b).

Such holding precludes neither of Kalodner's arguments which are the basis of his effort to obtain a common fund fee from the DOE pursuant to Count I of the Complaint in 06-0818:

A. <u>Neither This Court Nor Any Appellate Court Has Ruled on Kalodner's Contention That The Waiver of Sovereign Immunity By ESA Section 209 Permitting Claimants To Seek Crude Oil Refunds From The U.S. Treasury Necessarily Includes A Waiver As to An Attorney's  Right To Seek A Common Fund Fee From Funds So Recovered</u>

It is Kalodner's contention that the waiver of sovereign immunity which permitted his clients to seek, and obtain, $284 million in crude oil refunds held in the U.S. Treasury in <u>Con Ed IV</u>, <u>Con Ed V</u>, and <u>Con Ed VI</u>, necessarily includes a waiver of sovereign immunity when he seeks 10% of funds thereby recovered for non-client claimants as a common fund fee:

1. The waiver of sovereign immunity for crude oil refund claimants to seek Treasury funds (i) has been specifically recognized by the D.C. Circuit and the Federal Circuit, <u>Kalodner v. Abraham</u>, ("<u>Kalodner I</u>"), 310 F. 3d 767, 769 (D.C. Cir. 2002):

7

"Congress has waived sovereign immunity for... (crude oil refund claimants) by authorizing them to seek refunds from escrow accounts held by the United States Treasury... " (citing decisions of the Federal Circuit so holding), and (ii) indeed was recognized by this Court in entertaining such litigation in Con Ed IV, there granting relief by issuance of a declaratory judgment; indeed neither in Con Ed IV, nor in either Con Ed V or Con Ed VI did DOE assert a sovereign immunity defense to the clients' suits.

2. The Court of Appeals has repeatedly recognized that even before the enactment of the EAJA, a common fund fee could be awarded against United States funds which were to be disbursed to claimants, except in the case of grants (where, if the government were to later revoke the grant, any fee would be not from claimant funds, but from U.S. funds), See Commonwealth of Puerto Rico v. Heckler, 745 F. 2d 709, 711 (D.C. Cir. 1984), National Farmworkers v. Marshall, 626 F. 2d 23, 26 (D.C. Cir. 1979), and the discussion at pages 55 to 57 of Plaintiff's Statement of Points and Authorities In Opposition to Federal Defendants' Motion to Dismiss in this case.

3. It would make no logical sense to conclude that although sovereign immunity is waived so as to permit claimants to recover $284 million from government held funds, with no possibility they would be required to return such funds to the Treasury, it is not

waived where an attorney successfully representing them in obtaining such funds is precluded from seeking 10% of such recovered funds as a common fund fee.

Nor is there any valid argument that refunds recovered by the DOE pursuant to ESA Section 209 cannot be used to pay a common fund fee. The DOE itself has recognized the propriety and appropriateness of such fees to attorneys on two occasions and Courts have approved, i.e. in a Settlement Agreement In re The Department of Energy Stripper Well Exemption Litigation ("Stripper Well"), 653 F. Supp. 108, and in the "Citronelle Settlement Agreement" approved by the District Court in Amoco Oil Company et al v. DOE et al, C.A. H-94-2423 Dist. Ct. Southern District Texas (1995) (See discussion at pages 15-16 of Plaintiff's Statement of Points and Authorities In Opposition to Federal Defendants' Motion to Dismiss in this case). And the Court of Appeals has rejected an argument that because a common fund fee is not specifically authorized in the statute pursuant to which the claimants seek Treasury funds it is excluded. Commonwealth of Puerto Rico v. Heckler, supra, 745 F. 2d at 712.

There can be no question that neither this Court nor any appellate court has as yet ruled on the contention that ESA Section 209 waives sovereign immunity as to a common fund fee as part and parcel of its waiver of sovereign immunity permitting claimants to seek Treasury funds:

9

1. In holding that sovereign immunity was not waived when Kalodner sought a common fund fee in Con Ed IV, this Court had understood that "Mr. Kalodner offers no statutory exception to the doctrine of sovereign immunity" (Order of December 4, 2003 in 01-0548). (Kalodner had in effect relied on ESA Section 209 by his argument that the waiver of sovereign immunity which permitted his claimants to sue included a waiver of sovereign immunity as to his common fund fee claim, but this Court did not recognize that argument as being statutorily based.)

