IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| PHILIP P. KALODNER : | |
| : | |
| Plaintiff : | |
| : | |
| V. : | |
| : | CIVIL ACTION NO. |
| SAMUEL BODMAN ,Secretary of Energy,: | |
| United States; GEORGE B. BREZNAY : | No. 1:06-cv-00818(RMC) |
| Director, Office of Hearings and : | |
| Appeals; : | |
| : | |
| AND : | |
| : | |
| PUBLIC SERVICE ELECTRIC & GAS CO.; : | |
| EASTMAN CHEMICAL COMPANY; GENERAL : | |
| MOTORS CORPORATION; SEAGROUP, INC. : | CLASS ACTION |
| GENERAL COUNCIL ON FINANCE AND : | |
| ADMINISTRATION OF THE UNITED : | |
| METHODIST CHURCH; CITY OF NEW YORK;: | |
| ZIM ISRAEL NAVIGATION CO. LTD; : | |
| FLORIDA POWER CORPORATION : | |
| : | |
| Defendants : | |
| : | |

---

PLAINTIFF'S REPLY TO OPPOSITION OF THE FEDERAL DEFENDANTS

TO PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

PREFACE

The Federal Defendants ("DOE") and the Claimant Defendants

in this action here have obtained by virtue of this Court's

judgment the first steps in a plan, (i) first, to avoid the

decision on the right of plaintiff Philip P. Kalodner

1

("Kalodner") to a common fund fee being rendered by Judge Collyer, the only Judge with first hand knowledge of Kalodner's success in obtaining crude oil refunds for the claimants and who has already found that a common fund fee is properly awarded Kalodner, and (ii) then, if successful in so doing, to avoid a determination as to Kalodner's right to a common fund fee by Judge Kennedy, presumably by seeking to avoid class certification of the claimant class.

Because of the problem created by the remand to this Court in 03-1991 (remanding a claim for a common fund fee by Kalodner's clients while in fact the claim was by Kalodner and not his clients), the Court's dismissal of the instant Complaint and denial of the plaintiff's motion to consolidate this action, 03-1991 and 04-0152 (or in any event 03-1991 and 04-0152) puts the DOE and the claimants well on their away to achieving their first objective, the avoidance of a decision on a common fund fee award by Judge Collyer.

Such would indeed wreak the kind of manifest injustice which justifies the unusual remedy here sought of an alteration and amendment of this Court's judgment.

<u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

This Court committed "clear error", and by virtue of it worked a "manifest injustice", in dismissing Count I of the Complaint in which Philip P. Kalodner ("Kalodner") seeks an order requiring the Federal Defendants (hereinafter "Department of Energy" or "DOE") to provide him with a common fund fee for (i) obtaining in <u>Consolidated Edison Co. v. Abraham</u>, No. 01-0548 "<u>Con Ed IV</u>"), 271 F. Supp. 2d 104 (D.D.C. 2003) a declaratory judgment requiring the DOE to distribute to claimants remaining crude oil refunds funds held in escrow, (ii) obtaining in <u>Consolidated Edison Co. v. Bodman</u>, 03-1991 ("Con Ed V"), first DOE's agreement to comply with the declaratory judgment, albeit with only a part of the available funds, and then to change its methodology so as to assure distribution of all available funds to claimants, and (iii) in <u>Consolidated Edison Co. v. Bodman</u>, No. 05-0816 ("<u>Con Ed VI</u>") overcoming DOE's plan to delay distribution for several years pending completion of certain litigation, and instead to distribute immediately 89.5% of the available funds.

In accordance with the standards set forth in <u>Zyko v. Dept. of Defense</u>, 180 F. Supp. 2d 89, 91 (D.D.C. 200i), such "clear error" and "manifest injustice" are an appropriate basis for this Court to use its "considerable discretion" and alter and amend its judgment dismissing Count I of the Complaint, and instead

deny the Federal Defendants' Motion to Dismiss (A separate Reply is filed as to the dismissal of Count II of the Complaint in which Kalodner seeks in the alternative to recover a common fund fee from the claimants themselves.)