2. The Court of Appeals for the D.C. Circuit explicitly declined to rule on the argument that sovereign immunity had been waived as to a common fund fee by ESA Section 209, explaining that such was a matter for the exclusive jurisdiction of the Court of Appeals for the Federal Circuit, 445 F. 3d at 449.

3. The Court of Appeals for the Federal Circuit, to which Kalodner repaired after the D.C. Circuit had declined to rule on the issue of waiver by ESA Section 209, itself declined to consider the issue on the ground that this Court had not adjudicated the issue, such being a requirement for its appellate jurisdiction. (Order of October 4, 2006 in Consolidated Edison Co. v. Bodman, No. 2005-1309-1450).

Thus, the Kalodner argument that sovereign immunity is waived by ESA Section 209 as to a common fund fee sought from funds recovered pursuant to ESA Section 209 is not precluded by

10

the Court of Appeals decision in <u>Con Ed V</u>, nor by any decision of the Federal Circuit or this Court.

It is an argument which this Court should specifically address so that this Court's ruling can be reviewed by the Federal Circuit if such review is requested.

Finally, it should be noted that the sovereign immunity issue now exists only as to the 10.5% which has been retained in the Treasury, now that 89.5% has been distributed to the claimants as to whom a common fund fee is sought.

As to that 89.5% distributed, to which we will now turn, no sovereign immunity defense can be asserted because there is no longer what both the Court of Appeals and this Court have declared is "the sina qua non of sovereign immunity... the federal government's possession of the money in question." (Order of December 4, 2003 in 01-0548, quoting the Court of Appeals decision in <u>Kalodner I</u>).

B. <u>Neither The Court of Appeals Nor Any Court Has Ruled That Sovereign Immunity Precludes The Imposition of a Requirement That The DOE Recover a Common Fund Fee As to Funds It Has Distributed; Indeed the Court of Appeals Has Held That Imposing Such an Obligation Where The United States Is Holding Funds Which Can be Used for Such Purpose Is Not Barred By Sovereign Immunity</u>

Because the "the sina qua non of sovereign immunity is the federal government's possession of the money in question," (Order

of December 4, 2003 in 01-0548, quoting the Court of Appeals decision in <u>Kalodner I</u>), the United States has no sovereign immunity as to the 89.5% it has distributed to claimants.

Indeed, the Court of Appeals for the D.C. Circuit in <u>Con Ed V</u> specifically held that sovereign immunity did not attach to funds once distributed to claimants, i.e. that the claimants had no sovereign immunity defense to an action against them for a common fund fee from funds received by them.

It is unclear whether the D.C. Circuit was considering in its decision in <u>Con Ed IV</u> the issue of DOE sovereign immunity on the basis of the situation of record, i.e. that 100% of the funds sought to be charged for a common fund fee remained in the Treasury, or was opining only that the government had sovereign immunity as to the 10% withheld for a potential common fund fee which precluded the Court from ordering the DOE to use the 10% withheld for any common fund fee (as that Court subsequently held in its August 7, 2006 Order in 06-5101 affirming this Court's denial of a common fund fee in <u>Con Ed VI</u>).

But in any event, there is nothing in the D.C. Circuit Opinion in <u>Con Ed V</u> (or for that matter in its affirming Order in <u>Con Ed VI</u>) which suggests that the United States has sovereign immunity precluding it from recovering a common fund fee from funds already distributed to claimants.

Indeed, the D.C. Circuit has specifically held that the

United States has no sovereign immunity which precludes the court from ordering it to pay a common fund fee as to distributed funds, particularly where the United States has access to funds due to the claimants to whom distribution has been made (here, indeed, funds withheld for that specific purpose).

So the Court of Appeals for the District of Columbia Circuit held in National Treasury Employees Union v. Nixon, 521 F. 2d 317 (D.C. Cir. 1975). In that case, a union of U.S. Treasury employees had recovered a pay increase in litigation, and the President, by Executive Orders, implemented that pay raise not only for the Treasury employees but for all federal employees covered by the statute pursuant to which the Treasury Employees had recovered, a total of 3 and ½ million employees. The D.C. Circuit found a common fund fee properly available to the successful plaintiffs and their attorneys pursuant to the common fund fee doctrine, and rejected the argument of the government that it had sovereign immunity because the obligation to recover a common fund fee from 3 and ½ million employees would be an "imposition of an expense upon the government."  The Court noted that it was "assuming... that the attorney's fees and/or litigation expenses involved will be available from future salaries either through direct payments by the Federal Government into the court (and corresponding deduction from salary checks) or some meaningful equivalent." 521 F. 2d at 321-322.