The "clear error" was in this Court's basis for dismissal, i.e. "The D.C. Circuit unequivocally affirmed this Court's conclusion that Mr. Kalodner cannot recover attorney's fees from DOE," citing the decision on appeals in <u>Con Ed V</u>, 445 F. 3d 438 (D.C. Cir. 2006).

The error is actually a double error: (i) this Court not only did not conclude that Kalodner could not recover attorney's fees from DOE, but actually awarded attorney's fees from DOE funds to Kalodner of some $11.7 million even though no distribution to claimants had as yet occurred, and (ii) the D.C. Circuit, in reversing the award by this Court, held only that as to funds in the "possession" of the United States, sovereign immunity was an available defense, and that sovereign immunity was not waived as to a claim by an attorney for a successful litigating party pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412 (b).

The D.C. Circuit did not hold that once funds are distributed by the DOE, as is now the case as to 89.5% of the funds, the United States has sovereign immunity from being required to recover a common fund fee from claimants' funds, at

least where the United States has in its possession funds due to claimants. Indeed, the D.C. Circuit has held exactly to the contrary in <u>National Treasury Employees Union v. Nixon</u>, 521 F. 2d 23 (D.C. Cir. 1975). In that case, the United States had salary payments due some 3.5 million employees which could be used to pay a common fund fee for litigation which had resulted in a distribution voluntarily made by the United States of a pay adjustment to those employees.

Here, the DOE has available 10% of the funds due claimants which it withheld specifically for the payment of a common fund fee to Kalodner should it be ordered.

Nor did the D.C. Circuit rule as to whether the sovereign immunity attendant upon the 10% withheld and in the U.S. Treasury was waived, as Kalodner maintains it was, as part and parcel of the waiver which permitted Kalodner's clients to bring the <u>Con Ed IV</u>, <u>Con Ed V</u> and <u>Con Ed VI</u> litigation, i.e. pursuant to Section 209 of the Economic Stabilization Act ("ESA"), Pub. L. 92-20, 85 Stat. 743 (1971).

Thus, neither did the D.C. Circuit in <u>Con Ed V</u>, nor did this Court in the judgment in 06-0818 here sought to be altered and amended, dispose of either of Kalodner's arguments proffered to avoid a sovereign immunity bar to recovering a common fund fee from the DOE, to wit:

(i) As to the 89.5% already distributed, there is no

sovereign immunity bar because the funds are not in the "possession" of the United States, and the United States can indeed be ordered to recover and disburse a common fund fee, at least where, as here, it has available funds due to the claimants to whom the distribution has been made; and

(ii) As to the 10% withheld from each claimant for possible payment of a common fund fee, sovereign immunity is waived by virtue of ESA Section 209 as part and parcel of the waiver which permitted claimants to seek and obtain the right to 100% of the available funds from the DOE; the sovereign has no interest in whether 100% of funds due claimants are kept by claimants or whether claimants retain 90% of such funds after being charged 10% of the recoveries for a common fund fee to the lawyer who recovered the funds on their behalf.

In its Opposition here, DOE, in recognition of the fact that neither the D.C. Circuit in Con Ed V, nor this Court in the instant judgment, have addressed either of those arguments, attempts to respond to them and to suggest that this Court implicitly must have dealt with both arguments. The responses are not convincing, and it is clear from this Court's reliance on the D.C. Circuit decision which not address these arguments that this Court did not address them, relying only on the D.C. Circuit's decision.