13

Here, the 10% sought by Kalodner as a common fund fee is available from the funds withheld from distribution for that very purpose. The government therefore has available funds which can be tapped with even less difficulty than the salary payments which the Court contemplated being charged in National Treasury Employees v. Nixon.

Indeed, in the instant case the only government expense is in writing a check or checks to Kalodner; unlike the situation in National Treasury Employees v. Nixon in which an otherwise unnecessary adjustment would be required in 3 and ½ million salary paychecks, here the government has already committed itself to a second distribution to claimants in the event Kalodner is awarded a fee of less than 10%, and therefore it will bear no unanticipated cost.

Thus, although the DOE arguably cannot be ordered to use the withheld 10% to pay a common fund fee, (i) its availability for such purpose renders DOE unable to assert a sovereign immunity defense as to a an obligation to recover from claimants a fee on the already distributed funds, and (ii) there is nothing which prohibits the DOE from using the withheld funds to pay a common fund fee. Should the DOE be foolish enough to insist on recovering an awarded common fund fee from more than 29,000 claimants while holding the 10%, it may certainly do so, just as the United States could have determined in National Treasury

14

<u>Employees Union v. Nixon</u> to collect from 3 and a half million employees rather than use future salary payments due to them to pay a common fund fee.

Nor can there be any question that the decision in <u>National Treasury Employees Union v. Nixon</u> remains good law. Not only has it not been reversed, but it was cited by the D.C. Circuit as good law, albeit not there relevant in <u>Kalodner I</u>, <u>supra</u>; in <u>Kalodner I</u>, the funds remained in the Treasury, while here, as in <u>National Treasury Employees Union v. Nixon</u> , the funds sought to be charged with a common fund fee have been disbursed to the claimants.

Thus, under the precedent of the Court of Appeals which binds this Court, even if sovereign immunity remains a barrier as to funds in the U.S. Treasury, it is no barrier to imposing a requirement on the DOE to recover a common fund fee as to the distributed funds, using the withheld funds for such purpose, or should it foolishly choose to do so, recovering such a common fund fee from the 89.5% already distributed to 29,000 claimants.

II    <u>NONE OF THE COURT'S BASES FOR DISMISSAL OF COUNT II OF THE</u>
<u>COMPLAINT AS AGAINST THE CLAIMANTS JUSTIFY SUCH; (i) IT IS NOT</u>
<u>DUPLICATIVE AS TO A FEE ON THE BASIS OF CON ED IV, (ii) THERE IS</u>
<u>NO HOLDING PRECLUDING A CLAIM FOR A FEE ON THE BASIS OF CON ED V,</u>
<u>AND (iii) THE RECORD BEFORE THE COURT DEMONSTRATES THAT CON ED VI</u>
<u>SUCCESSFULLY ACCELERATED DISTRIBUTION OF 89.5% OF THE FUNDS</u>

Preliminarily, but most importantly, it should be noted that the claimants have managed, by obtaining dismissal of Count II of the Complaint and by obtaining denial of the motion to consolidate, to cut off their nose to spite their face.

By asserting a claim for a common fund fee first against the DOE in Count I of 06-0818, and then, only if such a common fund fee is not awarded against the DOE, against the claimants in Count II of 06-0818,  Kalodner has significantly increased the likelihood that the common fund fee will be paid from the withheld 10%. In contrast, with the dismissal of the 06-0818 action and the denial of consolidation, leaving the claim against the DOE in 03-1991 and the claim against the claimants in 04-0152 in separate proceedings before different Judges, the claimants face the risk that they will be required to pay a common fund fee from the 89.5% distributed to them while the DOE continues to hold the 10% withheld from distribution for the purpose of paying an awarded common fund fee; such would be the result of an award of a common fund fee against the claimants in 04-0152 prior

to any award against the DOE in 03-1991.