<u>ARGUMENT</u>

I   <u>BECAUSE THE UNITED STATES IS NO LONGER IN POSSESSION OF THE</u>
<u>89.5% IT HAS DISTRIBUTED, IT HAS NO SOVEREIGN IMMUNITY AS TO A</u>
<u>COMMON FUND FEE SOUGHT ON SUCH DISTRIBUTED FUNDS, AT LEAST WHERE,</u>
<u>AS HERE, THE UNITED STATS HOLDS FUNDS BELONGING TO CLAIMANTS</u>

DOE's Opposition makes no attempt to deal with the clearly
binding precedent of <u>National Treasury Employees Union v. Nixon</u>,
supra, referred to above, and discussed at length in Kalodner's
Motion to Alter or Amend, as it was in Kalodner's Opposition to
the DOE Motion to Dismiss. That D.C. Circuit decision establishes
the principle that where as here, the United States has
distributed funds which are properly charged with a common fund
fee (the 89.5% distributed) and has available funds due to the
recipients of the common fund which can be used to pay the common
fund fee (the 10% withheld), it has no sovereign immunity as
against the claimant of the common fund fee.

DOE, with no expressed basis for so suggesting it, merely
(i) notes that "the Court undoubtedly considered it ( the
argument that the DOE has no sovereign immunity when a common
fund fee is sought as to distributed funds where it has available
funds due the claimants) in the framework of the Motion to
Dismiss," and (ii) cites its argument made in its Reply Brief on

its Motion to Dismiss:

1. As to the argument that this Court must have decided the issue in dismissing, such is inconsistent with the reason the Court gave for the dismissal, i.e. the D.C. Circuit decision in Con Ed V. That D.C. Circuit decision could not have dealt with the issue of recovery as to the 89.5% distributed because it had not as yet been distributed; at the most, the D.C. Circuit was holding that sovereign immunity existed as to the 10.5 % to be withheld, and that such sovereign immunity was not waived by the EAJA.

The D.C. Circuit (i) explicitly declined to rule on whether sovereign immunity had been waived by ESA Section 209, and (ii) certainly did not suggest that the DOE was immune from being charged with the obligation to recover a fee on the distributed 89.5%, particularly where it planned to withhold 10% from each claimant precisely for such purpose.

In short, at the most, DOE may argue it is immune as sovereign from being ordered to use the 10% withheld for the purpose for which it was withheld. It presumably would have the right upon being ordered to recover a common fund fee to recover it from the claimants individually while retaining the 10%. It would, of course, then have to distribute the withheld 10% and perhaps might even be subject to an additional suit for a common fund fee as to that 10%.

8

2. As to the DOE reference to the argument made by it in its
Reply to Kalodner's Opposition to its Motion to Dismiss, it is a
reference to an argument which (i) while ignoring the principle
of <u>National Treasury Employees Union v. Nixon</u>, <u>supra</u>, (ii)
nevertheless concedes that if DOE is ordered to recover a common
fund fee from the claimants as to the 89.5% of the funds
distributed to them, it will voluntarily use the withheld 10% to
pay the awarded common fund fee. As the DOE explains its position
in that Opposition:

"It certainly makes no sense to entertain the wild
hypothesis that, if ordered by this Court, OHA will not pay the
attorney fees from the 10% it has reserved precisely for such a
situation, but instead will disregard the order, distribute the
money to the claimants, and then go after them to recover the
10%."

II   <u>EVEN IF THE DOE COULD OTHERWISE EVOKE SOVEREIGN IMMUNITY AS
TO THE 10% DUE CLAIMANTS AND WITHHELD FOR USE TO PAY A COMMON
FUND FEE, THE DOE CANNOT DO SO HERE BECAUSE ANY SUCH SOVEREIGN
IMMUNITY HAS BEEN WAIVED BY ESA SECTION 209</u>

In its Opposition to the instant Motion to Alter or Amend,
DOE incorporates by reference its argument, as set out in its
Reply Brief to Kalodner's Opposition to its Motion to Dismiss,
that the doctrine of issue preclusion (collateral estoppel)

prevents Kalodner from here contending that sovereign immunity as to the 10% withheld from distribution has been waived by ESA Section 209.