Secondly, and equally importantly, although as will be argued below, (i)  the claim on the basis of Kalodner's success in <u>Con Ed V</u> is not properly dismissed by virtue of the Court of Appeals' "holding", and (ii) although this Court is incorrect in concluding, without a record, that <u>Con Ed V</u> did not benefit the claimants by accelerating the distribution of 89.5% of the funds to them, the elimination of recovery on the basis of the <u>Con Ed V</u> and <u>Con Ed VI</u> actions does not eliminate  Kalodner's right to a common fund fee, nor reduce the amount of such a fee.

If (i) the DOE agreement as a result of <u>Con Ed V</u> to comply with the declaratory order issued in <u>Con Ed IV</u> and to change its distribution methodology to increase the distribution by $39 million, and (ii) the DOE agreement to accelerate the distribution of 89.5% of the funds rather than await the conclusion of litigation as to the remaining 10.5% were the inevitable result of the issuance of the declaratory judgment obtained in <u>Con Ed IV</u>, as the Court of Appeals and this Court have suggested, then a common fund fee on the entire $284 million ultimately to be distributed is properly awarded for the <u>Con Ed IV</u> success.

17

A. The Claim in the 06-0818 Action For a Common Fund Fee For Obtaining a Declaratory Order in Con Ed IV is not duplicative of the 04-0152 Action; (i) The Defendant Class Is Different, and (ii) The Remedy Sought Is Significantly Different

`The claim for a common fund fee in 06-0818 is not, as this Court has suggested in its Memorandum Opinion, "identical" to the claim in 04-0152 for at least two significant reasons:

1. The Defendant Class As To Whom A Common Fund Fee Is Sought Is Different

In 04-0152, a common fund fee is sought as to all claimants who were found qualified for distribution by DOE and who would presumably receive a distribution other than claimants as to whom Kalodner has fee agreements.

In 06-0818, a common fund fee is sought only as to claimants who have in fact received as of the time of the award of a common fund fee a distribution of funds, and the elimination from the class is limited to those clients of Kalodner as to whom he has specifically waived a common fund fee.

Under the 04-0152 class definition, a common fund fee would arguably be due as to funds which will never be actually delivered to claimants because the claimant cannot be found or because of a disqualification found by DOE after initially finding the claimant qualified for distribution.

In contrast, under the 06-0818 class definition, a common

18

fund fee will only be assessed against claimants who actually
receive distribution.

2. <u>The Remedy Sought Is Different</u>

In the Complaint in 04-0152, the remedy sought is only that
the claimant class representatives direct DOE to distribute an
awarded common fund fee from the funds being held by DOE, a
remedy which the Court of Appeals found in <u>Con Ed V</u> to raise a
sovereign immunity issue. 445 F. 3d at 448.

In the Complaint in 06-0818, an additional final alternative
remedy is added, to wit that in the event DOE refuses to use the
withheld 10% to pay a common fund fee, the claimants themselves
be required to pay the common fund fee from the funds already
distributed to them.

It is correct, of course, that the 04-0152 action can be
made to conform to the 06-0818 action by virtue of amending the
Complaint in 04-0152 to change the class definition, and to add
the additional remedy sought in 06-0818.

And it is correct that Kalodner can seek to add by amendment
in the 04-0152 action his claims based on his <u>Con Ed V</u> and <u>Con Ed
VI</u> successes, claims which are included in the 06-0818 action.

But unless, either by virtue of the 06-0818 action and/or
alternatively by consolidation of the 04-0142 and 03-1991
actions, the claim for a common fund fee from the DOE and the
claim of a common fund fee from the claimants are combined in a

19

single action, there is no way of obtaining the appropriate
sequence of relief sought-- i.e. first, that the common fund fee
be paid from the 10% withheld for that purpose, and only if such
is denied, that the claimants be required to pay the awarded
common fund fee.

Under such circumstances, the 06-0818 action insofar as it
duplicates the claim for a common fund fee for obtaining a
declaratory order in Con Ed IV should not be dismissed as
duplicative. Its use as the principal vehicle for adjudicating
the right to a common fund fee award is in the interest of
judicial efficiency, avoids potential conflicts in rulings by two
Judges, and most importantly from the claimants point of view
increases the likelihood that any common fund fee obligation
which they have is paid from funds withheld by DOE for that
specific purpose.