As this Court itself has noted in another decision, Consolidated Edison Co. v. Bodman, 04-0382 (Memorandum Opinion of March 31, 2005, quoting from Shell Petroleum Inc. v. U.S., 319 F. 3d 1334, 1338 (Fed. Cir. 2003):

"Issue preclusion is generally appropriate if: (i) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action."

As explained by the Shell Petroleum Court, as to the second requirement above, "an issue was 'actually litigated'..(when) it was properly raised by the pleadings, submitted for determination, and determined." id, 319 F. 3d at 1339, emphasis supplied.

Or, as the principle has been explained by the D.C. Circuit Court in Fogg v. Ashcroft, 254 F. 3d 103, 111 (D.C. Cir. 2001) quoting from the Restatement of Judgments, "'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action

between the parties, whether on the same or a different claim.'
See Restatement (Second) of Judgments Sec. 27 (1981)." (Emphasis
supplied)

If there is one thing that is clear from this Court's
decisions denying a common fund fee entirely in Con Ed IV,
denying a common fund fee in part and granting it in part in Con
Ed V, and denying a common fund fee in Con Ed VI, and from the
decisions of the Court of Appeals for the D.C. Circuit and the
Court of Appeals for the Federal Circuit in Con Ed V, it is that
neither this Court nor any appellate court has decided or
determined whether sovereign immunity is waived by virtue of ESA
Section 209 as to a common fund fee sought by Kalodner from DOE
to be paid from funds which have been recovered from DOE by
Kalodner on behalf of claimants.

In Con Ed IV this Court expressed its understanding that
"Mr. Kalodner offers no statutory exception to the doctrine of
sovereign immunity" and therefore did not address the issue of
waiver by ESA Section 209. (Order of December4, 2003).

In Con Ed V this Court denied a common fee in part (i.e. as
to the amount which DOE had proposed to distribute as
representing compliance with the Court's Con Ed IV declaratory
order, approximately $245 million) because this Court's prior
decision denying such a fee in Con Ed IV had been affirmed, and
this Court granted a common fund fee in part (i.e. on the

11

additional $39 million which Kalodner had obtained by successfully proposing changes in the DOE's methodology for calculating the per gallon amount to be distributed) on the basis of a waiver of sovereign immunity by virtue of the EAJA; this Court did not consider whether sovereign immunity had been waived by ESA Section 209.

On appeal, both the D.C. Circuit and the Federal Circuit acknowledged that Kalodner's principal argument with regard to a waiver of sovereign immunity was that it had been waived by ESA Section 209-- and both Courts specifically refused to address the issue. The D.C. Circuit refused to address the issue because it found that the issue was one of ESA interpretation and therefore was within the exclusive appellate jurisdiction of the Federal Circuit. And the Federal Circuit declined to adjudicate the issue because it found that the issue of waiver of sovereign immunity by ESA Section 209 was "not actually decided by... (the District) (c)ourt," i.e. that "the district court did not adjudicate any ESA or EPAA issues." (Federal Circuit Orders of October 4, 2006 in 05-1309 and 05-1450 and in 05-1310). (Pursuant to Federal Circuit and D.C. Circuit decisional law, the Federal Circuit is without appellate jurisdiction to decide an ESA issue where such issue has not been "adjudicated in the District Court." Texas American Oil Corp. v. United States Department of Energy, 44 F. 3d 1557, 1563 (Fed. Cir. 1995), Consolidated Edison Co. V.

Ashcroft, 286 F. 3d 600, 603 (D.C. Cir. 2002)).

Thus, not only is it clear from this Court's opinions in Con Ed IV and Con Ed V that it did not decide or determine the issue of waiver of sovereign immunity by virtue of ESA Section 209, but the Court with exclusive appellate jurisdiction over that issue, the Court of Appeals for the Federal Circuit, has affirmatively held that this Court did not adjudicate the issue.