The very decision of the D.C. Circuit cited by this Court in
its Memorandum Opinion as the basis for dismissal of the claim
for a common fund fee based on Con Ed V as "duplicative",
rejected the "mechanical application of...(the) principle" "that
the court first acquiring jurisdiction of a controversy " should
be given priority," explaining: "In our view, however, choice of
the forum cannot be suitably made by mechanical application of
that principle. The opinions recognizing the rule have frequently
contained a caveat that it should be ignored under some

20

circumstances, and in a good many cases proceedings in an earlier-filed action have been stayed to enable the court later acquiring jurisdiction to proceed to judgment first. We do not regard an injunction favoring the first-filed action as a mandatory step in all instances because countervailing equitable considerations, where present, cannot be ignored." Columbia Plaza Corp. V. Security Nat. Bank, 525 F. 2d 620, 627 (D.C. Cir. 1975).

See also the affirmance by the Supreme Court of a decision by the Third Circuit holding that priority need not be given to an action brought first in determining which of two actions in different District Courts should proceed to determine the issues presented in both actions, Kerotest Mfg. Co. V. C-O-Two Co., 342 U.S. 180, 183 (1952): "Wise judicial administration, giving regard to consideration of judicial resources and comprehensive disposition of litigation, does not counsel mechanical solution of such problems."

Here, the 06-0818 action in which the respective liability of the DOE and the claimants may be determined in one action before one Judge is clearly more efficient and comprehensive than would be determination in two actions by two Judges.

Moreover, as noted above, duplication may here be avoided, while maintaining the desired sequential priority of seeking the common fund fee first from the DOE, by consolidating the remanded action in 04-0152 (and the remanded action in 03-1991) with the

instant action before Judge Collyer.

Such consolidation would assure that any appropriate guidance given by the D.C. Circuit in its decision making the remands would be considered by the Court in the instant case.

B. <u>The Expression By The Court of Appeals of Its View That Con Ed V Played No Causal Role In Assuring Distribution and In Increasing Its Amount Is Not a "Holding" Binding This Court</u>

Whatever the merits of the Court of Appeals comments, 445 F. 3d at 456-459, to the effect that <u>Con Ed V</u> neither significantly advanced the likelihood of distribution or increased its amount, they are not a "holding", i.e. it is not correct that, as this Court put it in its Memorandum Opinion, at p. 6, that "the D.C. Circuit unequivocally <u>held</u> that neither Mr. Kalodner or his clients can recover attorney's fees based on <u>Con Ed V</u>." (Emphasis supplied)

The Court of Appeals comments were not a "holding" binding this Court because they were made on the basis of a misrepresentation of the nature of the two relevant cases before them, i.e the appeals in 03-1991 and the appeal in 04-0152.

The Court of Appeals misrepresented the award sought in 03-1991 and made in part in that action as being an award sought by Kalodner's clients and an award made to Kalodner's clients. It was only by such a misrepresentation that the Court of Appeals was arguably able to reach the merits of the award sought and

22

made in Con Ed V. (In fact, even with the misrepresentation of the claim having been by Kalodner's clients, the D.C. Circuit did not properly reach the merits; it determined that such a claim must be dismissed because Kalodner's clients did not "prevail" in Con Ed V, i.e. did not obtain a judicial determination, therefore not qualifying for the relief from sovereign immunity afforded by the EAJA.)

Had the Court of Appeals recognized that the award was sought by Kalodner, as it clearly was, and that the award was made to Kalodner as an "individual" as it clearly was (Order of January 26, 2005 in 03-1991), the Court would not have been able to reach the merits of the award sought and the award made, in view of the Court's holding that Kalodner was barred from seeking a common fund fee by virtue of sovereign immunity and that such sovereign immunity was not waived by the EAJA (the Court refusing to consider whether waiver was effected by ESA Section 209).

The Court of Appeals misrepresented the prayer for relief in 04-0152 as including a claim for a common fund fee for Kalodner's success in Con Ed V in acting as a catalyst for DOE's agreement to a full distribution to claimants, and only by virtue of that misrepresentation reached the merits of such a claim. In fact, the 04-0152 action was brought prior to Kalodner's success in Con Ed V, and sought a common fund fee solely on the basis of Kalodner's Con Ed IV success.