Finally, in Con Ed VI, neither this Court nor the D.C. Circuit in its summary affirmance, considered, let alone determined, the issue of waiver by virtue of ESA Section 209. This Court declined to consider the issue of "attorney's fees because it "has already made an award... for the totality of their EPAA litigation (the common fund fee of $11.7 million), and they have appealed this decision to the D.C. Circuit Court of Appeals." And the D. C. Circuit in affirming and holding that sovereign immunity was an available defense as to the withheld 10% considered only the possibility of waiver by virtue of the EAJA, finding such not available "because appellants did not obtain court-ordered relief" (Order of August 7, 2006 in 06-5101). (As the D.C. Circuit acknowledged in its opinion in Con Ed V, if the waiver of sovereign immunity did not require the employment of a statute such as the EAJA which contains a requirement that the litigant be "prevailing," i.e. have obtained relief by a court order, it would be sufficient for the

litigation to have been the "catalyst" for the desired administrative action, as was the case in Con Ed V and Con Ed VI. Such would be the case were the waiver to have occurred by virtue of ESA Section 209 which does not contain a "prevailing" requirement.)

As for the DOE's argument that the issue of waiver of sovereign immunity by virtue of ESA Section 209 had been disposed of in the earlier cases of Kalodner v. Abraham ("Kalodner I"), 310 F. 3d 767, 770 (D.C. Cir. 2002) and Kalodner v. Abraham ("Kalodner II"), 309 F. Supp. 2d 100, 103 (D.D.C. 2004), it is sufficient to note that neither this Court in Con Ed IV, Con Ed V, nor Con Ed VI, nor either the D.C. Circuit nor the Federal Circuit in Con Ed V thought the issue had been disposed of by the Kalodner cases; had they believed it had been definitively disposed of, this Court would have referred to such, and the D.C. Circuit and the Federal Circuit would not have found it necessary to consider their respective jurisdictional authority over the issue of sovereign immunity waiver by ESA Section 209.

In fact, in neither Kalodner I nor in Kalodner II, did the Courts consider the argument that sovereign immunity is waived to seek a common fund fee from funds recovered from the United States as part and parcel of the waiver which permits claimants to seek 100% of the funds from the United States. They had no occasion to do so because in both cases Kalodner was seeking a

14

common fund fee from funds recovered from overchargers by the
United States but as to which their was no decision to disburse
to claimants, let alone a decision to disburse as a result of
successful litigation brought by the common fund fee claimant, as
is the case here.

In <u>Kalodner I</u>, the D.C. Circuit-- noting that claimants such
as Kalodner's clients had the right to claim ESA Section 209
funds from the U.S. Treasury, i.e. that there had been a waiver
of sovereign immunity so permitting-- held only that Kalodner did
not have such a right as a "claimant" "injured" by the
overcharges. But, of course Kalodner does not claim the right as
a claimant. He asserts only that the waiver of sovereign immunity
which permits his clients to seek and obtain relief although the
funds are in the "possession" of the United States necessarily
includes his right as their successful attorney to obtain a fee
from the funds which he has obtained for claimants other than his
clients.

In <u>Kalodner II</u>, the District Court held only that sovereign
immunity was not waived by the EAJA, and did not consider or
determine whether a waiver of sovereign immunity was available to
Kalodner pursuant to ESA Section 209.

III     DISMISSAL OF KALODNER'S ATTEMPT TO RECOVER A COMMON FUND
FEE FROM THE 10% WITHHELD BY DOE FOR THAT VERY PURPOSE WOULD WORK
A "MANIFEST INJUSTICE" ON CLAIMANTS AS WELL AS KALODNER, THEREBY
MAKING APPROPRIATE THE REINSTATEMENT OF COUNT I OF THE COMPLAINT

In a companion Reply to the Claimant Defendant's Opposition
to Kalodner's motion to alter or amend judgment and reinstate
Count II of the Complaint, plaintiff points out that, at the
minimum, if this Court proceeds on the remand in 03-1991 to
determine Kalodner's right to a common fund fee as against the
DOE at the same time as Judge Kennedy considers the common fund
fee against the claimants in the remanded 04-0152 action, there
is a risk that the latter case will be determined first and the
claimants will be required to return a portion of the 89.5%
received while DOE continues to hold the 10% withheld for the
very purpose of paying any common fund fee obligation of the
claimants.