Thus, the Court of Appeals' opinion that Kalodner's clients and Kalodner had not met the causality requirement in claiming a fee for his success in <u>Con Ed V</u> were "holdings" only arguably as to cases not before the Court, i.e. an imagined claim by Kalodner's clients in 03-1991 for a common fund fee on the basis of Kalodner's <u>Con Ed V</u> success and an imagined claim by Kalodner in 04-0152 for his success in <u>Con Ed V</u>.

And a "holding" on cases not before the Court, whatever may be its merits as an expression of opinion, is not a "holding" on the cases actually before the Court.

Put in terms of "issue preclusion", the legal principle pursuant to which a "holding" as to an issue in a prior case precludes re-litigation in a subsequent case, there is no issue preclusion here because two of the three requirements for there to be issue preclusion as set forth by the Court of Appeals in <u>Beverly Health & Rehab. Services Inc. v. N.L.R.B,</u>,317 F. 3d 316, 322 (D.C. Cir. 2003) are not here present: (i) the merits of Kalodner's claim for a common fund fee for his success in <u>Con Ed V</u> were not "necessarily determined" by the Court of Appeals, and (ii) preclusion of Kalodner in 06-0818 for proving his claim on the basis of 03-1991 would "work a basic unfairness" to Kalodner by precluding him from offering proof that <u>Con Ed V</u> was the catalyst which caused full distribution to claimants (as this Court itself found, i.e. " <u>Con Ed V</u> insured the implementation of

24

the Court's declaratory judgment in <u>Con Ed IV</u>.... In responding to <u>Con Ed V</u>, the DOE not only committed to a distribution but also committed to a specific methodology for calculating th per-gallon amount of that distribution." (Memorandum Opinion of January 26, 2005). (See the discussion in Plaintiff's Statement of Points and Authorities in Opposition to Claimant Defendants' Motion to Dismiss in 06-0818 at p. 23-27)

At the most, the Court of Appeals' opinion on the causality effect of <u>Con Ed V</u> is dicta, and not a holding binding this Court.

(As Kalodner has noted in his Statements of Points and Authorities in opposition both to the DOE and the claimants' motions to dismiss in 06-0818, the dicta of the Court of Appeals as to the causality of <u>Con Ed V</u> in obtaining DOE action has no proper persuasive effect, based as it is on (i) a failure to defer to this Court's findings of fact to the effect that Kalodner did in fact succeed in <u>Con Ed V</u>, particularly by increasing the amount of distribution some $39 million, and (ii) various misrepresentations of both fact and as to the course of the <u>Con Ed V</u> proceedings.)

C. <u>Con Ed VI "Increased The Value" of the Common Fund For Claimants By Accelerating By Several Years The Distribution of 89.5% Of The Funds; It Is Accordingly A Proper Basis For A Common Fund Fee</u>

The Complaint in <u>Con Ed VI</u> was filed when DOE had failed for 80 days to meet its own established deadline of February 1, 2005 for the beginning of distribution, and more importantly was threatening to delay such distribution for the several years it might take to revolve pending litigation which might affect the amount to be distributed, including but not limited to litigation over Kalodner's request for a common fund fee.

Indeed, in its Answer to the Complaint, filed almost 5 months after it was to begin distribution, DOE suggested that it intended to delay distribution until the completion of litigation which might affect the amount per gallon to be distributed (the "volumetric"), including specifically the common fund fee litigation.

It was only in response to a motion for summary judgment filed by plaintiffs which suggested that since 89.5% of the available funds were not subject to pending litigation, such amount should be distributed immediately, with a subsequent distribution when the litigation is concluded that DOE agreed to do so (in the Declaration of Richard Tedrow cited by this Court in its Memorandum Opinion, at p. 7).

26

It is now almost a year since distribution was begun (i.e. January 13, 2006) of 89.5% of the funds, and it can conservatively be predicted that it will be at least two years before the pending litigation affecting the ultimate "volumetric" is concluded.

Thus, Con Ed VI accelerated the distribution of 89.5% of the funds at least three years before the earliest date on which distribution would have been made had DOE awaited the completion of litigation as it had planned to do. Receipt of 89.5% of the funds three years earlier clearly "increased the value" of the fund to claimants, thereby providing a basis for a common fund fee. Swedish Hospital Corp. V. Shalala, 1 F. 3d 1261, 1265 (D.C. Cir. 1993).