Moreover, if, despite Kalodner's contention to the contrary,
this Court holds that the Court of Appeals remand in 03-1991 is
only of a non-existent claim of Kalodner's clients to a common
fund fee, or even if it agrees to consider the remand to be of
Kalodner's claim against DOE, concludes that it has no right to
award in Con Ed V a fee for Kalodner's success in Con Ed IV, and
dismisses the remanded action, the claimants will, in 04-0152,
face the possibility of being assessed a common fund fee from the

16

funds they have already received while the DOE continues to withhold the 10%.

Either of the former scenarios would work a "manifest injustice" upon the claimants.

It is only the reinstatement of both Counts of the Complaint, or at least the reinstatement of Count I and its consolidation with 04-0152 which will definitively eliminate that "manifest injustice", and assure a determination first as to whether a common fund fee should be paid from the 10% withheld for that purpose, and only if such relief is refused, a determination as to whether the claimants should pay a common fund fee from the funds already distributed to them.

Finally, dismissal of Count I here, if coupled with dismissal of 03-1991 as remanding a non-existent Kalodner clients' claim for a common fund fee or a holding that only Kalodner's clients can claim a fee from the DOE, will work a "manifest injustice" on Kalodner by depriving him of the only efficient way of recovering a common fund fee, i.e. from the 10% withheld by DOE for that very purpose.

This Court, considering only a common fund fee as to $39 million of the $284 million to be distributed (as of December 28, 2005), made a judgment in Con Ed V that Kalodner was entitled to recover a common fund fee from the DOE-held funds of what amounts to more than 4% of the funds available for distribution (actually

some 4.12%). This Court found that such an award "fulfills the equitable reasons for the common fund doctrine." Presumably, had this Court found itself free to award a fee on the entire $284 million, as it now is pursuant to the D.C. Circuit decision in Con Ed V, it would award an additional fee to Kalodner.

It would therefore be a "manifest injustice" to Kalodner for this Court now to preclude the possibility of Kalodner recovering a fee (i) in the only efficient way he has of collecting it, i.e from the DOE funds, and (ii) by a decision by the only Judge with knowledge of his efforts in Con Ed IV, Con Ed V, and Con Ed VI, and who with such knowledge concluded that "Mr. Kalodner was successful in two adverse civil suits against DOE: in Con Ed IV where he obtained a declaratory order requiring the DOE to distribute some $275 million (now with interest $284 million) in crude oil refunds which the DOE held in Treasury escrow, and in Con Ed V, when the DOE voluntarily agreed to the relief there sought." (Memorandum Opinion of January 26, 2005 in Con Ed V)


CONCLUSION

For the reasons set forth above, and in Plaintiff's previously filed Statement of Points and Authorities,

(i) plaintiff's motion to alter or amend judgment should be granted as to Count I of the Complaint in 06-0818 and the motion to dismiss by the Federal Defendants should be denied. (A

18

separate Reply is being filed to the Claimant Defendants's Opposition to the motion to alter or amend as to the dismissal of Count II of the Complaint in 06-0818);

(ii) plaintiff's motion to consolidate 03-1991, 04-0152 and 06-0818 (to the extent, if any, to which such Complaint is reinstated) should be granted;

Plaintiff respectfully renews his request for an opportunity to offer oral argument.

Respectfully submitted,

_____

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
610-649-8749
DC Bar 973578

January 18, 2006            Pro Se in 04-0152 and 06-0818
                            and
                            As Moving Party (for common fund
                            fee) in 03-1991

19