Nor does this Court's Order denying a common fund fee in Con Ed VI because its earlier award of a common fund fee was on appeal establish collateral estoppel (see footnote 5 in this Court's Memorandum Opinion). To the extent to which this Court declined to award a common fund fee in Con Ed VI because there was a pending appeal, such a basis no longer exists now that the appeal has been concluded. And to the extent to which this Court declined an additional common fund fee in Con Ed VI because it had already awarded a common fund fee in Con Ed V, such a reason for denial no longer exists in view of the reversal of that award by the Court of Appeals.

27

Nor does the D.C. Circuit's summary affirmance of this Court's denial of a common fund fee in <u>Con Ed VI</u> (Order of August 7, 2006 in 06-5101) preclude the consideration of a fee for such success in 06-0818. The D.C. Circuit held only that a common fund fee could not be ordered from the 10% being withheld by the DOE because of sovereign immunity, and that there was no waiver of such sovereign immunity effected by the EAJA. Here, Kalodner (i) asserts a waiver of sovereign immunity by virtue of ESA Section 209, and (ii) in any event, claims a common fund fee from the 89.5% distributed, as to which funds there is clearly no sovereign immunity.

III  <u>IN ANY EVENT, 03-1991 AND 04-0152 (AND 06-0818 IF NOT DISMISSED) SHOULD BE CONSOLIDATED; THE MOVING PARTY IS THE SAME, THE PARTIES WHOSE FUNDS ARE SOUGHT ARE THE SAME, AND THE ISSUES ARE THE SAME, BOTH IN DISCOVERY AND AS TO A FINAL DECISION</u>

In 03-1991 as remanded (i.e. as a claim for a fee for the <u>Con Ed IV</u> success) and in 04-0152, the same moving party, Philip P. Kalodner, seeks a common fund fee for the same litigation, i.e. obtaining a declaratory judgment in <u>Con Ed IV</u>, and the common fund fee is sought in both cases from the funds either already distributed to or to be distributed to the same 31,000 claimants. In 06-0818, although there is the addition of a common fund fee claim for the <u>Con Ed V</u> and <u>Con Ed VI</u> litigation, the

28

amount of the fund as to which a common fund fee is sought, i.e. $284 million, and the fee sought, i.e. 10%, are the same as in 03-1991 and 04-0152.

Kalodner seeks only one common fund fee. If successful in any of the three actions, he will seek no relief in the other two.

As a result, for the cases to proceed at the same time before two Judges threatens the possibility of inconsistent decisions as to whether a common fund fee is appropriately awarded to Kalodner, and in what amount.

Moreover, because Kalodner seeks a common fund fee first from the 10% withheld in distribution by DOE for such purpose, and only if such is refused does Kalodner seek a common fund fee from the 89.5% already distributed to claimants, a failure to consolidate raise the possibility of an award of a common fund fee from the 89.5% distributed before an adjudication as to whether the common fund fee should be awarded from the 10% withheld by DOE.

In addition, there is also a threat of inconsistent rulings on the breadth of the "limited discovery" which the Court of Appeals has indicated is appropriate in remanding 03-1991 and 04-0152.

Under such circumstances, consolidation is appropriate, both to avoid inconsistent decisions and to conserve valuable judicial

resources by avoiding duplicate proceedings. <u>Columbia Plaza Corp.</u>
<u>v. Security Nat. Bank</u>, <u>supra</u>, 525 F. 2d at 626.

It is appropriate to note that, although the appeals in 03-
1991 and 04-0152 were taken separately to the D.C. Circuit, and
indeed briefed separately, the D.C. Circuit first listed the
cases for argument and disposition before the same Panel on the
same day, and then, although hearing argument separately,
consolidated the cases for the purpose of rendering a decision,
thereby recognizing the appropriateness of their consolidation.

This Court should do the same, particularly because the
failure to consolidate will threaten inconsistency in a much more
serious manner than would have been the case had the D.C. Circuit
had the cases heard before, and disposed of, by two different
Panels; in the case of the D.C. Circuit, circulation of the
Opinion in both cases would diminish the chance of inconsistency,
while here there is no mechanism for obtaining consistency of
decisions by two District Court Judges, either as to discovery
matters or as to the final decision as to an award and its
amount.

As to this Court's expressed reasons for denying
consolidation in its Memorandum Opinion:

1. There are not "different plaintiffs" (Memorandum Opinion,
at p. 8).

Although the named plaintiffs are different, Kalodner's

30

clients in 03-1991 and Kalodner in 04-0152, the moving party seeking a common fund fee, the only matter before the court on remand, is the same, i.e. Philip P. Kalodner.

2. There are "different defendants." (Memorandum Opinion, at p. 8)

Although the nominal defendants are different, the DOE in 03-1991 and the claimants in 04-0152, the relief is sought in both cases from the same funds, funds which either have already been distributed to claimants or which will be so distributed to the extent not used for a common fund fee.

3. The cases are "not 'related' within the meaning of Local Civil Rule 40.5" (Memorandum Opinion, at p. 8)

The cases are indeed "related" as defined by Local Rule 40.5:

(a) They satisfy three of the four bases for determining whether cases are "related, each of which basis is sufficient alone for the cases to be assigned to the same Judge. They "relate to common property", i.e. the funds already distributed to or to be distributed to claimants, (ii) they "involve common issues of fact," i.e. whether the litigation brought by Kalodner was the cause of this Court's issuance of a declaratory order in Con Ed IV, and if it was, the appropriate percentage awarded as a common fund fee, and (iii) the cases "grow out of the same event or transaction," i.e. the Con Ed IV litigation.

31

(b) They are also deemed "related" because the relevant common fund fee motion in 03-1991 and the Complaint in 04-0152 (and in 06-0818) are "filed by the same pro se litigant," i.e. Kalodner.

Kalodner is the named plaintiff in 04-0152 (and 06-0818), and although his clients are the named plaintiffs in 03-1991, it is Kalodner whose "case", i.e. his motion for a common fund fee, is the matter before the District Court.

Moreover, it is appropriate to note that initially the 04-0152 was identified as a "related" case by plaintiff, and was assigned to Judge Collyer, and then only reassigned to Judge Kennedy.

4. "The cases have been pending before different Judges for several years... " (Memorandum Opinion, at p. 9).

The implication that there has been substantial activity and involvement of Judge Kennedy in 04-0152 is not supported by the history of that proceeding. A Complaint was filed, and motions to dismiss briefed and granted, on the basis, as the Court of Appeals understood it, that the claimants were entitled to assert sovereign immunity because the funds were in the U.S. Treasury. Judge Kennedy held no hearing, found no facts, and ruled on no legal issues other than sovereign immunity.

In contrast, Judge Collyer has had a substantial involvement in the issue of Kalodner's entitlement to a common fund fee,

having issued the declaratory order in 04-0548, having presided in Con Ed V and Con Ed VI, having held hearings, and having made findings of fact as to the causative effect of Con Ed IV and Con Ed V.

5. "Consolidating these cases (03-1991 and 04-1552) now would likely create more confusion than economy." (Memorandum Opinion, at p. 9)

It is the separation of the two cases before two separate Judges which would "create... confusion." It would first raise the issue of whether one would proceed while the other was stayed, then issues as to the scope of discovery, and finally the issues as to the right to an award and its amount in a situation where only one award is sought.

As to judicial "economy", it is obvious that to have two Judges facing and deciding the same issues would be a waste of judicial time.

CONCLUSION

For the reasons above set forth, this Court should alter and amend its Order and Judgment entered December 18, 2006, by entering an Order (i) denying Federal Defendants' Motion to Dismiss and Claimant Defendants' Motion to Dismiss, and (ii) granting Plaintiff's Motion to Consolidate 03-1991, 04-0152 and 06-0818.

Plaintiff respectfully requests the opportunity to offer oral argument in support of his Motion to Alter or Amend Judgment.


                            Respectfully submitted,


                            _____

                            Philip P. Kalodner
                            208 Righters Mill Road
                            Gladwyne PA 19035
                            610-649-8749
                            DC Bar 973578

December 28, 2006           Pro Se in 04-0152 and 06-0818
                            and
                            As Moving Party (for common fund
                            fee) in 03-1991


34